UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re                                          :    Chapter 11
                                               :
ADVANTA CORP., et al.,                         :    Case No. 09-13931 (KJC)
                                               :
         Debtors.[1]                           :    (Jointly Administered)
                                               :
                                               :    Re: Docket No. 323
                                               :
---------------------------------------------------------------x

# OBJECTION TO MOTION TO COMPEL ADVANTA CORP. TO (I) TIMELY FILE A REQUEST FOR AN EXTENSION OF TIME TO FILE 2009 CONSOLIDATED FEDERAL INCOME TAX RETURN; OR, IN THE ALTERNATIVE, (II) ELECT TO CARRY BACK 2009 CONSOLIDATED NET OPERATING LOSSES FIVE YEARS

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Advanta Corp. (2070), Advanta Investment Corp. (5627), Advanta Business Services Holding Corp. (4047), Advanta Business Services Corp. (3786), Advanta Shared Services Corp. (7074), Advanta Service Corp. (5625), Advanta Advertising Inc. (0186), Advantennis Corp. (2355), Advanta Mortgage Holding Company (5221), Advanta Auto Finance Corporation (6077), Advanta Mortgage Corp. USA (2654), Advanta Finance Corp. (8991), Advanta Ventures Inc. (5127), BizEquity Corp. (8960), Ideablob Corp. (0726), Advanta Credit Card Receivables Corp. (7955), Great Expectations International Inc. (0440), Great Expectations Franchise Corp. (3326), and Great Expectations Management Corp. (3328). Each of the Debtors (other than Advanta Credit Card Receivables Corp. and the Great Expectations entities) maintains its principal corporate office at Welsh & McKean Roads, P.O. Box 844, Spring House, Pennsylvania 19477. Advanta Credit Card Receivables Corp. maintains its principal corporate office at 2215 B. Renaissance Drive, Suite 5, Las Vegas, Nevada 89119, and the Great Expectations entities maintain their principal corporate office at 1209 Orange Street, Wilmington, Delaware 19801. Additional information regarding the Debtors' businesses and the background relating to events leading up to these chapter 11 cases can be found in (i) the Declaration of William A. Rosoff in Support of the Debtors' Chapter 11 Petitions and First-Day Motions, filed on November 8, 2009 (the "**Rosoff Declaration**"), the date the majority of Debtors filed their petitions under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and (ii) that certain supplement thereto, filed on November 20, 2009, the date Advanta Ventures Inc., BizEquity Corp., Ideablob Corp. and Advanta Credit Card Receivables Corp. filed their chapter 11 cases. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Advanta Corp. ("**Advanta**"), as debtor and debtor in possession in the above-referenced jointly administered chapter 11 cases, as and for its objection (the "**Objection**") to the emergency motion (the "**Motion**") of Advanta Bank Corp. ("**ABC**") for an order compelling Advanta to (i) timely request an extension of time to file the 2009 federal income tax return for its consolidated group (the "**Tax Return**"), or, in the alternative, (ii) elect to carry back five years the consolidated group's net operating loss ("**NOL**") for its 2009 taxable year (the "**Carryback**") [Docket No. 323], respectfully represents as follows:

## Preliminary Statement

1. Advanta's election to forgo the Carryback and to waive the carryback of any portion of the consolidated group's 2009 NOL on behalf of all members of Advanta's consolidated tax group – which even ABC acknowledges Advanta has the sole right to do – is a valid exercise of Advanta's business judgment that is beyond reproach or rebuttal. And, such exercise of business judgment is unopposed by Advanta's statutory committee of unsecured creditors (the "**Creditors' Committee**"), which, together with its advisors, has spent many hours over the past three months discussing the carryback waiver with Advanta and its advisors.

2. In an effort to escape this reality and place its interests ahead of the general interests of Advanta's creditors, ABC has filed the Motion, attempting to supplant Advanta's business judgment with its own, and positing two alternative avenues of relief. Both avenues would deprive Advanta of its ability to exercise its business judgment to make the tax election that will provide the greatest benefit to its estate. Even more extraordinarily, ABC would further require Advanta to take affirmative action it has not elected to take. In support of this extraordinary judicial relief, ABC raises two principal arguments: (i) forgoing the Carryback is detrimental to Advanta's estate, and therefore manifestly unreasonable, and (ii) the

Carryback is needed to prop up ABC, stave off regulatory action (which it would not prevent), and ultimately protect Advanta's de minimis equity position in ABC. However, ABC is flatly mistaken — as discussed further below, there is simply no way to rationalize that the potential liability Advanta would incur by electing the Carryback would positively impact its estate.

