UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
                                                         :
*In re*                                                  :    **Chapter 11**
                                                         :
**ADVANTA CORP.,** *et al.,*                             :    **Case No. 09-13931 (KJC)**
                                                         :
                    **Debtors.**                         :    **(Jointly Administered)**
                                                         :
                                                         :    Re Docket Nos. 896, 899.
---------------------------------------------------------x

## OBJECTION OF WILLIAM E. UNDERLAND/CLASS ACTION PLAINTIFFS TO DEBTORS' DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

William E. Underland ("Class Plaintiff")[1], as named plaintiff[2] in the securities class action captioned *William E. Underland, on behalf of himself and all other similarly situated persons against Dennis Alter, et. al.,* currently pending in the United States District Court, Eastern District of Pennsylvania (Philadelphia), Civil Action No. 2:10-cv 03621-CMR (the "33 Act Securities Litigation" or "Class Action")[3], which Class Action, as is more fully discussed below, was commenced on behalf of a putative class of all persons who, during the Class Period (as defined below) purchased Advanta Corporation's ReadiReserve Certificates and Investment

---

[1] Except as otherwise defined herein, capitalized terms utilized herein shall have the meanings ascribed to them in the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, filed on November 2, 2010, Docket No. 895 (the "Plan")

[2] Mr. Mark Schaller is in the process of being added as an additional named plaintiff.

[3] The defendants named in the 33 Act Securities Litigation include Dennis Alter, William A. Rosoff, Philip M. Browne, David B. Weinstock, Robert S. Blank, Max Botel, Thomas Costello, Dana Becker Dunn, Robert Lubner, Olaf Olafsson, Michael Stolper (collectively, the "Individual Defendants") and KPMG LLP ("KPMG", and together with the Individual Defendants, the "Non-Debtor Defendants"). Each of the Individual defendants was or is an officer and/or director of Advanta Corp. KPMG was Advanta Corp.'s outside independent auditor during the Class Period.

Notes (the "Class", and together with the Class Plaintiff, the "Class Plaintiffs"), hereby submits this Objection ("Objection"), by and through his undersigned counsel, to the Disclosure Statement For The Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, filed on November 2, 2010, Docket No. 896 ("Disclosure Statement"), and respectfully states as follows:

## I. BACKGROUND

1. On November 8, 2009 and November 20, 2009 (collectively "Petition Date"), Advanta Corp. ("Advanta") and certain of its subsidiaries (collectively with Advanta, the "Debtors") filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court before the District of Delaware (the "Bankruptcy Court"). The Debtors' Chapter 11 cases are being jointly administered for procedural purposes only (the "Chapter 11 Cases").

2. On June 24, 2010, Class Plaintiff commenced the 33 Act Securities Litigation in the Supreme Court of Pennsylvania, Court of Common Pleas of Montgomery County PA. Thereafter, the Individual Defendants removed the action to the United States District Court for the Eastern District of Pennsylvania, where the matter is now pending.

3. In the 33 Act Securities Litigation, the Class Plaintiffs assert claims against the Non-Debtor Defendants for damages incurred by them in connection with the purchase of the ReadiReserve Notes and Investment Notes traceable to registration statements that contained materially misleading statements and omissions that violated sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act"). The Class Action involves solely strict liability and negligence claims under the 1933 Act, and expressly excludes and disclaims any allegations that could be construed as alleging fraud or intentionally reckless misconduct. The Class Action is not a derivative action and the claims asserted are for rescission and damages incurred by the Class Plaintiffs due to the acts or omissions of the Non-Debtor Defendants. The class period

2

runs from June 24, 2007 through November 8, 2009 (the "Class Period"). Accordingly the Class Action relates solely to pre-Petiton Date acts, omissions, events and documents.

