UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ADVANTA CORP., *et al.*,[1] | Case No. 09-13931 (KJC) |
| Debtors. | (Jointly Administered) |
| | Related to Docket No. 899 & 977 |

### JOINDER OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DELAWARE CORPORATE SERVICES TO OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION TO APPROVE DISCLOSURE STATEMENT AND RESERVATION OF RIGHTS

Law Debenture Trust Company of New York ("LDT Co.") and Delaware Corporate Services, Inc. ("DCS", and together with LDT Co., "Law Debenture" or the "Trustee"), by and through their undersigned counsel, hereby file this joinder (the "Joinder") to the objection of the Official Committee of Unsecured Creditors (the "Committee") to the Disclosure Statement for Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code [Docket No. 896] (the "Disclosure Statement") and the Debtors' Motion for an Order (I) Approving the Proposed Disclosure Statement, (II) Approving Notice and Objection Procedures for the Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing, and (V) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan [Docket No. 899] and reservation of rights. In support hereof, Law Debenture respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Advanta Corp. (2070), Advanta Investment Corp. (5627), Advanta Business Services Holding Corp. (4047), Advanta Business Services Corp. (3786), Advanta Shared Services Corp. (7074), Advanta Service Corp. (5625), Advanta Advertising Inc, (0186), Advantennis Corp. (2355), Advanta Mortgage Holding Company (5221), Advanta Auto Finance Corporation (6077), Advanta Mortgage Corp. USA (2654), Advanta Finance Corp. (8991), Great Expectations International Inc. (0440), Great Expectations Franchise Corp. (3326), and Great Expectations Management Corp. (3328), Advanta Ventures Inc. (5127), BizEquity Corp. (8960), Ideablob Corp. (0726), and Advanta Credit Card Receivables Corp. (7955).

## BACKGROUND

### A. The Trust Structure and Transaction Documents

#### i. The Trust Structure

2. A portion of the undisputed liabilities of Advanta Corp. ("Advanta" or "Sponsor") arise from pre-petition debt issuances of 8.99% Junior Subordinated Deferrable Interest Debentures due December 17, 2026 in the original aggregate principal amount of $103,093,000 (the "8.99% Debentures"). As of November 8, 2009 (the "Petition Date"), approximately $99,688,043.31 in principal and accrued interest was outstanding under the 8.99% Debentures.

3. Prior to the bankruptcy filing, the Sponsor formed Advanta Capital Trust I ("ACT" or the "Trust"), a statutory business trust, pursuant to the Delaware Business Trust Act and an Amended and Restated Declaration of Trust, dated as of December 17, 1996 (the "Trust Declaration"), by and among the Sponsor, LDT Co., DCS, and the Administrative Trustees (collectively, the "Trust Trustees"). The Trust was established by the Sponsor in order to obtain additional funding for general corporate purposes.

4. In 1996, the Trust issued $100 million of 8.99% capital securities (the "Capital Securities") in a public offering, which represented preferred beneficial interests in the assets of the Trust. The Trust used the proceeds from selling the Capital Securities to purchase the 8.99% Debentures, which are currently the sole asset of the Trust.

5. The Capital Securities were sold to the public and the Trust issued the common securities (the "Common Securities," together with the Capital Securities, the "Trust Securities") to the Sponsor, who currently owns 100% of all of the Common Securities of the Trust.

### ii. The Trust Documents

6. In conjunction with the issuance of the 8.99% Debentures, Advanta Corp. entered into that certain Indenture, dated as of December 17, 1996, between the Advanta Corp. and LDT Co., as successor to The Bank of New York Mellon (the "8.99% Indenture").

7. Pursuant to the documents described below, LDT Co. currently is Indenture Trustee under the 8.99% Indenture and Property Trustee under the Trust Declaration pursuant to which the Trust Securities were issued. DCS currently is Delaware Trustee under the Trust Declaration.

8. LDT Co., as successor to The Bank of New York Mellon, also is Guarantee Trustee under (i) the Guarantee Agreement dated as of December 17, 1996 (the "Series A Capital Guarantee"), and (ii) the Guarantee Agreement dated as of April 4, 2007 (the "Series B Capital Securities Guarantee" and, together with the Series A Capital Guarantee, the "Guarantees"), executed by the Sponsor in favor of the Guarantee Trustee for the benefit of holders of the Capital Securities. Under the Guarantees, Advanta guaranteed the repayment of the obligations under the Capital Securities, subject to the subordination provisions set forth in the 8.99% Indenture.

### iii. Indenture Tripartite Agreement

9. LDT Co. accepted appointment as successor Indenture Trustee pursuant to the Agreement of Resignation, Appointment and Acceptance, dated as of November 20, 2009, between The Bank of New York Mellon, as the resigning Trustee, and Law Debenture Trust Company of New York, as successor Trustee (the "Indenture Tripartite Agreement").

