**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------x | | |
| | : | |
| *In re* | : | Chapter 11 |
| | : | |
| ADVANTA CORP., *et al.*, | : | Case No. 09-13931 (KJC) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |
| | : | **Re: Docket Nos. 903, 978, 981, 984 & 999** |
| ------------------------------------------------------x | | |

**DEBTORS' REPLY TO OBJECTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS TO THE DEBTORS' MOTION TO EXTEND
EXCLUSIVITY AND OBJECTION TO THE COMMITTEE'S
EXPEDITED MOTION FOR AN ORDER, PURSUANT
TO 1121(d) OF THE BANKRUPTCY CODE, (A) TERMINATING THE
DEBTORS' EXCLUSIVITY PERIODS, AND (B) AUTHORIZING
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO PROPOSE AND SOLICIT ACCEPTANCES TO A CHAPTER 11 PLAN**

Advanta Corp. ("***Advanta***") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together with Advanta, the "***Debtors***"),

submit this reply and response (the "***Reply***") to the *Objection of the Official Committee of*

*Unsecured Creditors (the "**Committee**") to the Debtors' Motion to Extend Exclusivity and*

*Expedited Motion For An Order, Pursuant to Section 1121(d) of the Bankruptcy Code, (A)*

*Terminating the Debtors' Exclusivity Periods, and (B) Authorizing the Official Committee of*

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each
Debtor's federal tax identification number, are Advanta Corp. (2070), Advanta Investment Corp. (5627),
Advanta Business Services Holding Corp. (4047), Advanta Business Services Corp. (3786), Advanta
Shared Services Corp. (7074), Advanta Service Corp. (5625), Advanta Advertising Inc. (0186),
Advantennis Corp. (2355), Advanta Mortgage Holding Company (5221), Advanta Auto Finance
Corporation (6077), Advanta Mortgage Corp. USA (2654), Advanta Finance Corp. (8991), Advanta
Ventures Inc. (5127), BE Corp. (8960), ideablob Corp. (0726), Advanta Credit Card Receivables Corp.
(7955), Great Expectations International Inc. (0440), Great Expectations Franchise Corp. (3326), and
Great Expectations Management Corp. (3328).

*Unsecured Creditors to Propose and Solicit Acceptances to a Chapter 11 Plan* (the "***Objection***")

[Docket No. 981], and respectfully represent as follows:[2]

## Preliminary Statement

1.      Since the commencement of these chapter 11 cases a little over a year ago, the Debtors' management and counsel have worked together tirelessly to maximize the recovery for creditors and to formulate a chapter 11 plan.  Their efforts have proved successful, overcoming substantial obstacles, and have culminated in the filing of the Proposed Plan.[3]  The Debtors anticipate that the Proposed Plan will enable significant recoveries for many of the Debtors' key constituents:  as reflected in the proposed Disclosure Statement, the Debtors expect holders of Investment Notes and RediReserve Certificates (both as defined in the Proposed Plan) (collectively, the "***Retail Noteholders***") to recover between 64% and 100% of their claims.

2.      The Debtors spent months working closely with the Committee on the Proposed Plan and were able to reach agreement on virtually all of its terms.  Unfortunately, even after addressing numerous of the Committee's comments to the Proposed Plan and Disclosure Statement, the Debtors were unable to reach agreement with the Committee on three discrete issues in the Proposed Plan and the Disclosure Statement: (i) the terms under which current and former directors and officers will be exculpated for postpetition conduct falling short

---

[2] Law Debenture Trust Company of New York and Delaware Corporate Services [Docket No. 984] and Lapis Advisers, LP ("***Lapis***") [Docket No. 999] filed joinders to the Committee's Objection (together with the Objection, the "***Exclusivity Objections***").  Notwithstanding the tardiness of such filings and that Lapis (x) in its joinder nakedly asserts that it is a substantial creditor, without disclosing any details about its alleged claims, and (y) filed its joinder on behalf of multiple entities, but failed to comply with the requirement of Bankruptcy Rule 2019 that it file a statement with the Court containing, among other things, details about the nature, amount, and time of acquisition of each of the entities' alleged claims, this Reply constitutes a Reply to all Exclusivity Objections.