3. There is no basis in statute or the case law for the relief requested in the Motion. In fact, the Motion is procedurally flawed and utterly lacking in authorities to substantiate the requested relief. Moreover, the posture of requesting relief on an emergency basis is the product of a situation entirely of ABC's own making by delaying action until the eleventh hour. Even though ABC has been aware of the carryback issue for months, and the March 15 deadline to file the Tax Return is no secret (as evidenced by ABC's filing of the Motion), ABC now seeks the Court's intervention to grant extraordinary relief on a complex issue while allowing minimal time for Advanta to brief and the Court to digest the issue. Accordingly, Advanta respectfully requests that the Motion be denied in all respects.

## Background

4. As acknowledged in ABC's filing, Advanta is the common parent of an affiliated group of corporations, including ABC, that files consolidated returns for federal income tax purposes. In connection with such filings, Advanta and ABC have contractually set forth the terms of their relationship in that certain Fourth Amended and Restated Tax Sharing Agreement, dated as of May 1, 1995, by and between Advanta and its wholly-owned direct and indirect subsidiaries (the "**TSA**"). A copy of the TSA is attached as "Exhibit A" to the Motion.

5. It is also undisputed that Advanta, as the common parent corporation, has sole authority to act on behalf of the members of the group in matters relating to the tax liability for the consolidated return years. (Mot. ¶ 16.)

3

6. In the exercise of such authority, on Sunday, March 14, 2010, Advanta filed the Tax Return, waiving the carryback of any portion of the consolidated group's 2009 NOL, and filed an amended 2008 federal income tax return for its consolidated group electing the five-year carryback of its 2008 NOL. March 15, 2010 is the deadline to file the Tax Return. Consequently, March 14, 2010, was the last day to prudently file the Tax Return to avoid the risk of technical errors in transmitting the Tax Return electronically to the Internal Revenue Service ("**IRS**") (Advanta is required to file the Tax Return electronically). Because of these concerns, Advanta's consistent practice is, and has been, to avoid waiting to file its tax returns on the actual IRS deadline. If Advanta did not timely file the Tax Return, the default result would be that the carryback of the 2009 NOL would not be waived (absent obtaining an extension of time to file the Tax Return, which Advanta determined was not in the estate's best interests), as 26 U.S.C. § 172(b)(3) and 26 C.F.R. § 1.1502-21(b)(3)(i) require the election waiving the carryback of a NOL to be made on a timely-filed tax return for the year in which the NOL arises.

7. Advanta's timely filing of the Tax Return likely precludes any extension of time to file the consolidated group's 2009 federal income tax return. Requesting an extension of time to file a return after the return has been filed, but before the original due date for filing the return, was in an analogous circumstance determined to be ineffective to extend the time for filing. See IRS Technical Advice Memorandum 8336006 (May 26, 1983).

8. As ABC indicates in the Motion, had Advanta carried the consolidated group's 2009 NOL back five years, the group would have been entitled to an approximately $54 million federal income tax refund (the "**Refund**"). However, as discussed below, by electing the Carryback, Advanta would also have exposed itself to assertion by ABC under the TSA of a

4

general unsecured claim in the amount of approximately $170 million.[2] ABC attempts to gloss over this critical fact in its Motion by mentioning it in a footnote (Mot. ¶ 17 n.2) and omitting the fact that the existence of such claim is significantly dependent on Advanta claiming the Carryback. Yet, the dilutive effect of this potential $170 million claim on general unsecured creditors' recovery was a key consideration in Advanta's well-reasoned decision to waive the carryback of the consolidated group's 2009 NOL.

9.  Now, on the eve of the Tax Return filing deadline, and notwithstanding that ABC has been aware of the deadline and NOL carryback issues for months,[3] ABC seeks on an emergency basis the entry of an order that would compel Advanta to make the Carryback election. For the reasons discussed below, this eleventh hour attempt to supplant Advanta's sound business judgment with ABC's, and to compel Advanta to take affirmative action that benefits neither its estate nor any creditor other than ABC, is neither justified by the facts and circumstances nor supported by case law.

## Objection

### I.  The Motion Fails on Procedural Grounds

10.  As a preliminary matter, the Motion must be denied because it is procedurally defective. Pursuant to Bankruptcy Rule 7001(7), a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief, constitutes an adversary proceeding. An adversary proceeding is commenced by filing a complaint with the Court. Fed. R. Bankr. P. 7003; see In re Zale Corp.,

---

[2] Nothing in this Objection is an admission by Advanta that ABC has or would under any circumstances have any valid claims of any priority against Advanta under the TSA.