4. In recognition of the automatic stay in effect pursuant to 11 U.S.C. Section 362(a), Advanta was not named as a defendant in the complaint commencing the 33 Act Securities Litigation, and accordingly, the 33 Act Securities Litigation is proceeding solely as against the Non-Debtor Defendants. Furthermore, the Class Plaintiffs have not filed a claim against Advanta in the Chapter 11 Cases.

5. On November 2, 2010, the Debtors filed a motion for an Order approving the Disclosure Statement and related relief (the "Motion") (Docket No. 899). The hearing on the Motion is currently scheduled for December 16, 2010.

## II. INTRODUCTION

6. This Objection is limited to those Plan and Disclosure Statement issues that specifically affect the rights and interests of the Class Plaintiffs in connection with the 33 Act Securities Litigation against non-Debtor third parties. Pursuant to Section 1109(b) of the Bankruptcy Code, the Class Plaintiffs are parties in interest with respect to these issues, and accordingly have a right to be heard in connection therewith. Pursuant to Section 1109(b) of the Bankruptcy Code a " party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [chapter 11]." See 11 U.S.C. Section 1109(b). Although "party in interest " is not defined in the Bankruptcy Code, the term is not limited to the examples in Section 1109(b). *In re Amatex Corp.*, 755 F. 2d 1034, 1042 (3d Cir. 1985). Generally, where the prospective party in interest has a sufficient stake in the proceeding so as to require representation, such party will be considered a party in interest.

3

See *In re Nickels Midway Pier*, 210 Bankr. LEXIS 1642, at *38 (Bankr. D.N.J. May 21, 2010); 2101 WL 2034542 (Bankr. D.N.J.), citing *Amatex at 1042-43*.

7. The Class Plaintiffs respectfully submit that in addition to the inadequate disclosures as more fully set forth below, the infirmities identified below render the Plan to be unconfirmable, and accordingly, the Disclosure Statement should not be approved unless and until such infirmities are remedied. It is well settled that a disclosure statement relating to an unconfirmable plan of reorganization should not be approved. See *In re H.K. Porter Co.*, 156 B, R. 16, 17 N.1, 19 (Bankr. W.D. PA 1933) (denying approval of a Disclosure Statement because "it would be a waste of the Court's resources and of the estate's assets to allow a plan which is non-confirmable on its face to proceed through the confirmation process"). The Class Plaintiffs recognize that courts may be reluctant at the disclosure statement phase to consider whether a plan ultimately may or may not be confirmable. Where, as here, however, certain provisions of the Plan go well beyond the scope of permitted relief under the Bankruptcy Code, courts should refuse to approve the disclosure statement that describes it rather than engage in the futile exercise of pursuing confirmation of a patently unconfirmable plan. *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("If the disclosure statement describes a plan that is so "fatally flawed" that confirmation is "impossible," the court should exercise its discretion to consider such issues at the disclosure statement hearing stage, and refuse to consider the adequacy of disclosures. Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed") (citations omitted); see also, *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 304 (Bankr. D. Mass. 2002) (refusing to approve disclosure

48747/0001-7197110v4

statement because plan that did not provide sufficient justification for permanent injunction and releases in favor non-debtors was unconfirmable as a matter of law).

### III. OBJECTION

8. Class Plaintiffs object to the adequacy of the Disclosure Statement and to the Plan on the following grounds:

(a) The Plan contains broad and ambiguous release language in the form of plan injunctions and exculpations which could arguably be read to provide for releases of claims and rights that the Class Plaintiffs have against non-debtor third parties, and the Debtors fail to disclose any unusual circumstances or justification for what would constitute extraordinary non-debtor releases;

(b) To the extent the injunctions and exculpation provisions under the Plan are not intended to affect any claims and rights the Class Plaintiffs may have against non debtor third parties, including as against the Non-Debtor Defendants in the 33 Act Securities Litigation, the Plan and Disclosure Statement fail to make adequate disclosure of this;