10. In addition, LDT Co. accepted appointment as successor Property Trustee pursuant to the Instrument of Resignation, Appointment and Acceptance, dated as of November

20, 2009, by and among (i) Advanta Corp., (ii) Advanta Capital Trust I, (iii) The Bank of New York Mellon, as resigning Property Trustee, (iv) BNY Mellon Trust of Delaware, as resigning Delaware Trustee, (v) the Administrative Trustees as set forth therein, (vi) Law Debenture Trust Company of New York, as successor Property Trustee, and (vii) Delaware Corporate Services Inc., as successor Delaware Trustee (the "Trust Tripartite Agreement").

11. LDT Co. also accepted appointment as successor Guarantee Trustee pursuant to the Agreement of Resignation, Appointment and Acceptance of Capital Securities Guarantee Trustee, dated as of November 20, 2009, by and among Advanta Corp. guarantor, The Bank of New York Mellon, as resigning trustee, and Law Debenture Trust Company of New York, as successor Guarantee Trustee (the "Guarantee Tripartite Agreement").

12. Law Debenture holds all rights and powers as are provided and set forth in the Indenture, the Trust Declaration, the Guarantee and all related and ancillary documents executed and delivered in connection therewith (collectively, the "Trust Documents").

### iv. The Termination of the Trust

13. Under the Delaware Statutory Trust Act (the "Act"), 38 Del Code Ann. § 3801, et seq., a statutory trust that does not have perpetual existence is dissolved and its affairs must be wound up "at the time or upon the happening of events specified in the governing instrument." Act at § 3808(a). Thus, pursuant to Section 3.14 of the Trust Declaration, the Trust, unless earlier terminated pursuant to Article VIII of the Trust Declaration (entitled "Termination of the Trust"), was to exist up to December 17, 2027.

14. Section 8.1(a) of the Trust Declaration, however, provides that the Trust shall automatically terminate, among other times and upon the occurrence of other events, "(i) upon

the bankruptcy of the Sponsor [i.e., the Debtor]." As such, the Trust terminated automatically upon the bankruptcy filing by the Debtor, and the affairs of the Trust must be wound up.

15. As part of this process, the Trust Trustees must file a certificate of cancellation with the Delaware Secretary of State, as soon as is practicable after termination of the Trust. See Section 8.1(b) of the Trust Declaration.

16. Section 3 (entitled "Liquidation Distribution Upon Dissolution") of Annex I to the Trust Declaration provides that, in the event of any termination of the Trust, the holders of the Capital Securities will be entitled to receive, after satisfaction of liabilities of creditors of the Trust, inter alia, Debentures in an aggregate principal amount equal to the aggregate stated liquidation amount of such Capital Securities, unless such distribution is determined by the Property Trustee not to be practicable, in which event such holders shall be entitled to receive out of the assets of the Trust available for distribution to holders of the Capital Securities, after satisfaction of liabilities of creditors of the Trust, an amount equal to the aggregate stated liquidation amount of such Capital Securities plus accumulated and unpaid distributions thereon to the date of payment.

## B. Claims of Holders of Capital Securities

17. As of the Petition Date, the Debtors were in default under the Trust Documents and remain indebted to Law Debenture separately as the Trustee and Guarantee Trustee pursuant to, inter alia, the Trust Documents in the following amount (excluding costs, expenses, charges, penalties, indemnities, and other claims): $99,688,043.31, consisting of (a) $92,290,000.00 in the principal amount of the 8.99% Debentures and (b) $7,398.043.31 in accrued but unpaid interest

NYC/548606.1
WLM 524450.1

5

at the applicable rates specified in the Trust Documents as well as other fees and costs associated therewith.[2] See Claim Nos. 1717-1722.

### C. Debtors' Business and Cessation Thereof

18. Advanta and its affiliates were one of the nation's largest issuers of business purpose credit cards to small businesses and business professionals in the United States. To obtain additional funding for general corporate purposes, prior to the Petition Date, Advanta established the Trust, which issued the Capital Securities and used the proceeds thereof to purchase the 8.99% Debentures.

19. Like many small business credit card issuers and other small business lenders, due to the problems with the U.S. economy that began in the third quarter of 2007, Advanta Bank Corp. ("ABC") experienced increasing delinquency and charge-offs, impacting the Debtors' business, results of operations, and financial condition. Thereafter, ABC and the FDIC entered into various agreements and discussions to attempt to solve the on-going financial difficulties; however, the FDIC ultimately rejected certain proposals made by the Debtors and, in light of the FDIC's decision, Advanta and its affiliated Debtors commenced these chapter 11 cases in November 2009.

### D. The Chapter 11 Case

20. On the Petition Date, the Debtors filed petitions for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors remain in possession of their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[2] Plus certain other costs, charges, expenses and other indemnities as provided in the relevant documents and any claims for breach or violations of the Indenture and claims under securities laws, and any other claims arising under state or federal law, including, but not limited to, claims arising under applicable fraudulent conveyance laws.

21.     Thereafter, on November 24, 2009, the Office of the United States Trustee appointed the Committee. LDT Co. is a member of the Committee.