[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion to Extend Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereto* [Docket No. 903] (the "***Motion***").

of willful misconduct, gross negligence, intentional fraud, or criminal conduct; (ii) whether additional disclosure about certain potential causes of action is needed in the Disclosure Statement under prevailing case law to preserve the Court's post-confirmation jurisdiction over such causes of action, and (iii) whether the Committee should have consent rights over various plan documents when it is not supporting the Proposed Plan (the "***Disputed Issues***").  Instead of objecting to the Disputed Issues as part of the disclosure statement and plan approval process and letting the Court rule on them, which the Court routinely does, and then having the process move forward, the Committee seeks to divest the Debtors of their Exclusive Periods to allow the Committee a chance to file a competing chapter 11 plan with the only differences being the Disputed Issues.  This would create needless chaos and cost in these cases at the expense of the Retail Noteholders, especially since the Debtors have already told the Committee that they will go forward with the Proposed Plan no matter what the Court's rulings are on the Disputed Issues.

3.     First, the notion that the Committee has a competing chapter 11 plan is a fiction.  As the Committee admits, termination of the Exclusive Periods will simply result in the Committee filing a chapter 11 plan that is the same as the Debtors' Proposed Plan, with limited, self-serving modifications that address the Disputed Issues.  This is not a situation where the Committee's chapter 11 plan would provide for different recoveries to creditors or a different structure for realizing value from the Debtors' assets – which is what "competing plans" typically do.  Instead, by soliciting two chapter 11 plans that differ only with respect to the Disputed Issues, the Committee's approach would result in creditors deciding legal issues that are appropriately resolved by the Court.  Allowing the Committee to usurp the plan solicitation process as a forum to voice its objections to the Disclosure Statement and the Proposed Plan would render illusory the Debtors' statutory right to the Exclusive Periods.

RLF1 3697558v. 1

4.      Second, the Committee simply has not shown cause to terminate the

Debtors' Exclusive Periods.  Nothing in the Committee's lengthy diatribe shows that the Debtors

have acted inappropriately during these chapter 11 cases or provides any other reason to justify

terminating exclusivity.  The gist of the Committee's argument is that because certain insiders of

the Debtors have pending claims against the Debtors, the Proposed Plan must have been

proposed and promoted to benefit just those insiders at the expense of other creditors.  The

Committee's main support for this argument is the fact that Committee's counsel has been

investigating and negotiating the pending claims of insiders and its argument that the Debtors

and Advanta's board of directors (the "***Board***") have refused to do so.  Although it is true that

the Committee's counsel has been investigating and negotiating the pending claims of Dennis

Alter and William Rosoff (the "***Alter & Rosoff Claims***"), the Committee fails to mention that

they have been doing this at the request of the Debtors.   The same investigation by the Debtors

would be duplicative and wasteful – and would likely be subject to second guessing.

Importantly, the Debtors took steps to ensure that the Proposed Plan does not compromise the

Committee's (or, more significantly, after the effective date of the Proposed Plan, the liquidating

trustee's) ability to resolve the Alter & Rosoff Claims.  Nothing in the Proposed Plan allows or

advantages the Alter & Rosoff Claims or precludes any defenses against such claims.  In

addition, nothing in the Proposed Plan exculpates officers and directors for (i) prepetition

conduct, (ii) postpetition conduct that is willful misconduct, gross negligence, intentional fraud,

or criminal conduct, or (iii) the only allegedly improper postpetition act that the Committee has

identified to date – the Board's December 10, 2009 decision to liquidate the Debtors' assets,

even though the Debtors strongly dispute that any liability can arise from such decision.  In short,

4

the exculpation clause that the Committee describes with such horror would not allow the officers and directors to escape the consequences of any truly "bad" acts.

5. Finally, the Objection is riddled with misleading statements and factual errors, which the Debtors believe are a result of the time constraints the Committee was working with, rather than bad faith or a desire to intentionally mislead the Court. To avoid wasting the Court's time in correcting every single one of the Committee's inaccuracies, however, this Reply only addresses certain of the Committee's more specious assertions. The Debtors reserve the right to respond at the hearing to any other misleading allegations made by the Committee.