[3] The NOL issues, for example, have been raised in email correspondence dated December 15, 2009, a copy of which is annexed hereto as **Exhibit A**. In addition, ABC purportedly sought "on a number of occasions" to ascertain Advanta's intentions with respect to the Tax Return. (Mot. ¶ 11.)

62 F.3d 746, 763 (5th Cir. 1995) ("In order to initiate an adversary proceeding, a party seeking equitable relief must file a complaint and serve each affected party."). Advanta would then have 30 days to answer the complaint, rather than the weekend afforded by the timing of the Motion. Fed. R. Bankr. P. 7012(a).

11. Because the Motion seeks equitable and injunctive relief, ABC's requested relief may only be obtained by filing and serving an adversary complaint. Instead of complying with the requirements of Bankruptcy Rules 7001(7) and 7003, ABC filed the instant Motion. ABC has failed to initiate properly its request for equitable and injunctive relief, and, therefore, the Motion must be denied.[4] See In re Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990) (stating that an adversary proceeding "must be commenced by a properly filed and served complaint," and a Rule 7001 matter initiated by motion rather than by complaint "fail[s] on procedural grounds"); In re Van Ness, 399 B.R. 900, 905 (Bankr. E.D. Cal. 2009) (holding that request of creditor to prohibit debtor from filing a bankruptcy case affecting certain property, since not grounded on specific provisions of the Bankruptcy Code, must be brought by adversary proceeding, not motion).

## II. Alternatively, Cause Does Not Exist to Grant The Extraordinary Relief ABC Has Requested

12. Even if the Court overlooks the Motion's procedural flaws, ample grounds exist to deny the Motion on the merits. ABC predicates the relief requested in the Motion solely

---

[4] On March 14, 2010, ABC initiated an adversary proceeding before this Court, effectively admitting that its eleventh hour filing of the Motion on an emergency basis was procedurally improper. Filing a complaint to initiate an adversary proceeding does not cure the procedural infirmities in the Motion, as Advanta has thirty days after service is completed to respond to the complaint. Fed. R. Bankr. P. 70012(a). Advanta submits that ABC's attempt to seek judicial intervention at the last possible minute, when relief could have been sought earlier without undue hardship to ABC, is manifestly inequitable. Regardless, the relief sought in the complaint, which is virtually identical to the relief sought in the Motion, should be denied for all the reasons set forth in this Objection.

on the Court's equitable powers pursuant to section 105(a) of the Bankruptcy Code. However, ABC fails to cite any case law that clearly demonstrates that entry of the order requested by the Motion – which constitutes truly extraordinary relief – is within the scope of such authority. Indeed, contrary to ABC's contentions, cause does not exist to grant the Motion. First, as stated above, a creditor's request that a court compel a debtor to take affirmative action that is contrary to a determination the debtor has made pursuant to its business judgment constitutes extraordinary relief that exceeds the Court's equitable powers under section 105(a) of the Bankruptcy Code. Second, the relief requested in the Motion is contrary to tax law regarding Advanta's sole authority, as common parent corporation of the consolidated tax group, to make elections on behalf of the group for the consolidated return year.

A. **The Judicial Relief Requested Is Extraordinary**

13. First and foremost, Advanta submits that the Motion requests relief that lies outside the confines of the Court's authority under the Bankruptcy Code. Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). It is well established, however, that section 105(a) merely supplements the Bankruptcy Court's specifically enumerated bankruptcy powers. See, e.g., In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000). Thus, section 105(a) "has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." See Joubert v. ABN Mortg. Group, Inc. (In re Joubert), 411 F.3d 452, 456 (3d Cir. 2005); see also In re Morristown & Erie R.R. Co., 885 F.2d 98 (3d Cir. 1990) (same); Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.), 4 F.3d 1329, 1334 (5th Cir. 1993) (holding that section 105(a) of the Bankruptcy Code "does not authorize the bankruptcy courts to create

7

substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity").