(c) The Disclosure Statement and Plan fails to provide for an adequate protocol for the preservation of the Debtors records or documents, and for notice to the Class Plaintiffs in the event the Debtors or their successors intend to dispose of any such records or documents, all of which could prejudice the rights and interests of the Class Plaintiffs in connection with the 33 Act Securities Litigation against non-Debtor third parties; and

(d) The Plan fails to provide adequate disclosure regarding the terms and limits with respect to any available Directors and Officers Insurance ("D&O Insurance"), including whether such insurance may be available to pay for any amounts for which any of the Non-Debtor Defendants may be liable to the Class Plaintiffs in connection with the 33 Act Securities

48747/0001-7197110v4

Litigation, and reduce any otherwise applicable indemnification claims of the Non-Debtor Defendants.

9. In order to bring the Disclosure Statement into compliance with 11 U.S.C. Section 1125(a), and to make the Plan confirmable under the Bankruptcy Code, the Disclosure Statement and Plan must be modified. Unless until the Plan and Disclosure Statement are revised, the Disclosure Statement should be not approved, and the Plan may not be confirmed.

## IV. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE PLAN MAY BE READ TO IMPERMISSIBLY PREVENT CREDITORS AND OTHER THIRD PARTIES FROM PURSUING DIRECT CLAIMS AGAINST NON DEBTOR THIRD PARTIES, INCLUDING THE DEBTORS' OFFICERS AND DIRECTORS

10. **Plan Injunction Language**. Section 10.3 of the Plan provides for permanent injunctions, in relevant part, as follows[4]:

> 10.3 Injunction or Stay.
> (a) Pursuant to sections 105 and 1141 of the Bankruptcy Code, on and after the Confirmation Date, except as otherwise expressly provided in the Plan, **all Persons who have held, hold or may hold Claims or Equity Interests and all other parties in interest**, along with their respective present or former employees, agents, officers, directors, principals and affiliates, **are permanently enjoined, from and after the Effective Date**, from
> > (i) **commencing or continuing in any manner any action or other proceeding of any kind (whether directly, indirectly, derivatively or otherwise) related to a Claim or Equity Interest against the Debtors**,
> > (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors,
> > (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or against the property or interests in property of the Debtors,

---

[4] The quoted text contains the language as it appears in the Plan, with the subparagraphs separated for ease of reference and with portions of the objectionable language highlighted in bold text.

(iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, or

**(v) pursuing any Claim or Interest released pursuant to Article XII of the Plan.**[5]

(Emphasis added).

11. The language in Plan section 10.3 is, at best, ambiguous, and may be read to enjoin the Class Plaintiffs from being able to pursue their claims and rights as against the Non-Debtor Defendants or any applicable D& O Insurance. By example, the language in Plan section 10.3 (a) (i) may be read to permanently enjoin any action or any proceeding against a non-Debtor third party simply because it is "related" to a Claim against the Debtor. Similarly, the language may be read to enjoin discovery in connection with claims against a non-Debtor third party. In addition, although Plan section 10.3 (a) (v) purports to permanently enjoin Claims "released" pursuant to Article XII of the Plan, there do not appear to be any releases of claims in Article XII of the Plan.

12. **Plan Exculpation Language.** Similarly, the "exculpation" language contained in Plan section 10.7 of the Plan is likewise broad and subject to different interpretations.[6] To the

---

[5] The reference to a " release" under Article XII is of concern, as there does not appear to be any language in Article XII that purports to release any Claim or Interest. Accordingly, this subsection of Plan section 10.3 should be deleted, or the Disclosure Statement should disclose exactly what Claims or Interests are being " released " under Article XII of the Plan.