### E.     The Debtors' Plan

22.     On November 2, 2010, the Debtors filed the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code [Docket No. 895] (the "Plan," together with the Disclosure Statement, the "Plan Documents") and the Disclosure Statement.[3]

### F.     Treatment of Holders of Capital Securities Under the Plan Documents

23.     Under the Plan, the holders of the 8.99% Debentures, which the Debtors define as "Subordinated Note Claims", are included in Class 5. See Plan Article III. The treatment to be provided to Class 5 creditors is the receipt of an AC Class A Beneficial Interest in the AC Trust and an Advanta Class A Beneficial Interest in the Advanta Trust, which shall entitle each holder thereof to receive its Pro Rata Share of distributions from the applicable Trust. See Plan Article IV § 4.10.

24.     The Plan also provides that holders of the Allowed Subordinated Note Claims are subordinated to the holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims, and that distributions that would otherwise be made to holders of the Allowed Subordinated Note Claims will instead be made to the holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims until such time as holders of the Allowed Investment Note Claims and Allowed RediReserve Certificate Claims are paid in full. See Plan at § II.B.

25.     The Plan does not address the claims that arise out of the Debtors' obligations to the holders of the Capital Securities under the Guarantee.

---

[3] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan Documents or the Committee Objection (as defined below), as applicable.

## JOINDER

26. Law Debenture hereby joins in the Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for an Order (I) Approving the Proposed Disclosure Statement, (II) Approving Notice and Objection Procedures for the Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing, and (V) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan [Docket No. [977] (the "Committee Objection") and fully incorporates all arguments raised in that objection herein.

27. Law Debenture objects to the approval of the Disclosure Statement because solicitation thereof will be contrary to the best interest of the Debtors' creditors. Indeed, in light of the positions taken by the Debtors in the Plan with respect to certain of the exculpation provisions relating to insiders of the Debtors,[4] the Court's post-confirmation retention of jurisdiction over Estate Claims, and the absence of Committee consent with respect to fundamental provisions of the Plan, coupled with the Committee's unanimous opposition to the Plan, it is highly likely that the vast majority of creditors will vote to reject the Plan, necessitating a second plan and solicitation process. Thus, approval of the Disclosure Statement and solicitation of the Plan in the current circumstances would be a waste of precious estate resources and contrary to the best interests of substantially all of the Debtors' creditors. Accordingly, as more fully discussed in the Committee Objection, the Disclosure Statement should be denied.

---

[4] For example, creditors should be made aware that a vote to accept the Plan as currently proposed will operate as a release of liability for the Debtors' insiders in connection with potential Estate Claims based on, among other things, post-petition breaches of fiduciary duty and self-dealing and could foreclose opportunities to augment creditor recoveries. Creditors also should be made aware of the fact that the Debtors are subject to conflicts of interest between the personal interests of insiders and the interests of the estates.

28.     Further, Law Debenture has issues and concerns with respect to certain provisions contained in the Plan Documents. Specifically, Law Debenture's issues and concerns include, but are not limited to, the fact that the Plan does not address the claims that arise out of the Debtors' obligations to the holders of the Capital Securities under the Guarantee, the Plan provisions regarding the Indenture and Indenture Trustee are inadequate and incomplete, and inter-creditor, subordination and distribution issues are not properly addressed. Law Debenture has provided requested changes and modifications to enable approval of the Disclosure Statement and confirmation of the Plan. Although not Disclosure Statement issues per se, Law Debenture is hopeful that these Plan-related issues will be resolved by the parties prior to the Confirmation Hearing. Towards this end, Law Debenture is currently working with the Debtors and their professionals in an effort to reach a consensual resolution with respect to these outstanding issues. Nevertheless, Law Debenture files this Joinder and Reservation of Rights in order to preserve and reserves its rights to address such issues and objections at the hearing to consider approval of the Disclosure Statement or at any hearing to consider confirmation of the Plan or any subsequent proposed plan of reorganization/liquidation.

## RESERVATION OF RIGHTS

29.     Law Debenture reserves its rights to further address the Plan, the Disclosure Statement and related pleadings and other ancillary issues either by further submission to the Court at oral argument or testimony to be presented at the hearing to consider approval of the Disclosure Statement and/or Plan and defers such issues, to the extent that they are not satisfactorily resolved prior to such hearing, to the Confirmation Hearing.

WHEREFORE, Law Debenture respectfully requests that the Court enter an Order denying approval of the Disclosure Statement and granting such other and further relief as this Court deems just and appropriate.

Dated: December 7, 2010
Wilmington, DE

**EDWARDS ANGELL PALMER & DODGE LLP**

*/s/ Cynthia M. Baldwin*
Selinda A. Melnik (DE Bar I.D. #4032)
Cynthia M. Baldwin (DE Bar I.D. #5041)
919 North Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 777-7770
Facsimile: (302) 777.7273
Email: smelnik@eapdlaw.com
cbaldwin@eapdlaw.com

- and -

ARENT FOX LLP

Leah M. Eisenberg
Ronni N. Arnold
1675 Broadway
New York, NY 10019
(212) 484-3900

-and-

Jeffrey N. Rothleder
1050 Connecticut Ave., N.W.
Washington, DC 20036

*Counsel for Law Debenture Trust Company of New York and Law Debenture Corporate Services Inc., in its capacity as Successor Trustee*