**Argument**

6. Cause must exist for the Exclusive Periods to either be increased or reduced.[4] In determining whether cause exists in this regard, a court may consider a variety of factors to assess the totality of circumstances in each case.[5] As discussed in the Motion, ample cause exists here to extend the Exclusive Periods. The Committee has not made a showing otherwise. The Objection is a rambling diatribe aimed at embarrassing the Debtors and their senior management as a result of the Committee's disagreement with the Debtors over the

---

[4] 11 U.S.C. § 1121(d). The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

[5] *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying the factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Those factors include, without limitation: the size and complexity of the debtor's case; the existence of good-faith progress towards reorganization; a finding that the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; existence of an unresolved contingency; and the fact that the debtor is paying its bills as they come due. *See, e.g., In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re McLean Indus., Inc.*, 87 B.R. at 834 (citations omitted); *accord In re Express One Int'l, Inc.*, 194 B.R. at 100 (identifying four of the five above-quoted factors, among others, as relevant in determining whether "cause" exists to extend

RLF1 3697558v. 1

Disputed Issues and the Committee's inability to eliminate the Alter & Rosoff Claims. As discussed in more detail below, the Committee's request to terminate exclusivity is an improper attempt to force a resolution of the Disputed Issues other then by a ruling by the Court, and there is simply no basis to deny the Debtors their statutory right to go forward with solicitation of the Proposed Plan, and only the Proposed Plan.

**A.      The Exclusivity Process Should Not Be Used as a Tool to Dispute Plan Provisions**

7.      The Committee seeks to terminate the Debtors' Exclusive Periods as a means of resolving three Disputed Issues – issues that bankruptcy courts readily and routinely decide (and one of which – the amount of language needed in the disclosure statement to preserve the Court's jurisdiction over potential estate causes of action – will be decided at the Disclosure Statement hearing, well before solicitation of the Proposed Plan begins). Rather than using the readily-available and appropriately targeted mechanism of the plan confirmation objection process to address these issues, the Committee urges radical surgery to the process that will create chaos and deprive the Debtors of their right to finish the chapter 11 process that they have successfully prosecuted to date.

8.      The Committee's proposed approach of simultaneous solicitation of two virtually identical plans would create needless confusion, particularly on the part of Retail Noteholders, could result in creditors, rather than the Court, ruling on disputed legal issues, and might not even resolve the Disputed Issues. The Committee's proposed approach would also undermine the key principle behind statutory exclusivity of allowing a debtor to propose a chapter 11 plan without the disruption, delay, and additional cost attendant to a contested plan solicitation process. As noted above, this is not a situation where the Debtors and the Committee

---

exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of above-quoted factors).

RLF1 3697558v. 1

disagree as to allocation of creditor recoveries or the structure of the liquidation of estate assets. The Disputed Issues are legal issues that could and should be decided by the Court, rather than by creditors.  As the Debtors have stated numerous times, they will live with whatever the Court decides with respect to the Disputed Issues:  if the Court determines against the Debtors with respect to any or all of the Disputed Issues, the Debtors will still prosecute the Proposed Plan, as modified to conform to rulings of the Court.  And if the Committee's proposed approach were to be adopted and both plans garnered sufficient votes to be confirmed, the Court would ultimately have to decide the Disputed Issues anyway.

**B.    The Proposed Plan Is Neutral With Respect to Claims of Insiders**

9.    The Committee makes untrue allegations that the Proposed Plan benefits insiders at the expense of creditors.  The Proposed Plan, however, neither allows the Alter & Rosoff Claims (nor any other claims of insiders) nor limits the liquidating trustee, once the Proposed Plan becomes effective, from analyzing, resolving or defending against such claims.  In addition, the Proposed Plan neither releases any prepetition claims against insiders nor releases any specifically identified postpetition claims against insiders.  The Debtors repeatedly have asked the Committee to identify specific postpetition conduct on the part of insiders that the Committee thinks is actionable, and the *only* postpetition act that the Committee has identified is the Debtors' December 10, 2009 decision to liquidate the Debtors' assets (the "***December 2009 Decision***").  In response to the Committee's concerns, the Debtors amended the exculpation provision in the Proposed Plan to carve out the December 2009 Decision. [6]  Tellingly, in the Objection, the Committee identifies the potential Estate Claims that the Committee believes the

---

[6] The Debtors believe that the December 2009 Decision was not only in the best interest of their estates, but was realistically the only decision available to the Board under the circumstances.  The Committee's reliance on the December 2009 Decision is therefore misplaced, as the Debtors' do not believe that the Board or insiders will be subject to liability for the December 2009 Decision.