14. Where, as here, no substantive right under the Bankruptcy Code is implicated, courts have declined to grant a creditor's request to compel a debtor to take affirmative actions. See, e.g., Indian Motorcycle Assocs. III Ltd. P'ship v. Mass. Hous. Fin. Agency, 66 F.3d 1246 (1st Cir. 1995) (denying creditor's request to direct debtor to turn over diverted cash collateral where there was no showing that such relief was necessary or appropriate to carry out any provision of the Bankruptcy Code, as such request sought "extraordinary judicial relief under Bankruptcy Code § 105(a)"); Dep't of Treasury v. Pagán, 279 B.R. 43, 47 (D.P.R. 2002) (denying the IRS's motion to compel a debtor to file tax returns because the IRS could not identify which provision of the Bankruptcy Code would be furthered by granting the relief requested).

15. Like the requests for relief in Indian Motorcycle and Pagán, which were found to lie outside the constraints of the Bankruptcy Code, Advanta submits that the Motion requests extraordinary judicial relief under section 105(a) that would not further relief warranted under any other provision of the Bankruptcy Code. Indeed, a glaring flaw in the Motion is that ABC does not cite to a single case where a court granted a creditor's request to compel a debtor to take affirmative action. Likewise, Advanta's research has not uncovered any cases where a court provided relief similar to that requested by ABC in the Motion. This is because ABC has requested extraordinary injunctive and equitable relief under section 105(a) of the Bankruptcy Code, without any showing (and with mistaken assertions) that such relief is either necessary or appropriate to carry out the provisions of the Bankruptcy Code. On that basis alone, the Motion should be denied.

### B. Advanta Has Sole Authority to Make the Instant Tax Election, and the Motion Attempts to Usurp That Authority

16. In addition, tax law does not provide a basis for the relief ABC has requested. Advanta's decision not to elect the Carryback and to waive its 2009 NOL is a proper exercise of its exclusive authority to make elections for the consolidated group with respect to the filing of the Tax Return. It is black letter law that a parent corporation filing the consolidated return is authorized to act in all matters relating to the tax liability for the consolidated return year.[5] 26 C.F.R. § 1.1502-77(a)(1)(i) (stating that, subject to exceptions not relevant here, "the common parent . . . for a consolidated return year is the sole agent (agent for the group) that is authorized to act in its own name with respect to all matters relating to the tax liability for that consolidated return year, for--(A) Each member in the group . . . ."). "With respect to any consolidated return year for which it is the common parent—(i) [t]he common parent makes any election (or similar choice of a permissible option) that is available to a subsidiary in the computation of its separate taxable income..." Id. § 1.1502-77(a)(2). Moreover, "[a] group may make an irrevocable election... to relinquish the entire carryback period with respect to a [consolidated net operating loss] for any consolidated return year. Except [for an exception not relevant here], the election may not be made separately for any member..." Id. § 1.1502-21(b)(3)(i).

17. ABC concedes that only Advanta, as common parent of the consolidated tax group, has sole authority to make any election for a consolidated return year, and that "ABC cannot make this election itself." (Mot. ¶ 16.) Moreover, the TSA does not give ABC any rights

---

[5] "Though the IRS regulations provide that the parent corporation is the agent for each subsidiary in the affiliated group, . . . this agency relationship is for the convenience and protection of the IRS only and does not extend further." Jump v. Manchester Life & Cas. Mgmt. Corp., 579 F.2d 449, 452 (8th Cir. 1978) (citations omitted).

9

with respect to controlling tax elections of the consolidated group. Accordingly, there is simply no basis in law or contract for ABC to contend that it may, through entry of the order requested by the Motion, usurp Advanta's exclusive authority to decide whether or not to elect the Carryback or to otherwise waive the 2009 NOL carryback for the consolidated group.

18. In sum, neither tax law, the TSA, nor the Bankruptcy Code itself so much as intimates that a bankruptcy court may fashion the extraordinary relief sought by ABC in the Motion.

### III. Waiver of the Carryback Is a Valid Exercise of Advanta's Business Judgment

19. ABC also attempts to rebut the presumption that forgoing the Carryback was a valid exercise of Advanta's business judgment. By doing so, ABC in essence seeks to supersede Advanta's sound business judgment. The Motion is unpersuasive in this respect. Advanta's decision to waive the carryback of the group's 2009 NOL was within its sole authority, and was supported by sound economic analysis of the costs and benefits of the election for its estate and its unsecured creditors.