[6] Section 10.7 reads in its entirety as follows:

10.7 Exculpation. Notwithstanding anything herein to the contrary, as of the Effective Date, **none of the Debtors**, the Trusts, the Trustees (solely in their capacity as such), the Indenture Trustees, the members of the Creditors' Committee (solely in their capacity as such), **and their respective officers, directors, employees, managing directors, accountants**, financial advisors, investment bankers, agents, restructuring advisors, and attorneys, and each of their respective agents and representatives (but solely in their capacities as such) **shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act**

7

extent it is intended to apply solely to post Petition Date matters, events, instruments, documents and agreements, such exculpation would not be objectionable to the Class Plaintiffs. However, either additional disclosure is required to explain the intent and basis for the provision, or language needs to be included (such as proposed in footnote 7 below), to make it clear that the exculpation provisions will not apply to restrict in any way the claims and rights that the Class Plaintiffs may have against the Non Debtor Defendants in connection with the 33 Act Securities Litigation, or any applicable insurance.

13. The Class Plaintiffs are receiving no consideration or other benefits under the Plan on account of their claims asserted in the 33 Act Securities Litigation, and have not consented to the Plan. Accordingly, the Class Plaintiffs should not have to take any risk that the Plan injunction or exculpation language may be interpreted to apply to pre- petition conduct by any of the Non -Debtor Defendants in a way that would effectively release them from any liability asserted against them in the 33 Act Securities Litigation.

14. The Disclosure Statement merely repeats verbatim the language from the Plan and provides no description of what was intended or justification for providing for releases to third parties ( if that is what was intended). If the Debtors do not intend by the "Plan Injunction Language" of Plan section 10.3 and by the "Plan Exculpation Language" of Plan section 10.7 , to

---

**taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases**, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan (or any prior proposed version of the Plan), the Disclosure Statement **or any contract, instrument, document or other agreement related thereto; and such claims shall be deemed expressly waived and forever relinquished as of the Effective Date;** provided, however, that the foregoing shall not affect the liability of any Person that otherwise would result from (i) any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of any such Person, or (ii) any actions of the Board of Directors of Advanta on December 10, 2009 relating to the decision to liquidate Advanta.
(emphasis added)

8

restrict in any way the claims and rights that the Class Plaintiff and the Class Plaintiffs may have against the Non Debtor Defendants in connection with the 33 Act Securities Litigation, and any applicable insurance, then this portion of the Objection may be easily resolved. It may be resolved by the Debtors agreeing to include language to make it clear that the Plan injunctions and exculpations do not apply to restrict in any way the claims and rights that the Class Plaintiff and the Class Plaintiffs may have against the Non Debtor Defendants in connection with the 33 Act Securities Litigation, and any applicable insurance.[7]

### The Proposed Injunction Provisions Are Not Permissible under Third Circuit Law

15.  Section 1129(a)(1) of the Bankruptcy Code provides that a plan must comply with all applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). If a plan contains provisions which violate the Bankruptcy Code, under Section 1129(a)(1), the plan may not be

---

[7] Specifically, counsel for the Class Plaintiff requests that the following language be included in the Plan (with appropriate disclosure in the Disclosure Statement):

"Notwithstanding anything in the Plan to the contrary, nothing in the Plan, any amendment to the Plan, or in any order confirming the Plan, shall release, enjoin, preclude or otherwise affect in any way the prosecution of the claims asserted, or which may be asserted, against any non-Debtor in that certain securities class action titled *William E. Underland, on behalf of himself and all other similarly situated persons against Dennis Alter, et. al.*, currently pending in the United States District Court, Eastern District of Pennsylvania (Philadelphia), Civil Action No. 2:10-cv 03621-CMR, or the right of the plaintiffs in such litigation to (a) pursue further litigation, including without limitation appeals, against any non-Debtor defendants, (b) seek or pursue any discovery in connection with such litigation; and (c) enter into or enforce any settlement or judgment obtained relating thereto or in connection therewith, including without limitation to the extent of available insurance coverage and proceeds under any directors and officers insurance, or other insurance, maintained by or through the Debtors, or otherwise, for the benefit of the non Debtor defendants in such litigation."

confirmed. See *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001); see also *In re Elsinore Shore Assocs.*, 91 B.R. 238, 250 (Bankr. D.N.J. 1988).[8]

16. Section 524(e) of the Bankruptcy Code explicitly states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). In *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit Court of Appeals rejected a broad, nonconsensual release and injunction provision in the debtors' plan of reorganization. The plan provision under consideration in *Continental* released and permanently enjoined certain securities lawsuits by class actions plaintiffs against the debtors' officers and directors. The Third Circuit held that the release and permanent injunction in the debtors' plan did not "pass muster under even the most flexible tests for validity of non-debtor releases." Id. at 214.