7

estates may have against insiders, and, other than the December 2009 Decision, there are no

other postpetition acts listed.  (*See* Objection, ¶ 23.)  Even if there are other claims that the

Committee has not identified, the Proposed Plan would not provide any protection to officers and

directors if the claims arose from truly bad acts: willful misconduct, gross negligence, intentional

fraud, or criminal conduct.

> 10.      Accordingly, by exculpating insiders for certain postpetition conduct, the

Debtors are not taking away any additional sources of recovery from creditors – they are simply

providing the Board and the Debtors' management with the peace of mind that they are free from

suit for performing their duties during the chapter 11 cases – a peace of mind that customarily is

provided to induce officers and directors in chapter 11 cases to remain with debtors through the

stressful chapter 11 process.  The Committee's insistence on preserving the right to sue officers

and directors for conduct that it cannot even identify, notwithstanding the Committee's close

monitoring of the Debtors' decisions and activities throughout the chapter 11 process, shines

light on the Committee's use of the exclusivity and disclosure statement objections as a scare

tactic to try to force concessions by Mr. Alter and Mr. Rosoff on their claims.  Such tactics have

no place in a chapter 11 case.

## C.      The Debtors Are Not Conflicted and the Board Did Not Abdicate Its Duties

> 11.      The Committee's assertions that the Debtors are conflicted because of the

Alter & Rosoff Claims and that the Board has abdicated its duties are simply not true.  It is not

uncommon for acting management of a debtor to file claims against the debtor.  If exclusivity

were to be terminated every time members of management file claims against the debtor,

management regularly would be faced with giving up control of the chapter 11 plan process to

the detriment of the creditor body in many cases.  Indeed, it was precisely to resolve any

perception of impropriety that the Debtors asked the Committee's counsel to investigate and

8

negotiate the Alter & Rosoff Claims, which Committee's counsel eagerly undertook and which decision the Debtors should be congratulated for, not attacked. In fact, to assist the Committee in its investigation, review, and negotiation of the Alter & Rosoff Claims, the Debtors voluntarily have provided since at least June 2010 the Committee's professionals with documents concerning the Alter & Rosoff Claims.

13. The Disclosure Statement makes clear that the Alter & Rosoff Claims are Unresolved Claims (as defined in the Proposed Plan). Accordingly, for the Committee to say that the Debtors and the Board have refused to investigate or contest the validity of the Alter & Rosoff Claims simply is misleading. Contrary to the Committee's implication, there is nothing inappropriate about a debtor's deferral of the analysis of insiders' claims to the creditors' committee or a liquidating trustee.

13. Similarly, the Committee's assertion that the fact that the Board did not consider the Plan in executive session without Messrs. Alter and Rosoff present is grounds for terminating exclusivity is spurious. The Disputed Issues were all issues that affected the entire Board (*i.e.,* exculpation and language about claims against directors purportedly to secure jurisdiction). Apart from the Disputed Issues, Debtors' counsel (i) obtained letters from Messrs. Alter and Rosoff that in its view eliminated any legitimate issue or any conflict with respect to the Proposed Plan, and (ii) satisfied itself that there was a full discussion of the relevant issues.

14. In addition, the Committee's implication that the Board has not been active enough is unfounded. The Committee cites testimony, which is at times taken out of context, of only one of the seven Board members. (*See* Objection, ¶ 5.) Director Dana Becker Dunn does not speak for the entire Board or the Debtors. Moreover, the issues that the Committee raises do not reveal any impropriety. For example, the Committee takes issue with

9

the facts that the Board did not consider the Committee's proposed language with respect to certain of the Disputed Issues and has not directly investigated or negotiated the Alter & Rosoff Claims. First, the Board did consider the key elements of the language and it was addressed in Debtors' counsel's October 27, 2010 letter to Committee counsel. Second, it is typically the responsibility of the debtor's management, with the assistance of advisors and counsel, to negotiate chapter 11 plan terms and language and review and resolve proofs of claim. It is entirely appropriate for boards to rely on the judgment of management and the advice of professionals with respect to plan negotiations and resolution of proofs of claims. And as the Debtors have stated on numerous occasions, and as the Board is aware, the Proposed Plan is designed to leave open the Alter & Rosoff Claims and obviate the need for the Board to address them.