#### A. Advanta's Business Judgment is Presumptively Reasonable

20. Courts generally accord a debtor's reasonable business judgment a high level of deference. See, e.g., In re Dura Auto. Sys., 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007) ("[O]nce 'the debtor articulates a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct.'" (quoting Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). Under the business judgment standard, the debtor does not even need to show that it is making the best or even a good business decision. See In re Trans World Airlines, Inc., 261 B.R. 103, 121-22 (Bankr. D. Del. 2001) (citing Wheeling-Pittsburgh Steel Corp. v. W. Penn. Power Co. (In re Wheeling-Pittsburgh

10
US_ACTIVE:\43335069\01\78221.0007
RLF1 3548655v.1

Steel Corp.), 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987) ("[W]hether the debtor is making the best or even a good business decision is not a material issue of fact under the business judgment test.")); In re Old Carco LLC, 406 B.R. 180, 193 (Bankr. S.D.N.Y. 2009) (same). It is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. Kaplan v. Centex Corp., 284 A.2d 119, 124 (Del. Ch. 1971) (citations omitted); accord Johns-Manville, 60 B.R. at 616 ("[A] presumption of reasonableness attaches to a debtor's management decisions." (citations omitted)). In particular, debtors enjoy significant latitude when undertaking transactions in the ordinary course of a debtor's business. See Johns-Manville, 60 B.R. at 616 (noting that a debtor in possession's authority to use estate property in the ordinary course without a prior hearing "necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters"). The burden is on the party challenging the decision to establish facts rebutting the presumption. See Kaplan, 284 A.2d at 124. "[I]f a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved . . . ." Dura, 2007 Bankr. LEXIS 2764, at *260 (finding debtors' decision to sell assets and reject leases were proper exercises of the debtors' business judgment).

21.   Moreover, under the business judgment standard, the Court need not consider the equities of the situation, as advocated by ABC. In analyzing whether a debtor has exercised its business judgment, courts refuse to balance the potential burden imposed on a nondebtor party as "such an inquiry [is] irrelevant and unnecessary." In re Trans World Airlines, Inc., 261 B.R. at 123 (declining to take into account the harm to the nondebtor party that would result from the rejection of a ticket sale agreement (citing In re Federated Dep't Stores, Inc., 131 B.R. 808, 812-13 (S.D. Ohio 1991) (rejecting In re Meehan, 46 B.R. 96 (Bankr. E.D.N.Y. 1985)

11

and In re Chi-Feng Huang, 23 B.R. 798 (B.A.P. 9th Cir. 1982) to the extent the cases stand for a "balancing of interests" test)); see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047-48 (4th Cir. 1985) (adopting business judgment standard and rejecting balancing of equities test); Borman's, Inc. v. Allied Supermarkets, Inc., 706 F.2d 187 (6th Cir. 1983) ("The burden or hardship which rejection would impose on other parties to such a contract is not a factor to be weighed by the bankruptcy court in ruling upon the debtor's application." (citing In re Mammoth Mart, 536 F.2d 950, 954 (1st Cir. 1976)); In re Old Carco LLC, 406 B.R. at 193 ("[C]ourts have held that absent Congressional authority, such as through a separate section of the Bankruptcy Code (e.g., § 1113) or a specific carve-out within § 365 itself, the court is not free to deviate from the business judgment standard and weigh the effect of rejection on debtor's counterparty or the counterparty's customers."); In re Pilgrim's Pride Corp., 403 B.R. 413, 427 (Bankr. N.D. Tex. 2009) (declining to consider harm to growers and their communities when approving debtors' rejection of grower contracts); In re Exide Techs., 340 B.R. 222, 245 (Bankr. D. Del. 2006) (declining to take into account harm to a nondebtor party from debtor's rejection of contract); In re Patterson, 119 B.R. 59, 61 (E.D. Pa. 1990) (finding that fairness to the nondebtor party is irrelevant in determining whether debtor may reject contract); In re Wheeling-Pittsburgh Steel Corp., 72 B.R. at 849 (stating that effect of contract rejection on nondebtor party is unnecessary in determining propriety of debtor's decision to reject contract).

22. Therefore, ABC cannot rebut the presumption that disinterested members of Advanta's board of directors reasonably exercised their business judgment in authorizing the waiver of the carryback of the consolidated group's 2009 NOL by pointing to the importance of the potential recovery of any portion of the Refund to ABC's liquidity or capital position. (See

Mot. ¶ 18.) Such arguments are, in fact, "irrelevant and unnecessary." In re Trans World Airlines, Inc., 261 B.R. at 123.