17. The Third Circuit, however, declined to specifically define when non-debtor releases are permissible. Instead, the Court noted that there are three "hallmarks of permissible non-consensual releases – fairness, necessity to the reorganization, and specific factual findings to support these conclusions." Id. The Court concluded that each of these factors was absent in *Continental*. The Court determined that the subject releases in *Continental* were not fair or necessary because:

> (a) the plan provided no consideration to plaintiffs in exchange for having their prepetition claims against officers and directors under the securities laws permanently enjoined;

---

[8] In addition to the objections contained herein to the approval of the Disclosure Statement, Class Plaintiff reserves the right to raise other and further objections in connection with confirmation, including without limitation that the Court does not have jurisdiction to approve a release or injunction as they relate to the independent direct action claims asserted against the Non-Debtor Defendants in the 33 Act Securities Litigation. See, *Continental*, 203 f3d. at 214,n.12 ("a court cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin third party class actions against non-debtors.")

> (b) the releases granted to such parties were not necessary to the debtor's reorganization when the released parties did not show a critical financial contribution to make the plan feasible or that litigation was a threat to the reorganized debtor; and
>
> (c) the debtors' obligation to indemnify its officers and directors did not transfer the release and permanent injunction of plaintiffs' claims against non-debtor officers and directors into a "key element" of the reorganization.

Id. at 215-216.

18. Based on the few cases in which releases of non-debtors have been upheld in the Third Circuit, as summarized in *Continental*, the Third Circuit reflected that nonconsensual releases have been found to be valid only "in the context of extraordinary cases." Id. at 212. As the Third Circuit recognized, provisions which amount "to nothing more than a lockstep discharge of non-debtor liability . . . fall squarely into the section 524(e) prohibition." Id. at 217.

19. Interpreting *Continental*, the Delaware bankruptcy court has specifically recognized that "extraordinary circumstances [are] required to meet even the most flexible test for third party releases." *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 608 (Bankr. D. Del. 2001). The court noted in *Genesis* that "financial restructuring plans" do not generally present such extraordinary circumstances as non-consensual release provisions approved in mass tort cases such as *Robins* and *Manville* (cited below). Id.

20. Consistent with the holding in *Continental*, bankruptcy courts within the Third Circuit have held that non-debtor releases in financial restructuring cases are valid only if the affected creditors consent to the release. See *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1991) (while upholding the release of the debtor's claims against the parties who funded the plan, the court struck the nonconsensual releases imposed on the non-debtor parties, holding that such releases "cannot be accomplished without the affirmative agreement of the creditor affected"); *In re Elsinore Shore Assoc.*, 91 B.R. at 250 (holding that the proposed

11

Chapter 11 plan was not confirmable because the proposed non-voluntary releases of non-debtors had no basis in bankruptcy law); *In re Arrowmill Dev. Corp.*, 211 B.R. 492 (Bankr. D.N.J. 1997) (where the creditor consents to the release, and presumably receives consideration in exchange for that agreement, it has not been forced by virtue of the discharge provisions of the Code and does not run afoul of 524(e), but evidence of consent must be clear); *In re Exide Techs.*, 303 B.R. 48 (Bankr. D. Del. 2003) (refusing to allow release, exculpation, plan injunction provisions in the absence of consideration to and consent of claimholders); *In re West Coast Video Enters., Inc.*, 174 B.R. 906 (Bankr. E.D. Pa. 1994). For a release to be consensual, the creditor must affirmatively agree to be bound. *Zenith Elec.*, 241 B.R. at 111; *West Coast Video,* 174 B.R. at 911.