15. Finally, the Committee devotes a great deal of attention to the December 2009 Decision (not surprisingly, since it is the only allegedly improper posptetition act that the Committee has been able to identify). Notably, however, the December 2009 Decision was made after the Debtors' management agreed, *with the concurrence of the Committee*, to liquidate the Debtors. Unless the Committee advocates the novel corporate governance view that a company's decision to liquidate is not significant enough to require board approval, the Committee is hardly in a position to complain that the Board approved the action advocated by the Committee. And while Messrs. Alter and Rosoff subsequently contended that decision triggered certain change of control rights, at the time of the December 2009 Decision neither Messrs. Alter or Rosoff nor the Board were aware of the potential consequences of that decision on the Alter & Rosoff Claims, which had not yet been filed or prepared. In sum, the December 2009 Decision was made in normal course of corporate governance and notwithstanding that the

10

Debtors believe that neither the Debtors nor the Board acted inappropriately with respect to the November 2009 Decision, as a measure of compromise, they carved out the November 2009 Decision from the exculpation provision of the Proposed Plan.

**D.      The Debtors Are Not Seeking an Extension of Exclusivity to Pressure Creditors to Accede to the Proposed Plan**

16.      The Debtors are not seeking to extend exclusivity to pressure creditors to accede to the Proposed Plan.  The Debtors have been meeting with and negotiating the terms of the chapter 11 plan with the Committee since at least April 2010.  The Debtors originally intended to file the Plan in September 2010, but delayed filing the Proposed Plan for several months to give the Committee an opportunity to review and comment on drafts of the Proposed Plan and the Disclosure Statement.  The Debtors have gone above and beyond what is required by law to work with the Committee and to incorporate the Committee's comments into the Proposed Plan and the Disclosure Statement.  Contrary to the Committee's statements that the Debtors have refused to negotiate with the Committee, the Debtors modified the Proposed Plan to address nearly every issue raised by the Committee in plan negotiations.  The fact that only the three Disputed Issues remain evidences this.

17.      Additionally, the Debtors have worked with the Committee to address concerns that approval of the Proposed Plan by the Board may result in a "change in control" that would potentially entitle Messrs. Alter and Rosoff to a significant portion of the Alter & Rosoff Claims (the "*COC Issue*").  As reflected in the October 27, 2010, letter from Debtors' counsel to Committee's counsel, the Debtors gave the Committee exactly what it sought by procuring from Messrs. Alter and Rosoff an agreement (i) to treat the Board's approval of the Proposed Plan and authorization of the filing of the Proposed Plan (and any amendments or substitutions thereto) as having no different effect than if such Proposed Plan, amendments, and

RLF1 3697558v. 1

substitutions thereto had been approved and filed by the Committee without the Board's

approval of such plan or authorization of filing such plan, and (ii) deeming Messrs. Alter and/or

Rosoff to be treated as if terminated "For Cause" on October 31, 2010, prior to the Board's

approval of the Proposed Plan, if a court of competent jurisdiction enters a final, nonappealable

order including a finding that Messrs. Alter and/or Rosoff, as applicable, could have been

properly terminated on October 31, 2010 "for Cause," as such term is used in the applicable

benefit plans.  The Committee rejected this apparent homerun for the creditors without any

explanation and requested instead that the Debtors either require Messrs. Alter and Rosoff to

waive a portion of their claims – an act that is outside the Debtors' control – or indefinitely delay

the approval and the filing of the Proposed Plan, which delay would have been open ended and

not in the interests of the estates and their creditors.[7]

18.    In reality, therefore, the Committee's accusation that the Debtors are

seeking an extension of exclusivity to pressure creditors is an accusation that reflects the

Committee's conflicts, not the Debtors'.  Specifically, it is the Committee that is using the

exclusivity process to pressure Messrs. Alter and Rosoff to accede to the Committee's demands.

The Committee's actions to date, such as its insistence on taking costly and unnecessary

---

[7] In the Objection, the Committee for the first time provides a supposed reason why Messrs. Alter and Rosoff's letter agreement was allegedly insufficient.  The Committee's sole articulated explanation appears to be that the agreement allegedly shifts the burden of proof to the Committee and/or the liquidating trustee to file a lawsuit seeking a final order that Messrs. Alter and Rosoff could have been terminated "for Cause" on October 31, 2010.  This ignores that in any circumstance both the estate and Messrs. Alter and Rosoff will have a full opportunity to make their case to a trier of fact and law.  The flimsiness of the "burden" distinction is underscored by the Committee's failure to provide this justification earlier, such as in the Committee counsel's letter to Debtors' counsel dated November 1, 2010, in which the Committee rejected the agreement of Messrs. Alter and Rosoff.  Moreover, the Alter and Rosoff letter agreement provides an advantage to the Committee and the creditors that they would not have had under the applicable agreements: the agreements provide that the benefits are only lost if the Board finds cause and terminates Messrs. Alter and Rosoff before a change of control.  Therefore, if the Board did not find cause and terminate Messrs. Alter and Rosoff, the benefits would not be lost.  The letters does not require an actual termination and leaves the issue of cause up to the court.