### B. Waiver of the Carryback Is in the Economic Interest of Advanta, Its Estate, and Its Unsecured Creditors

23. Advanta's election to waive the carryback of the consolidated group's 2009 NOL is the product of a well-reasoned, comprehensive analysis. Admittedly, if the consolidated group's 2009 NOL is carried back five years, the group would be entitled to an approximately $54 million Refund. However, the Carryback may result in ABC having a Separate Member Refund, as defined in section 1 and as used in section 3(b) of the TSA, and hence a claim by ABC against Advanta, in an amount of approximately $170 million. (See Mot. ¶ 6 n.2 ("ABC believes that it may hold a general unsecured claim in excess of $170 million, based on certain assumptions considered reasonable and depending on the amount of tax refunds that ABC ultimately may receive").) Moreover, although Advanta believes that the Refund monies would be property of its estate, if the Carryback were made, ABC has also laid claim to all or a portion of the potential refund.[6] (See Mot. ¶ 9 ("ABC believes that it may be entitled to a significant portion of the Anticipated Refund pursuant to and in accordance with the [TSA].").) But, under the TSA, if Advanta waives the carryback of the consolidated group's 2009 NOL, ABC has no valid $170 million claim under the TSA. (TSA § 1.)

24. Given these facts, Advanta, after lengthy consultation with its advisors and the Creditors' Committee and its advisors, concluded that it is to the benefit of its estate and creditors to waive the carryback of the consolidated group's 2009 NOL and forgo the right to the Refund in order to mitigate the possibility of incurring a $170 million claim. Even if the Refund

---

[6] If Advanta were to have elected the Carryback, Advanta submits that ABC would not have had any right to recover any portion of the Refund. Under the terms of the TSA, Advanta contends that, at most, ABC would have a general unsecured claim.

13

were to inure to the benefit of Advanta's estate, an increase of assets of only $54 million would not compensate general unsecured creditors for the dilution of the general unsecured creditor recovery pool by as much as $170 million, given current expectations of potential recoveries to unsecured claimants. Therefore, under any realistic scenario, the Carryback would have an adverse impact on Advanta's estate. As a result, Advanta determined that the $54 million asset was worth forgoing to mitigate the impact of additional claims to the estate, and maximize creditor recovery.

25. Advanta and its advisors have expended significant time over the past several months weighing the costs and benefits of any election made in connection with the filing of the Tax Return, including the options of a two-year carryback, five-year carryback, and waiver of carryback. Moreover, Advanta has engaged in discussions with the Creditors' Committee and its advisors regarding the potential impact of the 2009 tax election on Advanta's estate. Advanta's decision – which was made by its fully-informed Board of Directors – to waive the carryback of the consolidated group's 2009 NOL, forgo the Refund, and eliminate the potential $170 million claim by ABC under the TSA was a reasonable exercise of its business judgment, and is unopposed by the Creditors' Committee. Accordingly, Advanta submits that its filing of the Tax Return should not be unwound by ABC for its sole benefit, and to the detriment of other creditors in the bankruptcy case.

C. **Carryforward of the 2009 NOL Has Value to Advanta and Its Estate**

26. If the consolidated group waives the carryback of the 2009 NOL, the 2009 NOL is carried forward for up to 20 years to offset future income, see 26 U.S.C. § 172(b)(1)(A)(ii), and Advanta's tax basis in the stock of ABC is preserved. See 26 C.F.R. §§ 1.1502-32(b)(2), (3)(i) (providing that utilization of subsidiary's tax loss results in a corresponding decrease in the parent's tax basis in its stock in the subsidiary). That stock basis

14

US_ACTIVE:\43335069\01\78221.0007
RLF1 3548655v.1

may ultimately make available to Advanta a worthless stock loss (in lieu of the portion of the consolidated group's net operating losses incurred by ABC). See 26 U.S.C. § 165(g). The use of the worthless stock loss, unlike the use of any net operating losses incurred by ABC, would not result in a claim under the TSA. This stock loss could offset in whole or in part any gains triggered during Advanta's chapter 11 case, pursuant to the terms of its chapter 11 plan or, potentially, after consummation of the chapter 11 plan.

### D. The Carryback and Potential Recovery of the Refund Are of No Benefit to Advanta as Shareholder of ABC

27. ABC's argument that its potential recovery of at least a substantial portion of the Refund is in the best interests of Advanta, its estate, and its creditors is premised on the faulty assumption that Advanta currently has a meaningful equity position in ABC. In fact, Advanta believes there is little or no value for creditors of its estate in Advanta's equity position in ABC. Advanta believes that any equity position that it has in ABC is quickly dissipating in light of ABC's liquidity position and inability to generate new business. Additionally, under an existing FDIC order, ABC cannot even make equity distributions to Advanta without prior FDIC consent, which Advanta believes will not be provided. (See In re Advanta Bank Corp. Draper, Utah, FDIC-09-266b, Order to Cease and Desist ¶ 7(a), dated June 30, 2009 (annexed hereto as **Exhibit B**).) Rather than gamble that provision of some or all of the Refund to ABC will benefit Advanta as ABC's equity holder more than Advanta will be damaged by the potential incurrence of $170 million of additional claims against Advanta, the more prudent course of action is the one taken by Advanta: to maximize creditor recoveries by forgoing the Carryback. Such reasoning clearly meets the business judgment standard. See In re Old Carco LLC, 406 B.R. at 193; In re Trans World Airlines, Inc., 261 B.R. at 121-22.