21. Any language in the Plan that may be interpreted to enjoin any claims against, or to in effect grant a release to, the Debtors' officers and directors or any other non Debtor third party, with respect to claims held by non-debtors are unfair, unnecessary and violate the governing law in the Third Circuit. The proposed permanent injunction provisions of Plan section 10.3, and exculpation provisions of Plan section 10.7, may have the effect of releasing third party claims against non-Debtor officers and directors for their prepetition acts or omissions, and would therefore be the functional equivalent of an impermissible third party release.

22. This Court in *In re Exide Technologies, et.al.* 303 B.R. 48 (Bankr. D. Del. 2003), refused to approve an exculpation provision that could be "read to include a release of claims by third parties against [third parties] for their prepetition acts, yet it is not limited to those creditors who have accepted the Plan." Id. at 75. This Court in *Exide* further stated, "the Exculpation Provision also binds, without their consent, unsecured creditors...and equity holders...who will

12

not receive any distribution under the Plan. The Exculpation Provision also fails for lack of consideration to those parties." Id. at 75. On the same basis that it refused to approve the exculpation provisions, this Court in *Exide* also refused to approve a non-consensual plan injunction that had the effect of releasing claims against third parties. Id at 76. Here, the Class Plaintiffs are receiving nothing on account of their claims asserted against the Non-Debtor Defendants in the 33 Act Securities Litigation in exchange for what would effectively be the release (in the form of a permanent injunction) of claims by non Debtor parties against other non Debtor parties. In addition, with respect to the Class Plaintiffs, such release is not consensual.

23. Furthermore , the Debtors have not and cannot offer any evidence that an injunction against, or release of the claims of, the Class Plaintiffs in connection with the 33 Act Securities Litigation are necessary for the success of the Debtor's reorganization because the Plan is a liquidating Plan. Removal of any release or injunction language from the Plan, or including language to make it clear that any releases, injunctions or exculpations will not apply to the Class Plaintiffs in connection with their claims against non-Debtor third parties in the 33 Act Securities Litigation, will have no impact on what is a liquidating plan. See In *re Nickels Midway Pier*, 210 Bankr. LEXIS 1642, at *38 (Bankr. D.N.J. May 21, 2010); 2101 WL 2034542 (Bankr. D.N.J.) (holding that the Plan provides for liquidation, which can be successfully accomplished without [the third party releases provided for in the Plan]).

### There Are No Extraordinary Circumstances in the Debtors' Cases to Warrant the Inclusion of a Permanent Injunction that is the Functional Equivalent of a Non-Consensual Third-Party Release

24. As discussed above, some courts have allowed nonconsensual, third-party releases when the bankruptcy case presents extraordinary and unusual circumstances and the success of the plan truly hinges on the third-party releases. The cases permitting nonconsensual, third-party releases, however, almost exclusively involve a mass tort or other mass litigation,

13

rather than a financial restructuring. See e.g., *In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir. 1989) (approving permanent injunction which protected insurer, members of Robins family, present and former officers and directors and certain doctors in mass tort bankruptcy in which a trust was created to pay all claims in full); *In re Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) (approving permanent "channeling injunction" to resolve all present and future asbestos claims); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) (approving class action settlement as part of reorganization which enjoined suits against officers and directors who were funding the settlement as part of the reorganization). As noted in *Continental*, in addition to facing massive litigation for which third parties were co-liable, the third parties in those cases provided compensation to the debtors' creditors in exchange for their releases. *Continental*, 203 F.3d at 212-213. Indeed, the only section of the Bankruptcy Code allowing nonconsensual third-party releases, Section 524(g), applies solely to asbestos cases, and specifically requires that released third parties provide a benefit to the affected creditors. 11 U.S.C. § 524(g).