discovery of the Debtors and seeking to terminate exclusivity to resolve narrow legal issues, evidence the lack of good faith on the part of the Committee.[8] The Committee should not be allowed to jeopardize the Proposed Plan, with which the Committee mostly agrees, and which will result in significant recoveries to creditors, solely to put pressure on Messrs. Alter and Rosoff to withdraw portions of their claims, which they are obviously entitled to assert.

**E.      Creditors' Rights Are Protected by the Court Process**

19.      The Committee takes issue with the fact that the Proposed Plan does not provide the Committee with certain consent rights and alleges that the Debtors reneged on their "agreement" to provide the Committee those consent rights.  To be clear, the Debtors did not renege on any "agreement."  Contrary to the Committee's argument, the only reason the Debtors were willing to give the Committee certain consent rights in a consensual plan was precisely because the plan would have been consensual – not because creditors are the primary economic stakeholders in this case, as the Committee alleges.  It made no sense for the Debtors to give the Committee any consent rights – or for the Committee to expect consent rights – over a chapter 11 plan that the Committee did not support, as the Committee could then use those consent rights to block confirmation of the plan.

20.      Notwithstanding the fact that the Committee does not have consent rights, it and any other party in interest, including any creditor, still has the right to object to anything in the Disclosure Statement, the Proposed Plan, the proposed confirmation order, and any documents that are to be filed with the Plan Supplement (as defined in the Proposed Plan).  The

---

[8] Notably, after advocating for expedited and overly broad discovery in connection with the Motion, it was the Committee who cancelled Mr. Rosoff's deposition. Contrary to the Committee's allegations that the Debtors waited until the last minute to provide the Committee certain board materials, it was the Committee that held up delivery of those board minutes by ignoring the Debtors' requests for a protective order.

13

Debtors will disclose as part of the Plan Supplement, among other things, (i) the identity of the liquidating trustees,[9] (ii) the forms of the liquidating trust agreements, and (iii) the identity of the Board of the Reorganized Advanta, which the Debtors will propose only after such members are approved by at least two-thirds of existing Board members, thereby addressing a COC Issue over which the Committee has expressed concern.  (Because the Debtors are not selecting the new Board of Reorganized Advanta until the filing of the Plan Supplement, the Debtors have had no need to-date to discuss the approval of the new Board with its existing Board.)  The Committee and other parties in interest will have adequate opportunity to review the Debtors' selection of liquidating trustees and the new Board, as well as forms of liquidating trust agreements, among other documents, and object to any of these if necessary.  The Court can then resolve any disputes over the selection of the liquidating trustees, the new Board or the plan documents.  The plan approval process thus adequately protects the Committee and creditors without needing to provide the Committee with an undeserved and potentially destructive ability to block the Proposed Plan.

## Conclusion

21.     The Committee's request to terminate the Debtors' Exclusive Periods is simply an attempt to force the Disputed Issues to be resolved in the Committee's favor.  No cause has been shown to terminate the Exclusive Periods.  Instead, ample cause exists to extend the Exclusive Periods so that the Debtors can prosecute the Proposed Plan in an orderly and timely fashion.

---

[9] The Debtors have sent out requests for proposals for the liquidating trustee position to a number of individuals and institutions, including FTI Consulting, the Committee's financial advisor.

RLF1 3697558v. 1

WHEREFORE, the Debtors respectfully request that the Court (i) overrule and deny the Exclusivity Objections, (ii) enter an order granting the Motion, and (iii) grant such other and further relief as is just.

Dated:  December 13, 2010
        Wilmington, Delaware

/s/ *Zachary I. Shapiro*
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Chun I. Jang (No. 4790)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

WEIL, GOTSHAL & MANGES LLP
Marcia  L. Goldstein
Robert J. Lemons
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION

RLF1 3697558v. 1