15

28.     Moreover, ABC argues without any support that forgoing the Carryback "poses a grave and immediate threat to ABC's continued operations." (Mot. ¶ 19.) If termination of ABC's banking charter by the Federal Deposit Insurance Corporation ("**FDIC**") is imminent, it is unlikely that recovery by ABC of all or some portion of the Refund would sufficiently capitalize ABC to alter such a result. The FDIC has stated that it is a foregone conclusion that it will become the receiver for ABC and that there will be inadequate funds to pay the ABC creditors. (See Advanta Bank v. FDIC, No. 10-5051, FDIC's Reply to Advanta's Response to Mot. for Stay Pending Appeal, at 1-2 (D.C. Cir. Mar. 8, 2010) ("The Bank argues only that ABC's closing is nothing more than a 'theoretical possibility' that is too speculative to demonstrate irreparable harm. But this argument conflicts with the overwhelming and undisputed evidence of ABC's precarious financial condition." (internal footnote omitted)), annexed hereto as **Exhibit C**.) The most recent call report for ABC, annexed as **Exhibit D** to this Objection, shows total bank equity capital of negative $40.6 million, which includes a tax receivable for a substantial part of the tax claim (to which Advanta maintains ABC is not entitled). To the extent that any funds would flow to ABC, it is highly likely that any recovery ultimately would be paid to the FDIC, as receiver for ABC, to reduce the amount of the FDIC's deposit guarantee, and not to help ABC survive. As such, ABC's arguments are wholly insufficient to demonstrate that Advanta's waiver of the carryback of the consolidated group's 2009 NOL was "manifestly unreasonable." (Mot. ¶ 27.)

### E.     Waiver of the Carryback Does Not Constitute a Breach of Fiduciary Duty

#### 1.     Advanta Owes No Fiduciary Duty To ABC to Make or Wave Tax Elections

29.     ABC's argument that Advanta owes a fiduciary duty to ABC, as a member of a consolidated tax group, to elect the Carryback (Mot. ¶ 17) is unsupported by case law. In

16

fact, Advanta owes no fiduciary duty to ABC to make or waive tax elections. It is well-established that a parent's decision regarding allocation of tax savings among affiliated group members should be reviewed under the deferential business judgment rule. See Meyerson v. El Paso Natural Gas Co., 246 A.2d 789 (Del. Ch. 1967); Case v. N.Y. Cent. R.R. Co., 204 N.E.2d 643 (N.Y. 1965); W. Pac. R.R. Corp. v. W. Pac. R.R. Co., 197 F.2d 994 (9th Cir. 1951), vacated on procedural grounds, 345 U.S. 247 (1953). As a result of cases such as Meyerson, Western Pacific, and Case, a per se rule has evolved that a parent's decisions concerning the allocation of tax savings among consolidated group members (including a parent's entitlement to retain or take all tax savings for itself) is a business judgment with which courts generally will not interfere. See also Marvel Entm't Group, Inc. v. Mafco Holdings, Inc. (In re Marvel Entm't Group, Inc.), 273 B.R. 58, 78-79 (D. Del. 2002) (applying business judgment rule to analysis of breach of fiduciary duty claims in connection with subsidiary's entry into consolidated group tax sharing agreement).