25. Unlike the facts in the mass tort litigation cases, there is no onslaught of litigation that threatens the Debtors' reorganization. As stated above, these cases are in liquidation, and there will be no reorganization. There is also no disclosure of, or evidence of, any significant contributions by the Non-Debtor Defendants that are critical to the ability to confirm the Plan, and in any event, any such contributions are not designed to compensate the Class Plaintiffs in exchange for the release. If sustained, the approval of Plan sections 10.3 and 10.7, to the extent they are read to enjoin the Class Plaintiffs from proceeding with the 33 Act Securities Litigation against the Non Debtor Defendants would constitute an unprecedented protection for non-debtor parties in the Third Circuit.

## V. INADEQUATE DISCLOSURE REGARDING THE TERMS AND LIMITS WITH RESPECT TO AVAILABLE D&O INSURANCE

26. The Disclosure Statement fails to provide adequate disclosure regarding the terms and limits with respect to any available D&O Insurance, including whether such insurance may be available to pay for any amounts for which any of the Non-Debtor Defendants may be liable to the Class Plaintiffs in connection with the 33 Act Securities Litigation, and reduce any otherwise applicable indemnification claims of the Non-Debtor Defendants.

27. The Plan does include a defined term for "D&O Insurance Policies", and does include a provision providing for the assumption of such policies to the extent such policies are determined to be executory contracts. Section 8.6 and 8.7 of the Plan provide for the continuation of any D&O Insurance Policy, including for the payment of allowed indemnification claims to the extent of any applicable insurance coverage, and for the treatment of any allowed claims for indemnification not covered by such insurance, as allowed general and unsecured claims.

28. However, the Disclosure Statement merely repeats the language of the Plan, and there is no meaningful information provided regarding the terms and limits of such policies, including, without limitation, with respect to the monetary limits of such policies or whether such policies provide coverage for the Debtors, their officers, directors, or otherwise. This information is necessary so that creditors and parties in interest will be able to better understand issues concerning the D&O Insurance Policies, including the basis for and benefit of assuming the D&O Insurance Policies, and to what extent insurance proceeds may be available to offset any other wise applicable indemnification claims. In addition, such information is relevant in the event that the Debtors attempt to justify the need for a Plan injunction or exculpation provisions based on any argument that any otherwise applicable indemnification obligations the Debtors

15

may have in favor of any of the Non-Debtor Defendants in the 33 Act Securities Litigation creates some form of identify of interest between the Debtors and the Non-Debtor Defendants. Although this theory has been thoroughly discredited by the Third Circuit Court of Appeals in *Continental*, for purposes of the Disclosure Statement, information regarding the D&O Policies should be provided. In *Continental*, the Third Circuit stated "we conclude that granting permanent injunctions to protect non-debtor parties on the basis of theoretical identify of interests alone would turn bankruptcy principals on their head. Nothing in the bankruptcy code could be construed to establish such extraordinary protection for non-debtor parties". *Continental* 203 F.3d at 217.

29. Accordingly, the Debtors should be required to disclose the monetary limits of such policies, whether such policies provide coverage for the Debtors, their officers, directors, or otherwise and (a) the identity of any individuals who may be covered by D&O Insurance, and (b) whether there are any pending claims for indemnification by such individuals.

## VI. BOOKS AND RECORDS

30. The Disclosure Statement and Plan fails to provide for an adequate protocol for the preservation of the Debtors' records or documents, and for notice to the Class Plaintiffs in the event the Debtors or their successors intend to dispose of any such records or documents, all of which could prejudice the rights and interests of the Class Plaintiffs in connection with the 33 Act Securities Litigation against non-Debtor third parties.

31. Although Section 5.4 of the Plan provides that the Debtors' books and records shall be transferred to the applicable Liquidating Trust, the Plan and Disclosure Statement fail to otherwise provide a protocol for the continued preservation and maintenance of the Debtors' books and records subsequent to the Effective Date. The Debtors, and their transferees or

successors should be required to maintain and preserve the Debtors books and records that may be potentially relevant to the 33 Act Securities Litigation and the claims asserted therein until such time as the Class Plaintiff is able to conduct discovery. Counsel for the Class Plaintiff must also be given reasonable notice of any proposed destruction or abandonment of any of the Debtors' books and records and an opportunity to be heard before any such books and records are abandoned or destroyed. Accordingly, language should be added to the Disclosure Statement and the Plan, and/or any Order confirming the Plan, substantially in the form of the following:

> From and after the Effective Date, any transferee, including each of the Liquidating Trustee's, and any of their successors or assigns, of the Debtors' Books and Privileges, shall preserve and maintain all of the Debtors documents, files, books, records, electronic data (including, but not limited to, e-mails and e-mail server back-up tapes) (collectively, the "Documents"), and shall not destroy or otherwise abandon any such Documents absent further order of this Court or such other Court of competent jurisdiction after a hearing upon notice to parties and interests, including the attorneys for the Class Plaintiff, with an opportunity to be heard.

32. To the extent the Debtors, or their successors under the Plan, do not intend to preserve the Documents or object to the inclusion of the foregoing language in the Disclosure Statement, the Plan or any Order confirming the Plan, the Disclosure Statement should state and explain why.

## VII. RESERVATION OF RIGHTS

33. To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, the Class Plaintiffs reserve their right to assert such objection, as well as other objections, to confirmation of the Plan. The Class Plaintiffs also reserve their rights to adopt or join in any other or further objections raised by other parties.

48747/0001-7197110v4

## VIII. WAIVER OF MEMORANDUM OF LAW

34. As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by the Class Plaintiff are set forth herein, the Class Plaintiff respectfully requests that the Court waive any otherwise applicable requirements for the filing a separate memorandum of law in support of the Objection.

## IX. CONCLUSION

35. At a minimum, the Court should deny approval of the Disclosure Statement unless: (a) the Plan is modified to (i) exclude the Class Plaintiffs from any injunction or exculpation provisions to the extent they affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any non-Debtor third parties in the 33 Act Securities Litigation or any applicable insurance, or preclude in any way the Class Plaintiffs pursuing any discovery in connection with such litigation, or (ii) provide additional and sufficient disclosure setting forth the basis for any injunction, release or exculpation that in any way restricts the rights and claims of the Class Plaintiffs against any of the Non-Debtor Defendants in the 33 Act Securities Litigation, (b) the Disclosure Statement is revised to include proper disclosure with respect to the D&O Insurance Policies, as set forth in this Objection; and (c) an appropriate protocol is provided for in the Plan and is described in the Disclosure Statement for the preservation and disposition of documents that may relate to 33 Act Securities Litigation.

**WHEREFORE**, based on the foregoing, the Class Plaintiff respectfully requests that an order be entered (i) denying approval of the Disclosure Statement until the modifications and clarifications set forth above are made to the Disclosure Statement and Plan, and (ii) granting such other and further relief as the Court deems just and proper.

48747/0001-7197110v4

Dated: December 6, 2010

                COLE, SCHOTZ, MEISEL,
                FORMAN & LEONARD, P.A.
                Bankruptcy Counsel for Class Plaintiff

                John H. Drucker (JD-2524)
                900 Third Avenue, 16th Floor
                New York, NY 10022-4728
                Telephone (212) 752-8000
                Facsimile: (646) 563 7923

                -and-

                By: /s/ Karen M. Grivner
                Karen M. Grivner (4372)
                500 Delaware Avenue, Suite 1410
                Wilmington, Delaware 19801
                Telephone: (302) 652-3131
                Facsimile: (302) 652-3117

                -and-

                Scott+Scott LLP
                Co-Lead Counsel for Class Plaintiff and the Class
                Arthur L. Shingler III
                Geoffrey Johnson
                12434 Cedar Road, Suite 12
                Cleveland Heights, OH 44106
                216.229.6088 Phone
                216.229.6092 Fax

48747/0001-7197110v4