30.     As discussed in Marvel, "the question of which standard to apply in parent/subsidiary tax sharing situations was settled in Meyerson and confirmed again in Wolfensohn v. Madison Fund, Inc., 253 A.2d 72 (Del. 1969)." Id. In Meyerson, the plaintiff, a minority stockholder of the parent corporation's 80%-owned subsidiary, alleged the parent had breached its fiduciary duties by including the subsidiary in its consolidated tax group without implementing a "fair" tax sharing agreement. 246 A.2d at 790. The plaintiff alleged that the parent's use of NOLs generated by the subsidiary in calculating the tax liability of the consolidated group was unfair because the parent received tax benefits without sharing any of the corresponding tax benefits with the subsidiary. The plaintiff sought payment for the NOLs generated by the subsidiary and a "fair allocation" of future tax benefits. The court granted

17

summary judgment to the parent corporation, holding that the allocation of tax benefits between the parent and subsidiary in a tax sharing agreement is governed by the parent's business judgment. Id. at 794. The Delaware Supreme Court subsequently approved the Meyerson holding. Wolfensohn, 253 A.2d at 76; see also Getty Oil Co. v. Skelly Oil Co., 267 A.2d 883, 888 (Del. 1970) (applying business judgment rule to parent-subsidiary allocation agreement and finding that subsidiary failed to demonstrate "gross and palpable overreaching.").

31. If a parent has no fiduciary duty to allocate tax benefits to its subsidiary within a consolidated tax group, by logical extension, a parent has no fiduciary duty to make an election that will result in a tax benefit that could be allocated to the subsidiary for the benefit of that subsidiary's creditors, at the expense of the debtor parent's creditors. Significantly, ABC does not assert that the TSA is invalid, or that the execution of the TSA – which has governed the tax relationship between the parties for almost 15 years prior to the commencement of Advanta's chapter 11 case – is invalid. Yet, there is nothing in the TSA that imposes any fiduciary duty or equivalent obligation on Advanta. But even were there such a duty, by contract or otherwise, the decision to waive the carryback of the consolidated group's 2009 NOL serves a rational purpose, and is a valid exercise of Advanta's business judgment. The Court should not substitute its judgment – or ABC's judgment – regarding the proper allocation of tax benefits among the consolidated group. Marvel, 273 B.R. at 80.

### 2. Advanta Owes No Fiduciary Duty To ABC as an Individual Creditor

32. ABC also asserts that Advanta owes a fiduciary duty to ABC because ABC is purportedly one of Advanta's largest unsecured creditors. (Mot. ¶ 17.) This argument is fatally flawed. A chapter 11 debtor owes a fiduciary duty to the estate, rather than to one vocal creditor, no matter how large that creditor's claim may be. See Committee of Equity Security

18

US_ACTIVE:\43335069\01\78221.0007
RLF1 3548655v.1

Holders v. The Lionel Corp. (In re The Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983) (stating that "a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, [a court] should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike"); In re Jasmine, Ltd., 258 B.R. 119, 128 (D.N.J. 1999)( "The trustee has a fiduciary duty towards all creditors of the estate, not just the limited class of creditors comprising the objectors herein."). Moreover, Advanta certainly owes no duty to undertake a transaction that would trigger the contingency of increasing a creditor's potential claim against the estate, to the detriment of all other creditors in the case. Rather, Advanta would arguably be breaching the fiduciary duty it owes to all creditors of its estate by electing the Carryback, and triggering ABC's alleged $170 million general unsecured claim, since Advanta is obligated to act in a way that mitigates claims against the estate and maximizes recovery for all creditors. See, e.g., In re Pinnacle Brands, Inc., 259 B.R. 46, 54 (Bankr. D. Del. 2001) ("A debtor's fiduciary duty is to maximize the value of the estate for distribution to creditors, not to minimize the exposure of an individual creditor while increasing the liability of the estate."); Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.), 233 B.R. 739, 752 (W.D. Ky. 1998) ("[the] duty to maximize the estate [for all creditors] often trumps other duties the debtor may owe to individual creditors or third parties" (citing In re Wintex, 158 B.R. 540, 543 (D. Mass. 1992) (holding duty of debtor to act in good faith and fair dealing in furthering contract was limited by debtor's obligation to maximize value for its creditors))); Carter v. Schott (In re Carter Paper Co.), 220 B.R. 276, 301 (Bankr. M.D. La. 1998) (finding that debtor's obligation to maximize value of debtor's assets "includes a fiduciary duty to the estate to rid the estate of any property that operates as a net reduction in the value of the res").

## Conclusion

33. Based upon the foregoing, Advanta submits that the relief requested in the Motion is not warranted by the facts, circumstances, or applicable law, and that to compel Advanta to request an extension of time to file the Tax Return or elect the Carryback, would adversely impact Advanta's estate and its creditors.

WHEREFORE, Advanta respectfully requests that the Court deny the Motion in all respects, and grant such other and further relief as it deems just and proper.

Dated: March 15, 2010
Wilmington, Delaware

/s/ Ch. I. J.

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein
Robert J. Lemons
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION