# EXHIBIT A

**Revised Confirmation Order**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                           :
In re                                      :          Chapter 11
                                           :
ADVANTA CORP., et al.,¹                    :          Case No. 09-13931 (KJC)
                                           :
            Debtors.                       :          (Jointly Administered)
                                           :
-------------------------------------------------------------x   Re: Docket Nos. 1121, 1159, 1171 & 1172
```

## ORDER CONFIRMING DEBTORS'
## <u>JOINT PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED</u>

Advanta Corp. ("*Advanta*") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (the "*Debtors*"), having proposed and filed

the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as

modified February 11, 2011, the "*Plan*") with the United States Bankruptcy Court for the

District of Delaware (the "*Bankruptcy Court*"); and the Bankruptcy Court having entered, after

due notice and a hearing, the Order (I) Approving the Disclosure Statement, (II) Approving

Notice and Objection Procedures for the Disclosure Statement Hearing, (III) Establishing

Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing, and (V)

Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan [Docket

No. 1042] (the "*Disclosure Statement Order*"); and the Disclosure Statement for Debtors' Joint

---

¹ The Debtors in these jointly administered Chapter 11 Cases are Advanta, Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., Advanta Shared Services Corp. ("*ASSC*"), Advanta Service Corp. ("*ASC*"), Advanta Advertising Inc., Advantennis Corp., Advanta Mortgage Holding Company, Advanta Auto Finance Corporation ("*Advanta Auto Finance*"), Advanta Mortgage Corp. USA ("*AMCUSA*"), Advanta Finance Corp. ("*Advanta Finance*"), Advanta Ventures Inc., BE Corp. (f/k/a BizEquity Corp.), ideablob Corp., Advanta Credit Card Receivables Corp. ("*ACCRC*"), Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp.

Plan Under Chapter 11 of the Bankruptcy Code, as Modified, dated November 2, 2010, as

modified December 17, 2010 (the "***Disclosure Statement***"), the Plan, and the Solicitation

Materials (as defined below) having been distributed or made available to holders of Claims[2]

and Equity Interests in the Debtors and other parties in interest entitled to vote thereon as

provided in the Disclosure Statement Order; and due notice of (i) entry of the Disclosure

Statement Order, (ii) the Confirmation Hearing, and (iii) the deadline for voting on, and/or

objecting to, the Plan having been provided to holders of Claims against and Equity Interests in

the Debtors and other parties in interest in accordance with the Disclosure Statement Order, the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "***Local Rules***") as established by the affidavits of service, mailing,

and/or publication filed with the Bankruptcy Court (the "***Notice Affidavits***");[3] and certain

objections to confirmation of the Plan having been filed (the "***Objections***"); and after full

consideration of (i) the Debtors' Memorandum of Law in Support of Confirmation of the

Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, as Modified, dated February 8,

2011 (the "***Confirmation Brief***") [Docket No. 1156], (ii) the Declaration of Jeffrey S. Stein of

The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and

Results of Voting With Respect to the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy

Code, as Modified, dated February 8, 2011 [Docket No. 1147] (describing the methodology for

the tabulation and results of voting with respect to the Plan and evidencing that the Debtors have

received the requisite acceptances of the Plan in both number and amount as required by section

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms
in the Plan or the Disclosure Statement (both as defined herein), as may be applicable.

[3] The Notice Affidavits have been filed at Dockets Nos. 1083, 1084 and 1085.

1126 of the Bankruptcy Code) (the "**GCG Declaration**"); (iii) the Declaration of William A. Rosoff in Support of Confirmation of the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, as Modified, dated February 8, 2011 [Docket No. 1154] (the "**Rosoff Declaration**"); (iv) the Declaration of Joseph A. Bondi in Support of Confirmation of the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, as Modified, dated February 8, 2011 [Docket No. 1155] (the "**Bondi Declaration**," and, together with the GCG Declaration and the Rosoff Declaration, the "**Declarations**"); and (v) each of the Objections; and the hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on February 10, 2011 (the "**Confirmation Hearing**"); and the Bankruptcy Court having reviewed and considered the Disclosure Statement, the Plan, the Plan Supplement (as defined below), the Disclosure Statement Order, the Confirmation Brief, the Declarations, each of the Objections that has not been withdrawn or otherwise mooted and the Debtors' responses thereto, and all related documents; and all Objections having been withdrawn, resolved, or otherwise overruled or addressed as set forth herein or by separate further order of the Bankruptcy Court; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing, including the Declarations filed and testimony provided therein; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the Confirmation Hearing, including the arguments of counsel and all of the evidence adduced at the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby

FINDS, DETERMINES, AND CONCLUDES THAT:

## Findings of Fact

A.  <u>Findings and Conclusions</u>.   The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 9014.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Jurisdiction and Venue

B.  <u>Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.   This Bankruptcy Court has jurisdiction over the Debtors' Chapter 11 Cases (as defined below), the confirmation of the Plan and the Objections pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Bankruptcy Court has jurisdiction to enter a final order with respect thereto.   The Debtors are eligible debtors under section 109 of the Bankruptcy Code.   Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  <u>Commencement and Joint Administration of the Debtors' Chapter 11 Cases</u>.   On November 8, 2009 and November 20, 2009 (collectively, the "***Commencement Date***"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").   By order of the Bankruptcy Court, dated November 10, 2009 [Docket No. 21], the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered.   The Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee has been appointed in these Chapter 11 Cases.

D.  Official Committee of Unsecured Creditors.  On November 24, 2009, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), pursuant to its authority under section 1102 of the Bankruptcy Code, appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

E.  Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced and/or presented at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

## Solicitation and Notice

F.  Solicitation and Notice.  On December 17, 2010, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation of votes on the Plan. The (a) Disclosure Statement (with a copy of the Plan attached thereto), (b) Disclosure Statement Order, (c) Confirmation Hearing Notice, (d) appropriate ballots for voting on the Plan (the "**Ballots**"), and (e) letter from the Creditors' Committee (collectively, the "**Solicitation Materials**") were served in compliance with the Bankruptcy Rules and the Disclosure Statement Order.   As described in the GCG Declaration and the Notice Affidavits, (i) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these Chapter 11 Cases, (ii) all parties required to be provided notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy

Rules, and the Disclosure Statement Order, and (iii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order were timely provided in compliance with the Bankruptcy Rules and the Disclosure Statement Order.

G. <u>Good-Faith Solicitation</u>. The Debtors, the Committee, the designated Trustees and the Delaware Trustee, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives have, for purposes of section 1125(e) of the Bankruptcy Code, (i) acted in good faith in soliciting acceptances and rejections of the Plan and (ii) acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code in any offer, issuance, sale or purchase of any securities offered or sold under the Plan.

H. <u>Voting</u>. Votes on the Plan were solicited after disclosure to holders of Claims against and Equity Interests in the Debtors of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the GCG Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules.

I. <u>Plan Supplement</u>. On January 22, 2011, the Debtors filed that certain supplement to the Plan [Docket No. 1121] (as amended or modified, the "***Plan Supplement***"), which includes the following documents: (i) Schedule of Executory Contracts to be Assumed Pursuant to Section 8.1 of the Plan; (ii) Schedule of Compensation and Benefit Programs to continue through the Effective Date Pursuant to Section 8.7 of the Plan; (iii) forms of Trust Agreements; (iv) list of initial directors of Reorganized Advanta and ASC; (v) list of initial officers of Reorganized Advanta and ASC; and (vi) amended charter and by-laws for Reorganized Advanta

and ASC.   On February 8, 2011, the Debtors filed certain modifications to the Plan Supplement, including: (a) a modified Schedule of Executory Contracts to be Assumed Pursuant to Section 8.1 of the Plan (as modified, **"Schedule 8.1"**); (ii) a modified Schedule of Compensation and Benefit Programs to continue through the Effective Date Pursuant to Section 8.7 of the Plan; and (iii) revised forms of Trust Agreements.   All such materials comply with the terms of the Plan, and the filing and notice of such documents was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required.

### Modifications to the Plan and the Plan Supplement

J.      Modifications.   Subsequent to Solicitation, on February 8, 2011, the Debtors filed certain modifications to the Plan and to the documents that were filed in the Plan Supplement (collectively the "**Modifications**").   None of the Modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes on the Plan. Pursuant to section 1127(a) of the Bankruptcy Code, the Modifications are hereby made a part of the Plan.

K.      Notice of Modifications.   The filing on the docket and the description of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.   The Modifications do not materially or adversely affect the treatment of any Claims against or Equity Interests in the Debtors under the Plan.

L.      Deemed Acceptance of Plan as Modified.   In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Plan as modified consistent with

the Modifications. No holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

M. <u>Compliance with Bankruptcy Code Section 1127</u>. The Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## Compliance With Section 1129 of the Bankruptcy Code

N. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

O. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

P. <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Indenture Trustee Fees, and Priority Tax Claims, which need not be classified, Article III of the Plan designates the following classes of Claims and Equity Interests: Classes 1(a)-(f) (Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 2(a)-(f) (Secured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Class 3 (Investment Note Claims and RediReserve Certificate Claims against Advanta), Classes 4(a)-(f) (General Unsecured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance, respectively), Class 5 (Subordinated Note Claims against Advanta), Classes 6(a)-(f) (Subordinated Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 7(a)-(c)

(Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC, respectively), Classes 7(d)-(f) (Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance, respectively), and Class 7(g) (Equity Interests in ASC). Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. Thus, the Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Q. <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III and Sections 4.1, 4.2, and 4.14 of the Plan specify that Classes 1(a)-(f) (Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 2(a)-(f) (Secured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), and Class 7(g) (Equity Interests in ASC) are unimpaired by the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

R. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III and Sections 4.3 through 4.13 of the Plan specify that Class 3 (Investment Note Claims and RediReserve Certificate Claims against Advanta), Classes 4(a)-(f) (General Unsecured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance, respectively), Class 5 (Subordinated Note Claims against Advanta), Classes 6(a)-(f) (Subordinated Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 7(a)-(c) (Equity

Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC), and Classes 7(d)-(f) (Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance) are impaired pursuant to the Plan and set forth the treatment of such Classes under the Plan, thereby complying with section 1123(a)(3) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

S.    No Discrimination (11 U.S.C. § 1123(a)(4)).    The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment in respect of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

T.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).    The Plan and the various documents in the Plan Supplement provide for adequate and proper means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

U.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).    The amended charter and by-laws for Reorganized Advanta and ASC, forms of which are included in the Plan Supplement, conform to section 1123(a)(6) of the Bankruptcy Code's prohibition on the issuance of nonvoting equity securities and do not permit either Reorganized Advanta or ASC to issue nonvoting equity securities to the extent disallowed by section 1123(a)(6). Consequently, the applicable post-Effective Date organizational documents comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

V.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).    The initial directors and officers for both Reorganized Advanta and ASC are set forth in the Plan Supplement, and their respective constituent documents set out the procedures for selection of

subsequent directors and officers.   The selection of FTI Consulting, Inc. ("***FTI***") as the Trustee

for each Trust and Wilmington Trust Company as Delaware Trustee for each Trust was made in

consultation with the Creditors' Committee.   The Trusts will be overseen by the TABs.   The

initial members of the TABs for each Trust have been designated by the Debtors with the

consent of the Creditors' Committee, and their names are contained in the Plan Supplement as an

exhibit to each Trust Agreement.   Such procedures are consistent with the interests of creditors

and equity holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy

Code.

      W.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.   The additional provisions of

the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.   The failure to specifically address a

provision of the Plan in this Order shall not diminish or impair the effectiveness of such

provision.

      X.    <u>Impairment/Unimpairment of Classes of Claims and Equity Interests</u>

<u>(§ 1123(b)(1))</u>.   As contemplated by section 1123(b)(1) of the Bankruptcy Code, (I) Classes

1(a)-(f) (Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA,

Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 2(a)-(f) (Secured

Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance,

ASSC, and Advanta Finance, respectively), and Class 7(g) (Equity Interests in ASC) are not

impaired by the Plan; and (II) Class 3 (Investment Note Claims and RediReserve Certificate

Claims against Advanta), Classes 4(a)-(f) (General Unsecured Claims against the Consolidated

Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance,

respectively), Class 5 (Subordinated Note Claims against Advanta), Classes 6(a)-(f)

(Subordinated Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 7(a)-(c) (Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC), and Classes 7(d)-(f) (Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance) are impaired by the Plan.

       Y.     <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>.  In accordance with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides for the rejection of executory contracts and unexpired leases of the Debtors as of immediately prior to the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, (ii) as to which a motion for approval of the assumption, assumption and assignment, or rejection, of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, or (iii) that is specifically designated as a contract or lease to be assumed, or assumed and assigned, on Schedule 8.1 of the Plan.  The listing of a document on Schedule 8.1 of the Plan shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.  Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

       Z.     <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.4 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. The cure amounts identified in Schedule 8.1 of the Plan represent the amounts, if any, that are determined by the Debtors in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law to be the final amounts to be paid to Claimants in full and

complete satisfaction of such default claims.   No Claimant listed on Schedule 8.1 of the Plan may seek payment in excess of the amounts listed on Schedule 8.1.   Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

AA.   <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

> (a)   Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;
>
> (b)   The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and
>
> (c)   The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

BB.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3))</u>.   The Debtors are the proponents of the Plan.   The Debtors have proposed the Plan (including the Plan Supplement and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   The Debtors' good faith is evident from the Declarations, the facts and the record of these Chapter 11 Cases, including the record of the hearing to approve the Disclosure Statement, and the record of the Confirmation Hearing, and other proceedings held in connection with these Chapter 11 Cases.   The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates for the benefit of all creditors.   The Plan was negotiated at arms' length between and among representatives of the Debtors, the Creditors' Committee, and other parties in interest, and represents the culmination of months of intensive negotiations and discussions among all parties

in interest.   Moreover, the Plan accomplishes maximization of the Debtors' assets and equitable distribution of these assets by providing the means through which the Debtors and the Trusts may effectuate distributions to their creditors.   Inasmuch as the Plan promotes the purposes of the Bankruptcy Code, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3).   Further, the Plan's classification, indemnification, exculpation and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and are each necessary to effectuate the Debtors' successful wind-down.

CC.   <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   Pursuant to the interim compensation procedures previously approved by this Bankruptcy Court and established in these Chapter 11 Cases under section 331 of the Bankruptcy Code, any payments made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the chapter 11 case, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

DD.   <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.   The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.   The identity and affiliations of the persons proposed to serve as the initial directors and officers of Reorganized Advanta and ASC after the Effective Date of the Plan have been fully disclosed in the Plan Supplement, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.   To the extent the appointment of the Trustees or the Delaware Trustee implicates section 1129(a)(5),

such appointments were made in conjunction with and with the support of the Creditors' Committee and are in the best interest of all creditors.   The Debtors have disclosed the identities of the Trustees and the Delaware Trustee in the Trust Agreements.   As such, the Plan satisfies section 1129(a)(5).

EE.    No Rate Changes (11 U.S.C. § 1129(a)(6)).   Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.

FF.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).   The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.   The liquidation analysis contained in the Disclosure Statement, (i) is persuasive and credible, (ii) has not been controverted by other evidence, (iii) is based on commonly accepted methodologies and reasonable assumptions, and (iv) provides a reasonable estimate of the liquidation values upon conversion to cases under chapter 7 of the Bankruptcy Code.   With respect to each impaired class of Claims against or Equity Interests in the Debtors, each holder of a Claim or Equity Interest in such Class has accepted the Plan or will receive or retain pursuant to the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.   Based on the Declarations and any additional evidence presented at the Confirmation Hearing, the Bankruptcy Court finds that the holders of Claims and Equity Interests in all Classes will receive at least as much under the Plan as they would receive under a hypothetical chapter 7 liquidation.   Accordingly, the Plan satisfies the "best interests test" under section 1129(a)(7) of the Bankruptcy Code.

GG. _Acceptance by Certain Classes (11 U.S.C. 1129(a)(8))_. Classes 1(a)-(f) (Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), Classes 2(a)-(f) (Secured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), and Class 7(g) (Equity Interests in ASC) are unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan pursuant to section 1126(f). Class 3 (Investment Note Claims and RediReserve Certificate Claims against Advanta), Classes 4(a)-(f) (General Unsecured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance, respectively), Class 5 (Subordinated Note Claims against Advanta), and Classes 7(d)-(f) (Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance), which are impaired Classes of Claims or Equity Interests eligible to vote, have affirmatively voted to accept the Plan. As such, section 1129(a)(8) is satisfied with respect to these Classes of Claims and Equity Interests. Holders of Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC, respectively, in Classes 7(a)-(c) are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, because such Classes will neither receive nor retain any property on account of their interests in the Debtors. In addition, holders of Claims in Class 6(a) (Subordinated Claims against the Consolidated Debtors), which is an impaired Class of Claims eligible to vote, did not return any ballots. There are no holders of Claims in Classes 6(b)-(f) (Subordinated Claims against Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively) and accordingly, no votes were cast on behalf of those Claims either. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to Classes 6(a)-(f) and

Classes 7(a)-(c), the Plan nevertheless is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 6(a)-(f) and Classes 7(a)-(c), as set forth below.

HH.    Treatment of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims and Secured Claims (11 U.S.C. § 1129(a)(9)).   The treatment of Administrative Expense Claims, Priority Tax Claims, and Secured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively, pursuant to Sections 2.1, 2.4, and 4.2 of the Plan respectively, satisfies the requirements of sections 1129(a)(9)(A), (C) and (D) of the Bankruptcy Code.   The treatment of Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively, pursuant to Section 4.1 of the Plan satisfies the requirements of sections 1129(a)(9)(B) of the Bankruptcy Code, as applicable.

II.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).   Class 3 (Investment Note Claims and RediReserve Certificate Claims against Advanta), Classes 4(a)-(f) (General Unsecured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance, respectively), Class 5 (Subordinated Note Claims against Advanta), and Classes 7(d)-(f) (Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance), each of which is impaired pursuant to the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

JJ.    Feasibility (11 U.S.C. § 1129 (a)(11)).   The evidence proffered or adduced at the Confirmation Hearing and set forth in the Rosoff Declaration (i) is persuasive and credible; (ii) has not been controverted by other evidence, and (iii) establishes that the Debtors will have

sufficient resources to timely meet all of their financial obligations under the Plan, including post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases.   Accordingly, the Plan is feasible and section 1129(a)(11) is satisfied.

KK.   Payment of Fees (11 U.S.C. § 1129(a)(12)).   As required pursuant to Section 12.8 of the Plan, all fees due and payable pursuant to 28 U.S.C. § 1930 have been or will be paid on the Effective Date, or as soon thereafter as is practicable, by the applicable Trust, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

LL.   Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   As reflected in the Rosoff Declaration, the Debtors believe that the COLI Program is the Debtors' only "retiree benefit" as such term is defined in section 1114(a) of the Bankruptcy Code.   As provided in Section 8.7 of the Plan, the COLI Program will continue in effect after the Effective Date, subject to the right of the Trustees or Reorganized Advanta, as applicable, to modify, terminate, or surrender the COLI Program and/or any underlying insurance policies in accordance with the terms thereof.   Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

MM.   No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).   The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.   Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

NN.   The Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).   The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

OO.   No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. §
1129(a)(16)).   The Debtors are each moneyed, business, or commercial corporations and/or
partnerships, as the case may be, and accordingly, section 1129(a)(16) of the Bankruptcy Code is
inapplicable in these Chapter 11 Cases.

PP.   No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   The
Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy
Code with respect to Classes 6(a)-(f) (Subordinated Claims against the Consolidated Debtors,
Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively), and
Classes 7(a)-(c) (Equity Interests in the Consolidated Debtors (other than ASC), Advantennis,
and ASSC, respectively) (collectively, the "***Non-Accepting Classes***").   Based on the evidence
proffered, adduced, and/or presented at the Confirmation Hearing and in the Declarations, the
Plan does not discriminate unfairly and is fair and equitable with respect to the Non-Accepting
Classes.   As required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, the Plan does
not "unfairly discriminate" because each Non-Accepting Class is of a different legal nature and
priority, and no Class of Claims or Equity Interests of similar legal rights is receiving different
treatment under the Plan.   Specifically, the Plan does not discriminate unfairly with respect to
Classes 6(a)-(f) because the Plan enforces applicable subordination provisions pursuant to
section 510 of the Bankruptcy Code.   The Plan is also "fair and equitable" as to the Non-
Accepting Classes because the Plan maintains the relative priority among the classes.   The Plan
is "fair and equitable" as to holders of (i) Subordinated Claims against the Consolidated Debtors,
Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance (Class 6(a)-(f)),
and (ii) Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC,
respectively (Classes 7(a)-(c)) because no junior Class of Claims or Equity Interest will receive

or retain any property under the Plan on account of their Claims or Equity Interests until the more senior Claims are paid in full.   Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to each of the Non-Accepting Classes.   As such, the Plan may be confirmed notwithstanding the rejection by the Non-Accepting Classes.

QQ.   <u>Only One Plan (11 U.S.C. § 1129(c))</u>.   The Plan is the only plan filed in these Cases, and accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

RR.   <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.   The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

SS.   <u>Not Small Business Cases (11 U.S.C. § 1129(e)</u>.   None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

TT.   <u>Satisfaction of Confirmation Requirements</u>.   Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Plan Implementation**

UU.   <u>Implementation</u>.   The Plan and all documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arms'-length and shall, on and after the Effective Date, constitute legal, valid, binding and authorized obligations of the respective parties thereto, are not in conflict with any federal or state law, and will be enforceable in accordance with their terms.

VV.   <u>Substantive Consolidation</u>.   No parties have objected to the substantive consolidation of the Consolidated Debtors and all parties are hereby deemed to have consented to the substantive consolidation of the Consolidated Debtors.   Accordingly, substantive

consolidation of the Consolidated Debtors pursuant to section 105(a) of the Bankruptcy Code satisfies applicable law and is appropriate based on the facts and circumstances of these Chapter 11 Cases.

WW.    Executory Contracts and Unexpired Leases.    The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan.

## Injunctions and Exculpations

XX.    Injunctions and Exculpations.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunctions, and the exculpations set forth in Article X of the Plan.    Such provisions, in accordance with section 105(a) of the Bankruptcy Code, (i) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair and reasonable and (iv) are in the best interests of the Debtors, their estates, and parties in interest.    Further, the exculpations in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, criminal conduct, or the other exceptions set forth therein.    Based upon the record of these Chapter 11 Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Bankruptcy Court finds that the injunctions and exculpations set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

## Other Findings

YY.    Trusts.    Entry into the Trust Agreements is in the best interests of the Debtors, the Debtors' Estates, and all stakeholders.    The establishment of the Trusts, the selection of FTI to serve as the Trustee for each of the Trusts, the selection of Wilmington Trust Company to

serve as the Delaware Trustee of each Trust, the selection of the initial members of the TABs as named in the Plan Supplement as an exhibit to each Trust Agreement, and the form of the proposed Trust Agreements are appropriate and in the best interests of the Debtors stakeholders. The Trust Agreements shall, upon execution, be valid, binding and enforceable in accordance with their terms.

ZZ.    Preservation of Causes of Action.   It is in the best interests of the Debtors and their creditors and holders of Equity Interests that all Causes of Action, other than those expressly released under the Plan, be retained by Trusts as set forth in the Plan.

**The Plan Satisfies Confirmation Requirements**

AAA.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Confirmation.   The Plan is CONFIRMED in its entirety pursuant to section 1129 of the Bankruptcy Code.   A copy of the confirmed Plan is attached as *Exhibit A* to this Order. The terms of the Plan and the Plan Supplement, as modified or amended, are incorporated by reference into, and are an integral part of, this Order.   The letters dated November 1, 2010 and December 15, 2010 from Dennis Alter and William Rosoff, copies of which are attached hereto as *Exhibit B*, are valid and binding on the signatories thereto, and are incorporated by reference into, and are an integral part of, this Order.

2.    Objections.   All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated.   All Objections, responses, statements, and comments in opposition to the Plan (including to the claims to be disallowed pursuant to Section 12.10 of the Plan), other than

those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein, are overruled for the reasons stated on the record.

3.　　Plan Supplement.　The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and any documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein or contemplated thereby), as applicable, are authorized and approved when they are finalized, executed and delivered.　Without further order or authorization of this Bankruptcy Court, prior to the Effective Date, the Debtors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that do not conflict with the Plan.　Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, and be enforceable in accordance with their terms.

4.　　Omission of Reference to Particular Plan Provisions.　The failure to specifically describe or include any particular provision of the Plan or the Plan Supplement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Bankruptcy Court that the Plan and the Plan Supplement be approved and confirmed in its entirety.

5.　　Allowance of Certain Claims.

(a)　　As set forth in Section 4.3(a) of the Plan, proof of Claim assigned number 941, filed by the Retail Note Indenture Trustee, is hereby Allowed in an amount of $140,622,493.80 in the aggregate and shall be satisfied pursuant to the terms of the Plan.

Accordingly, the proofs of Claims listed on Schedule 12.10 to the Plan are hereby disallowed as duplicative of proof of Claim number 941, without need for any further action or court order.

(b)     As set forth in Section 4.10(a) of the Plan, proof of Claim assigned number 1718, filed by the 8.99% Indenture Trustee, is hereby Allowed in an amount of $96,511,556.06 in the aggregate and shall be satisfied pursuant to the terms of the Plan.   The proofs of Claims filed on behalf of Subordinated Note Claims assigned numbers 1717, 1720, are 1721 are hereby deemed withdrawn.

6.     Plan Classification Controlling.   The classifications of Claims and Equity Interests for purposes of the distributions to be made pursuant to the Plan shall be governed solely by the terms of the Plan.   The classification set forth on the Ballots tendered or returned by the Debtors' stakeholders in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Trusts, or stakeholders for purposes other than voting on the Plan.

7.     Binding Effect.   Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interest, including any Equity Interest, of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to or received a distribution under the Plan.

8.     Exchange of Trust Preferred Securities.   Subject to Paragraph 11 of this Order, pursuant to Section 5.1 of the Plan, to effectuate the terms of the ACT Declaration of Trust, on

the Effective Date, the ACT Securities shall be deemed automatically cancelled and extinguished, and the obligations of the Debtors and ACT under any agreements, indentures, guarantees or certificates of designations governing or specifically related to the ACT Securities shall be discharged in each case without further act or action under any applicable agreement, law, regulation, order, or rule and without any further action on the part of the Bankruptcy Court or any Person; *provided*, *however*, that each holder of Trust Preferred Securities shall be deemed to have received on the Effective Date an Allowed Subordinated Note Claim in an amount equal to a Like Amount of Subordinated Notes. For the avoidance of doubt, on the Effective Date, (i) ACT's claims against Advanta and the guarantee claims against Advanta of the holders of Trust Preferred Securities shall be extinguished; and (ii) Advanta shall have no Claims on account of the Common Securities and all Claims on account of Common Securities shall be extinguished. On the Effective Date, the ACT Declaration of Trust shall be deemed terminated and ACT shall be deemed dissolved without any further action on the part of the Bankruptcy Court or any Person. After performance by the ACT Trustees of any duties that are required under the Plan, this Order and/or under the terms of any agreements, indentures, guarantees or certificates of designations to implement the terms of Section 5.1 of the Plan, the ACT Trustees and each of their agents shall be relieved of, and released from, all obligations associated with the ACT Securities under applicable trust agreements or law.

9. <u>Merger, Dissolution, or Consolidation of Corporate Entities</u>. Pursuant to Section 5.3 of the Plan and section 1123(a)(5)(C) of the Bankruptcy Code, on and as of the Effective Date, all Debtors (other than Advanta and ASC) shall be deemed dissolved without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which such Debtors are incorporated or any other jurisdiction; *provided, however*,

that the applicable Trustees shall have authority to take whatever actions are necessary to

dissolve the Debtors (other than Advanta and ASC).   In addition, prior to the Effective Date, the

Debtors with the consent of the Creditors' Committee (which consent shall not be unreasonably

withheld), and after the Effective Date, the applicable Trustee, shall have authority to: (i) cause

any or all of Advanta, ASC, or any non-Debtor Affiliate (other than the ABC Parties) to be

merged into one or more of the Debtors, dissolved or otherwise consolidated, (ii) cause the

transfer of assets between or among Advanta, ASC, or any non-Debtor Affiliate (other than the

ABC Parties), (iii) to the extent determined appropriate by the Debtors and the applicable

Trustee, cause the reduction, recharacterization, reinstatement or discharge of any Intercompany

Claim (to the extent not already eliminated under Section 5.2 of the Plan) and any claim between

any non-Debtor Affiliate (other than the ABC Parties) and any Debtor, or (iv) engage in any

other transaction in furtherance of the Plan.

        10.     <u>Reorganized Advanta</u>.   The Board of Directors of Advanta is authorized, without

any further action, to issue one share of Trustee Stock in Reorganized Advanta to the Advanta

Trustee, and to take any other action in furtherance thereof with the consent of the Creditors'

Committee (which consent shall not be unreasonably withheld), for the purpose of reorganizing

Advanta.   On the Effective Date, the share of Trustee Stock shall be delivered to the Advanta

Trust.

        11.     <u>Cancellation of Existing Securities and Agreements</u>.   Pursuant to Section 5.6 of

the Plan, except (a) as otherwise expressly provided in the Plan, (b) with respect to executory

contracts or unexpired leases that have been assumed by the Debtors, (c) for purposes of

evidencing a right to distributions under the Plan, or (d) with respect to any Claim that is

reinstated and rendered unimpaired under the Plan, on the Effective Date, the RediReserve

Certificates, Investment Notes, ACT Securities, Equity Interests and any and all other instruments evidencing any Claims or Equity Interests against or in the Debtors, including, without limitation, the Indentures, shall be deemed automatically cancelled and terminated as permitted by section 1123(a)(5)(F) of the Bankruptcy Code without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.   The RediReserve Certificates, Investment Notes, ACT Securities, Equity Interests and any and all other instruments evidencing any Claims or Equity Interests against or in the Debtors shall continue in effect solely for the purposes of (i) allowing a holder of an Allowed RediReserve Certificate Claim, an Allowed Investment Note Claim, an Allowed General Unsecured Claim and an Allowed Subordinated Note Claim to receive their distributions under the Plan (if any), (ii) enforcing the terms of the subordination provisions in the 8.99% Indenture, (iii) allowing the Disbursing Agents to make the distributions, if any, on account of Allowed Claims, (iv) allowing the Disbursing Agents to perform any necessary administrative functions with respect to the distributions (if any) to be made on account of Allowed Claims, and (v) permitting the Indenture Trustees to (a) maintain and assert their Charging Liens for payment of the Indenture Trustee Fees as provided in Section 2.3 of the Plan, (b) seek compensation and reimbursement for any reasonable and documented fees and expenses, if any, incurred in making distributions pursuant to the Plan, (c) maintain and enforce any right to indemnification under the applicable Indentures, which rights, if any, shall continue to exist regardless of whether or not a proof of Claim was filed by the applicable Indenture Trustee in the Chapter 11 Cases.   As soon as practicable after the Effective Date, the Debtors or the AC Trustee, with the cooperation of the applicable Indenture Trustee, shall send a letter of transmittal to each holder of an Allowed RediReserve Certificate Claim, an Allowed Investment

Note Claim, and an Allowed Subordinated Note Claim, advising such holder of the effectiveness of the Plan.   Delivery of any RediReserve Certificates, Investment Notes, or Subordinated Notes will be effected, and risk of loss and title thereto shall pass, only upon each holder's compliance with the terms and conditions of such letter of transmittal.   Delivery of any RediReserve Certificate or Investment Note shall be effected and risk of loss and title thereto shall pass so long as the holder of each such note has complied with the letter of transmittal, including providing a correct taxpayer number on a form W-9 provided with the transmittal letter, and the amount of the notes held by each holder as set forth in the letter of transmittal is the same amount that is reflected on the register of the note holders maintained by Advanta, as securities registrar, as of the Distribution Record Date.   If the record holder of a note is DTC or its nominee or another securities depository or custodian thereof, and such notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then the beneficial holder of such a note shall be deemed to have surrendered such holder's security, note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.   Upon compliance with Section 5.6 of the Plan in connection with any RediReserve Certificate, Investment Note, or Subordinated Note, the holders of such notes shall, for all purposes under the Plan, be deemed to have validly surrendered such note.

12.     Substantive Consolidation.   Entry of this Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Consolidated Debtors.   On and after the Effective Date (i) no distributions shall be made under the Plan on account of Intercompany Claims among the Consolidated Debtors, (ii) all guarantees by any of the Consolidated Debtors of the obligations of

any other Consolidated Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Consolidated Debtor and any guarantee thereof executed by any other Consolidated Debtor and any joint and several liability of any of the Consolidated Debtors shall be deemed to be one obligation of the deemed Consolidated Debtors, and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases of the Consolidated Debtors shall be deemed filed against the Consolidated Debtors and shall be deemed one Claim against and obligation of the Consolidated Debtors. The substantive consolidation contemplated in Section 5.2 of the Plan shall only include the Consolidated Debtors and shall not include Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance.

13. <u>The Trusts</u>. On or before the Effective Date, the Trust Agreements shall be executed by the applicable Debtors, the applicable Trustees and the Delaware Trustee, and the parties shall take all other steps necessary to establish the Trusts and the Beneficial Interests therein. In the event of any conflict between the terms of the Plan and the terms of the Trust Agreements, the terms of the Plan shall govern. The Trust Agreements may provide powers, duties and authorities in addition to those explicitly stated in the Plan, but only to the extent that such powers, duties and authorities do not affect the status of the Trusts as "liquidating trusts" for United States federal income tax purposes and do not conflict with the Plan. The Trust Assets shall be transferred to the Trusts in accordance with the provisions of the Plan and the Trust Agreements. FTI is hereby appointed as the Trustee for each of the Trusts and Wilmington Trust Company as the Delaware Trustee for each of the Trusts. Subject to the terms of the applicable Trust Agreement, the Trustees may retain and compensate attorneys and other professionals to assist in their duties as the trustees of the Trusts on such terms as the applicable Trustee deems appropriate without Bankruptcy Court approval. Without limiting the

foregoing, the Trustees may retain any professional that represented the Creditors' Committee or other parties in interest in these Chapter 11 Cases and the same professional may represent any or all of the Trusts, Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta. In addition, any member, principal, officer, director or employee of any applicable Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

14. <u>Vesting of Property in the Trusts</u>.    Except as otherwise provided in the Plan and/or this Order, on the Effective Date, all property of the Debtors' Estates shall vest in the Trusts, free and clear of all Claims, Interests, liens and encumbrances of any kind, as provided in the Plan.

15. <u>Books and Privileges</u>.    As provided in the Plan, in connection with the transfer of the Trust Assets to the applicable Trust, all Books and Privileges relating to such Trust Assets shall vest in the applicable Trustee solely in its capacity as such.    Consistent with Sections 1.88 and 5.4(c) of the Plan, the Debtors and the applicable Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of the Books and Privileges relating to their respective Trust Assets, to assert or waive any privilege relating to their respective Trust Assets, including, but not limited to, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and to direct current or former agents, attorneys, advisors and other professionals of such Debtor or Debtors to deliver such documents or communications.

16. <u>Committee's Privileges</u>.    Upon the dissolution of the Committee on the Effective Date pursuant to Section 12.11 of the Plan, all documents and communications of any kind, whether physical or electronic, the right to assert or waive any privilege or protection, including,

but not limited to, any attorney-client or work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and rights to direct current or former agents, attorneys, advisors and other professionals of the Creditors' Committee to deliver such documents or communications shall vest in the applicable Trustees. The Creditors' Committee, the Trustees and the members of the TABs are authorized to take all actions and to enter into such agreements as are appropriate for purposes of the sharing of the Creditors' Committee documents and communications and the vesting of the right to assert or waive any privilege or protection as contemplated in this Paragraph.

17.     Insurance Policies.    Nothing in the Disclosure Statement, the Plan, this Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies or related agreements (the "***Insurance Policy Documents***").  The rights and obligations of the insureds, the Debtors, the applicable Trust and insurers shall be determined under the Insurance Policy Documents, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and under applicable non-bankruptcy law.   Nothing in the Disclosure Statement, the Plan, this Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way (i) limit a Debtor, the Trusts or their assignees from asserting a right or claim to the proceeds of any insurance policy that insures any such Debtor, was issued to any such Debtor or was transferred to the Trusts by operation of the Plan, nor (ii) limit any right of any other party to challenge such right or claim.

18. <u>Treatment Is in Full Satisfaction</u>. All distributions under the Plan shall be made in accordance with the Plan and the Trust Agreements. The treatment of the distributions set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each Person holding a Claim in or Equity Interest against the Debtors or their property may have, including under any agreements.

19. <u>Unresolved Claims</u>. The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Unresolved Claims, are fair and reasonable and are approved.

20. <u>Postpetition Interest</u>. As soon as practicable after the applicable Trustees determine with reasonable certainty that holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims will receive distributions pursuant to Section 4.3 of the Plan aggregating 100% of the principal and accrued prepetition interest of their Allowed Claims, the applicable Trustees shall so notify the Indenture Trustees in writing (the "***Section 4.3 Notice***"). Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall prohibit the Retail Note Indenture Trustee and/or any holder of Allowed Investment Note Claims or Allowed RediReserve Certificate Claims from commencing an action in the Bankruptcy Court within forty-five (45) days after service of the Section 4.3 Notice asserting that under the Indentures, holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims are entitled to receive post-petition interest from the distributions that would otherwise have been made to holders of Allowed Subordinated Note Claims (the "***Interest Action***"). Nothing in the Plan shall preclude any party in interest, including, without limitation, the 8.99% Indenture Trustee, any holder of Subordinated Notes, the Debtors, or any of the Trustees, from challenging or otherwise participating in the Interest Action. The Trustees shall not make any

distributions to holders of Allowed Subordinated Note Claims or any distributions to the holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims exceeding 100% of the Allowed amount of such claims as set forth in Section 4.3(a) of the Plan, until after (i) the Interest Action has not been timely commenced, or (ii) if the Interest Action is timely commenced, entry of a Final Order resolving the Interest Action, in which case distributions shall be made pursuant to the terms of such Final Order.

21.    Approval of Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases.   Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption, assumption and assignment, or rejection, as the case may be, of the executory contracts and unexpired leases assumed, assumed and assigned, or rejected pursuant to Section 8.1 of the Plan.

22.    Inclusiveness.   Unless otherwise specified on Schedule 8.1 of the Plan, each executory contract and unexpired lease listed therein includes any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedule 8.1 of the Plan.

23.    Compensation and Benefit Programs.   Notwithstanding anything contained in the Plan to the contrary, unless listed on **Schedule 8.7** of the Plan or except as provided below in Section 8.7 with respect to the COLI Program, all Compensation and Benefit Programs shall be deemed terminated immediately prior to the Effective Date without any further action by the Bankruptcy Court or the Debtors; *provided, however*, that all employees employed by the

Debtors immediately prior to the Effective Date and covered by the Post Petition Advanta Employees' Severance Pay Plan, including those who will be employed by any of the Trusts, Reorganized Advanta or ASC immediately after the Effective Date, shall be entitled to benefits under the Post-Petition Advanta Employees' Severance Pay Plan as if their employment had been terminated by the Debtors immediately prior to the termination of the Post Petition Advanta Employees' Severance Pay Plan.

24.     Any Compensation and Benefit Program listed on *Schedule 8.7* may be terminated by Reorganized Advanta or the applicable Trustee any time after the Effective Date; *provided, however*, that for eighteen (18) months after the Effective Date, neither Reorganized Advanta nor the Trustees may terminate the underlying group health plan under which former employees of the Debtors (and their covered beneficiaries) are receiving COBRA coverage (the "*COBRA Health Plan*"); and *provided further, however*, that notwithstanding its inclusion on *Schedule 8.7* and its continuation after the Effective Date, if any Compensation and Benefit Program listed on *Schedule 8.7* is ultimately terminated after the Effective Date (other than the COBRA Health Plan, which shall be deemed terminated as of the date it is actually terminated by the Trustee or Reorganized Advanta pursuant to its terms), such termination will be deemed and treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program will be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been terminated by the Debtors immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such terminated Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period after the Effective Date, and any

such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date). Reorganized Advanta or the applicable Trustee shall provide the parties to and beneficiaries of any such terminated Compensation and Benefit Program written notice of such termination and any such party or beneficiary may rely on any proof of Claim filed by such party or beneficiary in the Chapter 11 Cases with respect to any Claims under such terminated Compensation and Benefit Program and without prejudice to any right of such party or beneficiary to amend or modify such proof of Claim.

25.      In the event any Compensation and Benefit Program listed on ***Schedule 8.7*** is determined to be an executory contract, nothing in the Plan or this Order shall be deemed to constitute an assumption of such Compensation and Benefit Program, and the applicable Trustee shall have authority to reject such Compensation and Benefit Program upon delivery of a written notice of such rejection to all parties to and beneficiaries of such Compensation and Benefit Program, and such rejection will be deemed treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program shall be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been rejected by the applicable Debtor immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such rejected Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period after the Effective Date, and any such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date).

26.     Nothing in the Plan or this Order shall (i) preclude any rights of any Person to assert that a "change of control" or "change in control" (as such term may be used in the SEIP, the SERP or any other agreement, benefit plan, severance plan, or other arrangement) has or has not occurred, including, without limitation, by reason of the formulation, filing, prosecution, confirmation, or consummation of the Plan, (ii) limit any rights of the Debtors, Reorganized Advanta, the Trustees, or the Debtors' estates to object to, contest, challenge, seek to subordinate or dispute any Claims asserted by any Person in connection with any Compensation and Benefit Program and/or termination or rejection of any Compensation and Benefit Program, or (iii) constitute a finding that the termination or rejection of any Compensation and Benefit Program pursuant to Section 8.7 of the Plan does or does not give rise to any Claims (and all parties' and beneficiaries' rights with respect thereto are hereby reserved).

27.     <u>Bar Date for Filing Proofs of Claim Relating to Executory Contacts and Unexpired Leases Rejected Pursuant to the Plan</u>.   Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan must be filed with the Debtors' Claims Agent, the Garden City Group, Attn: Advanta Corp., 5151 Blazer Parkway, Suite A, Dublin, OH 43017, no later than thirty (30) days after the later of (a) notice of entry of this Order and the Effective Date, (b) notice of an amendment to Schedule 8.1 of the Plan (solely with respect to the party directly affected by such modification), or (c) notice of the Debtors' election to reject such executory contract or unexpired lease under Section 8.4 or Section 8.7 of the Plan.   All such proofs of Claim not filed within the time set forth in this paragraph shall be forever barred from assertion against the Debtors and their estates or the Trusts and their assets.   The cure amounts identified on Schedule 8.1 of the Plan represent the amounts, if any, that are determined by the Debtors in accordance with the underlying

agreements and applicable bankruptcy and nonbankruptcy law to be the final amounts to be paid to Claimants in full and complete satisfaction of such default claims. No Claimant listed on the Schedule 8.1 may seek payment in excess of the amounts listed on Schedule 8.1.

28. <u>Post-Effective Date Assets</u>. Pursuant to Section 10.1 of the Plan, on and after the Effective Date, the Trustees may dispose of the assets of their respective Trusts free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the applicable Trust Agreement.

29. <u>Injunction</u>.

(a) Pursuant to Section 10.3 of the Plan, except as otherwise expressly provided herein or in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind (whether directly, derivatively or otherwise) against the Debtors related to a Claim or Equity Interest, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or against the property or interests in property of the Debtors, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, or (v) pursuing any Claim or Interest released pursuant to Section 10.7 of the Plan. Such injunction shall extend to any successors of the Debtors and their respective properties and interest in properties.

(b)     All Causes of Action against the Debtors that are not otherwise released under the Plan (other than with respect to federal taxes of Advanta and ASC) shall be channeled to the applicable Trust and be subject to the jurisdiction of the Bankruptcy Court.   Any Cause of Action brought against any Trust or any Trustee may only be brought before and heard by the Bankruptcy Court.

(c)     Notwithstanding anything to the contrary contained in the Plan, any Plan Supplement document, any amendment to the Plan, or this Order: (A) other than with respect to any Claim, Cause of Action or other assertion of liability that is released pursuant to Section 10.7 of the Plan, nothing contained in the Plan, any Plan Supplement document, any amendment to the Plan, or this Order shall release, enjoin, preclude or otherwise affect in any way the pursuit or prosecution of the claims asserted, or which may be asserted (including without limitation any appeals), against any non-Debtor in (i) that certain securities class action titled William E. Underland, on behalf of himself and all other similarly situated persons (collectively, the "*Underland Class Plaintiffs*") against Dennis Alter, *et. al.*, currently pending in the United States District Court, Eastern District of Pennsylvania (Philadelphia), Civil Action No. 2:10-cv 03621-CMR (the "*Underland Action*"), (ii) that certain ERISA class action titled *In re Advanta Corp. ERISA Litig.*, Civil Action No. 2:09-cv-4974-CMR (the "*ERISA Litigation*"), filed in the United States District Court for the Eastern District of Pennsylvania, or (iii) that certain securities class action titled *Steamfitters Local 449 Pension Fund, Individually and On Behalf of All Others Similarly Situated v. Dennis Alter, et al.*, Civil Action No. 2:09-cv-4730-CMR (the "*Securities Litigation*"), filed in the United States District Court for the Eastern District of Pennsylvania, including without limitation the pursuit or prosecution (a) of any otherwise applicable discovery to which the Underland Class Plaintiffs or the plaintiffs in the ERISA

Litigation or the Securities Litigation, as applicable, would be entitled under the Federal Rules of Civil Procedure and applicable case law, but subject to any otherwise applicable defense of the Debtors or the Trustees under the Federal Rules of Civil Procedure and applicable case law; (b) of or against applicable insurance with respect to claims against any non-Debtors, including without limitation, litigation against any insurer providing insurance coverage to any non-Debtor defendants; and (c) as concerns any claims asserted against such insurers, insurance and non-Debtors, the entry or enforcement of any settlement or judgment obtained; and (B) prior to abandoning or otherwise disposing of any books, records or other documents (in any format, including electronic, paper form or otherwise) that pertain to the Underland Action, the ERISA Litigation or the Securities Litigation (collectively, "*Litigation Books and Records*") the Liquidating Trustees shall seek approval of the Bankruptcy Court on not less than seventeen (17) days written notice to the attorneys for the Underland Plaintiffs and the attorneys for the plaintiffs in the ERISA Litigation and the Securities Litigation and shall not abandon or otherwise dispose of any of the Litigation Books and Records absent the entry of a further order of the Bankruptcy Court authorizing same.

(d)     Notwithstanding the foregoing, the plaintiffs in the ERISA Litigation and the Securities Litigation shall retain the right to file a motion (the "*Lead Plaintiffs' Motion*") after the Effective Date with the Bankruptcy Court seeking authorization to prosecute and liquidate any Claims they have asserted against the Debtors in proofs of Claim timely filed in these Chapter 11 Cases, with any judgment or settlement obtained to be satisfied solely to the extent of, and for the limited purpose of pursuing the collection of, any applicable insurance proceeds.   The plaintiffs in the ERISA Litigation and the Securities Litigation shall not be entitled to any discovery in connection with the Lead Plaintiffs' Motion other than copies of

(i) the applicable insurance policies, which would be provided subject to an appropriate protective order, and (ii) notices of circumstance delivered by or on behalf of the Debtors or any insureds under the applicable insurance policies (provided that the Debtors, the Trusts and the Trustees shall reserve all rights to oppose discovery of such notices), which, if ultimately provided, would be provided subject to an appropriate protective order. Nothing in the Plan or this Order shall be deemed a determination of any issue raised in the Lead Plaintiffs' Motion and all parties' rights, including those described in Section 8.9 of the Plan, are hereby reserved.

30. <u>Terms of Injunction</u>. Unless otherwise provided herein, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the applicable order providing for such injunction or stay; *provided*, *however*, that no such injunction or stay shall preclude enforcement of parties' rights under the Plan in the Bankruptcy Court.

31. <u>Exculpation</u>. Notwithstanding anything herein or in the Plan to the contrary, as of the Effective Date, none of the Debtors, the Trusts, the Trustees (solely in their capacity as such), the Delaware Trustee (solely in its capacity as such), the Indenture Trustees, the members of the Creditors' Committee (solely in their capacity as such), the members of the TABs (solely in their capacity as such), and their respective officers, directors, employees, managing directors, accountants, financial advisors, investment bankers, agents, restructuring advisors, and attorneys, and each of their respective agents and representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken on or after the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation,

consummation or administration of the Plan, property to be distributed under the Plan or any

other act or omission in connection with the Chapter 11 Cases, the Plan (or any prior proposed

version of the Plan), the Disclosure Statement or any contract, instrument, document or other

agreement related thereto (collectively, "***Exculpated Conduct***"); and such claims shall be

deemed expressly waived and forever relinquished as of the Effective Date; *provided*, *however*,

that the foregoing shall not (i) affect the liability of any Person that otherwise would result from

any such act or omission to the extent such act or omission is determined by a Final Order to

have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of

any such Person; (ii) limit in any manner the ability of the Debtors, Reorganized Advanta, the

Trusts, the Trustees, or the Creditors' Committee to assert, against any holder of a Claim asserted

against the Debtors, any defenses, Causes of Action or counterclaims based on or arising from

Exculpated Conduct (including, without limitation, any assertions that any Claims should be

equitably subordinated, reduced or eliminated), provided that the amount of any recoveries from

such holder on account of such defenses, Causes of Action or counterclaims based on or arising

from Exculpated Conduct shall not exceed the amount of distributions to the holder of such

Claim as may be Allowed; or (iii) be asserted, relied upon, deemed to be a finding or used as

evidence that "cause" (as such term is used in the SEIP, the SERP or any other employment

agreement, severance plan, benefit plan or similar instrument or agreement) did or did not exist

for the Debtors to terminate the employment of any Person otherwise exculpated by the Plan at

any time before, during or after the pendency of the Chapter 11 Cases. For the avoidance of

doubt, nothing in Section 10.7 of the Plan shall limit the ability of the Debtors, Reorganized

Advanta, the Trusts, the Trustees, or the Creditors' Committee to assert or recover on any

defenses, Causes of Action or counterclaims based on (i) any act taken or omitted to be taken

prior to the Commencement Date, or (ii) any act taken or omitted to be taken on or after the Commencement Date that is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of any Person.

32. <u>Causes of Action/Avoidance Actions/Objections</u>.   Other than any releases granted in the Plan, in this Order or in a Final Order of the Bankruptcy Court from and after the Effective Date, the Trusts shall have the right to prosecute any and all Causes of Action including, but not limited to, any and all avoidance or equitable subordination actions, recovery Causes of Action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors, Debtors in Possession or the Debtors' Estates.   For the avoidance of doubt, nothing contained in the Plan shall operate as a release of any Cause of Action against any of the current or former officers, directors or employees of the Debtors or their affiliates, except as provided in Section 10.7 of the Plan.

33. <u>Conditions to Effective Date</u>.   The Plan shall not become effective unless and until the conditions set forth in Section 9.1 of the Plan are satisfied or waived pursuant to Section 9.2 of the Plan.

34. <u>Retention of Jurisdiction</u>.   Pursuant to Article XI of the Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is legally permissible, including the matters listed in Article XI of the Plan.

35. <u>Effectuating Documents and Further Transactions</u>.   On or before the Effective Date, and without the need for any further order or authority, the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, are authorized to file

with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. As of the Effective Date, the Trustees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any Beneficial Interests issued pursuant to the Plan. As of the Effective Date, the Plan and all documents filed as part of the Plan Supplement, as amended or modified pursuant to the terms of the Plan and this Order, shall be enforceable notwithstanding any other applicable non-bankruptcy law.

36.     Corporate Action.   On the Effective Date, all actions provided for under the Plan that would otherwise require approval of the stockholders, members, or directors of one or more of the Debtors, as the case may be, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated or established, without any requirement for further action by the stockholders, members, or directors of the Debtors.

37.     Settlement of Claims.   Pursuant to Section 5.7 of the Plan and Bankruptcy Rule 9019, in consideration for the classification, distribution, and resolution of Claims, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.   All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and, except as otherwise provided in Article IV of the Plan with respect to Class 5 (Subordinated Note Claims against Advanta), no Plan distribution to

a holder of a Claim in one Class shall be shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency claim.

38.    Withholding and Reporting Requirements.   Pursuant to Section 12.2 of the Plan, each Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Beneficial Interests.   All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Beneficial Interests for all purposes of the relevant Trust Agreements.   Each Trustee shall be authorized to collect such tax information from the holders of the Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and the relevant Trust Agreement.   In order to receive distributions under the Plan, all holders of the Beneficial Interests must identify themselves to the applicable Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).   Each Trustee may refuse to make a distribution to any holder of a Beneficial Interest that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a holder of a Beneficial Interest, the applicable Trustee shall make such distribution to which the holder of the Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one (1) year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if any Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder

and such Trustee is later held liable for the amount of such withholding, such holder shall reimburse such Trustee for such liability.

39.     <u>Payment of Statutory Fees</u>.   All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter, by the applicable Trust.

40.     <u>Post-Effective Date Fees and Expenses</u>.   From and after the Effective Date, the Trusts shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the applicable Debtors or such Trusts.

41.     <u>Dissolution of the Creditors' Committee</u>.   On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of such Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

42.     <u>Exemption from Transfer Taxes</u>.   Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, equity securities or beneficial interests under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales or use, or other similar tax.

43.  <u>Professional Compensation and Reimbursement</u>.   All applications for final

allowance of compensation for services rendered or reimbursement of expenses incurred through

and including the Effective Date under sections 328 and 330 of the Bankruptcy Code or

applications for allowance of Administrative Expense Claims arising under section 503(b)(2),

503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (collectively, "***Final Fee***

***Applications***") shall be due 45 days after the occurrence of the Effective Date.   The AC Trustee

shall file a notice with the Bankruptcy Court scheduling a hearing to consider the Final Fee

Applications, to be held on a date to be specified in the Notice of Confirmation and Effective

Date (as defined below).   Unless otherwise agreed to by the claimant and the Debtors or the

applicable Trustee, the Allowed Administrative Expense Claims arising under section 330, 331,

503(b)(2), 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in full, in

Cash, by the applicable Trustee from the applicable Trust as soon as practicable following the

later to occur of (a) the Effective Date, and (b) the date upon which any such Administrative

Expense Claim becomes an Allowed Administrative Expense Claim.   The Trustees are

authorized to pay compensation for services rendered or reimbursement of expenses incurred

after the Effective Date in the ordinary course of business and without the need for Bankruptcy

Court approval.

44.  <u>Notice of Entry of Confirmation and Occurrence of Effective Date</u>.   Pursuant to

Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Trustees shall file and serve notice of

entry of this Order and the occurrence of the Effective Date in substantially the form annexed

hereto as ***Exhibit C*** (the "***Notice of Confirmation and Effective Date***") on all creditors and

interest holders, the United States Trustee for the District of Delaware, the attorneys for the

Creditors' Committee, and other parties in interest, by causing the Notice of Confirmation and

Effective Date to be delivered to such parties by first-Class mail, postage prepaid, within 10

business days after the occurrence of the Effective Date.   The Notice of Order and Effective

Date shall also be posted on the website of the Debtors' Court-appointed voting and tabulation

agent, GCG, at: http://www.advantareorg.com.   Such notice is adequate under the particular

circumstances and no other or further notice is necessary.   The form of Notice of Confirmation

and Effective Date substantially in the form annexed hereto as *Exhibit C* is approved.

      45.   Substantial Consummation.   On the Effective Date, the Plan shall be deemed to

be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

      46.   Modification.

      (a)    Pursuant to Section 12.4 of the Plan, after the Confirmation Date and prior

to the Effective Date, the Debtors with the consent of the Creditors' Committee, which consent

shall not be unreasonably withheld, may make appropriate technical adjustments and

modifications to the Plan without further order or approval of the Bankruptcy Court, provided

that such technical adjustments and modifications do not adversely affect in a material way the

treatment of holders of Claims or Equity Interests.   The Plan may also be substantially altered,

amended or modified at any time after the Confirmation Date and before substantial

consummation, provided that the Plan, as altered, amended or modified, satisfies the

requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after

notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of

the Bankruptcy Code.   A holder of a Claim that has accepted the Plan shall be deemed to have

accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or

modification does not materially and adversely change the treatment of the Claim of such holder.

(b)      Pursuant to Section 12.7 of the Plan, the documents included in the Plan Supplement may be amended or supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims and any such amendment or supplement is in form and substance reasonably acceptable to the Creditors' Committee.

47.      <u>Governing Law</u>.   Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of laws.

48.      <u>Appeal of this Order</u>.   Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Reorganized Advanta or ASC, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.   Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

49.      <u>Conflicts Between Order and Plan</u>.   The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan

provision and any provision of this Order that cannot be so reconciled, then solely to the extent

of such inconsistency, the provisions of this Order shall govern and any provision of this Order

shall be deemed a modification of the Plan and shall control and take precedence. The

provisions of this Order are integrated with each other and are non-severable and mutually

dependent.

50. <u>Final Order</u>. This Order is a final order and the period in which an appeal must

be filed shall commence upon the entry hereof.

51. <u>Separate Orders</u>. This Order is and shall be deemed a separate Order with

respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes.

Dated: February 11, 2011
     Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**The Plan**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
*In re*                                    :         Chapter 11
:
ADVANTA CORP., *et al.*,                :         Case No. 09-13931 (KJC)
:
                 Debtors.            :         (Jointly Administered)
:
-------------------------------------------------------------x

# DEBTORS' JOINT PLAN UNDER
# <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**RICHARDS, LAYTON & FINGER, P.A**.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION

Dated: November 2, 2010
        (as modified February 11, 2011)

**TABLE OF CONTENTS**

ARTICLE I          DEFINITION AND INTERPRETATION ..................................... 1

    A.    Definitions ............................................................................................... 1

        1.1    8.99% Indenture................................................................................... 1
        1.2    8.99% Indenture Trustee .................................................................... 1
        1.3    ABC ..................................................................................................... 1
        1.4    ABC Parties ........................................................................................ 1
        1.5    ABHC................................................................................................... 2
        1.6    AC Beneficial Interests ..................................................................... 2
        1.7    AC Class A Beneficial Interest.......................................................... 2
        1.8    AC Class B Beneficial Interest .......................................................... 2
        1.9    AC Trust.............................................................................................. 2
        1.10    AC Trust Agreement ......................................................................... 2
        1.11    AC Trust Assets................................................................................. 2
        1.12    AC Trust Beneficiaries...................................................................... 2
        1.13    AC Trustee ......................................................................................... 2
        1.14    ACT..................................................................................................... 2
        1.15    ACT Administrative Trustee ............................................................. 2
        1.16    ACT Declaration of Trust ................................................................. 3
        1.17    ACT Securities ................................................................................... 3
        1.18    ACT Trustees..................................................................................... 3
        1.19    Administrative Expense Claim .......................................................... 3
        1.20    Advanta .............................................................................................. 3
        1.21    Advanta Auto Finance ...................................................................... 3
        1.22    Advanta Auto Finance Beneficial Interests..................................... 3
        1.23    Advanta Auto Finance Class A Beneficial Interest ........................ 3
        1.24    Advanta Auto Finance Class B Beneficial Interest ........................ 3
        1.25    Advanta Auto Finance Class C Beneficial Interest ........................ 3
        1.26    Advanta Auto Finance Trust ............................................................ 4
        1.27    Advanta Auto Finance Trust Agreement ........................................ 4
        1.28    Advanta Auto Finance Trust Assets ................................................ 4
        1.29    Advanta Auto Finance Trust Beneficiaries...................................... 4
        1.30    Advanta Auto Finance Trustee......................................................... 4
        1.31    Advanta Bank .................................................................................... 4
        1.32    Advanta Beneficial Interests ............................................................ 4
        1.33    Advanta Class A Beneficial Interest................................................. 4
        1.34    Advanta Class B Beneficial Interest ................................................. 4
        1.35    Advanta Finance ............................................................................... 4
        1.36    Advanta Finance Beneficial Interests .............................................. 4
        1.37    Advanta Finance Class A Beneficial Interest................................... 4
        1.38    Advanta Finance Class B Beneficial Interest ................................... 5
        1.39    Advanta Finance Class C Beneficial Interest ................................... 5
        1.40    Advanta Finance Trust ..................................................................... 5
        1.41    Advanta Finance Trust Agreement ................................................. 5
        1.42    Advanta Finance Trust Assets ......................................................... 5

1.43     Advanta Finance Trust Beneficiaries ........................................................ 5
1.44     Advanta Finance Trustee .......................................................................... 5
1.45     Advanta Trust ........................................................................................... 5
1.46     Advanta Trust Agreement ......................................................................... 5
1.47     Advanta Trust Assets ................................................................................ 5
1.48     Advanta Trust Beneficial Interests .......................................................... 6
1.49     Advanta Trust Beneficiaries ..................................................................... 6
1.50     Advanta Trustee ....................................................................................... 6
1.51     Advantennis ............................................................................................. 6
1.52     Advantennis Beneficial Interests ............................................................. 6
1.53     Advantennis Class A Beneficial Interest ................................................. 6
1.54     Advantennis Class B Beneficial Interest ................................................. 6
1.55     Advantennis Trust .................................................................................... 6
1.56     Advantennis Trust Assets ......................................................................... 6
1.57     Advantennis Trust Agreement ................................................................. 6
1.58     Advantennis Trust Beneficiaries ............................................................. 6
1.59     Advantennis Trustee ................................................................................ 6
1.60     Affiliate .................................................................................................... 7
1.61     Allowed .................................................................................................... 7
1.62     AMCUSA ................................................................................................. 7
1.63     AMCUSA Beneficial Interests ................................................................ 7
1.64     AMCUSA Class A Beneficial Interest .................................................... 7
1.65     AMCUSA Class B Beneficial Interest .................................................... 7
1.66     AMCUSA Class C Beneficial Interest .................................................... 7
1.67     AMCUSA Trust ....................................................................................... 7
1.68     AMCUSA Trust Assets ............................................................................ 8
1.69     AMCUSA Trust Agreement .................................................................... 8
1.70     AMCUSA Trust Beneficiaries ................................................................ 8
1.71     AMCUSA Trustee .................................................................................... 8
1.72     ASC .......................................................................................................... 8
1.73     ASSC ........................................................................................................ 8
1.74     ASSC Beneficial Interests ....................................................................... 8
1.75     ASSC Class A Beneficial Interest ........................................................... 8
1.76     ASSC Class B Beneficial Interest ........................................................... 8
1.77     ASSC Trust .............................................................................................. 8
1.78     ASSC Trust Assets ................................................................................... 8
1.79     ASSC Trust Agreement ............................................................................ 8
1.80     ASSC Trust Beneficiaries ........................................................................ 8
1.81     ASSC Trustee .......................................................................................... 9
1.82     Avoidance and Subordination Actions .................................................... 9
1.83     Bankruptcy Code ..................................................................................... 9
1.84     Bankruptcy Court ..................................................................................... 9
1.85     Bankruptcy Rules ..................................................................................... 9

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 1.86 | BE Corp | 9 |
| 1.87 | Beneficial Interests | 9 |
| 1.88 | Books and Privileges | 9 |
| 1.89 | Business Day | 9 |
| 1.90 | Cash | 9 |
| 1.91 | Causes of Action | 9 |
| 1.92 | Chapter 11 Cases | 10 |
| 1.93 | Charging Lien | 10 |
| 1.94 | Claim | 10 |
| 1.95 | Class | 10 |
| 1.96 | Class A Beneficial Interest | 10 |
| 1.97 | Class B Beneficial Interest | 10 |
| 1.98 | Class C Beneficial Interest | 10 |
| 1.99 | Collateral | 10 |
| 1.100 | Commencement Date | 11 |
| 1.101 | Common Securities | 11 |
| 1.102 | Compensation and Benefit Programs | 11 |
| 1.103 | Confirmation Date | 11 |
| 1.104 | Confirmation Hearing | 11 |
| 1.105 | Confirmation Order | 11 |
| 1.106 | Consolidated Debtors | 11 |
| 1.107 | Contingent Claim | 11 |
| 1.108 | Creditors' Committee | 11 |
| 1.109 | D&O Insurance Policies | 11 |
| 1.110 | Debtors | 11 |
| 1.111 | Debtors in Possession | 12 |
| 1.112 | Deferred Compensation Plan | 12 |
| 1.113 | Deferred Compensation Trust | 12 |
| 1.114 | Delaware Trustee | 12 |
| 1.115 | Disbursing Agent | 12 |
| 1.116 | Disclosure Statement | 12 |
| 1.117 | Disclosure Statement Order | 12 |
| 1.118 | Distribution Record Date | 12 |
| 1.119 | Effective Date | 12 |
| 1.120 | Equity Interest | 12 |
| 1.121 | Estates | 12 |
| 1.122 | FDIC Settlement Agreement | 13 |
| 1.123 | Fee Auditor | 13 |
| 1.124 | Final Order | 13 |
| 1.125 | First Commencement Date | 13 |
| 1.126 | General Unsecured Claim | 13 |
| 1.127 | Governmental Unit | 13 |
| 1.128 | Indentures | 13 |

# TABLE OF CONTENTS
## (continued)

1.129 Indenture Trustees ..................................................................................... 13
1.130 Indenture Trustee Fees ............................................................................. 13
1.131 Initial Distribution .................................................................................... 13
1.132 Intercompany Claim .................................................................................. 14
1.133 Investment Notes ....................................................................................... 14
1.134 Investment Note Claims ............................................................................ 14
1.135 Investment Note Indenture ........................................................................ 14
1.136 Lien ............................................................................................................ 14
1.137 Like Amount .............................................................................................. 14
1.138 Liquidating Trust Agreements ................................................................... 14
1.139 Liquidating Trust Assets ........................................................................... 14
1.140 Liquidating Trust Beneficial Interests ...................................................... 14
1.141 Liquidating Trust Beneficiaries ................................................................ 14
1.142 Liquidating Trustees .................................................................................. 14
1.143 Liquidating Trusts ..................................................................................... 14
1.144 Local Bankruptcy Rules ............................................................................ 15
1.145 Person ........................................................................................................ 15
1.146 Plan ............................................................................................................ 15
1.147 Plan Supplement ........................................................................................ 15
1.148 Priority Non-Tax Claim ............................................................................ 15
1.149 Priority Tax Claim ..................................................................................... 15
1.150 Pro Rata Share ........................................................................................... 15
1.151 Punitive Damage Claim ............................................................................. 15
1.152 RediReserve Certificates ........................................................................... 15
1.153 RediReserve Certificate Claims ................................................................ 15
1.154 Retail Note Indenture Trustee ................................................................... 16
1.155 Reorganized Advanta ................................................................................ 16
1.156 Reorganized Advanta Assets ..................................................................... 16
1.157 Second Commencement Date ..................................................................... 16
1.158 Schedules ................................................................................................... 16
1.159 SEC ............................................................................................................ 16
1.160 Secured Claim ............................................................................................ 16
1.161 SEIP ........................................................................................................... 16
1.162 SERP .......................................................................................................... 16
1.163 Subordinated Claim ................................................................................... 16
1.164 Subordinated Notes .................................................................................... 17
1.165 Subordinated Note Claims ......................................................................... 17
1.166 Tax Code .................................................................................................... 17
1.167 Tax Returns ................................................................................................ 17
1.168 Treasury Regulations ................................................................................. 17
1.169 Trust Advisory Board ................................................................................ 17
1.170 Trust Agreements ....................................................................................... 17
1.171 Trustee Stock ............................................................................................. 17

| | | |
|---|---|---|
| 1.172 | Trustees | 17 |
| 1.173 | Trusts | 17 |
| 1.174 | Trust Preferred Securities | 17 |
| 1.175 | Unimpaired | 17 |
| 1.176 | Unliquidated Claim | 17 |
| 1.177 | Unresolved Claims | 17 |
| 1.178 | Unresolved Claims Reserve | 18 |
| B. | Interpretation; Application of Definitions and Rules of Construction | 18 |

**ARTICLE II    PROVISIONS FOR PAYMENT OF NON-CLASSIFIED CLAIMS** ........... 18

| | | |
|---|---|---|
| 2.1 | Administrative Expense Claims | 18 |
| 2.2 | Professional Compensation and Reimbursement Claims | 19 |
| 2.3 | Indenture Trustee Fees | 20 |
| 2.4 | Priority Tax Claims | 20 |

**ARTICLE III    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................ 21

**ARTICLE IV    TREATMENT OF CLAIMS AND EQUITY INTERESTS** ........................ 22

| | | |
|---|---|---|
| 4.1 | Classes 1(a)-(f): Other Priority Claims | 22 |
| 4.2 | Classes 2(a)-(f): Secured Claims | 22 |
| 4.3 | Class 3: Investment Note Claims and RediReserve Certificate Claims | 22 |
| 4.4 | Class 4(a): General Unsecured Claims against the Consolidated Debtors | 23 |
| 4.5 | Class 4(b): General Unsecured Claims against Advantennis | 24 |
| 4.6 | Class 4(c): General Unsecured Claims against AMCUSA | 24 |
| 4.7 | Class 4(d): General Unsecured Claims against Advanta Auto Finance | 24 |
| 4.8 | Class 4(e): General Unsecured Claims against ASSC | 25 |
| 4.9 | Class 4(f): General Unsecured Claims against Advanta Finance | 25 |
| 4.10 | Class 5: Subordinated Note Claims | 25 |
| 4.11 | Classes 6(a)-(f): Subordinated Claims | 26 |
| 4.12 | Classes 7(a)-(c): Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC | 27 |
| 4.13 | Classes 7(d)-(f): Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance | 27 |
| 4.14 | Class 7(g): Equity Interests in ASC | 27 |

**ARTICLE V    MEANS OF IMPLEMENTATION** ......................................................... 27

| | | |
|---|---|---|
| 5.1 | Exchange of Trust Preferred Securities | 27 |
| 5.2 | Substantive Consolidation | 28 |
| 5.3 | Merger/Dissolution/Consolidation | 29 |
| 5.4 | The Liquidating Trusts | 29 |
| 5.5 | The Advanta Trust | 37 |

# TABLE OF CONTENTS
## (continued)

|     |      |                                                                                 |     |
| --- | ---- | ------------------------------------------------------------------------------- | --- |
|     | 5.6  | Cancellation and Termination of Existing Agreements and Equity Interests        | 42  |
|     | 5.7  | Settlement of Claims                                                            | 44  |

**ARTICLE VI**   PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS ............. 44

|     |      |                                                                     |     |
| --- | ---- | ------------------------------------------------------------------- | --- |
|     | 6.1  | Voting of Claims                                                    | 44  |
|     | 6.2  | Nonconsensual Confirmation                                          | 44  |
|     | 6.3  | Date of Distributions                                               | 44  |
|     | 6.4  | Disbursing Agents                                                   | 45  |
|     | 6.5  | Rights and Powers of Disbursing Agents                              | 45  |
|     | 6.6  | Expenses of Disbursing Agents                                       | 45  |
|     | 6.7  | Delivery of Distributions                                           | 45  |
|     | 6.8  | Undeliverable and Unclaimed Distributions                           | 46  |
|     | 6.9  | Distribution Record Date                                            | 46  |
|     | 6.10 | Manner of Payment                                                   | 46  |
|     | 6.11 | Minimum Cash Distributions                                          | 47  |
|     | 6.12 | Setoffs and Recoupment                                              | 47  |
|     | 6.13 | Interest on Claims                                                  | 47  |
|     | 6.14 | No Distribution in Excess of Allowed Amounts                        | 47  |
|     | 6.15 | Allocation of Plan Distributions Between Principal and Interest     | 47  |

**ARTICLE VII**   PROCEDURES FOR TREATING UNRESOLVED CLAIMS ................. 47

|     |      |                                                         |     |
| --- | ---- | ------------------------------------------------------- | --- |
|     | 7.1  | Assets Retained on Account of Unresolved Claims         | 47  |
|     | 7.2  | Objections                                              | 48  |
|     | 7.3  | No Distributions Pending Allowance                      | 48  |
|     | 7.4  | Distributions After Allowance                           | 48  |
|     | 7.5  | Resolution of Claims                                    | 48  |
|     | 7.6  | Interest After the Effective Date                       | 49  |

**ARTICLE VIII**   EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................... 49

|     |      |                                                                                                           |     |
| --- | ---- | --------------------------------------------------------------------------------------------------------- | --- |
|     | 8.1  | Assumption or Rejection of Executory Contracts and Unexpired Leases                                       | 49  |
|     | 8.2  | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases                           | 49  |
|     | 8.3  | Inclusiveness                                                                                             | 50  |
|     | 8.4  | Cure of Defaults                                                                                         | 50  |
|     | 8.5  | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 50  |
|     | 8.6  | Indemnification and Reimbursement Obligations                                                             | 51  |
|     | 8.7  | Compensation and Benefit Programs                                                                         | 51  |
|     | 8.8  | Deferred Compensation Plan                                                                               | 53  |
|     | 8.9  | Certain Insurance Policy Matters                                                                          | 53  |

**ARTICLE IX**   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................... 54

| | | | |
|---|---|---|---|
| | 9.1 | Conditions Precedent to Effectiveness | 54 |
| | 9.2 | Waiver of Conditions | 54 |
| | 9.3 | Satisfaction of Conditions | 54 |
| ARTICLE X | | EFFECT OF CONFIRMATION | 55 |
| | 10.1 | Post-Effective Date Assets | 55 |
| | 10.2 | Binding Effect | 55 |
| | 10.3 | Injunction or Stay | 55 |
| | 10.4 | Injunction Against Interference With Plan | 56 |
| | 10.5 | Terms of Injunction or Stay | 56 |
| | 10.6 | Reservation of Causes of Action/Reservation of Rights | 56 |
| | 10.7 | Exculpation | 57 |
| | 10.8 | Causes of Action/Avoidance and Subordination Actions/Objections | 58 |
| ARTICLE XI | | RETENTION OF JURISDICTION | 58 |
| ARTICLE XII | | MISCELLANEOUS PROVISIONS | 60 |
| | 12.1 | Effectuating Documents and Further Transactions | 60 |
| | 12.2 | Withholding and Reporting Requirements | 60 |
| | 12.3 | Corporate Action | 61 |
| | 12.4 | Modification of Plan | 61 |
| | 12.5 | Revocation or Withdrawal of the Plan | 61 |
| | 12.6 | Continuing Exclusivity Period | 62 |
| | 12.7 | Plan Supplement | 62 |
| | 12.8 | Payment of Statutory Fees | 62 |
| | 12.9 | Post-Effective Date Professional Fees and Expenses | 62 |
| | 12.10 | Indenture Trustees as Claim Holder | 63 |
| | 12.11 | Dissolution of the Creditors' Committee | 63 |
| | 12.12 | Exemption from Transfer Taxes | 63 |
| | 12.13 | Expedited Tax Determination | 63 |
| | 12.14 | Exhibits/Schedules | 63 |
| | 12.15 | Substantial Consummation | 63 |
| | 12.16 | Severability of Plan Provisions | 64 |
| | 12.17 | Governing Law | 64 |
| | 12.18 | Notices | 64 |
| | 12.19 | Time | 66 |
| | 12.20 | Section Headings | 67 |

## EXHIBITS

Exhibit 1.10 - AC Trust Agreement

Exhibit 1.27 - Advanta Auto Finance Trust Agreement

Exhibit 1.41 - Advanta Finance Trust Agreement

Exhibit 1.46 - Advanta Trust Agreement

Exhibit 1.57 - Advantennis Trust Agreement

Exhibit 1.69 - AMCUSA Trust Agreement

Exhibit 1.79 - ASSC Trust Agreement

## SCHEDULES

Schedule 8.1 - Executory Contracts and Unexpired Leases to be Assumed

Schedule 8.7 - Compensation and Benefit Plans to be Retained Through the Effective Date

Schedule 12.10 - List of Proofs of Claims Which are Disallowed Because They Are Duplicative of the Proofs of Claims Already Filed by the Applicable Indenture Trustee

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
                              :

*In re*                           :         Chapter 11
                              :

ADVANTA CORP., *et al.*,          :         Case No. 09-13931 (KJC)
                              :

        Debtors.             :         (Jointly Administered)
                              :

------------------------------------------------------------x

# DEBTORS' JOINT PLAN UNDER
# CHAPTER 11 OF THE BANKRUPTCY CODE

        Advanta Corp., Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., Advanta Shared Services Corp., Advanta Service Corp., Advanta Advertising Inc., Advantennis Corp., Advanta Mortgage Holding Company, Advanta Auto Finance Corporation, Advanta Mortgage Corp. USA, Advanta Finance Corp., Advanta Ventures Inc., BE Corp. (f/k/a BizEquity Corp.), ideablob Corp., Advanta Credit Card Receivables Corp., Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp. propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

# ARTICLE I

## *DEFINITION AND INTERPRETATION*

**A.    Definitions.**

        **1.1    *8.99% Indenture*** means that certain indenture, dated as of December 17, 1996, between Advanta and the 8.99% Indenture Trustee, pursuant to which Advanta issued the Subordinated Notes.

        **1.2    *8.99% Indenture Trustee*** means the indenture trustee for the Subordinated Notes under the 8.99% Indenture.

        **1.3    *ABC*** means Advanta Bank Corp., a Utah industrial bank.

        **1.4    *ABC Parties*** means, collectively, ABC and Advanta Business Receivables Corp., a Nevada corporation.

**1.5**     ***ABHC*** means Advanta Bank Holding Corp., a Delaware corporation.

**1.6**     ***AC Beneficial Interests*** means, collectively, AC Class A Beneficial Interests and AC Class B Beneficial Interests.

**1.7**     ***AC Class A Beneficial Interest*** means a senior beneficial interest in the AC Trust to be issued to each holder of an Allowed Investment Note Claim, Allowed RediReserve Certificate Claim, Allowed General Unsecured Claim against any of the Consolidated Debtors, and an Allowed Subordinated Note Claim, which entitles its holder to receive distributions from the AC Trust as set forth in the Plan.

**1.8**     ***AC Class B Beneficial Interest*** means a junior beneficial interest in the AC Trust to be issued to holders of Allowed Subordinated Claims against any of the Consolidated Debtors, which entitles its holder to receive distributions from the AC Trust as set forth in the Plan.

**1.9**     ***AC Trust*** means the liquidating trust established under Section 5.4 of the Plan for the purposes of liquidating and distributing the AC Trust Assets to holders of AC Beneficial Interests.

**1.10**     ***AC Trust Agreement*** means the agreement between the Debtors, the AC Trustee and the Delaware Trustee governing the AC Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.10***, to be filed with the Plan Supplement.

**1.11**     ***AC Trust Assets*** means all rights and assets of the Consolidated Debtors as of the Effective Date, including, without limitation, all Causes of Action of any Consolidated Debtor, all stock in any Debtor Affiliate (other than Advanta and ASC) and non-Debtor Affiliate (other than ABHC), all assets of ABHC, and all Books and Privileges of the Consolidated Debtors that relate to the AC Trust Assets; *provided*, *however*, that the AC Trust Assets shall not include the Advanta Trust Assets, Advanta Auto Finance Trust Assets, ASSC Trust Assets, AMCUSA Trust Assets, Advanta Finance Trust Assets, Advantennis Trust Assets, the Reorganized Advanta Assets, and the partnership interests of Advanta, ASC and ABHC in Fleet Credit Card Services, L.P.

**1.12**     ***AC Trust Beneficiaries*** means those holders of Claims against the Consolidated Debtors, in each case, as and when Allowed, who will receive AC Beneficial Interests on account of their Allowed Claims pursuant to the Plan.

**1.13**     ***AC Trustee*** means the trustee or co-trustees, as the case may be, governing the AC Trust.

**1.14**     ***ACT*** means Advanta Capital Trust I, that certain Delaware statutory business trust formed under Chapter 38 of Title 12 of the Delaware Code, 12 De. Code 3801 <u>et seq.</u>, pursuant to the ACT Declaration of Trust.

**1.15**     ***ACT Administrative Trustee*** means Advanta.

**1.16    *ACT Declaration of Trust*** means that certain Amended and Restated Declaration of Trust of Advanta Capital Trust I, dated as of December 17, 1996, among the ACT Trustees, Advanta, as sponsor, and the holders from time to time of undivided beneficial interests in the assets of ACT.

**1.17    *ACT Securities*** means the Trust Preferred Securities, the Subordinated Notes and the Common Securities.

**1.18    *ACT Trustees*** means those trustees acting for ACT from time to time as provided for in the ACT Declaration of Trust.

**1.19    *Administrative Expense Claim*** means any Claim constituting a cost or expense of administration of the Chapter 11 Cases pursuant to sections 330, 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Commencement Date, of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses, incurred after the Commencement Date, of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Chapter 11 Cases and (d) any compensation for professional services rendered and reimbursement of expenses incurred after the Commencement Date.  Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 12.8 of the Plan.

**1.20    *Advanta*** means Advanta Corp., a Delaware corporation.

**1.21    *Advanta Auto Finance*** means Advanta Auto Finance Corp., a Nevada corporation.

**1.22    *Advanta Auto Finance Beneficial Interests*** means, collectively, the Advanta Auto Finance Class A Beneficial Interests, the Advanta Auto Finance Class B Beneficial Interests, and the Advanta Auto Finance Class C Beneficial Interests.

**1.23    *Advanta Auto Finance Class A Beneficial Interest*** means a senior beneficial interest in the Advanta Auto Finance Trust to be issued to each holder of an Allowed General Unsecured Claim against Advanta Auto Finance, which entitles its holder to receive distributions from the Advanta Auto Finance Trust as set forth in the Plan.

**1.24    *Advanta Auto Finance Class B Beneficial Interest*** means a junior beneficial interest in the Advanta Auto Finance Trust to be issued to each holder of an Allowed Subordinated Claim against Advanta Auto Finance, which entitles its holder to receive distributions from the Advanta Auto Finance Trust as set forth in the Plan.

**1.25    *Advanta Auto Finance Class C Beneficial Interest*** means a residual beneficial interest in the Advanta Auto Finance Trust to be issued to each holder of an Equity Interest in Advanta Auto Finance, which entitles its holder to receive distributions from the Advanta Auto Finance Trust as set forth in the Plan.

3

**1.26** ***Advanta Auto Finance Trust*** means the liquidating trust established under Section 5.4 of the Plan for the purposes of liquidating and distributing the Advanta Auto Finance Trust Assets to holders of Advanta Auto Finance Beneficial Interests.

**1.27** ***Advanta Auto Finance Trust Agreement*** means the agreement between Advanta Auto Finance, the Advanta Auto Finance Trustee and the Delaware Trustee governing the Advanta Auto Finance Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.27***, to be filed with the Plan Supplement.

**1.28** ***Advanta Auto Finance Trust Assets*** means all assets of Advanta Auto Finance as of the Effective Date, including all Causes of Action of Advanta Auto Finance, and all Books and Privileges of Advanta Auto Finance.

**1.29** ***Advanta Auto Finance Trust Beneficiaries*** means those holders of Claims against Advanta Auto Finance, in each case, as and when Allowed, and those holders of Equity Interests in Advanta Auto Finance, who will receive Advanta Auto Finance Beneficial Interests on account of their Allowed Claims and Equity Interests pursuant to the Plan.

**1.30** ***Advanta Auto Finance Trustee*** means the trustee or co-trustees, as the case may be, governing the Advanta Auto Finance Trust.

**1.31** ***Advanta Bank*** means Advanta Bank, a Delaware state-chartered depository institution.

**1.32** ***Advanta Beneficial Interests*** means Advanta Class A Beneficial Interests and Advanta Class B Beneficial Interests.

**1.33** ***Advanta Class A Beneficial Interest*** means a senior beneficial interest in the Advanta Trust to be issued to each holder of an Allowed Investment Note Claim, Allowed RediReserve Certificate Claim, Allowed General Unsecured Claim against any of the Consolidated Debtors, and an Allowed Subordinated Note Claim, which entitles its holder to receive distributions from the Advanta Trust as set forth in the Plan.

**1.34** ***Advanta Class B Beneficial Interest*** means a junior beneficial interest in the Advanta Trust to be issued to each holder of an Allowed Subordinated Claim against any of the Consolidated Debtors, which entitles its holder to receive distributions from the Advanta Trust as set forth in the Plan.

**1.35** ***Advanta Finance*** means Advanta Finance Corp., a Nevada corporation.

**1.36** ***Advanta Finance Beneficial Interests*** means Advanta Finance Class A Beneficial Interests, Advanta Finance Class B Beneficial Interests, and Advanta Finance Class C Beneficial Interests.

**1.37** ***Advanta Finance Class A Beneficial Interest*** means a senior beneficial interest in the Advanta Finance Trust to be issued to each holder of an Allowed General

Unsecured Claim against Advanta Finance, which entitles its holder to receive distributions from the Advanta Finance Trust as set forth in the Plan.

      *1.38*    ***Advanta Finance Class B Beneficial Interest*** means a junior beneficial interest in the Advanta Finance Trust to be issued to each holder of an Allowed Subordinated Claim against Advanta Finance, which entitles its holder to receive distributions from the Advanta Finance Trust as set forth in the Plan.

      *1.39*    ***Advanta Finance Class C Beneficial Interest*** means a residual beneficial interest in the Advanta Finance Trust to be issued to each holder of an Equity Interest in Advanta Finance, which entitles its holder to receive distributions from the Advanta Finance Trust as set forth in the Plan.

      *1.40*    ***Advanta Finance Trust*** means the liquidating trust established under Section 5.4 of the Plan for the purposes of liquidating and distributing the Advanta Finance Trust Assets to holders of Advanta Finance Beneficial Interests.

      *1.41*    ***Advanta Finance Trust Agreement*** means the agreement between Advanta Finance, the Advanta Finance Trustee and the Delaware Trustee governing the Advanta Finance Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.41***, to be filed with the Plan Supplement.

      *1.42*    ***Advanta Finance Trust Assets*** means all assets of Advanta Finance as of the Effective Date, including all Causes of Action of Advanta Finance, and all Books and Privileges of Advanta Finance.

      *1.43*    ***Advanta Finance Trust Beneficiaries*** means those holders of Claims against Advanta Finance, in each case, as and when Allowed, and those holders of Equity Interests in Advanta Finance, who will receive Advanta Finance Beneficial Interests on account of their Allowed Claims and Equity Interests pursuant to the Plan.

      *1.44*    ***Advanta Finance Trustee*** means the trustee or co-trustees, as the case may be, governing the Advanta Finance Trust.

      *1.45*    ***Advanta Trust*** means the liquidating trust established under Section 5.5 of the Plan.

      *1.46*    ***Advanta Trust Agreement*** means the agreement between the Debtors, the Advanta Trustee and the Delaware Trustee governing the Advanta Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.46***, to be filed with the Plan Supplement.

      *1.47*    ***Advanta Trust Assets*** means $100,000 in Cash to fund administrative costs of the Advanta Trust and all stock of Reorganized Advanta.

**1.48    Advanta Trust Beneficial Interests** means, collectively, the Advanta Class A Beneficial Interests and the Advanta Class B Beneficial Interests.

**1.49    Advanta Trust Beneficiaries** means those holders of Claims against the Consolidated Debtors, in each case, as and when Allowed, who will receive Advanta Beneficial Interests on account of their Allowed Claims pursuant to the Plan

**1.50    Advanta Trustee** means the trustee or co-trustee, as the case may be, governing the Advanta Trust.

**1.51    Advantennis** means Advantennis Corp., a Delaware corporation.

**1.52    Advantennis Beneficial Interests** means Advantennis Class A Beneficial Interests and Advantennis Class B Beneficial Interests.

**1.53    Advantennis Class A Beneficial Interest** means a senior beneficial interest in the Advantennis Trust to be issued to each holder of an Allowed General Unsecured Claim against Advantennis, which entitles its holder to receive distributions from the Advantennis Trust as set forth in the Plan.

**1.54    Advantennis Class B Beneficial Interest** means a junior beneficial interest in the Advantennis Trust to be issued to each holder of Allowed Subordinated Claims in Advantennis, which entitles its holder to receive distributions from the Advantennis Trust as set forth in the Plan.

**1.55    Advantennis Trust** means the liquidating trust established under Section 5.4 of the Plan, for the purposes of liquidating and distributing the Advantennis Trust Assets to holders of Advantennis Beneficial Interests.

**1.56    Advantennis Trust Assets** means all assets of Advantennis as of the Effective Date, including all Causes of Action of Advantennis, and all Books and Privileges of Advantennis.

**1.57    Advantennis Trust Agreement** means the agreement between Advantennis, the Advantennis Trustee and the Delaware Trustee governing the Advantennis Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on **Exhibit 1.57**, to be filed with the Plan Supplement.

**1.58    Advantennis Trust Beneficiaries** means those holders of Claims against Advantennis, in each case, as and when Allowed, and those holders of Equity Interests in Advantennis, who will receive Advantennis Beneficial Interests on account of their Allowed Claims and Equity Interests pursuant to the Plan.

**1.59    Advantennis Trustee** means the trustee or co-trustees, as the case may be, governing the Advantennis Trust.

**1.60**    *Affiliate* has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.61**    *Allowed* means, with reference to any Claim against the Debtors, (a) any fixed Claim against any Debtor that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009 and any applicable local Bankruptcy Rule) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim (i) as to which no objection has been or is interposed in accordance with Section 7.2 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order and to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or as provided in Section 7.5 of the Plan; provided, however, that (x) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" and (y) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

**1.62**    *AMCUSA* means Advanta Mortgage Corp. USA., a Delaware corporation.

**1.63**    *AMCUSA Beneficial Interests* means AMCUSA Class A Beneficial Interests, AMCUSA Class B Beneficial Interests, and AMCUSA Class C Beneficial Interests.

**1.64**    *AMCUSA Class A Beneficial Interest* means a senior beneficial interest in the AMCUSA Trust to be issued to each holder of an Allowed General Unsecured Claim against AMCUSA, which entitles its holder to receive distributions from the AMCUSA Trust as set forth in the Plan.

**1.65**    *AMCUSA Class B Beneficial Interest* means a junior beneficial interest in the AMCUSA Trust to be issued to each holder of an Allowed Subordinated Claim against AMCUSA, which entitles its holder to receive distributions from the AMCUSA Trust as set forth in the Plan.

**1.66**    *AMCUSA Class C Beneficial Interest* means a residual beneficial interest in the AMCUSA Trust issued to each holder of an Equity Interest in AMCUSA, which entitles its holder to receive distributions from the AMCUSA Trust as set forth in the Plan.

**1.67**    *AMCUSA Trust* means the liquidating trust established under Section 5.4 of the Plan, for the purposes of liquidating and distributing the AMCUSA Trust Assets to holders of AMCUSA Beneficial Interests.

**1.68** ***AMCUSA Trust Assets*** means all assets of AMCUSA as of the Effective Date, including all Causes of Action of AMCUSA, and all Books and Privileges of AMCUSA.

**1.69** ***AMCUSA Trust Agreement*** means the agreement between AMCUSA, the AMCUSA Trustee and the Delaware Trustee governing the AMCUSA Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.69***, to be filed with the Plan Supplement.

**1.70** ***AMCUSA Trust Beneficiaries*** means those holders of Claims against AMCUSA, in each case, as and when Allowed, and those holders of Equity Interests in AMCUSA, who will receive AMCUSA Beneficial Interests on account of their Allowed Claims and Equity Interests pursuant to the Plan.

**1.71** ***AMCUSA Trustee*** means the trustee or co-trustees, as the case may be, governing the AMCUSA Trust.

**1.72** ***ASC*** means Advanta Service Corp., a Delaware corporation.

**1.73** ***ASSC*** means Advanta Shared Services Corp., a Delaware corporation.

**1.74** ***ASSC Beneficial Interests*** means ASSC Class A Beneficial Interests and ASSC Class B Beneficial Interests.

**1.75** ***ASSC Class A Beneficial Interest*** means a senior beneficial interest in the ASSC Trust to be issued to each holder of an Allowed General Unsecured Claim against ASSC, which entitles its holder to receive distributions from the ASSC Trust as set forth in the Plan.

**1.76** ***ASSC Class B Beneficial Interest*** means a junior beneficial interest in the ASSC Trust to be issued to each holder of an Allowed Subordinated Claim against ASSC, which entitles its holder to receive distributions from the ASSC Trust as set forth in the Plan.

**1.77** ***ASSC Trust*** means the liquidating trust established under Section 5.4 of the Plan, for the purposes of liquidating and distributing the ASSC Trust Assets to holders of ASSC Beneficial Interests.

**1.78** ***ASSC Trust Assets*** means all assets of ASSC as of the Effective Date, including all Causes of Action of ASSC, and all Books and Privileges of ASSC.

**1.79** ***ASSC Trust Agreement*** means the agreement between ASSC, the ASSC Trustee and the Delaware Trustee governing the ASSC Trust, dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Creditors' Committee and substantially in the form set forth on ***Exhibit 1.79***, to be filed with the Plan Supplement.

**1.80** ***ASSC Trust Beneficiaries*** means those holders of Claims against ASSC, in each case, as and when Allowed, and those holders of Equity Interests in ASSC, who will receive ASSC Beneficial Interests on account of their Allowed Claims and Equity Interests pursuant to the Plan.

**1.81** ***ASSC Trustee*** means the trustee or co-trustees, as the case may be, governing the ASSC Trust.

**1.82** ***Avoidance and Subordination Actions*** means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to sections 510, 542, 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code, including without limitation, such actions that arise under state law.

**1.83** ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.84** ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

**1.85** ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

**1.86** ***BE Corp***. means BE Corp. (f/k/a/ BizEquity Corp.), a Delaware corporation.

**1.87** ***Beneficial Interests*** means, collectively, the Liquidating Trust Beneficial Interests and the Advanta Trust Beneficial Interests.

**1.88** ***Books and Privileges*** means, with respect to a particular Debtor or group of Debtors, all books and records of such Debtor(s), including, without limitation, all documents and communications of any kind, whether physical or electronic, the right to assert or waive any privilege, including, but not limited to, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and rights to direct current or former agents, attorneys, advisors and other professionals of such Debtor(s) to deliver such documents or communications.

**1.89** ***Business Day*** means any day other than a Saturday, Sunday or any other day on which commercial banks in Wilmington, Delaware are required or authorized to close by law or executive order.

**1.90** ***Cash*** means lawful currency of the United States of America, including but not limited to bank deposits, checks and other similar items.

**1.91** ***Causes of Action*** means any and all Claims, Avoidance and Subordination Actions, demands, rights, actions, rights of action, causes of action, judgments, proceedings, damages, accounts, defenses, affirmative defenses, rights of setoff, offsets, powers, privileges, licenses, franchises, third-party claims, counterclaims, cross-claims, actions for declaratory or injunctive relief, suits and other rights of recovery of the Debtors, the Debtors in Possession and the Estates (but subject in all cases to the exculpation provisions of Section 10.7 hereof), against or with respect to any Person, including without limitation Claims of a Debtor or the Estates against another Debtor, Debtor in Possession, affiliate, current or former officer, director or

employee of any Debtor or any affiliate or property, wherever located, of any nature whatsoever, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, asserted or unasserted or pending as of the Effective Date, whether direct, indirect, derivative or on any other basis, whether existing or hereafter arising, whether arising in whole or in part prior to, on or after the Commencement Date, based in whole or in part upon any act or omission or other event occurring prior to the Commencement or during the course of the Chapter 11 Cases or thereafter, in contract or in tort, at law or in equity, whether pursuant to any federal or state statute or common law or under any theory of law or equity, including without limitation any available: (a) rights of setoff, counterclaim, recoupment, replevin or reclamation, and Claims on contracts or for breaches of duties imposed by law, (b) rights to object to or seek estimation of Claims or Equity Interests, (c) Claims pursuant to section 362 of the Bankruptcy Code, (d) Claims, causes of action and defenses against any Person, including without limitation, for intentional or negligent misrepresentation, fraud, mistake, duress and usury, breach of fiduciary duty, malpractice, negligence, breach of contract, wrongful distribution, aiding and abetting, or inducement, and (e) rights and remedies under sections 502(d), 506, 509, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.

**1.92** ***Chapter 11 Cases*** means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, styled as "In re Advanta Corp., et al.", which have been jointly administered by order of the Bankruptcy Court under case number 09-13931 (KJC).

**1.93** ***Charging Lien*** means any right of the Indenture Trustees under the applicable Indenture to a Lien upon or other priority in payment with respect to distributions to be made to holders of Investment Note Claims, RediReserve Certificate Claims or Subordinated Note Claims.

**1.94** ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.95** ***Class*** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to section 1122 of the Bankruptcy Code.

**1.96** ***Class A Beneficial Interest*** means, collectively, the AC Class A Beneficial Interest, the AMCUSA Class A Beneficial Interest, the Advanta Auto Finance Class A Beneficial Interest, the Advanta Finance Class A Beneficial Interest, the ASSC Class A Beneficial Interest, and the Advantennis Class A Beneficial Interest.

**1.97** ***Class B Beneficial Interest*** means, collectively, the AC Class B Beneficial Interest, the AMCUSA Class B Beneficial Interest, the Advanta Auto Finance Class B Beneficial Interest, the Advanta Finance Class B Beneficial Interest, the ASSC Class B Beneficial Interest, and the Advantennis Class B Beneficial Interest.

**1.98** ***Class C Beneficial Interest*** means, collectively, the AMCUSA Class C Beneficial Interest, the Advanta Auto Finance Class C Beneficial Interest, and the Advanta Finance Class C Beneficial Interest.

**1.99** ***Collateral*** means any property or interest in property of the Estates of any of the Debtors that is subject to a Lien, charge or other encumbrance to secure the payment or

performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

       *1.100   Commencement Date* means, as applicable, the First Commencement Date and/or the Second Commencement Date.

       *1.101   Common Securities* means the securities representing common undivided beneficial interests in the assets of ACT.

       *1.102   Compensation and Benefit Programs* shall have the meaning ascribed to such term in Section 8.7 of the Plan.

       *1.103   Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket with respect to the Chapter 11 Cases.

       *1.104   Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

       *1.105   Confirmation Order* means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Creditors' Committee.

       *1.106   Consolidated Debtors* means Advanta, Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., ASC, Advanta Advertising Inc., Advanta Mortgage Holding Company, Advanta Ventures Inc., BE Corp., ideablob Corp., Advanta Credit Card Receivables Corp., Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp..

       *1.107   Contingent Claim* means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

       *1.108   Creditors' Committee* means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

       *1.109   D&O Insurance Policies* means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors or officers.

       *1.110   Debtors* means Advanta, Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., ASSC, ASC, Advanta Advertising Inc., Advantennis, Advanta Mortgage Holding Company, Advanta Auto Finance, AMCUSA, Advanta Finance, Advanta Ventures Inc., BE Corp., ideablob Corp., Advanta Credit Card

Receivables Corp., Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp..

   ***1.111 Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

   ***1.112 Deferred Compensation Plan*** means the Advanta Corp. Non-Employee Directors Deferral Plan (as amended).

   ***1.113 Deferred Compensation Trust*** means the Advanta Corp. Non-Employee Directors Deferral Plan Trust.

   ***1.114 Delaware Trustee*** means a Delaware trustee appointed under the terms of each Trust Agreement.

   ***1.115 Disbursing Agent*** means, with respect to each Trust, the Trustee of that Trust or any entity appointed by such Trustee as a disbursing agent.

   ***1.116 Disclosure Statement*** means that certain disclosure statement , as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code relating to the Plan, which shall be in form and substance reasonably acceptable to the Creditors' Committee, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld.

   ***1.117 Disclosure Statement Order*** means the order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, which shall be in form and substance reasonably acceptable to the Creditors' Committee.

   ***1.118 Distribution Record Date*** means the date that is three (3) Business Days from and after the Confirmation Date.

   ***1.119 Effective Date*** means a Business Day selected by the Debtors with the consent of the Creditors' Committee (which consent shall not be unreasonably withheld) on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan specified in Section 9.1 of the Plan shall have been satisfied or waived as provided in Section 9.2 of the Plan.

   ***1.120 Equity Interest*** means the interest of any holder of equity securities of any of the Debtors represented by issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, contractual or other right to acquire any such interest.

   ***1.121 Estates*** means the estates created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

**1.122    FDIC Settlement Agreement** means the Settlement Agreement, dated as of August 27, 2010 among the Debtors, the Creditors' Committee and the Federal Deposit Insurance Corporation, as receiver for ABC.

**1.123    Fee Auditor** means Warren H. Smith & Associates, P.C.

**1.124    Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

**1.125    First Commencement Date** means November 8, 2009, the date on which Advanta, Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., ASSC, ASC, Advanta Advertising Inc., Advantennis, Advanta Mortgage Holding Company, Advanta Auto Finance, AMCUSA, Advanta Finance, Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp. filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

**1.126    General Unsecured Claim** means any Claim against a Debtor other than an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Investment Note Claim, RediReserve Certificate Claim, and Subordinated Note Claim.

**1.127    Governmental Unit** has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.128    Indentures** means the 8.99% Indenture and the Investment Note Indenture, collectively.

**1.129    Indenture Trustees** means the Retail Note Indenture Trustee, the 8.99% Indenture Trustee and the ACT Trustees, collectively.

**1.130    Indenture Trustee Fees** means the accrued and unpaid fees, costs, and expenses of the Indenture Trustees, including the fees, costs and expenses of the Indenture Trustees' attorneys, payable pursuant to the 8.99% Indenture, the Investment Note Indenture, or the ACT Declaration of Trust, as applicable.

**1.131    Initial Distribution** shall have the meaning ascribed to such term in Section 5.4(k) of the Plan.

**1.132   Intercompany Claim** means any Claim against any Debtor held by another Debtor.

**1.133   Investment Notes** are senior unsecured debt securities that, together with the RediReserve Certificates, were offered by Advanta and its predecessors directly to retail investors in certain states in order to fund general corporate purposes.

**1.134   Investment Note Claims** means all Claims relating to the Investment Notes arising under the Investment Note Indenture.

**1.135   Investment Note Indenture** means that certain indenture dated October 23, 1995 between Advanta and the Retail Note Indenture Trustee pursuant to which the Investment Notes and the RediReserve Certificates were issued.

**1.136   Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.137   Like Amount** means, with respect to the distribution of the Subordinated Notes to the holders of the Trust Preferred Securities (and Allowed Subordinated Note Claims in respect thereof), Subordinated Notes having a principal amount equal to the liquidation amount of the Trust Preferred Securities of the holder to whom such Subordinated Notes are distributed.

**1.138   Liquidating Trust Agreements** means, collectively, the AC Trust Agreement, the AMCUSA Trust Agreement, the Advanta Auto Finance Trust Agreement, the Advanta Finance Trust Agreement, the ASSC Trust Agreement and the Advantennis Trust Agreement.

**1.139   Liquidating Trust Assets** means, collectively, the AC Trust Assets, the AMCUSA Trust Assets, the Advanta Auto Finance Trust Assets, the Advanta Finance Trust Assets, the ASSC Trust assets and the Advantennis Trust Assets.

**1.140   Liquidating Trust Beneficial Interests** means, collectively, the AC Beneficial Interests, the AMCUSA Beneficial Interests, the Advantennis Beneficial Interests, the Advanta Auto Finance Beneficial Interests, the Advanta Finance Beneficial Interests, and the ASSC Beneficial Interests.

**1.141   Liquidating Trust Beneficiaries** means, collectively, the AC Trust Beneficiaries, the AMCUSA Trust Beneficiaries, the Advanta Auto Finance Trust Beneficiaries, the Advanta Finance Trust Beneficiaries, the ASSC Trust Beneficiaries and the Advantennis Trust Beneficiaries.

**1.142   Liquidating Trustees** means, collectively, the AC Trustee, the AMCUSA Trustee, the Advanta Auto Finance Trustee, the Advanta Finance Trustee, the ASSC Trustee and the Advantennis Trustee.

**1.143   Liquidating Trusts** means, collectively, the AC Trust, the AMCUSA Trust, the Advanta Auto Finance Trust, the Advanta Finance Trust, the ASSC Trust, and the Advantennis Trust.

**1.144   *Local Bankruptcy Rules*** means the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**1.145   *Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof or any other form of legal entity or enterprise.

**1.146   *Plan*** means this Joint Plan Under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits and schedules attached hereto or contained in the Plan Supplement, as the same may be amended or modified from time to time with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.147   *Plan Supplement*** means the supplement or supplements, as amended or modified, to the Plan containing certain documents relevant to the implementation of the Plan, shall be in form and substance reasonably acceptable to the Creditors' Committee, and which shall include, but will not be limited to, the list of executory contracts and unexpired leases to be assumed pursuant to the Plan and the Liquidating Trust Agreements.

**1.148   *Priority Non-Tax Claim*** means a Claim entitled to priority in payment as specified in section 507(a)(4), (5), (6), (7), (9), or (10) of the Bankruptcy Code.

**1.149   *Priority Tax Claim*** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.150   *Pro Rata Share*** means, with respect to a particular Claim, as of a particular distribution date, the ratio (expressed as a percentage) of the amount of that particular Claim to the sum of the aggregate amount of all Allowed Claims and Unresolved Claims that are accounted for in the applicable Unresolved Claims Reserve with respect to the Debtor against which such Claim is asserted, or if such Debtor is one of the Consolidated Debtors, to the Consolidated Debtors.

**1.151   *Punitive Damage Claim*** means any Claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim.

**1.152   *RediReserve Certificates*** means RediReserve Variable Rate Certificates, which are senior unsecured debt securities that were offered, together with the Investment Notes, by Advanta and its predecessors directly to retail investors in certain states in order to fund general corporate purposes.

**1.153   *RediReserve Certificate Claims*** means all Claims relating to the RediReserve Certificates arising under the Investment Note Indenture.

**1.154  Retail Note Indenture Trustee** means The Bank of New York Mellon, in its capacity as the indenture trustee for the Investment Notes and the RediReserve Certificates under the Investment Note Indenture.

**1.155  Reorganized Advanta** means Advanta, as reorganized as of the Effective Date in accordance with the Plan.

**1.156  Reorganized Advanta Assets** means the assets of Reorganized Advanta, which shall consist of (i) $6.7 million in Cash or such other amount as may be agreed to by the Debtors and the Creditors' Committee on or prior to the Effective Date, (ii) a certain portion of Advanta's portfolio of credit card receivables, which shall be determined by the Debtors on or prior to the Effective Date with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, (iii) the stock of ASC, (iv) the stock of ABHC, and (v) a partnership interest in Fleet Credit Card Services, L.P.  As of the Effective Date, the sole assets of ASC and ABHC shall be partnership interests in Fleet Credit Card Services, L.P.

**1.157  Second Commencement Date** means November 20, 2009, the date on which Advanta Ventures Inc., BE Corp., ideablob Corp., and Advanta Credit Card Receivables Corp. filed their voluntary petitions under chapter 11 of the Bankruptcy Code.

**1.158  Schedules** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, schedules of current income and expenditures and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Chapter 11 Cases, as may have been amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.159  SEC** means the Securities and Exchange Commission.

**1.160  Secured Claim** means a Claim, if any, that is secured by a Lien on property in which a Debtor's estate has an interest to the extent of the value of such property, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff, or, in either case as otherwise agreed upon in writing by the Debtors and the holder of such Claim.

**1.161  SEIP** means the Advanta Corp. Supplemental Executive Insurance Program, effective as of April 2, 2007, as amended, supplemented or modified.

**1.162  SERP** means the Advanta Corp. Supplemental Executive Retirement Plan for the Benefit of Dennis Alter, effective as of February 11, 2005, as amended, supplemented or modified.

**1.163  Subordinated Claim** means any Claim against any of the Debtors subject to subordination under section 510 of the Bankruptcy Code or otherwise, including, without limitation, Allowed Punitive Damage Claims, but excluding the Subordinated Note Claims.

**1.164** ***Subordinated Notes*** means the 8.99% junior subordinated deferrable interest debentures issued by Advanta pursuant to the 8.99% Indenture.

**1.165** ***Subordinated Note Claims*** means any Claims arising under the 8.99% Indenture relating to the Subordinated Notes.

**1.166** ***Tax Code*** means the United States Internal Revenue Code of 1986, as amended.

**1.167** ***Tax Returns*** shall have the meaning set forth in Section 5.4(h) of the Plan.

**1.168** ***Treasury Regulations*** means the United States Department of Treasury regulations promulgated under the Tax Code.

**1.169** ***Trust Advisory Board*** shall have the meaning set forth in the Liquidating Trust Agreements and the Advanta Trust Agreement.

**1.170** ***Trust Agreements*** means, collectively, the Liquidating Trust Agreements and the Advanta Trust Agreement.

**1.171** ***Trustee Stock*** means the voting stock of Reorganized Advanta to be issued under the Plan to the Advanta Trust.

**1.172** ***Trustees*** means, collectively, the Liquidating Trustees and the Advanta Trustee.

**1.173** ***Trusts*** means, collectively, the Liquidating Trusts and the Advanta Trust.

**1.174** ***Trust Preferred Securities*** means the $100 million of 8.99% capital securities issued by ACT.

**1.175** ***Unimpaired*** means, with respect to any Claim, that such Claim is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.176** ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.177** ***Unresolved Claims*** means, with reference to any Claim, any Claim (a) if any portion of such Claim is neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, a Claim

shall be considered an Unresolved Claim if (i) the amount of the Claim specified in a proof of Claim exceeds the amount of the Claim scheduled by the Debtors as not disputed, contingent or unliquidated, (ii) a proof of Claim asserts a priority or security interest inconsistent with the Debtors' Schedules, or (iii) the Claim specified in a proof of Claim was not included in the Debtors' Schedules. For the avoidance of doubt, the Claims asserted by Dennis Alter and William Rosoff in proofs of Claim numbered 2341 and 2342 and any Claims related thereto are Unresolved Claims.

      *1.178  Unresolved Claims Reserve* means, with respect to a Trust, Cash that is allocated and retained by such Trust on each distribution date in accordance with the provisions of the Plan and the applicable Trust Agreement on account of Unresolved Claims against such Trust in an amount that the applicable Trustee estimates would be necessary to pay such Unresolved Claims on such distribution dates if such Claims were Allowed.

**B.**      **Interpretation; Application of Definitions and Rules of Construction.**

      Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever the words "include", "includes" or "including" are used in the Plan, they are deemed to be followed by the words "without limitation." A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender and the neuter and words denoting the neuter shall include any applicable gender. Unless otherwise provided herein, in the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

### *PROVISIONS FOR PAYMENT OF NON-CLASSIFIED CLAIMS*

      *2.1*      *Administrative Expense Claims*.

      (a)      <u>Filing Administrative Expense Claims</u>. The holder of an Administrative Expense Claim, other than (i) a Claim covered by Sections 2.2, 2.3 or 2.4 hereof, (ii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Advanta Claims Processing Center (as defined below) a request for payment of such Administrative Expense Claim by no later than sixty (60) days after the Effective Date. Such

request must include at a minimum (A) the name of the Debtor(s) that is purported to be liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim, and (D) the basis for the Claim. **Failure to file and serve such request timely and properly shall result in the Administrative Expense Claim being forever barred.** All requests for payment of Administrative Expense Claims shall be filed at the following address:

| **By Mail:** | **By Hand or Overnight Courier** |
|---|---|
| The Garden City Group, Inc. | The Garden City Group, Inc. |
| Attn: Advanta Corp. | Attn: Advanta Corp. |
| P.O. Box 9562 | 5151 Blazer Parkway, Suite A |
| Dublin, Ohio 43017-4862 | Dublin, Ohio 43017 |

(collectively, the "***Advanta Claims Processing Center***"). Requests for payment of Administrative Expense Claims may **not** be delivered by facsimiles, telecopy, or electronic mail transmission.

(b)     Allowance of Administrative Expense Claims. An Administrative Expense Claim with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1(a) shall become an Allowed Administrative Expense Claim if no objection to such request is filed with the Bankruptcy Court on or before 180 days after the Effective Date. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved by the applicable Trustee pursuant to Section 7.5 of the Plan.

(c)     Payment of Allowed Administrative Expense Claims. Except to the extent that a holder of an Allowed Administrative Expense Claim (other than a Claim covered by Sections 2.2, 2.3 or 2.4 hereof) agrees to a less favorable treatment, each Allowed Administrative Expense Claim (including any Allowed Claim asserted under section 503(b)(9) of the Bankruptcy Code) shall be paid by the applicable Trustee from the applicable Trust in full, in Cash, in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided*, *however*, that Allowed Administrative Expense Claims (other than a Claim covered by Section 2.2, 2.3 or 2.4 hereof) against any of the Debtors representing liabilities incurred in the ordinary course of business by any of the Debtors, as Debtors in Possession, or liabilities arising under loans or advances to or other obligations incurred by any of the Debtors, as Debtors in Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors or the applicable Trustee, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

## 2.2     *Professional Compensation and Reimbursement Claims.*

The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective

Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code. Unless otherwise agreed to by the claimant and the Debtors or the applicable Trustee, as applicable, the Allowed Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in full, in Cash, by the applicable Trustee from the applicable Trust as soon as practicable following the later to occur of (a) the Effective Date, and (b) the date upon which any such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. The Debtors and the Trustees, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

### 2.3    *Indenture Trustee Fees*.

Notwithstanding any provision contained in the Plan to the contrary, unless otherwise agreed to by the Indenture Trustees, the Debtors and the Creditors' Committee, all Indenture Trustee Fees incurred by each Indenture Trustee prior to the Effective Date shall be paid in Cash by the AC Trustee within 10 days of the presentation of invoices by each Indenture Trustee and without the need for application to, or approval by, any court. Any Indenture Trustee Fees incurred by the Indenture Trustees for services related to distributions pursuant to the Plan, if any, including, but not limited to, the reasonable fees, costs and expenses incurred by the Indenture Trustees' professionals in carrying out the Indenture Trustees' duties as provided for in the applicable Indenture and the reasonable fees, costs and expenses incurred under Section 4.3(d) of the Plan, shall be paid by the AC Trustee after the Effective Date in the ordinary course of business in Cash upon presentation of invoices by the Indenture Trustees and without the need for an application to, or approval of, any court. If the AC Trustee disputes any requested Indenture Trustee Fees, the AC Trustee (i) shall pay the undisputed portion of the Indenture Trustee Fees as provided for in this Section 2.3, and (ii) shall notify the applicable Indenture Trustee of such dispute within 10 days after the presentation of the invoices by the Indenture Trustee, and, upon such notification, the Indenture Trustee shall (a) assert a Charging Lien to pay the disputed portion of the Indenture Trustee Fees and/or (b) submit such dispute for resolution to the Bankruptcy Court; *provided however*, that the Bankruptcy Court's review shall be limited to a determination under the reasonable standard in accordance with the applicable Indentures. Upon payment of the applicable Indenture Trustees' fees and expenses pursuant to the procedures set forth herein, the proofs of Claims filed by the Indenture Trustees, assigned numbers 1719 and 1722, shall be deemed satisfied. Nothing herein shall be deemed to impair, waive, discharge, or negatively affect any Charging Lien for any fees, costs and expenses not paid by the AC Trustee and otherwise claimed by the Indenture Trustees pursuant to the procedures set forth in this Section 2.3.

### 2.4    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority

Tax Claim, or as soon as practicable thereafter, Cash in an amount equal to such Allowed Priority Tax Claim.

## ARTICLE III

### *CLASSIFICATION OF*
### *CLAIMS AND EQUITY INTERESTS*

The following table designates the classes of Claims against, and Equity Interests in, the Debtors and specifies which of those classes are impaired or Unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| **Classes 1(a)-(f)** | Other Priority Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively | Unimpaired | No (deemed to accept) |
| **Classes 2(a)-(f)** | Secured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively | Unimpaired | No (deemed to accept) |
| **Class 3** | Investment Note Claims and RediReserve Certificate Claims against Advanta | Impaired | Yes |
| **Classes 4(a)-(f)** | General Unsecured Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, Advanta Finance, respectively | Impaired | Yes |
| **Class 5** | Subordinated Note Claims against Advanta | Impaired | Yes |
| **Classes 6(a)-(f)** | Subordinated Claims against the Consolidated Debtors, Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance, respectively | Impaired | Yes |
| **Classes 7(a)-(c)** | Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC, respectively | Impaired | No (deemed to reject) |
| **Classes 7(d)-(f)** | Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance, respectively | Impaired | Yes |
| **Class 7(g)** | Equity Interests in ASC | Unimpaired | No (deemed to accept) |

# ARTICLE IV

## *TREATMENT OF CLAIMS AND EQUITY INTERESTS*

### *4.1    Classes 1(a)-(f): Other Priority Claims.*

(a)    <u>Impairment and Voting.</u>  Classes 1(a) through 1(f) are Unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions.</u>  Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid by the Debtors, in whole or in part, prior to the Effective Date, or (ii) agrees to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive from the applicable Trustee from the applicable Trust, in full satisfaction of such Claim, Cash in the full amount of such Allowed Claim, on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date such Claim becomes Allowed.

### *4.2    Classes 2(a)-(f): Secured Claims.*

(a)    <u>Impairment and Voting.</u>  Classes 2(a) through 2(f) are Unimpaired by the Plan.  Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions.</u>  Except to the extent that a holder of an Allowed Secured Claim (i) has been paid by the Debtors, in whole or in part, prior to the Effective Date, or (ii) agrees to a less favorable treatment, each holder of an Allowed Secured Claim shall receive from the applicable Trustee from the applicable Trust, in full satisfaction of such Claim, Cash in the full amount of such Allowed Claim, on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date such Claim becomes Allowed.

### *4.3    Class 3: Investment Note Claims and RediReserve Certificate Claims.*

(a)    <u>Allowance.</u>  The Investment Note Claims and RediReserve Certificate Claims as set forth in proof of Claim, assigned number 941 and filed by the Retail Note Indenture Trustee, are hereby Allowed in an amount of $140,622,493.80 in the aggregate.  To the extent Claims are asserted in separate proofs of Claim on account of principal and accrued interest with respect to Investment Notes and/or RediReserve Certificates, and (i) a holder has not timely filed a response to the disallowance of such Claim, or (ii) if filed, such a response is overruled by a Final Order, such Claims are hereby disallowed and expunged.  The list of all such Claims that are disallowed and expunged are listed on ***Schedule 12.10*** of the Plan.

(b)    <u>Impairment and Voting.</u>  Class 3 is impaired by the Plan.  Each holder of an Allowed Investment Note Claim and/or an Allowed RediReserve Certificate Claim is entitled to vote to accept or reject the Plan.

(c)    <u>Distributions.</u>  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed Investment Note Claim or an Allowed RediReserve Certificate Claim shall receive an AC Class A Beneficial Interest in the AC Trust and an

Advanta Class A Beneficial Interest in the Advanta Trust. An AC Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the AC Trust and an Advanta Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the Advanta Trust, if and when such distributions are made pursuant to the terms of the AC Trust Agreement and the Advanta Trust Agreement, as applicable; *provided*, *however*, that (i) no holder of an Allowed Investment Note Claim or an Allowed RediReserve Claim shall receive distributions that aggregate to more than the amount of such holder's Allowed Investment Note Claim or Allowed RediReserve Certificate Claim, and (ii) all distributions on account of AC Class A Beneficial Interests and Advanta Class A Beneficial Interests to holders of Allowed Subordinated Note Claims shall be made directly to holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims in accordance with this Section 4.3 until such time as all holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims have received, in the aggregate, pursuant to this Section 4.3, an amount equal to the amount of all Allowed Investment Note Claims and Allowed RediReserve Certificate Claims.

(d) As soon as practicable after the applicable Trustees determine with reasonable certainty that holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims will receive distributions pursuant to this Section 4.3 aggregating 100% of the principal and accrued prepetition interest of their Allowed Claims, the applicable Trustees shall so notify the Indenture Trustees in writing (the "***Section 4.3 Notice***"). Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall prohibit the Retail Note Indenture Trustee and/or any holder of Allowed Investment Note Claims or Allowed RediReserve Certificate Claims from commencing an action in the Bankruptcy Court within forty-five (45) days after service of the Section 4.3 Notice asserting that under the Indentures, holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims are entitled to receive post-petition interest from the distributions that would otherwise have been made to holders of Allowed Subordinated Note Claims (the "***Interest Action***"). Nothing in the Plan shall preclude any party in interest, including, without limitation, the 8.99% Indenture Trustee, any holder of Subordinated Notes, the Debtors, or any of the Trustees, from challenging or otherwise participating in the Interest Action. The Trustees shall not make any distributions to holders of Allowed Subordinated Note Claims or any distributions to the holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims exceeding 100% of the Allowed amount of such claims as set forth in Section 4.3(a), above, until after (i) the Interest Action has not been timely commenced, or (ii) if the Interest Action is timely commenced, entry of a Final Order resolving the Interest Action, in which case distributions shall be made pursuant to the terms of such Final Order.

### 4.4 *Class 4(a): General Unsecured Claims against the Consolidated Debtors*

(a) <u>Impairment and Voting.</u> Class 4(a) is impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Class 4(a) is entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim in Class 4(a) shall receive an AC Class A Beneficial Interest in the AC Trust and an Advanta Class A Beneficial Interest in the

Advanta Trust.  An AC Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the AC Trust and an Advanta Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the Advanta Trust, if and when such distributions are made pursuant to the terms of the AC Trust Agreement and the Advanta Trust Agreement, as applicable; *provided*, *however*, that no holder of an Allowed General Unsecured Claim in Class 4(a) shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim.

### 4.5    *Class 4(b): General Unsecured Claims against Advantennis.*

(a)    <u>Impairment and Voting</u>.  Class 4(b) is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against Advantennis is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim against Advantennis shall receive an Advantennis Class A Beneficial Interest in the Advantennis Trust.  An Advantennis Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the Advantennis Trust, if and when such distributions are made pursuant to the terms of the Advantennis Trust Agreement; *provided*, *however*, that no holder of an Allowed General Unsecured Claim against Advantennis shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim against Advantennis.

### 4.6    *Class 4(c): General Unsecured Claims against AMCUSA.*

(a)    <u>Impairment and Voting</u>.  Class 4(c) is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against AMCUSA is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim against AMCUSA shall receive an AMCUSA Class A Beneficial Interest in the AMCUSA Trust.  An AMCUSA Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the AMCUSA Trust, if and when such distributions are made pursuant to the terms of the AMCUSA Trust Agreement; *provided*, *however*, that no holder of an Allowed General Unsecured Claim against AMCUSA shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim against AMCUSA.

### 4.7    *Class 4(d): General Unsecured Claims against Advanta Auto Finance.*

(a)    <u>Impairment and Voting</u>.  Class 4(d) is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against Advanta Auto Finance is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim against Advanta Auto Finance shall receive an Advanta Auto Finance Class A Beneficial Interest in the Advanta Auto Finance Trust.  An Advanta Auto Finance Class A Beneficial Interest shall entitle its holder to receive

such holder's Pro Rata Share of distributions from the Advanta Auto Finance Trust, if and when such distributions are made pursuant to the terms of the Advanta Auto Finance Trust Agreement; *provided*, *however*, that no holder of an Allowed General Unsecured Claim against Advanta Auto Finance shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim against Advanta Auto Finance.

### 4.8    Class 4(e): General Unsecured Claims against ASSC.

(a)    <u>Impairment and Voting</u>. Class 4(e) is impaired by the Plan. Each holder of an Allowed General Unsecured Claim against ASSC is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim against ASSC shall receive an ASSC Class A Beneficial Interest in the ASSC Trust. An ASSC Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the ASSC Trust, if and when such distributions are made pursuant to the terms of the ASSC Trust Agreement; *provided*, *however*, that no holder of an Allowed General Unsecured Claim against ASSC shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim against ASSC.

### 4.9    Class 4(f): General Unsecured Claims against Advanta Finance.

(a)    <u>Impairment and Voting</u>. Class 4(f) is impaired by the Plan. Each holder of an Allowed General Unsecured Claim against Advanta Finance is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim against Advanta Finance shall receive an Advanta Finance Class A Beneficial Interest in the Advanta Finance Trust. An Advanta Finance Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the Advanta Finance Trust, if and when such distributions are made pursuant to the terms of the Advanta Finance Trust Agreement; *provided*, *however*, that no holder of an Allowed General Unsecured Claim against Advanta Finance shall receive distributions that aggregate to more than the amount of such holder's Allowed General Unsecured Claim against Advanta Finance.

### 4.10    Class 5: Subordinated Note Claims.

(a)    <u>Allowance.</u> The Subordinated Note Claims set forth in proof of Claim, assigned number 1718, are hereby Allowed in an amount of $96,511,556.06 in the aggregate. The proofs of Claims filed on behalf of Subordinated Note Claims assigned numbers 1717, 1720, are 1721 are hereby deemed withdrawn.

(b)    <u>Impairment and Voting.</u> Class 5 is impaired by the Plan. Each holder of an Allowed Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(c)     Distributions.  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed Subordinated Note Claim shall receive an AC Class A Beneficial Interest in the AC Trust and an Advanta Class A Beneficial Interest in the Advanta Trust.  An AC Class A Beneficial Interest in the AC Trust shall entitle its holder to receive such holder's Pro Rata Share of distributions from the AC Trust and an Advanta Class A Beneficial Interest shall entitle its holder to receive such holder's Pro Rata Share of distributions from the Advanta Trust, if and when such distributions are made pursuant to the terms of the AC Trust Agreement and the Advanta Trust Agreement, as applicable; *provided*, *however*, that (i) all distributions on account of Allowed Subordinated Note Claims shall first be made to holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims in accordance with Section 4.3 of the Plan until such time as all holders of Allowed Investment Note Claims and Allowed RediReserve Certificate Claims have received, in the aggregate, an amount equal to the amount of all Allowed Investment Note Claims and Allowed RediReserve Certificate Claims, and (ii) thereafter, no holder of an Allowed Subordinated Note Claim shall receive distributions that aggregate to more than the amount of such holder's Allowed Subordinated Note Claim.  For the avoidance of doubt, no holder of an Allowed Subordinated Claim shall receive a distribution on account of its AC Class A Beneficial Interest or its Advanta Class A Beneficial Interest until all Allowed Investment Note Claims and Allowed RediReserve Claims are paid in full.

### 4.11    *Classes 6(a)-(f): Subordinated Claims.*

(a)     Impairment and Voting.  Classes 6(a) through (f) are impaired by the Plan. Each holder of a Subordinated Claim is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Each holder of an Allowed Subordinated Claim shall receive a Class B Beneficial Interest in the applicable Liquidating Trust.  In addition, each holder of an Allowed Subordinated Claim against any of the Consolidated Debtors will receive an Advanta Class B Beneficial Interest.  A Class B Beneficial Interest and an Advanta Class B Beneficial Interest shall entitle its holder to receive its Pro Rata Share of distributions from the applicable Trust only after payment in full of all such Trust's Allowed Administrative Expense Claims, Allowed Priority Non-Tax Claims, Allowed Tax Claims, Allowed Secured Claims, Allowed Investment Note Claims, Allowed RediReserve Certificate Claims, Allowed Subordinated Note Claims, and Allowed General Unsecured Claims, and funding of a reserve for such Trust for any wind down expenses and costs that the applicable Trustee determines is appropriate; *provided*, *however*, that no holder of an Allowed Subordinated Claim shall receive a distribution that aggregates to more than the amount of such holder's Allowed Subordinated Claim.

(c)     Claims related to the following litigation shall be classified and treated as Subordinated Claims, without the need for further court order: *Ragan v. Advanta Corp., et al.*, No. 09-cv-4974 (E.D. Pa.); *Hiatt v. Advanta Corp., et al.*, No. 09-5467 (E.D. Pa.); *Yates, et al. v. Rosoff, et al.*, No. 09-5746 (E.D. Pa.); and *Steamfitters Local 449 Pension Fund v. Advanta Corp., et al.*, No. 09-4730 (E.D. Pa.).

### 4.12     Classes 7(a)-(c): Equity Interests in the Consolidated Debtors (other than ASC), Advantennis, and ASSC.

(a)     <u>Impairment and Voting.</u>  Classes 7(a)-(c) are impaired by the Plan.  Each holder of an Equity Interest in any of the Consolidated Debtors (other than ASC), Advantennis, and ASSC is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, all existing Equity Interests in any of the Consolidated Debtors (other than ASC), Advantennis, and ASSC shall be cancelled and extinguished and the holders of Equity Interests in the Consolidated Debtors, Advantennis, and ASSC shall not be entitled to, and shall not receive or retain, any property or interest on account of such Equity Interests under the Plan.

### 4.13     Classes 7(d)-(f): Equity Interests in AMCUSA, Advanta Auto Finance, and Advanta Finance.

(a)     <u>Impairment and Voting.</u>  Classes 7(d)-(f) are impaired by the Plan.  Each holder of an Equity Interest in Classes 7(d)-(f) is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, each holder of an Equity Interest in AMCUSA, Advanta Auto Finance, and Advanta Finance shall receive a Class C Beneficial Interest in the applicable Trust.  A Class C Beneficial Interest shall entitle its holder to receive its Pro Rata Share of distributions from the applicable Trust only after payment in full of all such Trust's Allowed Claims, and funding of a reserve for such Trust for any wind down expenses and costs that the applicable Trustee determines is appropriate.

### 4.14     Class 7(g): Equity Interests in ASC.

(a)     <u>Impairment and Voting.</u>  Class 7(g) is unimpaired by the Plan.  Each holder of an Equity Interest in ASC is conclusively presumed to accept the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, the Equity Interests in ASC shall be retained.

## ARTICLE V

### Means of Implementation

### 5.1     Exchange of Trust Preferred Securities.

To effectuate the terms of the ACT Declaration of Trust, on the Effective Date, the ACT Securities shall be deemed automatically cancelled and extinguished, and the obligations of the Debtors and ACT under any agreements, indentures, guarantees or certificates of designations governing or specifically related to the ACT Securities shall be discharged in each case without further act or action under any applicable agreement, law, regulation, order, or rule and without any further action on the part of the Bankruptcy Court or any Person; *provided*, *however*, that each holder of Trust Preferred Securities shall be deemed to have received on the

Effective Date an Allowed Subordinated Note Claim in an amount equal to a Like Amount of Subordinated Notes. For the avoidance of doubt, on the Effective Date, (i) ACT's claims against Advanta and the guarantee claims against Advanta of the holders of Trust Preferred Securities shall be extinguished; and (ii) Advanta shall have no Claims on account of the Common Securities and all Claims on account of Common Securities shall be extinguished.

On the Effective Date, the ACT Declaration of Trust shall be deemed terminated and ACT shall be deemed dissolved without any further action on the part of the Bankruptcy Court or any Person. On or as soon as reasonably practicable after the Effective Date, the ACT Administrative Trustee shall file a certificate of cancellation with the Secretary of State of the State of Delaware. The Indenture Trustee Fees related to implementation of this Section 5.1 shall be paid pursuant to Section 2.3 of the Plan.

After performance by the ACT Trustees of any duties that are required under the Plan, the Confirmation Order and/or under the terms of any agreements, indentures, guarantees or certificates of designations to implement the terms of this Section 5.1, the ACT Trustees and each of their agents shall be relieved of, and released from, all obligations associated with the ACT Securities under applicable trust agreements or law.

### 5.2    *Substantive Consolidation.*

(a)    The Plan contemplates and is predicated upon substantive consolidation of the Consolidated Debtors into a single entity for the purpose of all actions under the Plan. Entry of the Confirmation Order shall constitute approval pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases of the Consolidated Debtors for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution.

(b)    On and after the Effective Date, (i) no distributions shall be made under the Plan on account of Intercompany Claims among the Consolidated Debtors, (ii) all guarantees by any of the Consolidated Debtors of the obligations of any other Consolidated Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Consolidated Debtor and any guarantee thereof executed by any other Consolidated Debtor and any joint and several liability of any of the Consolidated Debtors shall be deemed to be one obligation of the deemed Consolidated Debtors, and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases of the Consolidated Debtors shall be deemed filed against the Consolidated Debtors and shall be deemed one Claim against and obligation of the Consolidated Debtors. The substantive consolidation contemplated in this Section 5.2 shall only include the Consolidated Debtors and shall not include Advantennis, AMCUSA, Advanta Auto Finance, ASSC, and Advanta Finance.

(c)    The Consolidated Debtors believe that no creditor of the Consolidated Debtors will receive a recovery materially inferior to that which it would receive if each Consolidated Debtor proposed its own chapter 11 plan, and that in such event, all creditor recoveries would be reduced by the added administrative expense of proceeding to confirm and administer separate plans and to liquidate separate estates. If any party in interest challenges the proposed substantive consolidation, the Debtors reserve the right to establish, at the

Confirmation Hearing, the ability to confirm the Plan on an entity-by-entity basis, or to make the showing that the Consolidated Debtors can be substantively consolidated under applicable law. If the Bankruptcy Court does not approve the substantive consolidation requested herein as to any or all of the Debtors, the Debtors reserve the right to seek confirmation of this Plan on a non-substantive consolidation basis with respect to each affected Debtor.

(d)     A creditor's vote to accept the Plan shall be deemed such creditor's agreement to accept, as consideration for any and all Allowed Claims against any and all Debtors, the treatment specified in the Plan, including, without limitation, the substantive consolidation described in this Section 5.2 and, in the event the Bankruptcy Court does not approve the substantive consolidation of all or certain of the Debtors that is requested in this Section 5.2, the treatment of such creditor's Claim pursuant to the Plan on a non-substantive consolidation basis.

### 5.3     Merger/Dissolution/Consolidation.

On and as of the Effective Date, all Debtors (other than Advanta and ASC) shall be deemed dissolved without any further court or corporate action, including the filing of any documents with the Secretary of State for any state in which such Debtors are incorporated or any other jurisdiction; *provided*, *however*, that the applicable Trustees shall have authority to take whatever actions are necessary to dissolve the Debtors (other than Advanta and ASC).  In addition, prior to the Effective Date, the Debtors with the consent of the Creditors' Committee (which consent shall not be unreasonably withheld), and after the Effective Date, the applicable Trustee shall have authority to: (i) cause any or all of Advanta, ASC, or any non-Debtor Affiliate (other than the ABC Parties) to be merged into one or more of the Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among Advanta, ASC, or any non-Debtor Affiliate (other than the ABC Parties), (iii) to the extent determined appropriate by the Debtors and the applicable Trustee, cause the reduction, recharacterization, reinstatement or discharge of any Intercompany Claim (to the extent not already eliminated under Section 5.2) and any claim between any non-Debtor Affiliate (other than the ABC Parties) and any Debtor, or (iv) engage in any other transaction in furtherance of the Plan.

### 5.4     The Liquidating Trusts.

(a)     <u>Execution of the Liquidating Trust Agreements</u>.  On or before the Effective Date, the Liquidating Trust Agreements shall be executed by the applicable Debtors, the applicable Liquidating Trustees and the Delaware Trustee with the consent of the Creditors' Committee (which consent shall not be unreasonably withheld), and all other necessary steps shall be taken to establish the Liquidating Trusts and the Liquidating Trust Beneficial Interests therein which shall be for the benefit of the Liquidating Trust Beneficiaries, as provided in Sections 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, and 4.10 of the Plan, whether their Claims are Allowed on or after the Effective Date.  In the event of any conflict between the terms of this Section 5.4 and the terms of the applicable Liquidating Trust Agreement, the terms of this Section 5.4 shall govern.  The Liquidating Trust Agreements may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidating Trusts as "liquidating trusts" for United States federal income tax purposes.

(b)    Purpose of the Liquidating Trusts.  The Liquidating Trusts shall be established for the sole purpose of liquidating and distributing their assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)    Liquidating Trust Assets.  The Liquidating Trusts shall consist of the Liquidating Trust Assets.  On the Effective Date, the Debtors shall transfer the Liquidating Trust Assets to the applicable Liquidating Trust subject to all Allowed Claims payable pursuant to Article II and Article IV of the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.  In connection with the transfer of the Liquidating Trust Assets to the applicable Liquidating Trust, such assets, including, without limitation, rights and Causes of Action and all Books and Privileges relating to such Liquidating Trust Assets, shall vest in the applicable Liquidating Trustee solely in its capacity as such.  The Debtors and the Liquidating Trustees are authorized to take all necessary actions to effectuate the transfer of such Books and Privileges.

(d)    Liquidating Trusts Taking Assignment of the Debtors' Contracts.  Each Liquidating Trust shall take assignment of contracts and leases entered into by the applicable Debtor(s) subsequent to the Commencement Date and all existing prepetition contracts and unexpired leases of the Debtors that were not rejected pursuant to this Plan or otherwise by order of the Bankruptcy Court, except for the contracts and leases listed as being assumed by either Reorganized Advanta or ASC on *Schedule 8.1*, to be filed with the Plan Supplement and which shall be in form and substance reasonably acceptable to the Creditors' Committee.  As such, counterparties to any such contracts and leases transferred to any of the Liquidating Trusts pursuant to the Plan, and counterparties to any subcontracts or subleases related to such contracts or leases, shall be prohibited from terminating or otherwise altering the terms of such contract or lease as a result of the transfer of such contract or lease to the Liquidating Trusts.

(e)    Governance of the Liquidating Trusts.  The Liquidating Trusts shall be governed by the applicable Liquidating Trustee according to the applicable Liquidating Trust Agreement.

(f)    The Liquidating Trustees.  The Liquidating Trustees shall be designated by the applicable Debtor(s) with the consent of the Creditors' Committee.  The Liquidating Trustees may be any of the professionals that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases.  The same individual may serve as the trustee for any or all of the Trusts.  In the event the trustee for any of the Trusts dies, is terminated or resigns for any reason, the Trust Advisory Board shall designate a successor pursuant to the applicable Liquidating Trust Agreement and subject to the approval of the Bankruptcy Court.  The Liquidating Trustees shall be deemed to have been appointed as the Estates' representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The initial Trust Advisory Board for each Liquidating Trust shall be designated by the Debtors with the consent of the Creditors' Committee. The same individuals may serve as members of each Trust's Trust Advisory Board.

(g)    Role of the Liquidating Trustees.  In furtherance of and consistent with the purpose of the Liquidating Trusts and the Plan, each Liquidating Trustee shall, among other

things, have the rights, powers and duties, subject to the limitations set forth in the applicable Liquidating Trust Agreement: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the applicable Liquidating Trust; (ii) to hold the Liquidating Trust Assets for the benefit of the applicable Liquidating Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the applicable Liquidating Trust Assets, including rights, Causes of Action or litigation of such Liquidating Trust; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Liquidating Trusts; (vi) in the Liquidating Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtors or the applicable Liquidating Trust, and manage, control, prosecute and/or settle on behalf of the applicable Estate and/or Liquidating Trust objections to Claims on account of which the Liquidating Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan, (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the applicable Debtor(s) (other than Advanta and ASC) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) and implement the Plan; (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; (ix) to act as a signatory to the applicable Debtor(s) (other than Advanta and ASC) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor(s)'s assets; (x) to dispose of the books and records transferred to the applicable Liquidating Trustee in a manner deemed appropriate by such Trustee; *provided, however*, that such Trustee shall not dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the applicable Liquidating Trust and execute any documents or pleadings related to the liquidation of the applicable Liquidating Trust Assets or other matters related to the applicable Liquidating Trust; (xiii) to establish and maintain bank accounts and terminate such accounts as the Liquidating Trustee deems appropriate; (xiv) to set off amounts owed to the Debtors against distributions to Liquidating Trust Beneficiaries; (xv) to bring suits or defend itself against such suits, if any, as the Liquidating Trustee determines in connection with any matter arising from or related to the Plan or the applicable Liquidating Trust Agreement that affects in any way the rights or obligations of the applicable Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Beneficiaries; (xvi) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of the applicable Trust Agreement; (xvii) to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the applicable Liquidating Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the applicable Liquidating Trust and are consistent with and are not contrary to the treatment of such Trust as a "grantor trust" for United States federal income tax purposes; and (xviii) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and the applicable Liquidating Trust Agreement. In

all circumstances, each Liquidating Trustee shall act in the best interests of all beneficiaries of the applicable Liquidating Trust and in furtherance of the purpose of the applicable Liquidating Trust.

   (h) <u>Liquidating Trustees' Tax Powers</u>.

     (i) Following the Effective Date, the Liquidating Trustees shall prepare and file (or cause to be prepared and filed), on behalf of the applicable Debtor(s) (other than Advanta and ASC, including as the common parent or other agent of any consolidated, combined or unitary tax group of which Advanta or ASC was the agent) all tax returns, reports, certificates, forms or similar statements or documents (collectively, "***Tax Returns***") required to be filed or that the Liquidating Trustees otherwise deem appropriate, including the filing of amended Tax Returns or requests for refunds.

     (ii) For all taxable periods ending on or prior to the Effective Date, the Liquidating Trustees shall have full and exclusive authority in respect of all taxes of the Debtors (other than Advanta and ASC), to the same extent as if the Liquidating Trustees were the debtors in possession; *provided, however*, that the AC Trustee shall have full and exclusive authority in respect of all state tax audits or other state tax proceedings of Advanta and ASC (including as the common parent or other agent of any consolidated, combined or unitary tax group of which Advanta or ASC was the agent) relating to taxable periods ending on or prior to the Effective Date as if the AC Trustee was the debtor in possession.

     (iii) In furtherance thereof, each of the Debtors and Consolidated Debtors and each of the non-Debtor Affiliates (other than the ABC Parties and ABHC) shall execute on or prior to the Effective Date a power of attorney authorizing the applicable Liquidating Trustees to take actions consistent with Section 5.4(h)(i) and (ii) of the Plan to the same extent as if the Liquidating Trustees were the Debtor or non-Debtor Affiliate.

     (iv) Following the Effective Date, each Liquidating Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the applicable Debtor(s) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) to the same extent as the applicable Debtor or non-Debtor Affiliate would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date and (ii) of the applicable Debtor(s) (other than Advanta and ASC) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) to the same extent as the applicable Debtor or non-Debtor Affiliates would otherwise be entitled with respect to any taxable period ending after the Effective Date; *provided, however*, that each Liquidating Trustee shall only have whatever rights the applicable Debtor and non-Debtor Affiliate have pursuant to the FDIC Settlement Agreement and the Liquidating Trustees shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

     (v) Each Liquidating Trustee, Debtor and non-Debtor Affiliate shall reasonably cooperate with each other, and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the Debtors and the non-

Debtor Affiliates. Any information obtained under this Section 5.4(h)(v) shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding. At the reasonable request of any Liquidating Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority under Section 5.4(h)(i) with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(i)     <u>Nontransferability of the Liquidating Trust Beneficial Interests</u>. The Liquidating Trust Beneficial Interests shall not be certificated and shall not be transferable or assignable except by will, intestate succession or operation of law.

(j)     <u>Cash</u>. The Liquidating Trustees may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(k)     <u>Distribution of the Liquidating Trust Assets</u>. The Liquidating Trustees shall make an initial distribution (the "***Initial Distribution***") as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date. The Liquidating Trustees shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Liquidating Trust Beneficial Interests of all Cash on hand in accordance with the terms of the applicable Liquidating Trust Agreement and the priorities set forth in this Plan (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by each Liquidating Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Liquidating Trusts or in respect of the Liquidating Trust Assets) of the Liquidating Trusts, the Liquidating Trustees, the Delaware Trustee, and the members of the Trust Advisory Boards, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Liquidating Trusts or imposed on the Liquidating Trusts in accordance with this Plan or the applicable Liquidating Trust Agreement.

(l)     <u>Costs and Expenses of the Liquidating Trusts</u>. The costs and expenses of the Liquidating Trusts, including the reasonable fees and expenses of the Liquidating Trustees, the Delaware Trustee, the members of the Trust Advisory Boards, and each of their respective retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserves, shall be paid out of the applicable Liquidating Trust Assets; *provided, however*, that such fees and expenses may not exceed the amount reflected in the Budget (as defined in the applicable Liquidating Trust Agreement) by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(m)     <u>Compensation of the Liquidating Trustees and the Delaware Trustee</u>. The Liquidating Trustees and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries

in similar roles; *provided, however*, that such compensation may not exceed the amount reflected in the Budget (as defined in the applicable Liquidating Trust Agreement) by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(n)     Retention of Professionals by the Liquidating Trustees.  The Liquidating Trustees may retain and compensate attorneys and other professionals to assist in their duties as Liquidating Trustees on such terms (including on a contingency or hourly basis) as such Liquidating Trustees deem appropriate without Bankruptcy Court approval; *provided, however*, that such compensation may not exceed the amount reflected in the Budget (as defined in the applicable Liquidating Trust Agreement) by more than 15% for each professional, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.  Without limiting the foregoing, the Liquidating Trustees may retain any professional that represented the Creditors' Committee or other parties in interest in these Chapter 11 Cases and the same professional may represent any or all of the Trusts, Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(o)     Federal Income Tax Treatment of the Liquidating Trusts.  For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustees and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the applicable Liquidating Trust as:

(i)     a transfer of the respective Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests relating thereto and, to the extent the Liquidating Trust Assets are allocable to Unresolved Claims, to the applicable Unresolved Claims Reserve, followed by

(ii)     the transfer by such beneficiaries to the applicable Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the applicable Unresolved Claims Reserve) in exchange for the applicable Liquidating Beneficial Interests.

Accordingly, those holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to the Unresolved Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(p)     Tax Reporting.

(i)     The Liquidating Trustees shall file returns (including United States federal returns) for the applicable Liquidating Trusts treating the Liquidating Trusts as grantor trusts pursuant to Treasury Regulations section 1.671-4(a) and in accordance with this Section 5.4.  The Liquidating Trustees shall also annually (but not later than sixty (60) days following the end of each calendar year) send to each holder of a Liquidating Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income

tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The Liquidating Trustees shall also file (or cause to be filed) any other statements, returns or disclosures relating to each of the Liquidating Trusts that are required by any governmental unit.

(ii)    As soon as practicable after the Effective Date, the Liquidating Trustees shall make a good-faith valuation of the Liquidating Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(iii)    In furtherance of the provisions of Section 5.4(p) of this Plan, allocations of the Liquidating Trusts' taxable income among the Liquidating Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserves) shall be determined in good faith by the applicable Liquidating Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, each Liquidating Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to each of the applicable Unresolved Claims Reserves) to the holders of the applicable Liquidating Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the applicable Liquidating Trust. Similarly, taxable loss of each Liquidating Trust shall be allocated in good faith by the applicable Liquidating Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the applicable Liquidating Trustee.

(iv)    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee(s) of a private letter ruling if the Liquidating Trustee(s) so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee(s)), the Liquidating Trustee(s) shall (A) timely elect to treat any Liquidating Trust Assets allocable to the applicable Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustees, the Debtors and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(v)    The Liquidating Trustees shall be responsible for payment, out of the applicable Liquidating Trust Assets, of any taxes imposed on the trust or its assets, including the applicable Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the applicable Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable

to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the applicable Liquidating Trustee as a result of the resolution of such Unresolved Claims.

          (vi)     The Liquidating Trustees may request an expedited determination of taxes of the applicable Liquidating Trust, including the applicable Unresolved Claims Reserve, or the applicable Debtor(s) under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the applicable Liquidating Trust or the applicable Debtor(s) for all taxable periods through the dissolution of each of the Liquidating Trusts.

          (q)     <u>Dissolution</u>.  Each Liquidating Trust shall be dissolved at the earlier of (even if Liquidating Trust Beneficiaries have not been paid in full) (i) all of the applicable Liquidating Trust Assets having been distributed pursuant to the Plan and the applicable Liquidating Trust Agreement, (ii) the Liquidating Trustee determining, in its sole discretion, that the administration of the applicable Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and the applicable Liquidating Trust Agreement having been made; *provided*, *however*, that in no event shall any of the Liquidating Trusts be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two extensions, each extension not to exceed eighteen months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. If at any time any Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering any of the Liquidating Trusts, including the making of a final distribution to its beneficiaries, is likely to exceed the value of the assets remaining in the applicable Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the applicable Liquidating Trust, (ii) donate any balance to a charitable organization or a charitable trust that is unrelated to the Debtors, the Liquidating Trusts, and any insider of the Liquidating Trustees, and (iii) dissolve the applicable Liquidating Trust.

          (r)     <u>Indemnification of Liquidating Trustees</u>.  The Liquidating Trustees or the individuals comprising the Liquidating Trustees, and the Liquidating Trustees' employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustees, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Liquidating Trustees' actions or inactions regarding the implementation or administration of this

Plan, the applicable Liquidating Trust or the applicable Liquidating Trust Agreement or the discharge of their duties hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Liquidating Trustees (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the applicable Liquidating Trust Assets or any applicable insurance coverage. The Liquidating Trustees shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing. Notwithstanding the foregoing, the Liquidating Trustees shall not be under any obligation to consult with their retained professionals, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustees unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

### 5.5 *The Advanta Trust.*

(a)      Execution of the Advanta Trust Agreement. On or before the Effective Date, the Advanta Trust Agreement shall be executed by the applicable Debtors, the Advanta Trustee and the Delaware Trustee, and all other necessary steps shall be taken to establish the Advanta Trust and the Advanta Beneficial Interests therein, which shall be for the benefit of the Advanta Trust Beneficiaries. In the event of any conflict between the terms of this Section 5.5 and the terms of the Advanta Trust Agreement, the terms of this Section 5.5 shall govern. The Advanta Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Advanta Trust as a "liquidating trust" for United States federal income tax purposes.

(b)      Purpose of the Advanta Trust. The Advanta Trust shall be established for the sole purpose of liquidating and distributing its assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)      Advanta Trust Assets. The Advanta Trust shall consist of the Advanta Trust Assets. On the Effective Date, the Debtors shall transfer all of the Advanta Trust Assets to the Advanta Trust. Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.

(d)      Governance of the Advanta Trust. The Advanta Trust shall be governed by the Advanta Trustee according to the Advanta Trust Agreement.

(e)      The Advanta Trustee. The Advanta Trustee shall be designated by the Debtors with the consent of the Creditors' Committee. The Advanta Trustee may be any of the professionals that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases. The Advanta Trustee may be the same individual(s) as any of the Liquidating Trustees. In the event the Advanta Trustee dies, is terminated or resigns for any reason, the Trust Advisory Board (as defined in the Advanta Trust Agreement) shall designate a successor pursuant to the Advanta Trust Agreement and upon approval of the Bankruptcy Court. The initial Trust Advisory Board for the Advanta Trust shall be designated by the Debtors with the

consent of the Creditors' Committee. The same individuals may serve as members of each Trusts' Trust Advisory Board.

(f) Role of the Advanta Trustee. In furtherance of and consistent with the purpose of the Advanta Trust and the Plan, the Advanta Trustee shall, among other things, have the rights, powers and duties, subject to the limitations set forth in the Advanta Trust Agreement: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Advanta Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the Advanta Trust; (ii) to hold the Advanta Trust Assets for the benefit of the Advanta Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Advanta Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon Advanta Trust Assets, including rights, Causes of Action or litigation of the Advanta Trust; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents required with respect to the Advanta Trust; (vi) in the Advanta Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtors or the Advanta Trust, and manage, control, prosecute and/or settle on behalf of the Advanta Trust, objections to Claims on account of which the Advanta Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan; (vii) to take all actions necessary, and create any documents necessary, to implement the Plan; (viii) to hold, manage, and distribute Cash or non-Cash Advanta Trust Assets obtained through the exercise of the Advanta Trustee's power and authority; (ix) to dispose of the books and records transferred to the Advanta Trustee in a manner deemed appropriate by the Advanta Trustee; *provided, however*, that the Advanta Trustee shall not dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court; (x) to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Cases; (xi) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Advanta Trust and execute any documents or pleadings related to the liquidation of the Advanta Trust Assets or other matters related to the Advanta Trust; (xii) to establish and maintain bank accounts and terminate such accounts as the Advanta Trustee deems appropriate; (xiii) to set off amounts owed to the Debtors against distributions to Advanta Trust Beneficiaries; (xiv) to bring suits or defend itself against such suits, if any, as the Advanta Trustee determines in connection with any matter arising from or related to the Plan or the Advanta Trust Agreement that affects in any way the rights or obligations of the Advanta Trust, the Advanta Trustee or the Advanta Trust Beneficiaries; (xv) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Advanta Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of the Advanta Trust Agreement; (xvi) to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Advanta Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Advanta Trust and are consistent with and are not contrary to the treatment of the Advanta Trust as a "grantor trust" for United States federal income tax purposes; and (xvii) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and applicable Liquidating Trust Agreement. In all circumstances, the Advanta Trustee shall act in the best interests of all beneficiaries of the Advanta Trust and in furtherance of the purpose of the Advanta Trust.

(g)    Nontransferability of the Advanta Trust Beneficial Interests.  The Advanta Beneficial Interests in the Advanta Trust shall not be certificated and shall not be transferable or assignable except by will, intestate succession or operation of law.

(h)    Cash.  The Advanta Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(i)    Distributions.  The Advanta Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Advanta Trust Beneficial Interests of all Cash on hand in accordance with the terms of the Advanta Trust Agreement and the priorities that are set forth in the Plan (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.5(h) of the Plan) except such amounts (i) as are retained by the Advanta Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Advanta Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Advanta Trust or in respect of the Advanta Trust Assets) of the Advanta Trust, the Advanta Trustee, the Delaware Trustee, and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Advanta Trust or imposed on the Advanta Trust in accordance with this Plan or the Advanta Trust Agreement.

(j)    Costs and Expenses of the Advanta Trust.  The costs and expenses of the Advanta Trust, including the reasonable fees and expenses of the Advanta Trustee, the Delaware Trustee, the members of the Trust Advisory Board, and their respective retained professionals, shall be paid out of the Advanta Trust Assets; *provided, however*, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(k)    Compensation of the Advanta Trustee and the Delaware Trustee.  The Advanta Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; *provided, however*, that such compensation may not exceed the amount reflected in the Budget (as defined in the Advanta Trust Agreement) by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(l)    Retention of Professionals by the Advanta Trustee.  The Advanta Trustee may retain and compensate attorneys and other professionals to assist in its duties as Advanta Trustee on such terms as the Advanta Trustee deems appropriate without Bankruptcy Court approval; *provided, however*, that such compensation may not exceed the amount reflected in the Budget (as defined in the Advanta Trust Agreement) by more than 15% for each professional, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.  Without limiting the foregoing, the Advanta Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in these Chapter 11 Cases and the same

professional may represent any or all of the Trusts, Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(m)　Federal Income Tax Treatment of the Advanta Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Advanta Trustee and the Advanta Trust Beneficiaries) shall treat the transfer of the Advanta Trust Assets to the Advanta Trust as:

(i)　a transfer of the Advanta Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims receiving Advanta Beneficial Interests and, to the extent the Advanta Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by

(ii)　the transfer by such beneficiaries to the Advanta Trust of the Advanta Trust Assets (other than the Advanta Trust Assets allocable to the Unresolved Claims Reserve) in exchange for Advanta Beneficial Interests.

Accordingly, those holders of Allowed Claims receiving Advanta Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Advanta Trust Assets (other than such Advanta Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(n)　Tax Reporting.

(i)　The Advanta Trustee shall file returns (including United States federal returns) for the Advanta Trust treating the Advanta Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with this Section 5.5. The Advanta Trustee shall also annually (but not later than sixty (60) days following the end of each calendar year) send to each holder of an Advanta Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The Advanta Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Advanta Trust that are required by any governmental unit.

(ii)　As soon as practicable after the Effective Date, the Advanta Trustee shall make a good-faith valuation of the Advanta Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Advanta Trustee and the Advanta Trust Beneficiaries) for all United States federal income tax purposes.

(iii)　In furtherance of the provision of Section 5.5(n)(i) of the Plan, allocations of the Advanta Trust's taxable income among the Advanta Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the Advanta Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Advanta Trust had

distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the Advanta Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Advanta Trust. Similarly, taxable loss of the Advanta Trust shall be allocated in good faith by the Advanta Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Advanta Trust Assets. The tax book value of the Advanta Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Advanta Trustee.

(iv)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Advanta Trustee of a private letter ruling if the Advanta Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Advanta Trustee), the Advanta Trustee shall (A) timely elect to treat any Advanta Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Advanta Trustee, the Debtors and the Advanta Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(v)     The Advanta Trustee shall be responsible for payment, out of the Advanta Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Advanta Trustee as a result of the resolution of such Unresolved Claims.

(o)     Section 505(b). The Advanta Trustee may request an expedited determination of taxes of the Advanta Trust, including the Unresolved Claims Reserve, Advanta, or ASC under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Advanta Trust, Advanta, or ASC for all taxable periods through the dissolution of the Advanta Trust.

(p)     Dissolution. The Advanta Trust shall be dissolved at the earlier of (even if the Advanta Trust Beneficiaries have not been paid in full) (i) all of the Advanta Trust Assets having been distributed pursuant to the Plan and the Advanta Trust Agreement, (ii) the Advanta Trustee determining, in its sole discretion, that the administration of the Advanta Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Advanta Trustee under the Plan and the Advanta Trust Agreement having been made; *provided*, *however*, that in no event shall the Advanta Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an

extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Advanta Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Advanta Trust Assets. If, at dissolution of the Advanta Trust and after payment of any amounts necessary to dissolve the Advanta Trust, the Advanta Trust still owns any stock of Reorganized Advanta, then the Advanta Trustee shall have the authority to, upon dissolution of the Advanta Trust, donate such stock at its discretion to a charitable organization or a charitable trust that is not an Affiliate of the Debtors, the Advanta Trust, the Advanta Trustee, or any insider of any of the foregoing, and any remaining cash shall, upon dissolution of the Advanta Trust, be distributed to the Advanta Trust Beneficiaries pursuant to the provisions set forth in Section 3.7 of the Advanta Trust Agreement. If any cash is not duly claimed, such cash will be redistributed pro rata to all other Advanta Trust Beneficiaries receiving Advanta Trust Assets pursuant to Section 3.7 of the Advanta Trust Agreement.

(q)     Indemnification of Advanta Trustee. The Advanta Trustee or the individuals comprising the Advanta Trustee, and the Advanta Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Advanta Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Advanta Trustee's actions or inactions regarding the implementation or administration of this Plan, the Advanta Trust or the Advanta Trust Agreement or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Advanta Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Trust Assets or any applicable insurance coverage. The Advanta Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals. The Advanta Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing. Notwithstanding the foregoing, the Advanta Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the Advanta Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

**5.6     Cancellation and Termination of Existing Agreements and Equity Interests.**

Except as otherwise provided in the Plan, on the Effective Date, the RediReserve Certificates, Investment Notes, ACT Securities, Equity Interests and any and all other instruments evidencing any Claims or Equity Interests against or in the Debtors, including, without limitation, the Indentures, shall be deemed automatically cancelled and terminated as

permitted by section 1123(a)(5)(F) of the Bankruptcy Code without further act or action under any applicable agreement, law, regulation, order or rule; *provided*, *however*, that the RediReserve Certificates, Investment Notes, ACT Securities, Equity Interests and any and all other instruments evidencing any Claims or Equity Interests against or in the Debtors shall continue in effect solely for the purposes of (i) allowing a holder of an Allowed RediReserve Certificate Claim, an Allowed Investment Note Claim, an Allowed General Unsecured Claim and an Allowed Subordinated Note Claim to receive their distributions under the Plan (if any), (ii) enforcing the terms of the subordination provisions in the 8.99% Indenture, (iii) allowing the Disbursing Agents to make the distributions, if any, on account of Allowed Claims, (iv) allowing the Disbursing Agents to perform any necessary administrative functions with respect to the distributions (if any) to be made on account of Allowed Claims, and (v) permitting the Indenture Trustees to (a) maintain and assert their Charging Liens for payment of the Indenture Trustee Fees as provided in Section 2.3 of the Plan, (b) seek compensation and reimbursement for any reasonable and documented fees and expenses, if any, incurred in making distributions pursuant to the Plan, (c) maintain and enforce any right to indemnification under the applicable Indentures, which rights, if any, shall continue to exist regardless of whether or not a proof of Claim was filed by the applicable Indenture Trustee in the Chapter 11 Cases. After the Effective Date, except as otherwise set forth herein, the Indenture Trustees shall no longer have any obligations to holders of RediReserve Certificates, Investment Notes, ACT Securities, or Subordinated Notes under the Indentures.

As soon as practicable after the Effective Date, the Debtors or the AC Trustee, with the cooperation of the applicable Indenture Trustee, shall send a letter of transmittal to each holder of an Allowed RediReserve Certificate Claim, an Allowed Investment Note Claim, and an Allowed Subordinated Note Claim, advising such holder of the effectiveness of the Plan. Delivery of any RediReserve Certificates, Investment Notes, or Subordinated Notes will be effected, and risk of loss and title thereto shall pass, only upon each holder's compliance with the terms and conditions of such letter of transmittal.

Delivery of any RediReserve Certificate or Investment Note shall be effected and risk of loss and title thereto shall pass so long as the holder of each such note has complied with the letter of transmittal, including providing a correct taxpayer number on a form W-9 provided with the transmittal letter, and the amount of the notes held by each holder as set forth in the letter of transmittal is the same amount that is reflected on the register of the note holders maintained by Advanta, as securities registrar, as of the Distribution Record Date.

If the record holder of a note is DTC or its nominee or another securities depository or custodian thereof, and such notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then the beneficial holder of such a note shall be deemed to have surrendered such holder's security, note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

Upon compliance with this Section 5.6 in connection with any RediReserve Certificate, Investment Note, or Subordinated Note, the holders of such notes shall, for all purposes under the Plan, be deemed to have validly surrendered such note.

Further, the Board of Directors of Advanta is authorized, without any further action, to issue one share of Trustee Stock in Reorganized Advanta to the Advanta Trustee, and to take any other action in furtherance thereof with the consent of the Creditors' Committee (which consent shall not be unreasonably withheld), for the purpose of reorganizing Advanta. On the Effective Date, the share of Trustee Stock shall be delivered to the Advanta Trust.

### 5.7 Settlement of Claims.

Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution, and resolution of Claims, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and, except as otherwise provided in Article IV, no Plan distribution to a holder of a Claim in one Class shall be shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency claim.

## ARTICLE VI

## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

### 6.1 Voting of Claims.

Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III and Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

### 6.2 Nonconsensual Confirmation.

If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 12.4 of the Plan or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both. With respect to impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by such Claims.

### 6.3 Date of Distributions.

Distributions to holders of Claims and Equity Interests shall be made as provided in Articles II and IV of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.4    Disbursing Agents.

All distributions under the Plan by any of the Trusts shall be made by the applicable Trustee as Disbursing Agent or such other entity designated by the applicable Trustee as Disbursing Agent.

### 6.5    Rights and Powers of Disbursing Agents.

The Disbursing Agents shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (b) make all distributions contemplated by the Plan, (c) employ professionals to represent them with respect to their responsibilities and, (d) exercise such other powers as may be vested in the Disbursing Agents by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agents to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agents (including the Indenture Trustees) shall only be required to act and make distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to them in accordance with the Plan or (y) obligation or liability for distributions under the Plan to any party who does not hold an Allowed Claim at the time of distribution or who does not otherwise comply with the terms of the Plan.

### 6.6    Expenses of Disbursing Agents.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agents (including, without limitation, taxes and reasonable attorneys fees and expenses) on or after the Effective Date shall be paid in Cash by the applicable Trust in the ordinary course of business.

To the extent an Indenture Trustee provides services related to distributions pursuant to the Plan, such Indenture Trustee shall be entitled to reasonable and customary compensation for such services and reimbursement for reasonable and customary expenses incurred in connection with such services out of the AC Trust.

### 6.7    Delivery of Distributions.

(a)    <u>Last Known Address.</u>  Subject to Bankruptcy Rule 9010, and except as provided in this Section 6.7, all distributions to any holder of an Allowed Claim or Equity Interest shall be made at the address of such holder (i) as set forth on the Schedules filed with the Bankruptcy Court, or (ii) on the books and records of the Debtors or their agents, as applicable, unless the Debtors or the applicable Trustees have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules.

(b)    <u>Distributions Subject to Deemed Surrender of Notes.</u>  All distributions to holders of Allowed Subordinated Note Claims shall only be made to such holders after the deemed surrender by each such holder of the note certificates representing such Claim in

accordance with Section 5.6 above. Upon the valid deemed surrender of such note certificates, the AC Trustee shall cancel such notes. As soon as practicable following the valid deemed surrender of the note certificates evidencing such Allowed Claim, the Trustees shall distribute to the holder thereof such holder's distribution. For the avoidance of doubt, distributions may be made on account of the Allowed Subordinated Note Claims for the benefit of the Allowed Investment Note Claims and the Allowed RediReserve Certificate Claims irrespective of the holder of such Allowed Subordinated Note Claim's compliance with this Section 6.7(b).

### 6.8 *Undeliverable and Unclaimed Distributions.*

In the event that any distribution to any holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder; *provided, however*, that all distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Trust from which they were made and any entitlement of any holder of any Claims to such distributions shall be extinguished and forever barred. The applicable Trustee shall have no further obligation to make any distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such distributions shall be extinguished and forever barred; *provided*, *however*, that the holder of such Claim may receive future distributions on account of such Claim by contacting the applicable Trustee at some point prior to the final distribution from the applicable Trust. For the avoidance of doubt, the Disbursing Agent shall not be required to retain an outside investigator to determine the current address of any holders of an Allowed Claim whose distribution is returned as undeliverable.

### 6.9 *Distribution Record Date.*

As of the close of business on the Distribution Record Date, (i) the claims register shall be closed, (ii) the transfer of books and records of the Investment Note Claims, RediReserve Certificate Claims and the Subordinated Note Claims, each as maintained by Advanta, shall be closed, and (iii) any transfer of any Investment Note Claims, RediReserve Certificate Claims or Subordinate Note Claims or any interest therein shall be prohibited. The Debtors, the Trustees and the Indenture Trustees shall have no obligation to recognize any transfer of any such Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

### 6.10 *Manner of Payment.*

At the option of the applicable Disbursing Agent, any Cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.11    Minimum Cash Distributions.

Unless otherwise provided in Section 5.4 and 5.5 of the Plan, no payment of Cash less than $5 may be made to any holder of an Allowed Claim unless a request therefore is made in writing to the applicable Trustee; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.11, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

### 6.12    Setoffs and Recoupment.

The Trustees may, but shall not be required to, setoff against or recoup from any Claim and from any payments to be made pursuant to the Plan in respect of such Claim any claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Trustees of any such claim they may have against such claimant.

### 6.13    Interest on Claims.

Unless otherwise set forth in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Commencement Date on any Claim.

### 6.14    No Distribution in Excess of Allowed Amounts.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim.

### 6.15    Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## ARTICLE VII

## *PROCEDURES FOR TREATING UNRESOLVED CLAIMS*

### 7.1    Assets Retained on Account of Unresolved Claims

After the Effective Date, each Unresolved Claims Reserve shall be managed by the applicable Trustee for the treatment of Unresolved Claims.  On each distribution date after the Effective Date in which any of the Trustees makes Cash distributions to holders of Beneficial Interests, the applicable Trustee shall retain on account of Unresolved Claims an amount such Trustee estimates is necessary to fund the Pro Rata Share of such distributions to holders of Unresolved Claims if such Claims were Allowed.  Cash retained on account of Unresolved

Claims shall be retained in the applicable Unresolved Claims Reserve for the benefit of the holders of Unresolved Claims pending a determination of their entitlement thereto under the terms of the Plan.  If any Unresolved Claim is disallowed or Allowed in an amount that is lower than the aggregate assets retained on account of such Unresolved Claim, then the applicable Trustees may at any time after such disallowance or allowance return the assets that exceed the Allowed amount of such Claim to the applicable Trust.

### 7.2     Objections.

Objections to Claims against the Debtors may be interposed and prosecuted only by the Debtors (if prior to the Effective Date) and the applicable Trustee (if on or after the Effective Date).  Except as otherwise provided in Section 2.1 with respect to Administrative Expense Claims, any objections to Claims shall be served on the respective claimant and filed with the Bankruptcy Court (i) on or before the one-hundred-and-eightieth (180th) day following the later of (x) the Effective Date, and (y) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (ii) on such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (x) or (y) above; *provided*, *however*, that the Trustees shall have until (a) sixty (60) days after the payment in full of all Allowed Claims in Classes 1 through 5 to object to any Claims in Class 6, and (b) one hundred and twenty (120) days after a holder of a contingent or unliquidated Claim files an amended proof of Claim stating that such Claim is no longer contingent or unliquidated, as applicable, to object to such contingent or unliquidated claim.

### 7.3     No Distributions Pending Allowance.

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Unresolved Claim becomes an Allowed Claim.

### 7.4     Distributions After Allowance.

To the extent that an Unresolved Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Unresolved Claim shall receive any distributions that would have been made up to the date of allowance to such holder under the Plan had the Unresolved Claim been allowed on the Effective Date plus any actual earnings on such distribution from the date that such distribution would have been made had the Unresolved Claim been allowed on the Effective Date through the date of allowance.

### 7.5     Resolution of Claims.

On and after the Effective Date, the Trustees shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims against the Debtors and to compromise, settle, or otherwise resolve any Unresolved Claims without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals, but subject to the consent of the Trust Advisory Board for any Claim over the amount set forth in the applicable Trust Agreement.

### 7.6    Interest After the Effective Date.

To the extent that an Unresolved Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon from the Effective Date to the date such Claim becomes Allowed, except for the earnings, if any, described in Section 7.4.

# ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any Person shall be deemed rejected by the Debtors as of immediately prior to the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, (iii) that is specifically designated as a contract or lease to be assumed on *Schedule 8.1*, which Schedule shall be in form and substance reasonably acceptable to the Creditors' Committee and shall be contained in the Plan Supplement and which shall indicate whether such contract or lease is to be assumed by any of the Trusts, Reorganized Advanta or ASC; *provided*, *however*, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend *Schedule 8.1* to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto with the consent of the Creditors' Committee (which consent shall not be unreasonably withheld), in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, respectively, either rejected or assumed as of the Effective Date. The Debtors shall provide notice of any amendments to *Schedule 8.1* to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on *Schedule 8.1* shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

### 8.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date and subject to the Debtors' right pursuant to Section 8.4 of the Plan to reject any executory contract or unexpired lease that is subject to a dispute over a cure amount, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 of the Plan, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases, and (iii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the

Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

### 8.3   Inclusiveness.

Unless otherwise specified on **Schedule 8.1**, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on **Schedule 8.1**.

### 8.4   Cure of Defaults.

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 of the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least thirty (30) days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section 8.1 of the Plan, a notice (the "*Assumption Notice*"), which shall list the cure amount as to each executory contract or unexpired lease to be assumed and which shall be in form and substance reasonably acceptable to the Creditors' Committee.  The parties to such executory contracts or unexpired leases to be assumed or assumed and assigned by the Debtors shall have twenty (20) days from the date of service of the Assumption Notice to file and serve any objection to assumption or the cure amounts listed by the Debtors.  If there are any objections filed, the Bankruptcy Court shall hear the objections at the Confirmation Hearing or on such other date as may be set by the Bankruptcy Court.  Notwithstanding Section 8.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

### 8.5   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan must be filed with the Advanta Claims Processing Center and served upon the attorneys for the Debtors or, if on or after the Effective Date, upon the applicable Trustee, no later than thirty (30) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of the Effective Date, (c) notice of an amendment to **Schedules 8.1** of the Plan Supplement (solely with respect to the party directly affected by such modification), or (d) notice of the Debtors' election to reject such executory contract or unexpired lease under Section 8.4 or Section 8.7 of the Plan.  **All such proofs of Claim not filed within the time set forth in this section shall be forever barred from assertion against the Debtors and their estates or the Liquidating Trusts and their assets.**

### 8.6    Indemnification and Reimbursement Obligations.

(a)    <u>Indemnification and Reimbursement</u>.  Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any claims, costs, liabilities or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Commencement Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, treated as Allowed General Unsecured Claims to the extent such claims are not covered by any applicable insurance, including deductibles.  Nothing contained herein shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such claims, costs, liabilities or causes of action or limit the rights of the Debtors, the Trustees, or the Debtors' Estates to object to, seek to subordinate or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors pursuant to this Section 8.6 or otherwise. Notwithstanding any other order of the Bankruptcy Court or anything in this Plan to the contrary, a liquidated, non-contingent proof of Claim for indemnification, defense, reimbursement, or limitation of liability of directors, officers, or employees of the Debtors may be asserted against the applicable Liquidating Trust at any time prior to the dissolution of such Liquidating Trust; *provided, however*, that such Claims shall be subject to the applicable Liquidating Trustee's opportunity to object, contest, challenge, subordinate or dispute such Claims pursuant to the Plan.

(b)    <u>D&O Insurance Policies</u>.  No prepaid D&O Insurance Policy shall be cancelled, and the Debtors' directors, officers and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies; as such, and notwithstanding anything in the Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors and transferred to the applicable Liquidating Trust pursuant to Section 5.4(d).

### 8.7    Compensation and Benefit Programs.

Notwithstanding anything contained in the Plan to the contrary, unless listed on *Schedule 8.7* of the Plan, which will be filed as part of the Plan Supplement, and shall be in form and substance reasonably acceptable to the Creditors' Committee, or except as provided in this Section 8.7 with respect to the COLI Program (as defined below), all employment and severance policies, workers' compensation programs, and all compensation, bonus, and benefit plans, policies, programs, and arrangements of the Debtors applicable to their present and former employees, officers and directors, including, without express or implied limitation, all savings plans, cash and equity or equity-based incentive plans, retirement plans, health care plans, disability plans, and life, accidental death, and dismemberment insurance plans (the "*Compensation and Benefit Programs*") shall be deemed terminated immediately prior to the

Effective Date without any further action by the Bankruptcy Court or the Debtors; *provided, however*, that all employees employed by the Debtors immediately prior to the Effective Date and covered by the Post-Petition Advanta Employees' Severance Pay Plan, including those who will be employed by any of the Trusts, Reorganized Advanta or ASC immediately after the Effective Date, shall be entitled to benefits under the Post-Petition Advanta Employees' Severance Pay Plan as if their employment had been terminated by the Debtors immediately prior to the termination of the Post-Petition Advanta Employees' Severance Pay Plan.

Any Compensation and Benefit Programs that are listed on *Schedule 8.7* shall be maintained by the entity listed on *Schedule 8.7*. Any Compensation and Benefit Program listed on *Schedule 8.7* may be terminated by Reorganized Advanta or the applicable Trustee any time after the Effective Date; *provided, however*, that for eighteen (18) months after the Effective Date, neither Reorganized Advanta nor the Trustees may terminate the underlying group health plan under which former employees of the Debtors (and their covered beneficiaries) are receiving COBRA coverage (the "*COBRA Health Plan*"); and *provided further, however*, that notwithstanding its inclusion on *Schedule 8.7* and its continuation after the Effective Date, if any Compensation and Benefit Program listed on *Schedule 8.7* is ultimately terminated after the Effective Date (other than the COBRA Health Plan, which shall be deemed terminated as of the date it is actually terminated by the Trustee or Reorganized Advanta pursuant to its terms), such termination will be deemed and treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program will be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been terminated by the Debtors immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such terminated Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period after the Effective Date, and any such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date). Reorganized Advanta or the applicable Trustee shall provide the parties to and beneficiaries of any such terminated Compensation and Benefit Program written notice of such termination and any such party or beneficiary may rely on any proof of Claim filed by such party or beneficiary in the Chapter 11 Cases with respect to any Claims under such terminated Compensation and Benefit Program and without prejudice to any right of such party or beneficiary to amend or modify such proof of Claim.

In the event any Compensation and Benefit Program listed on *Schedule 8.7* is determined to be an executory contract, nothing in this Plan shall be deemed to constitute an assumption of such Compensation and Benefit Program, and the applicable Trustee shall have authority to reject such Compensation and Benefit Program upon delivery of a written notice of such rejection to all parties to and beneficiaries of such Compensation and Benefit Program, and such rejection will be deemed treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program shall be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been rejected by the applicable Debtor immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such rejected Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period

after the Effective Date, and any such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date).

Pursuant to section 1129(a)(13) of the Bankruptcy Code, Advanta's Corporate Owned Life Insurance, dated December 1, 1994, (as it may have been amended, supplemented, or modified, the "*COLI Program*") shall continue in effect after the Effective Date, subject to the right of the Trustees or Reorganized Advanta, as applicable, to modify, terminate, or surrender the COLI Program and/or any underlying insurance policies in accordance with the terms thereof.

Nothing in this Plan shall (i) preclude any rights of any Person to assert that a "change of control" or "change in control" (as such term may be used in the SEIP, the SERP or any other agreement, benefit plan, severance plan, or other arrangement) has or has not occurred, including, without limitation, by reason of the formulation, filing, prosecution, confirmation, or consummation of this Plan, (ii) limit any rights of the Debtors, Reorganized Advanta, the Trustees, or the Debtors' estates to object to, contest, challenge, seek to subordinate or dispute any Claims asserted by any Person in connection with any Compensation and Benefit Program and/or termination or rejection of any Compensation and Benefit Program, or (iii) constitute a finding that the termination or rejection of any Compensation and Benefit Program pursuant to this Section 8.7 of the Plan does or does not give rise to any Claims (and all parties' and beneficiaries' rights with respect thereto are hereby reserved).

### 8.8    *Deferred Compensation Plan.*

Notwithstanding anything to the contrary in the Plan, on the Effective Date, the Debtors' Deferred Compensation Plan shall be wound down and terminated. Advanta shall transfer as soon as practicable after the Effective Date all assets held in the Deferred Compensation Trust to the AC Trust for distribution to creditors of Advanta pursuant to the terms of the Plan and the AC Trust Agreement; *provided, however,* that prior to transferring any non-Cash assets, the trustees of the Deferred Compensation Trust shall liquidate, under the terms of the Deferred Compensation Trust and at the request of Advanta, such non-Cash assets into Cash and transfer the proceeds of such assets to the AC Trust for distribution to creditors of Advanta pursuant to the terms of the Plan and the AC Trust Agreement.

### 8.9    *Certain Insurance Policy Matters.*

Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies or related agreements (the "*Insurance Policy Documents*"). The rights and obligations of the insureds, the Debtors, the applicable Trust and insurers shall be determined under the Insurance Policy Documents, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and under applicable non-bankruptcy law. Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision

that purports to be preemptory or supervening), shall in any way (i) limit a Debtor, the Trusts or their assignees from asserting a right or claim to the proceeds of any insurance policy that insures any such Debtor, was issued to any such Debtor or was transferred to the Trusts by operation of the Plan, nor (ii) limit any right of any other party to challenge such right or claim.

# ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### 9.1    Conditions Precedent to Effectiveness.

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 9.2 of the Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Debtors and reasonably acceptable to the Creditors' Committee, shall have been entered and become a Final Order;

(b)    All actions, agreements, instruments and other documents necessary to implement the terms and provisions of the Plan shall have been effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors and reasonably satisfactory to the Creditors' Committee; and

(c)    All authorizations, consents, letters, opinions and documents, regulatory approvals and no-action letters, if any, sought by the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, in connection with the consummation of the Plan shall have been obtained and shall not have been revoked.

### 9.2    Waiver of Conditions.

Each of the conditions precedent in Section 9.1 hereof, other than the entry of the Confirmation Order, may be waived, in whole or in part, by the Debtors and the Creditors' Committee, as applicable.  Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

### 9.3    Satisfaction of Conditions.

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  In the event that one or more of the conditions specified in Section 9.1 of the Plan have not occurred or otherwise been waived pursuant to Section 9.2 of the Plan on or prior to the one hundred and twentieth (120th) day after the Confirmation Order becomes a Final Order, (a) the Confirmation Order shall be vacated, (b) the Debtors, their Estates, the Creditors' Committee and all holders of Claims and interests, including any Equity Interests, shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to

Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE X

### *EFFECT OF CONFIRMATION*

#### 10.1    *Post-Effective Date Assets.*

On and after the Effective Date, the Trustees may dispose of the assets of their respective Trusts free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the applicable Trust Agreement.

#### 10.2    *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interest, including any Equity Interest, of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to or received a distribution under the Plan.

#### 10.3    *Injunction or Stay.*

(a)    Pursuant to sections 105 and 1141 of the Bankruptcy Code, on and after the Confirmation Date, except as otherwise expressly provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind (whether directly, derivatively or otherwise) against the Debtors related to a Claim or Equity Interest, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or against the property or interests in property of the Debtors, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, or (v) pursuing any Claim or Interest released pursuant to Section 10.7 of the Plan.  Such injunction shall extend to any successors of the Debtors and their respective properties and interest in properties.

(b)    All Causes of Action against the Debtors that are not otherwise released under the Plan (other than with respect to federal taxes of Advanta and ASC) shall be channeled to the applicable Liquidating Trusts and be subject to the jurisdiction of the Bankruptcy Court. Any Cause of Action brought against any Trust or any Trustee may only be brought before and heard by the Bankruptcy Court.

(c)     Notwithstanding the foregoing, the plaintiffs in that certain ERISA class action titled *In re Advanta Corp. ERISA Litig.*, Civil Action No. 2:09-cv-4974-CMR (the "***ERISA Litigation***"), filed in the United States District Court for the Eastern District of Pennsylvania, and that certain securities class action titled *Steamfitters Local 449 Pension Fund, Individually and On Behalf of All Others Similarly Situated v. Dennis Alter, et al.*, Civil Action No. 2:09-cv-4730-CMR (the "***Securities Litigation***"), filed in the United States District Court for the Eastern District of Pennsylvania, shall retain the right to file a motion (the "***Lead Plaintiffs' Motion***") after the Effective Date with the Bankruptcy Court seeking authorization to prosecute and liquidate any Claims they have asserted against the Debtors in proofs of Claim timely filed in these Chapter 11 Cases, with any judgment or settlement obtained to be satisfied solely to the extent of, and for the limited purpose of pursuing the collection of, any applicable insurance proceeds.  The plaintiffs in the ERISA Litigation and the Securities Litigation shall not be entitled to any discovery in connection with the Lead Plaintiffs' Motion other than copies of (i) the applicable insurance policies, which would be provided subject to an appropriate protective order, and (ii) notices of circumstance delivered by or on behalf of the Debtors or any insureds under the applicable insurance policies (provided that the Debtors, the Trusts and the Trustees shall reserve all rights to oppose discovery of such notices), which, if ultimately provided, would be provided subject to an appropriate protective order.  Nothing in this Plan or the Confirmation Order shall be deemed a determination of any issue raised in the Lead Plaintiffs' Motion and all parties' rights, including those described in Section 8.9 of the Plan, are hereby reserved.

### 10.4     *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims or Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 10.5     *Terms of Injunction or Stay.*

Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the applicable order providing for such injunction or stay; *provided*, *however*, that no such injunction or stay shall preclude enforcement of parties' rights under the Plan in the Bankruptcy Court.

### 10.6     *Reservation of Causes of Action/Reservation of Rights.*

(a)     Except as provided in Section 10.7 of the Plan, nothing contained in the Plan (including in Section 6.12) or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action of the Debtors, Debtors in Possession or the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief

against the Debtors, the Trusts or the Debtors' officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' Estates.

(b)    Except as set forth in Section 10.7 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim or Cause of Action, which the Debtors, the Debtors in Possession or the Estates had immediately prior to the Effective Date against or with respect to any Claim left Unimpaired by the Plan.  The Trusts shall retain, reserve, and be entitled to assert all Claims and Causes of Action, and all of the legal and equitable rights of the Debtors, Debtors in Possession or the Debtors' Estates respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 10.7    *Exculpation.*

**Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Debtors, the Trusts, the Trustees (solely in their capacity as such), the Delaware Trustee (solely in its capacity as such), the Indenture Trustees, the members of the Creditors' Committee (solely in their capacity as such), the members of the Trust Advisory Boards (solely in their capacity as such), and their respective officers, directors, employees, managing directors, accountants, financial advisors, investment bankers, agents, restructuring advisors, and attorneys, and each of their respective agents and representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken on or after the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan (or any prior proposed version of the Plan), the Disclosure Statement or any contract, instrument, document or other agreement related thereto (collectively, "*Exculpated Conduct*"); and such claims shall be deemed expressly waived and forever relinquished as of the Effective Date; *provided, however*, that the foregoing shall not (i) affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of any such Person; (ii) limit in any manner the ability of the Debtors, Reorganized Advanta, the Trusts, the Trustees, or the Creditors' Committee to assert, against any holder of a Claim asserted against the Debtors, any defenses, Causes of Action or counterclaims based on or arising from Exculpated Conduct (including, without limitation, any assertions that any Claims should be equitably subordinated, reduced or eliminated), provided that the amount of any recoveries from such holder on account of such defenses, Causes of Action or counterclaims based on or arising from Exculpated Conduct shall not exceed the amount of distributions to the holder of such Claim as may be Allowed; or (iii) be asserted, relied upon, deemed to be a finding or used as evidence that "cause" (as such term is used in the SEIP, the SERP or any other employment agreement, severance plan, benefit plan or similar instrument or agreement) did or did not exist for the Debtors to terminate the employment of any Person otherwise exculpated by the Plan at any time before, during or after the pendency of the Chapter 11 Cases.  For the avoidance of doubt, nothing in this Section 10.7 shall limit the ability of the Debtors, Reorganized**

Advanta, the Trusts, the Trustees, or the Creditors' Committee to assert or recover on any defenses, Causes of Action or counterclaims based on (i) any act taken or omitted to be taken prior to the Commencement Date or (ii) any act taken or omitted to be taken on or after the Commencement Date that is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of any Person.

### 10.8    *Causes of Action/Avoidance and Subordination Actions/Objections.*

Other than any releases granted herein, in the Confirmation Order or in a Final Order of the Bankruptcy Court from and after the Effective Date, the Trusts shall have the right to prosecute any and all Causes of Action including, but not limited to, any and all avoidance or equitable subordination actions, recovery Causes of Action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors, Debtors in Possession or the Debtors' Estates.  For the avoidance of doubt, nothing contained in the Plan shall operate as a release of any Cause of Action against any of the current or former officers, directors or employees of the Debtors or their affiliates, except as provided in Section 10.7 of the Plan.

## ARTICLE XI

### *RETENTION OF JURISDICTION*

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Effective Date, including, without limitation, (i) any Cause of Action under bankruptcy law or any applicable non-bankruptcy law that may be brought by any of the Trusts or Trustees for the benefit of the Estates' creditors against any of the Debtors' current or former officers, directors, employees and/or other Persons relating to the financial condition, management and/or operation of the Debtors, their businesses and/or their assets either prior to the Commencement Date or during the Chapter 11 Cases; (ii) any other Cause of Action that may be brought by any of the Trusts or Trustees for the benefit of the Estates' creditors; and (iii) any Cause of Action that may be brought against any of the Trusts or Trustees or any of their respective agents, attorneys, advisors, representatives or professionals;

(c)    to ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(e)    to hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

(f)    to hear and determine any timely objections to, or requests for estimation of Unresolved Claims, in whole or in part;

(g)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(h)    to resolve disputes as to the ownership of any Claim or Equity Interest;

(i)    to take any action and issue such orders as may be necessary to enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following the Effective Date;

(j)    to consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)    to hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(l)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date, or request by any of the Trustees after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(m)    to hear and determine all disputes involving the existence, scope and nature of releases or exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(n)    to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(o)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(p)    to hear and determine any rights or Causes of Action held by or accruing to the Debtors, the Debtors in Possession or the Debtors' Estates pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory, whether initiated prior to or after the Effective Date;

(q)     to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(r)     to hear disputes concerning the Trusts;

(s)     to enter a final decree closing the Chapter 11 Cases; and

(t)     to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

### *MISCELLANEOUS PROVISIONS*

### 12.1     *Effectuating Documents and Further Transactions.*

On or before the Effective Date, and without the need for any further order or authority, the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, are authorized to file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. As of the Effective Date, the Trustees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 12.2     *Withholding and Reporting Requirements.*

Each Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Beneficial Interests. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Beneficial Interests for all purposes of the relevant Trust Agreements. Each Trustee shall be authorized to collect such tax information from the holders of the Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and the relevant Trust Agreement. In order to receive distributions under the Plan, all holders of the Beneficial Interests will need to identify themselves to the applicable Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). Each Trustee may refuse to make a distribution to any holder of a Beneficial Interest that fails to furnish such information in a timely fashion, until such information is delivered; *provided, however*, that, upon the delivery of such information by a holder of a Beneficial Interest, the applicable Trustee shall make such distribution to which the holder of the Beneficial Interest is entitled, without interest; and, *provided further* that, if the holder fails to comply with such a request within one (1) year, such distribution shall be deemed an unclaimed distribution, and, *provided further* that, if any Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and such Trustee is later held liable for the amount of such withholding, such holder shall reimburse such Trustee for such liability.

### 12.3    Corporate Action.

On the Effective Date, all actions provided for under the Plan that would otherwise require approval of the stockholders, members, or directors of one or more of the Debtors, as the case may be, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated or established, without any requirement for further action by the stockholders, members, or directors of the Debtors.

### 12.4    Modification of Plan.

Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. After the Confirmation Date and prior to the Effective Date, the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests. The Plan may also be substantially altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. In the event the Bankruptcy Court does not approve the substantive consolidation of the Consolidated Debtors' estate pursuant to Section 5.2 of the Plan, the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, may modify the Plan to reflect the non-substantive consolidation of the Consolidated Debtors' estates without further order or approval of the Bankruptcy Court. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan if modified to reflect the non-substantive consolidation of the Consolidated Debtors' estates.

### 12.5    Revocation or Withdrawal of the Plan.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors. The Debtors also reserve the right to (i) withdraw the Plan with respect to any Debtor with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, and proceed with confirmation of the Plan with respect to any other Debtor, (ii) adjourn confirmation of the Plan for any Debtor, (iii) revoke the Plan as to any

Debtor, (iv) seek confirmation of an alternative plan with respect to any Debtor at a later time, including a plan substantively consolidating any Debtor with one or more Debtors. In the event the Plan is revoked or withdrawn with respect to a Debtor, nothing contained herein shall constitute or be deemed a waiver or release of any Claims against or Equity Interests in the Debtor that is withdrawn from the Plan or any other Person or to prejudice in any manner the rights of such Debtor or any Person in any further proceedings involving such withdrawn Debtor.

### 12.6    *Continuing Exclusivity Period.*

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtors shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to modify the Plan as provided herein or file a new Plan and to solicit acceptances thereof and the Creditors' Committee retains the right to request termination of the Debtors' exclusive periods.

### 12.7    *Plan Supplement.*

The Plan Supplement and the documents contained therein in form, scope and substance satisfactory to the Debtors and reasonably satisfactory to the Creditors' Committee, shall be filed with the Bankruptcy Court no later than ten (10) calendar days before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims and any such amendment or supplement is in form and substance reasonably acceptable to the Creditors' Committee. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

### 12.8    *Payment of Statutory Fees.*

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the applicable Liquidating Trust.

### 12.9    *Post-Effective Date Professional Fees and Expenses.*

(a)    From and after the Effective Date, the Liquidating Trusts shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the applicable Debtors or such Liquidating Trusts. The reasonable fees and expenses of professional persons retained by the Advanta Trust shall be paid, in the ordinary course of business and without necessity for approval by the Bankruptcy Court, by the Advanta Trust.

(b)    Following the Effective Date, the Liquidating Trustees shall pay in cash, within thirty (30) days of receipt by the Liquidating Trustees of an invoice from the Fee Auditor, all reasonable fees and expenses of the Fee Auditor that are incurred after the Effective Date, without the need for any further authorization from the Bankruptcy Court. In the event that the Liquidating Trustees object to payment of such invoice from the Fee Auditor for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after

good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the Liquidating Trustees.

### 12.10   Indenture Trustees as Claim Holder.

Consistent with Bankruptcy Rule 3003, the AC Trustee shall recognize a proof of Claim timely filed by the Indenture Trustees of the RediReserve Certificates, Investment Notes, and the Subordinated Notes.  A list of Claims that are hereby disallowed as duplicative of claims filed by the Indenture Trustees is attached on *Schedule 12.10*, which shall be in form and substance reasonably acceptable to the Creditors' Committee.

### 12.11   Dissolution of the Creditors' Committee.

On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of such Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

### 12.12   Exemption from Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales or use, or other similar tax.

### 12.13   Expedited Tax Determination.

The Debtors and the Liquidating Trustees are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

### 12.14   Exhibits/Schedules.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

### 12.15   Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.16 Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. Notwithstanding the foregoing, in such case, the Plan may only be confirmed without that clause or provision at the request of the Debtors with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 12.17 Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of laws.

### 12.18 Notices.

All notices, requests and demands to or upon the Debtors, the Creditors' Committee, or the Indenture Trustees shall be in writing (including by facsimile transmission) to be effective and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

ADVANTA CORP.
Plymouth Corporate Center,
625 W. Ridge Pike
Building E, Suite 100
Conshohocken, Pennsylvania 19428
Attn: Jay A. Dubow
Telephone: (215) 657-4000
Facsimile: (215) 444-5915

– and –

RICHARDS, LAYTON & FINGER, P.A.

One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:    Paul N. Heath
            Chun I. Jang
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Attn:    Robert J. Lemons
            Victoria Vron
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

If to the Creditors' Committee:

LATHAM & WATKINS LLP
885 Third Avenue
New York, New York  10022
Attn:    Roger G. Schwartz
            Aaron M. Singer
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

- and -

DRINKER, BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE 19801
Attn:    Howard A. Cohen
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

If to the Indenture Trustees:

The Bank of New York Mellon
Global Corporate Trust, Default Administration Group
101 Barclay St., 8-W
New York, NY 10186
Attention:  David M. Kerr, Vice President
Telephone:  (212) 815-5650
Facsimile:  (732) 667-9322

- and -

Seward & Kissel LLP
One Battery Park Plaza
New York, New York
Attn:  Ronald L. Cohen
        Laurie R. Binder
Telephone: (212) 574-1200

Facsimile: (212) 480-8421

- and -

Law Debenture Trust Company of New York
400 Madison Avenue
New York, NY 10017
Attn: James D. Heaney, Managing Director
Telephone:  (212) 750-1364
Facsimile:  (212) 750-1361

- and -

Arent Fox LLP
1675 Broadway, 35th Floor
New York, NY 10019
Attn: Leah M. Eisenberg
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

**12.19   *Time.***

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### *12.20 Section Headings.*

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Dated: November 2, 2010
       (as modified February 11, 2011)

Respectfully submitted,

**ADVANTA CORP., ADVANTA INVESTMENT CORP., ADVANTA BUSINESS SERVICES HOLDING CORP., ADVANTA BUSINESS SERVICES CORP., ADVANTA SHARED SERVICES CORP., ADVANTA SERVICE CORP., ADVANTA ADVERTISING INC., ADVANTENNIS CORP., ADVANTA MORTGAGE HOLDING COMPANY, ADVANTA AUTO FINANCE CORPORATION, ADVANTA MORTGAGE CORP. USA, ADVANTA FINANCE CORP., ADVANTA VENTURES INC., and GREAT EXPECTATIONS INTERNATIONAL INC. ("*GEI*")**

By:    /s/ William A. Rosoff
        Name: William A. Rosoff
        Title:  President and Vice Chairman of the Board of all
               entities other than GEI; Vice President of GEI

**GREAT EXPECTATIONS FRANCHISE CORP., and GREAT EXPECTATIONS MANAGEMENT CORP.**

By:    /s/ Philip M. Browne
        Name: Philip M. Browne
        Title:  Senior Vice President

**ADVANTA CREDIT CARD RECEIVABLES CORP., BE CORP. (f/k/a BIZEQUITY CORP.), and IDEABLOB CORP.**

By:    /s/ Liane Browne
        Name: Liane Browne
        Title:  Secretary

**Exhibit 1.10**

**(AC Trust Agreement)**

<u>AC TRUST AGREEMENT</u>

      This AC Trust Agreement (the "<u>AC Trust Agreement</u>"), dated as of ___, 2011, is entered into by and among Advanta Corp., a Delaware corporation, Advanta Investment Corp., a Delaware corporation, Advanta Business Services Holding Corp., a Delaware corporation, Advanta Business Services Corp., a Delaware corporation, Advanta Service Corp., a Delaware corporation, Advanta Advertising Inc., a Delaware corporation, Advanta Mortgage Holding Company, a Delaware corporation, Advanta Ventures Inc., a Delaware corporation, BE Corp. (f/k/a BizEquity Corp.), a Delaware corporation, ideablob Corp., a Delaware corporation, Advanta Credit Card Receivables Corp., a Nevada corporation, Great Expectations International Inc., a Delaware corporation, Great Expectations Franchise Corp., a Delaware corporation, Great Expectations Management Corp., a Delaware corporation, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), FTI Consulting, Inc., solely in its capacity as a liquidating trustee (together with any successor appointed under the terms hereof, the "<u>AC Trustee</u>"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "<u>Plan</u>"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of a liquidating trust evidenced hereby (the "<u>AC Trust</u>").  Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

      WHEREAS, the AC Trust is created pursuant to, and to effectuate, the Plan;

      WHEREAS, the AC Trust is created on behalf of, and for the sole benefit of, the AC Trust Beneficiaries;

      WHEREAS, the Plan provides for the creation of a liquidating trust that will (i) receive from the Debtors all of the AC Trust Assets, (ii) hold the AC Trust Assets in trust for the benefit of the AC Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the AC Trust Assets held by it for the benefit of the AC Trust Beneficiaries pursuant to the terms of the Plan and this AC Trust Agreement;

      WHEREAS, the AC Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

      WHEREAS, the AC Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the AC Trust Beneficiaries treated as the grantors and owners of the AC Trust;

      NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

# ARTICLE I

## ESTABLISHMENT OF THE AC TRUST

1.1     Establishment and Declaration of Trust.

(a)     Name.  This trust shall be known as the "AC Trust" in which name the AC Trustee may conduct the affairs of the AC Trust.

(b)     Declaration of Trust.  In accordance with the Plan, the Debtors, the AC Trustee and the Delaware Trustee hereby establish the AC Trust on behalf of and for the benefit of the AC Trust Beneficiaries and, on the Effective Date, the Debtors hereby irrevocably and absolutely transfer, assign, convey and deliver to the AC Trustee for the benefit of the AC Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the AC Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the AC Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the AC Trust Assets to the AC Trust, all rights and Causes of Action and all Books and Privileges relating to such AC Trust Assets shall be transferred to the AC Trust and shall vest in the AC Trustee solely in its capacity as such.  Effective as of the date hereof, the AC Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the AC Trust.

(c)     Appointment of AC Trustee.  The AC Trustee is hereby appointed as trustee of the AC Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)     Acceptance of Trust.  The AC Trustee agrees to accept and hold the AC Trust Assets in trust for the AC Trust Beneficiaries, subject to the terms of this AC Trust Agreement and the Plan.

1.2     Title to AC Trust Assets.

(a)     Except as otherwise provided by the Plan or this AC Trust Agreement, upon the Effective Date, title to the AC Trust Assets shall pass to the AC Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)     Upon the transfer to the AC Trust of the AC Trust Assets, the AC Trustee shall succeed to all of the Debtors' right, title and interest in and to the AC Trust Assets, and the Debtors will have no further interest or rights in or with respect to the AC Trust Assets.

(c)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the AC Trustee and the AC Trust Beneficiaries) shall treat the transfer by the Debtors of the AC Trust Assets to the AC Trust as (i) a transfer of the AC Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving AC Trust Beneficial Interests relating thereto and, to the extent the AC Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims

Reserve, followed by (ii) the transfer by such beneficiaries to the AC Trust of the AC Trust Assets (other than the AC Trust Assets allocable to the Unresolved Claims Reserve) in exchange for AC Trust Beneficial Interests. Accordingly, the AC Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the AC Trust Assets (other than such AC Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

        (d)      With respect to all AC Trust Assets, the AC Trustee will directly and indirectly be the representative of the Debtors' Estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this AC Trust Agreement and in the Plan. The AC Trustee will be the successor-in-interest to the Debtors with respect to any action that was or could have been commenced by the Debtors prior to the Effective Date that is related to a AC Trust Asset and shall be deemed substituted for the same as the party in such litigation. The AC Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any person or entity, that constitute AC Trust Assets. All actions, claims, rights, or interests constituting AC Trust Assets are preserved and retained and may be enforced by the AC Trustee as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The AC Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the AC Trust or the AC Trust Assets).

        1.3    <u>Valuation of AC Trust Assets</u>. As soon as practicable after the Effective Date, the AC Trustee, in reliance upon such professionals as the AC Trustee may retain in accordance herewith, shall make a good-faith valuation of the AC Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the AC Trustee and the AC Trust Beneficiaries) for all United States federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the AC Trust Assets.

**ARTICLE II**

AC TRUST BENEFICIARIES

        2.1    <u>Rights of the AC Trust Beneficiaries</u>. Each AC Trust Beneficiary shall take and hold its AC Trust Beneficial Interest subject to all of the terms and provisions of this AC Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan. The interest of a AC Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of a AC Trust Beneficiary, as applicable, such AC Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such AC Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this AC Trust Agreement. An AC Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the AC Trust Assets except as herein expressly provided. No surviving spouse, heir or devisee of any deceased AC Trust

Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the AC Trust Assets, but the whole title to all the AC Trust Assets shall be vested in the AC Trustee and the sole interest of the AC Trust Beneficiaries shall be the rights and benefits given to such persons under this AC Trust Agreement.

2.2     No Legal Title in AC Trust Beneficiaries.  No AC Trust Beneficiary shall have legal title to any part of the AC Trust Assets.  No transfer by operation of law or otherwise, of the right, title and interest of any AC Trust Beneficiary in and to the AC Trust Assets or hereunder shall operate to terminate this AC Trust or entitle any successor or transferee of such AC Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the AC Trust Assets.

2.3     Identification of AC Trust Beneficiaries.  The record holders of interests in the AC Trust shall be recorded and set forth in a register maintained by the AC Trustee expressly for such purpose.  Except as otherwise required by law, references in this AC Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the AC Trustee and shall not mean any beneficial owner not recorded on such official registry.  Unless expressly provided herein, the AC Trustee may establish a record date, which the AC Trustee deems practicable for determining the holders for a particular purpose.  Any distributions to the AC Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers.  The AC Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

**ARTICLE III**

PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     Purpose of the AC Trust.  The AC Trust is established for the sole purpose of liquidating and distributing the AC Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2     Authority of AC Trustee.

(a)     In connection with the administration of the AC Trust and the Plan, except as set forth in this AC Trust Agreement, the AC Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the AC Trust and to carry out its responsibilities under the Plan.  Without limiting the foregoing, and subject to Section 3.4 hereof, the AC Trustee shall, among other things, have the rights, powers and duties:

(i)     to hold, manage, dispose of, sell, convert to Cash and distribute the AC Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the AC Trust;

(ii)     to hold the AC Trust Assets for the benefit of the AC Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii)     in the AC Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the AC Trust Assets, including rights, Causes of Action or litigation of the AC Trust;

(iv)     to monitor and enforce the implementation of the Plan;

(v)     to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the AC Trust;

(vi)     in the AC Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtors or the AC Trust, and manage, control, prosecute and/or settle on behalf of the AC Trust objections to Claims on account of which the AC Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii)     to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtors (other than Advanta and ASC) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) and implement the Plan;

(viii)     to hold, manage, and distribute Cash or non-Cash AC Trust Assets obtained through the exercise of the AC Trustee's power and authority;

(ix)     to act as a signatory to the Debtors (other than Advanta and ASC) and the non-Debtor Affiliates (other than the ABC Parties and ABHC) for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtors' assets;

(x)     to dispose of the books and records transferred to the AC Trustee in a manner deemed appropriate by the AC Trustee; provided, however, that the AC Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)     to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)     to enter into and exercise rights under contracts that are necessary or desirable to the administration of the AC Trust and execute any documents or pleadings related to the liquidation of the AC Trust Assets or other matters related to the AC Trust;

(xiii)     to establish and maintain bank accounts and terminate such accounts as the AC Trustee deems appropriate;

(xiv)    to set off amounts owed to the Debtors against distributions to AC Trust Beneficiaries;

(xv)    to bring suits or defend itself against such suits, if any, as the AC Trustee determines in connection with any matter arising from or related to the Plan or this AC Trust Agreement that affects in any way the rights or obligations of the AC Trust, the AC Trustee or the AC Trust Beneficiaries;

(xvi)    obtain and maintain insurance coverage with respect to the liabilities and obligations of the AC Trustee and the Trust Advisory Board and its members in accordance with <u>Section 4.5</u> of this AC Trust Agreement;

(xvii)    to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the AC Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the AC Trust and are consistent with and are not contrary to the treatment of the AC Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)    to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this AC Trust Agreement.

Notwithstanding the foregoing, neither the AC Trustee nor any other person that is an Affiliate of the AC Trust or the Debtors shall take any action to facilitate or encourage any trading in AC Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)    The AC Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the AC Trust on such terms (including on a contingency or hourly basis) as the AC Trustee deems appropriate without Bankruptcy Court approval; <u>provided</u>, <u>however</u>, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court.  Without limiting the foregoing, the AC Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)    Any member, principal, officer, director or employee of the AC Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)    In all circumstances, the AC Trustee shall act in the best interests of all of the AC Trust Beneficiaries and in furtherance of the purpose of the AC Trust.

3.3    <u>Establishment of Trust Advisory Board</u>.

(a)    The "<u>Trust Advisory Board</u>" means the board to be appointed in accordance with, and to exercise the duties set forth in, this AC Trust Agreement.  The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtors (with the consent of the Creditors' Committee) and

any subsequent members to be appointed in accordance with the terms of this AC Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of any of the Debtors.  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)     Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.  For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the AC Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the AC Trustee cannot obtain direction or authority from the Trust Advisory Board, the AC Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the AC Trust is dissolved in accordance with Section 7.1 hereof.  The service of the members of the Trust Advisory Board shall be subject to the following:

(i)      each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the AC Trustee.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)    if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the AC Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)    the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the AC Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)      in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced).  In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board.  In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of any of the Debtors.  The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)      immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)      Any member of the Trust Advisory Board may be reimbursed by the AC Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the AC Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the AC Trustee under this Trust Agreement, in accordance with the Budget (as defined herein).  Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget.  The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

3.4      Limitations on AC Trustee's Authority and the Trust Advisory Board's Authority.

(a)      Notwithstanding anything herein to the contrary, the AC Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the AC Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that, the AC Trustee is not authorized to engage in any investments or activities

inconsistent with the treatment of the AC Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(b)     The AC Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the AC Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date.  Each fiscal year of the AC Trust shall end on December 31st and commence on January 1st.  The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval.  Prior to the submission and approval of the initial plan and budget, the AC Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the AC Trust, the Delaware Trustee and the AC Trustee.  The annual plan and budget shall set forth in reasonable detail:  (i) the AC Trustee's anticipated actions to administer and liquidate the AC Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the AC Trustee to assist in its duties) associated with conducting the affairs of the AC Trust.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget".  The AC Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the AC Trustee.   All actions by the AC Trustee must be consistent with the then current Budget, provided that the AC Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)     Notwithstanding anything herein to the contrary, the AC Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)     any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the AC Trust (whether or not asserted) in excess of $1,000,000;

(ii)     subject to Section 3.2(b), incurrence of any cost or expense of the AC Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)     Any amendment of this AC Trust Agreement as provided in Section 9.1 hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be

taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the AC Trust and the treatment of the AC Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5    Books and Records.  The AC Trustee shall maintain in respect of the AC Trust and the AC Trust Beneficiaries books and records relating to the AC Trust Assets and income of the AC Trust and the payment of expenses of, and liabilities of claims against or assumed by, the AC Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the AC Trust.  Except as expressly provided herein, nothing in this AC Trust Agreement requires the AC Trustee to file any accounting or seek approval of any court with respect to the administration of the AC Trust or as a condition for managing any payment or distribution out of the AC Trust Assets.  The AC Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6    Additional Powers.  Except as otherwise set forth in this AC Trust Agreement or in the Plan, and subject to the continuation of the treatment of the AC Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the AC Trustee may control and exercise authority over the AC Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the AC Trust shall be obligated to inquire into the authority of the AC Trustee in connection with the protection, conservation, liquidation, or disposition of the AC Trust Assets.

3.7    Distributions.

(a)    The AC Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date.  The AC Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the AC Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the AC Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the AC Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the AC Trust or in respect of the AC Trust Assets) of the AC Trust, the AC Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the AC Trust or imposed on the AC Trust in accordance with the Plan or this AC Trust Agreement.

(b)    All distributions made by the AC Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then

such day shall be the following Business Day. If the distribution shall be in Cash, the AC Trustee shall distribute such Cash by wire, check, or such other form as the AC Trustee deems appropriate under the circumstances. For the avoidance of doubt, pursuant to the Plan, the AC Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an AC Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this AC Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8     Tax Reporting Duties of the AC Trustee.

(a)     In addition to the reporting duties of the AC Trustee under ARTICLE VI hereof, the AC Trustee shall file returns (including United States federal returns) for the AC Trust treating the AC Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan. Annually (but no later than sixty (60) days following the end of each calendar year), the AC Trustee shall send to each holder of a AC Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The AC Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the AC Trust that are required by any governmental unit.

(b)     In furtherance of the provisions of Section 3.8(a) hereof, allocations of the AC Trust's taxable income among the AC Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the AC Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the AC Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the AC Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the AC Trust. Similarly, taxable loss of the AC Trust shall be allocated in good faith by the AC Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining AC Trust Assets. The tax book value of the AC Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the AC Trustee.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the AC Trustee of a private letter ruling if the AC Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the AC Trustee), the AC Trustee shall (i) timely elect to treat any AC Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local

income tax purposes.  All parties (including the AC Trustee, the Debtors and the AC Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The AC Trustee shall be responsible for payment, out of the AC Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the AC Trustee as a result of the resolution of such Unresolved Claims.

(e)     The AC Trustee may request an expedited determination of taxes of the AC Trust, including the Unresolved Claims Reserve, or the Debtors under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the AC Trust or the Debtors for all taxable periods through the dissolution of the AC Trust.

(f)     The AC Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the AC Trust Beneficial Interests.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the AC Trust Beneficial Interests for all purposes of this AC Trust Agreement.  The AC Trustee shall be authorized to collect such tax information from the holders of the AC Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this AC Trust Agreement.  In order to receive distributions under the Plan, all holders of the AC Trust Beneficial Interests will need to identify themselves to the AC Trustee and provide tax information and the specifics of their holdings, to the extent the AC Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder).  The AC Trustee may refuse to make a distribution to any holder of a AC Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of a AC Trust Beneficial Interest, the AC Trustee shall make such distribution to which the holder of the AC Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the AC Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the AC Trustee is later held liable for the amount of such withholding, such holder shall reimburse the AC Trustee for such liability.

3.9     Tax Powers.

(a)     For all taxable periods ending on or prior to the Effective Date, the AC Trustee shall have full and exclusive authority in respect of all taxes of the Debtors (other than Advanta and ASC) to the same extent as if the AC Trustee was the debtor in possession;

provided, however, that the AC Trustee shall have full and exclusive authority in respect of all state tax audits or other state tax proceedings of Advanta and ASC (including as the common parent or other agent of any consolidated, combined or unitary tax group of which Advanta or ASC was the agent) relating to taxable periods ending on or prior to the Effective Date as if the AC Trustee was the debtor in possession.

(b)     Following the Effective Date, the AC Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor(s) (other than Advanta and ASC, including as the common parent or other agent) of any consolidated, combined or unitary tax group of which Advanta or ASC was the agent, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to be filed or that the AC Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)     In furtherance thereof, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the AC Trustee to take actions consistent with Section 3.9(a) and (b) to the same extent as if the AC Trustee were the Debtor.

(d)     Following the Effective Date, the AC Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor(s) to the same extent as the applicable Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor(s) (other than Advanta and ASC) to the same extent as the applicable Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date; provided, however, that the AC Trustee shall only have whatever rights the Debtors have pursuant to the FDIC Settlement Agreement and the AC Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)     The AC Trustee and each Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan). Any information obtained under this Section 3.9(e) shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding. Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any AC Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)     See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor(s).

3.10   Compliance with Laws.  Any and all distributions of AC Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11   Confidentiality.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the AC Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

**ARTICLE IV**

THE AC TRUSTEE

4.1   Generally.  The AC Trustee will initially be FTI Consulting, Inc.  The AC Trustee shall serve as trustee until its successor shall have been appointed in accordance with ARTICLE VI or until resignation, death or removal.  The AC Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this AC Trust and not otherwise.

4.2   Responsibilities of AC Trustee.  The AC Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the AC Trust Assets, make timely distributions and not unduly prolong the duration of the AC Trust.  In so doing, the AC Trustee will exercise its reasonable business judgment in liquidating the AC Trust Assets.  The liquidation of the AC Trust Assets may be accomplished, in the AC Trustee's discretion, through the sale of AC Trust Assets (in whole or in part).  In connection therewith, the AC Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the AC Trust all claims, rights and Causes of Action transferred to the AC Trust, whether such suits are brought in the name of the AC Trust, any of the Debtors, or otherwise for the benefit of the AC Trust Beneficiaries.  Any and all proceeds generated from such AC Trust Assets shall be held by the AC Trust.  Except as expressly set forth herein, the AC Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the AC Trustee determines are in the best interests of the AC Trust Beneficiaries and consistent with the purposes of the AC Trust and shall have no liability for the outcome of its decision.  Subject to Section 3.4(b), the AC Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the AC Trust Assets.

4.3   Cash.  The AC Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a AC Trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4   Expense Reimbursement and Compensation.

(a)   The costs and expenses of the AC Trust, including the reasonable fees and expenses of the AC Trustee and the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the AC Trustee and the Delaware Trustee), the AC Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve,

shall be paid out of the AC Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The AC Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The AC Trust shall be authorized to establish and maintain at the expense of the AC Trust customary insurance coverage for the protection of the AC Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the AC Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the AC Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the AC Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance.  The AC Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become AC Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute AC Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the AC Trust shall vest in the AC Trustee (in its capacity as such).

4.7     Confidentiality.  The AC Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the AC Trust Assets relate or of which the AC Trustee has become aware in its capacity as AC Trustee, except as otherwise required by law.

**ARTICLE V**

SUCCESSOR TRUSTEES

5.1     Removal.  Each of the AC Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the AC Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board. Such resignation shall become effective with respect to the AC Trustee on the later to occur of: (a) the day specified in such notice, or (b) the appointment of a successor AC Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor AC Trustee by the Bankruptcy Court. Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by

the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court. If a successor AC Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the AC Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3     Appointment of Successor AC Trustee or Delaware Trustee.  In the event of the death (in the case of a AC Trustee that is a natural person), dissolution (in the case of a AC Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the AC Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor AC Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court.  Every successor AC Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring AC Trustee or Delaware Trustee an instrument accepting the appointment under this AC Trust Agreement and agreeing to be bound thereto, and thereupon the successor AC Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring AC Trustee or Delaware Trustee pursuant to this AC Trust Agreement and the Plan; provided, however, that a removed or resigning AC Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor AC Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor AC Trustee or Delaware Trustee under the AC Trust all the estates, properties, rights, powers and privileges of such predecessor AC Trustee or Delaware Trustee, as applicable.

## ARTICLE VI

## REPORTS TO AC TRUST BENEFICIARIES

6.1     Annual and Final Reports.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the AC Trust, the AC Trustee shall make available to each AC Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the AC Trust for such period; (b) a description of any action taken by the AC Trustee in the performance of its duties that materially affects the AC Trust and of which notice has not previously been given to the AC Trust Beneficiaries; and (c) a description of the progress of converting AC Trust Assets to Cash and making distributions to the AC Trust Beneficiaries and any other material information relating to the AC Trust Assets and the administration of the AC Trust.  The AC Trustee shall also prepare and make available such additional reports regarding the AC Trust as are reasonably requested by the Trust Advisory Board from time to time.

## ARTICLE VII

## DISSOLUTION OF AC TRUST

7.1     Dissolution of AC Trust.

(a)     The AC Trust shall be dissolved at the earlier of (even if AC Trust Beneficiaries have not been paid in full) (i) all of the AC Trust Assets having been distributed pursuant to the Plan and this AC Trust Agreement, (ii) the AC Trustee determining, in its sole discretion, that the administration of the AC Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the AC Trustee under the Plan and the AC Trust Agreement having been made; provided, however, that in no event shall the AC Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the AC Trust as a AC Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the AC Trust Assets.  If at any time the AC Trustee determines, in reliance upon such professionals as the AC Trustee may retain, that the expense of administering the AC Trust, including the making of a final distribution to the AC Trust Beneficiaries, is likely to exceed the value of the remaining AC Trust Assets, the AC Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the AC Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtors, the AC Trust, the AC Trustee, or any insider of any of the foregoing, and (iii) dissolve the AC Trust.

(b)     The AC Trustee shall not unduly prolong the duration of the AC Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute AC Trust Assets and to effect the distribution of the AC Trust Assets to the AC Trust Beneficiaries in accordance with the terms hereof and dissolve the AC Trust as soon as practicable.  Subject to Section 7.1(a) hereof, prior to or upon dissolution of the AC Trust, the AC Trust Assets will be distributed to the AC Trust Beneficiaries, pursuant to the provisions set forth in Section 3.7 hereof.  If any AC Trust Assets are not duly claimed, such AC Trust Assets will be redistributed *pro rata* to all other AC Trust Beneficiaries receiving AC Trust Assets pursuant to Section 3.7 hereof.

7.2     Winding Up of the Trust and Termination.  After the dissolution of the AC Trust and for the purpose of liquidating and winding up the affairs of the AC Trust, the AC Trustee shall continue to act as such until its duties have been fully performed.  Upon dissolution of the AC Trust, the AC Trustee shall retain for a period of two (2) years the books, records, lists of the AC Trust Beneficiaries, the register of AC Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the AC Trustee that were not already disposed of as provided in Section 3.5 hereof.  Subject to the consent of the Trust Advisory Board, at the AC Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the AC Trust; provided, however, that the AC Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtors or its current or former officer or directors are a party.  Except as otherwise specifically provided herein, upon the winding up of the AC Trust, the AC Trustee shall have no further duties or obligations hereunder.

# ARTICLE VIII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     Liability of AC Trustee; Indemnification.  The AC Trustee or the individuals comprising the AC Trustee, and the AC Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the AC Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the AC Trustee's actions or inactions regarding the implementation or administration of this AC Trust Agreement, the AC Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the AC Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AC Trust Assets or any applicable insurance coverage.  The AC Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The AC Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the AC Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the AC Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this AC Trust Agreement, the AC Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AC Trust Assets or any applicable insurance coverage.  The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals.  Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result

in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3     Reliance by AC Trustee and Trust Advisory Board.

(a)     Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the AC Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the AC Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the AC Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the AC Trustee or the Trust Advisory Board shall look only to the AC Trust Assets to satisfy any liability incurred by the AC Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this AC Trust Agreement, and neither the AC Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  Any material provision of this AC Trust Agreement may be amended or waived by the AC Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court.  Amendments to immaterial provisions to this AC Trust Agreement may be made as necessary, to clarify this AC Trust Agreement or enable the AC Trustee to effectuate the terms of this AC Trust Agreement, by the AC Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board. Notwithstanding this Section 9.1, any amendments to this AC Trust Agreement shall not be inconsistent with the purpose and intention of the AC Trust to liquidate in an expeditious but orderly manner the AC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof.  Notwithstanding the foregoing, no amendment to this AC Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     Intention of Parties to Establish a Liquidating Trust for Tax Purposes.  This AC Trust Agreement is intended to create a AC Trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section and, if necessary, this

AC Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2   Laws as to Construction.  This AC Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3   Severability.  If any provision of this AC Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this AC Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this AC Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4   Notices.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 10.4):

> If to the AC Trustee:
>
> > FTI Consulting, Inc.
> > 3 Times Square, 10th Floor
> > New York, New York 10036
> > Attn: Andrew Scruton
> > Fax: (212) 499-3636
> > E-mail: Andrew.Scruton@fticonsulting.com
>
> If to the Debtors:
>
> > Weil, Gotshal & Manges LLP
> > Attn: Robert J. Lemons
> > 767 Fifth Avenue
> > New York, New York, 10153
> > Facsimile: 212-310-8007
> > Email:  Robert.Lemons@weil.com
>
> If to an AC Trust Beneficiary:
>
> > To the name and address set forth on the registry
> > maintained by the AC Trustee.
>
> If to the Trust Advisory Board, to each of:
>
> Lapis Advisers, LP

1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

      with a copy to

      Whitman L. Holt
      Klee, Tuchin, Bogdanoff & Stern LLP
      1999 Avenue of the Stars, 39th Floor
      Los Angeles, CA 90067
      Fax: 310-407-9090
      E-mail: wholt@ktbslaw.com


Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

      with a copy to

      Ira Dizengoff
      Akin Gump Strauss Hauer & Feld LLP
      One Bryant Park
      New York, NY  10036-6745
      Fax: 212-872-1002
      E-mail: idizengoff@akingump.com


and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

      with a copy to

      Brett Amron
      Bast Amron
      Suntrust International Center
      One Southeast Third Avenue Suite 1440

Miami, Florida  33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com

        If to the Delaware Trustee:

        Wilmington Trust Company
        1100 North Market Street
        Wilmington, Delaware 19890-1625
        Phone: 302-636-6395
        Facsimile: 302-636-4149
        Attn: Chris Slaybaugh

        10.5   <u>Headings</u>.  The section headings contained in this AC Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this AC Trust Agreement or of any term or provision hereof.

        10.6   <u>Relationship to the Plan</u>.  The principal purpose of this AC Trust Agreement is to aid in the implementation of the Plan and therefore this AC Trust Agreement incorporates the provisions of the Plan.  If any provisions of this AC Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the AC Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this AC Trust Agreement shall control.

# ARTICLE XI

## DELAWARE TRUSTEE

        Section 11.1   <u>Delaware Trustee</u>.  The Delaware Trustee is appointed to serve as the trustee of AC Trust in the State of Delaware.  Notwithstanding any provision in this AC Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of AC Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to AC Trust, the AC Trustee or any AC Trust Beneficiary.  It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on AC Trust in the State of Delaware.

        (a)     By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1.  Except as provided in this Section 11.1, the Delaware Trustee shall not have any duty or liability with respect to the administration of AC Trust, the investment of AC Trust's

property or the payment of dividends or other distributions of income or principal to the AC Trust Beneficiaries.

(b)     The Delaware Trustee shall not be liable for the acts or omissions of the AC Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the AC Trustee or AC Trust under this AC Trust Agreement, the Plan or any related document.  The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence.  In particular, but not by way of limitation:

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)     No provision of this AC Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of AC Trust;

(iv)     The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this AC Trust Agreement or for the due execution hereof by the other parties hereto;

(v)     The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the AC Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted

in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)    Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this AC Trust Agreement shall look only to AC Trust's property for payment or satisfaction thereof.

(c)    The Delaware Trustee shall take such action or refrain from taking such action under this AC Trust Agreement as it may be directed in writing by the AC Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this AC Trust Agreement.  The Delaware Trustee is entitled to request instruction from the AC Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the AC Trustee.

(d)    The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2    Liability of Delaware Trustee; Indemnification.    The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this AC Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AC Trust Assets or any applicable insurance coverage.

Section 11.3    Merger or Consolidation of Delaware Trustee.  Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the

creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4. <u>Miscellaneous</u>. To the extent that provisions of this AC Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this AC Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTORS:

**ADVANTA CORP.**

By:_____
       Name:
       Title:

**ADVANTA INVESTMENT CORP.**

By:_____
       Name:
       Title:

**ADVANTA BUSINESS SERVICES HOLDING CORP.**

By:_____
       Name:
       Title:

**ADVANTA BUSINESS SERVICES CORP.**

By:_____
       Name:
       Title:

**ADVANTA SERVICE CORP.**

By:_____
       Name:
       Title:

**ADVANTA ADVERTISING INC.**

By:_____

Name:

Title:

## ADVANTA MORTGAGE HOLDING COMPANY

By: _____

Name:

Title:

## ADVANTA VENTURES INC.

By: _____

Name:

Title:

## BE CORP. (F/K/A BIZEQUITY CORP.)

By: _____

Name:

Title:

## IDEABLOB CORP.

By: _____

Name:

Title:

## ADVANTA CREDIT CARD RECEIVABLES CORP.

By: _____

Name:

Title:

## GREAT EXPECTATIONS INTERNATIONAL INC.

By: _____

Name:

Title:

## GREAT EXPECTATIONS FRANCHISE CORP.

By:_____
　　　　Name:
　　　　Title:

**GREAT EXPECTATIONS MANAGEMENT CORP.**

By:_____
      Name:
      Title:


AC TRUSTEE:

**FTI CONSULTING, INC.**
**solely as AC Trustee**

By: _____
      Name:
      Title:


DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**


By: _____
      Name:
      Title:

<u>**Annex A**</u>
**Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.27**

**(Advanta Auto Finance Trust Agreement)**

## ADVANTA AUTO FINANCE TRUST AGREEMENT

This Advanta Auto Finance Trust Agreement (the "Advanta Auto Finance Trust Agreement"), dated as of ___, 2011, is entered into by and among Advanta Auto Finance Corp., a Nevada corporation, as debtor and debtor in possession (collectively, the "Debtor"), FTI Consulting, Inc., solely in its capacity as liquidating trustee (together with any successor appointed under the terms hereof, the "Advanta Auto Finance Trustee"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "Plan"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of a liquidating trust evidenced hereby (the "Advanta Auto Finance Trust"). Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

### W I T N E S S E T H

WHEREAS, the Advanta Auto Finance Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Advanta Auto Finance Trust is created on behalf of, and for the sole benefit of, the Advanta Auto Finance Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of a liquidating trust that will (i) receive from the Debtor all of the Advanta Auto Finance Trust Assets, (ii) hold the Advanta Auto Finance Trust Assets in trust for the benefit of the Advanta Auto Finance Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the Advanta Auto Finance Trust Assets held by it for the benefit of the Advanta Auto Finance Trust Beneficiaries pursuant to the terms of the Plan and this Advanta Auto Finance Trust Agreement;

WHEREAS, the Advanta Auto Finance Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the Advanta Auto Finance Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the Advanta Auto Finance Trust Beneficiaries treated as the grantors and owners of the Advanta Auto Finance Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

# ARTICLE I

## ESTABLISHMENT OF THE ADVANTA AUTO FINANCE TRUST

1.1    <u>Establishment and Declaration of Trust</u>.

(a)    <u>Name</u>.  This trust shall be known as the "<u>Advanta Auto Finance Trust</u>" in which name the Advanta Auto Finance Trustee may conduct the affairs of the Advanta Auto Finance Trust.

(b)    <u>Declaration of Trust</u>.  In accordance with the Plan, the Debtor, the Advanta Auto Finance Trustee and the Delaware Trustee hereby establish the Advanta Auto Finance Trust on behalf of and for the benefit of the Advanta Auto Finance Trust Beneficiaries and, on the Effective Date, the Debtor hereby irrevocably and absolutely transfer, assign, convey and deliver to the Advanta Auto Finance Trustee for the benefit of the Advanta Auto Finance Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the Advanta Auto Finance Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the Advanta Auto Finance Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the Advanta Auto Finance Trust Assets to the Advanta Auto Finance Trust, all rights and Causes of Action and all Books and Privileges relating to such Advanta Auto Finance Trust Assets shall be transferred to the Advanta Auto Finance Trust and shall vest in the Advanta Auto Finance Trustee solely in its capacity as such.  Effective as of the date hereof, the Advanta Auto Finance Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Advanta Auto Finance Trust.

(c)    <u>Appointment of Advanta Auto Finance Trustee</u>.  The Advanta Auto Finance Trustee is hereby appointed as trustee of the Advanta Auto Finance Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)    <u>Acceptance of Trust</u>.  The Advanta Auto Finance Trustee agrees to accept and hold the Advanta Auto Finance Trust Assets in trust for the Advanta Auto Finance Trust Beneficiaries, subject to the terms of this Advanta Auto Finance Trust Agreement and the Plan.

1.2    <u>Title to Advanta Auto Finance Trust Assets</u>.

(a)    Except as otherwise provided by the Plan or this Advanta Auto Finance Trust Agreement, upon the Effective Date, title to the Advanta Auto Finance Trust Assets shall pass to the Advanta Auto Finance Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)    Upon the transfer to the Advanta Auto Finance Trust of the Advanta Auto Finance Trust Assets, the Advanta Auto Finance Trustee shall succeed to all of the Debtor's right, title and interest in and to the Advanta Auto Finance Trust Assets, and the Debtor will have no further interest or rights in or with respect to the Advanta Auto Finance Trust Assets.

(c)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Advanta Auto Finance Trustee and the Advanta Auto Finance Trust Beneficiaries) shall treat the transfer by the Debtor of the Advanta Auto Finance Trust Assets to the Advanta Auto Finance Trust as (i) a transfer of the Advanta Auto Finance Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving Advanta Auto Finance Trust Beneficial Interests relating thereto and, to the extent the Advanta Auto Finance Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by (ii) the transfer by such beneficiaries to the Advanta Auto Finance Trust of the Advanta Auto Finance Trust Assets (other than the Advanta Auto Finance Trust Assets allocable to the Unresolved Claims Reserve) in exchange for Advanta Auto Finance Trust Beneficial Interests.  Accordingly, the Advanta Auto Finance Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Advanta Auto Finance Trust Assets (other than such Advanta Auto Finance Trust Assets as are allocable to the Unresolved Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)     With respect to all Advanta Auto Finance Trust Assets, the Advanta Auto Finance Trustee will directly and indirectly be the representative of the Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Advanta Auto Finance Trust Agreement and in the Plan.  The Advanta Auto Finance Trustee will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that is related to An Advanta Auto Finance Trust Asset and shall be deemed substituted for the same as the party in such litigation.  The Advanta Auto Finance Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity, that constitute Advanta Auto Finance Trust Assets.  All actions, claims, rights, or interests constituting Advanta Auto Finance Trust Assets are preserved and retained and may be enforced by the Advanta Auto Finance Trustee as the representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Advanta Auto Finance Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the Advanta Auto Finance Trust or the Advanta Auto Finance Trust Assets).

1.3     Valuation of Advanta Auto Finance Trust Assets.  As soon as practicable after the Effective Date, the Advanta Auto Finance Trustee, in reliance upon such professionals as the Advanta Auto Finance Trustee may retain in accordance herewith, shall make a good-faith valuation of the Advanta Auto Finance Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the Advanta Auto Finance Trustee and the Advanta Auto Finance Trust Beneficiaries) for all United States federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Advanta Auto Finance Trust Assets.

**ARTICLE II**

ADVANTA AUTO FINANCE TRUST BENEFICIARIES

2.1     Rights of the Advanta Auto Finance Trust Beneficiaries.  Each Advanta Auto Finance Trust Beneficiary shall take and hold its Advanta Auto Finance Trust Beneficial Interest subject to all of the terms and provisions of this Advanta Auto Finance Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan.  The interest of an Advanta Auto Finance Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an Advanta Auto Finance Trust Beneficiary, as applicable, such Advanta Auto Finance Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such Advanta Auto Finance Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this Advanta Auto Finance Trust Agreement.  An Advanta Auto Finance Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the Advanta Auto Finance Trust Assets except as herein expressly provided.  No surviving spouse, heir or devisee of any deceased Advanta Auto Finance Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Advanta Auto Finance Trust Assets, but the whole title to all the Advanta Auto Finance Trust Assets shall be vested in the Advanta Auto Finance Trustee and the sole interest of the Advanta Auto Finance Trust Beneficiaries shall be the rights and benefits given to such persons under this Advanta Auto Finance Trust Agreement.

2.2     No Legal Title in Advanta Auto Finance Trust Beneficiaries.  No Advanta Auto Finance Trust Beneficiary shall have legal title to any part of the Advanta Auto Finance Trust Assets.  No transfer by operation of law or otherwise, of the right, title and interest of any Advanta Auto Finance Trust Beneficiary in and to the Advanta Auto Finance Trust Assets or hereunder shall operate to terminate this Advanta Auto Finance Trust or entitle any successor or transferee of such Advanta Auto Finance Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the Advanta Auto Finance Trust Assets.

2.3     Identification of Advanta Auto Finance Trust Beneficiaries.  The record holders of interests in the Advanta Auto Finance Trust shall be recorded and set forth in a register maintained by the Advanta Auto Finance Trustee expressly for such purpose.  Except as otherwise required by law, references in this Advanta Auto Finance Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the Advanta Auto Finance Trustee and shall not mean any beneficial owner not recorded on such official registry.  Unless expressly provided herein, the Advanta Auto Finance Trustee may establish a record date, which the Advanta Auto Finance Trustee deems practicable for determining the holders for a particular purpose.  Any distributions to the Advanta Auto Finance Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers.  The Advanta Auto Finance Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

**ARTICLE III**

# PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     Purpose of the Advanta Auto Finance Trust.  The Advanta Auto Finance Trust is established for the sole purpose of liquidating and distributing the Advanta Auto Finance Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2     Authority of Advanta Auto Finance Trustee.

(a)     In connection with the administration of the Advanta Auto Finance Trust and the Plan, except as set forth in this Advanta Auto Finance Trust Agreement, the Advanta Auto Finance Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Advanta Auto Finance Trust and to carry out its responsibilities under the Plan.  Without limiting the foregoing, and subject to Section 3.4 hereof, the Advanta Auto Finance Trustee shall, among other things, have the rights, powers and duties:

(i)     to hold, manage, dispose of, sell, convert to Cash and distribute the Advanta Auto Finance Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the Advanta Auto Finance Trust;

(ii)     to hold the Advanta Auto Finance Trust Assets for the benefit of the Advanta Auto Finance Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii)     in the Advanta Auto Finance Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the Advanta Auto Finance Trust Assets, including rights, Causes of Action or litigation of the Advanta Auto Finance Trust;

(iv)     to monitor and enforce the implementation of the Plan;

(v)     to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Advanta Auto Finance Trust;

(vi)     in the Advanta Auto Finance Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the Advanta Auto Finance Trust, and manage, control, prosecute and/or settle on behalf of the Advanta Auto Finance Trust objections to Claims on account of which the Advanta Auto Finance Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii)     to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and implement the Plan;

(viii)   to hold, manage, and distribute Cash or non-Cash Advanta Auto Finance Trust Assets obtained through the exercise of the Advanta Auto Finance Trustee's power and authority;

(ix)   to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor's assets;

(x)   to dispose of the books and records transferred to the Advanta Auto Finance Trustee in a manner deemed appropriate by the Advanta Auto Finance Trustee; provided, however, that the Advanta Auto Finance Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)   to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)   to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Advanta Auto Finance Trust and execute any documents or pleadings related to the liquidation of the Advanta Auto Finance Trust Assets or other matters related to the Advanta Auto Finance Trust;

(xiii)   to establish and maintain bank accounts and terminate such accounts as the Advanta Auto Finance Trustee deems appropriate;

(xiv)   to set off amounts owed to the Debtor against distributions to Advanta Auto Finance Trust Beneficiaries;

(xv)   to bring suits or defend itself against such suits, if any, as the Advanta Auto Finance Trustee determines in connection with any matter arising from or related to the Plan or this Advanta Auto Finance Trust Agreement that affects in any way the rights or obligations of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee or the Advanta Auto Finance Trust Beneficiaries;

(xvi)   obtain and maintain insurance coverage with respect to the liabilities and obligations of the Advanta Auto Finance Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of this Advanta Auto Finance Trust Agreement;

(xvii)   to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Advanta Auto Finance Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Advanta Auto Finance Trust and are consistent with and are not contrary to the treatment of the Advanta Auto Finance Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)  to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this Advanta Auto Finance Trust Agreement.

Notwithstanding the foregoing, neither the Advanta Auto Finance Trustee nor any other person that is an Affiliate of the Advanta Auto Finance Trust or the Debtor shall take any action to facilitate or encourage any trading in Advanta Auto Finance Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)  The Advanta Auto Finance Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the Advanta Auto Finance Trust on such terms (including on a contingency or hourly basis) as the Advanta Auto Finance Trustee deems appropriate without Bankruptcy Court approval; provided, however, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court.  Without limiting the foregoing, the Advanta Auto Finance Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)  Any member, principal, officer, director or employee of the Advanta Auto Finance Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)  In all circumstances, the Advanta Auto Finance Trustee shall act in the best interests of all of the Advanta Auto Finance Trust Beneficiaries and in furtherance of the purpose of the Advanta Auto Finance Trust.

3.3  Establishment of Trust Advisory Board.

(a)  The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Advanta Auto Finance Trust Agreement.  The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtor (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this Advanta Auto Finance Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)  Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other

activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable. For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the Advanta Auto Finance Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required. Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting. In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy. In a matter in which the Advanta Auto Finance Trustee cannot obtain direction or authority from the Trust Advisory Board, the Advanta Auto Finance Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest. For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by

one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Advanta Auto Finance Trust is dissolved in accordance with <u>Section 7.1</u> hereof.  The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the Advanta Auto Finance Trustee.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)     if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the Advanta Auto Finance Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; <u>provided</u>, <u>however</u>, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)     the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the Advanta Auto Finance Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)     in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced).  In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board.  In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the

Bankruptcy Code) of the Debtor. The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)     immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)     Any member of the Trust Advisory Board may be reimbursed by the Advanta Auto Finance Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the Advanta Auto Finance Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the Advanta Auto Finance Trustee under this Trust Agreement, in accordance with the Budget (as defined herein). Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget. The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

3.4     Limitations on Advanta Auto Finance Trustee's Authority and the Trust Advisory Board's Authority.

(a)     Notwithstanding anything herein to the contrary, the Advanta Auto Finance Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the Advanta Auto Finance Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that, the Advanta Auto Finance Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Advanta Auto Finance Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(b)     The Advanta Auto Finance Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the Advanta Auto Finance Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date. Each fiscal year of the Advanta Auto Finance Trust shall end on December 31st and commence on January 1st. The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on

which such annual plan and budget is submitted to the Trust Advisory Board for approval. Prior to the submission and approval of the initial plan and budget, the Advanta Auto Finance Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the Advanta Auto Finance Trust, the Delaware Trustee and the Advanta Auto Finance Trustee. The annual plan and budget shall set forth in reasonable detail: (i) the Advanta Auto Finance Trustee's anticipated actions to administer and liquidate the Advanta Auto Finance Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the Advanta Auto Finance Trustee to assist in its duties) associated with conducting the affairs of the Advanta Auto Finance Trust. Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget". The Advanta Auto Finance Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the Advanta Auto Finance Trustee. All actions by the Advanta Auto Finance Trustee must be consistent with the then current Budget, provided that the Advanta Auto Finance Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)     Notwithstanding anything herein to the contrary, the Advanta Auto Finance Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)     any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the Advanta Auto Finance Trust (whether or not asserted) in excess of $1,000,000;

(ii)     subject to Section 3.2(b), incurrence of any cost or expense of the Advanta Auto Finance Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)     Any amendment of this Advanta Auto Finance Trust Agreement as provided in Section 9.1 hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the Advanta Auto Finance Trust and the treatment of the Advanta Auto Finance Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5     Books and Records. The Advanta Auto Finance Trustee shall maintain in respect of the Advanta Auto Finance Trust and the Advanta Auto Finance Trust Beneficiaries books and records relating to the Advanta Auto Finance Trust Assets and income of the Advanta Auto

Finance Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Advanta Auto Finance Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Advanta Auto Finance Trust. Except as expressly provided herein, nothing in this Advanta Auto Finance Trust Agreement requires the Advanta Auto Finance Trustee to file any accounting or seek approval of any court with respect to the administration of the Advanta Auto Finance Trust or as a condition for managing any payment or distribution out of the Advanta Auto Finance Trust Assets. The Advanta Auto Finance Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6     Additional Powers. Except as otherwise set forth in this Advanta Auto Finance Trust Agreement or in the Plan, and subject to the continuation of the treatment of the Advanta Auto Finance Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Advanta Auto Finance Trustee may control and exercise authority over the Advanta Auto Finance Trust Assets and over the protection, conservation and disposition thereof. No person dealing with the Advanta Auto Finance Trust shall be obligated to inquire into the authority of the Advanta Auto Finance Trustee in connection with the protection, conservation, liquidation, or disposition of the Advanta Auto Finance Trust Assets.

3.7     Distributions.

(a)     The Advanta Auto Finance Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date. The Advanta Auto Finance Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Advanta Auto Finance Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtor on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the Advanta Auto Finance Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Advanta Auto Finance Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Advanta Auto Finance Trust or in respect of the Advanta Auto Finance Trust Assets) of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Advanta Auto Finance Trust or imposed on the Advanta Auto Finance Trust in accordance with the Plan or this Advanta Auto Finance Trust Agreement.

(b)     All distributions made by the Advanta Auto Finance Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. If the distribution shall be in

Cash, the Advanta Auto Finance Trustee shall distribute such Cash by wire, check, or such other form as the Advanta Auto Finance Trustee deems appropriate under the circumstances. For the avoidance of doubt, pursuant to the Plan, the Advanta Auto Finance Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an Advanta Auto Finance Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this Advanta Auto Finance Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

   3.8  Tax Reporting Duties of the Advanta Auto Finance Trustee.

      (a)  In addition to the reporting duties of the Advanta Auto Finance Trustee under ARTICLE VI hereof, the Advanta Auto Finance Trustee shall file returns (including United States federal returns) for the Advanta Auto Finance Trust treating the Advanta Auto Finance Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan. Annually (but no later than sixty (60) days following the end of each calendar year), the Advanta Auto Finance Trustee shall send to each holder of an Advanta Auto Finance Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The Advanta Auto Finance Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Advanta Auto Finance Trust that are required by any governmental unit.

      (b)  In furtherance of the provisions of Section 3.8(a) hereof, allocations of the Advanta Auto Finance Trust's taxable income among the Advanta Auto Finance Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the Advanta Auto Finance Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Advanta Auto Finance Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the Advanta Auto Finance Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Advanta Auto Finance Trust. Similarly, taxable loss of the Advanta Auto Finance Trust shall be allocated in good faith by the Advanta Auto Finance Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Advanta Auto Finance Trust Assets. The tax book value of the Advanta Auto Finance Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Advanta Auto Finance Trustee.

      (c)  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Advanta Auto

Finance Trustee of a private letter ruling if the Advanta Auto Finance Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Advanta Auto Finance Trustee), the Advanta Auto Finance Trustee shall (i) timely elect to treat any Advanta Auto Finance Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Advanta Auto Finance Trustee, the Debtor and the Advanta Auto Finance Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The Advanta Auto Finance Trustee shall be responsible for payment, out of the Advanta Auto Finance Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Advanta Auto Finance Trustee as a result of the resolution of such Unresolved Claims.

(e)     The Advanta Auto Finance Trustee may request an expedited determination of taxes of the Advanta Auto Finance Trust, including the Unresolved Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Advanta Auto Finance Trust or the Debtor for all taxable periods through the dissolution of the Advanta Auto Finance Trust.

(f)     The Advanta Auto Finance Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Advanta Auto Finance Trust Beneficial Interests. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Advanta Auto Finance Trust Beneficial Interests for all purposes of this Advanta Auto Finance Trust Agreement. The Advanta Auto Finance Trustee shall be authorized to collect such tax information from the holders of the Advanta Auto Finance Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Advanta Auto Finance Trust Agreement. In order to receive distributions under the Plan, all holders of the Advanta Auto Finance Trust Beneficial Interests will need to identify themselves to the Advanta Auto Finance Trustee and provide tax information and the specifics of their holdings, to the extent the Advanta Auto Finance Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder). The Advanta Auto Finance Trustee may refuse to make a distribution to any holder of an Advanta Auto Finance Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an Advanta Auto Finance Trust Beneficial Interest, the Advanta Auto Finance Trustee shall make such distribution to which the holder of the Advanta Auto Finance Trust Beneficial Interest is entitled, without interest; and, provided further

that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, <u>provided further</u> that, if the Advanta Auto Finance Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Advanta Auto Finance Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Advanta Auto Finance Trustee for such liability.

3.9    <u>Tax Powers</u>.

(a)    For all taxable periods ending on or prior to the Effective Date, the Advanta Auto Finance Trustee shall have full and exclusive authority in respect of all taxes of the Debtor to the same extent as if the Advanta Auto Finance Trustee was the debtor in possession.

(b)    Following the Effective Date, the Advanta Auto Finance Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "<u>Tax Returns</u>") required to be filed or that the Advanta Auto Finance Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)    In furtherance thereof, the Debtor shall execute, on or prior to the Effective Date, a power of attorney authorizing the Advanta Auto Finance Trustee to take actions consistent with <u>Section 3.9(a) and (b)</u> to the same extent as if the Advanta Auto Finance Trustee were the Debtor.

(d)    Following the Effective Date, the Advanta Auto Finance Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date; <u>provided</u>, <u>however</u>, that the Advanta Auto Finance Trustee shall only have whatever rights the Debtor has pursuant to the FDIC Settlement Agreement and the Advanta Auto Finance Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)    The Advanta Auto Finance Trustee and the Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan).  Any information obtained under this <u>Section 3.9(e)</u> shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding.  Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any Advanta Auto Finance Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)     See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor.

3.10    Compliance with Laws.  Any and all distributions of Advanta Auto Finance Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11    Confidentiality.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Auto Finance Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

## ARTICLE IV

### THE ADVANTA AUTO FINANCE TRUSTEE

4.1     Generally.  The Advanta Auto Finance Trustee will initially be FTI Consulting, Inc.  The Advanta Auto Finance Trustee shall serve as trustee until its successor shall have been appointed in accordance with ARTICLE VI or until resignation, death or removal.  The Advanta Auto Finance Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Advanta Auto Finance Trust and not otherwise.

4.2     Responsibilities of Advanta Auto Finance Trustee.  The Advanta Auto Finance Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Advanta Auto Finance Trust Assets, make timely distributions and not unduly prolong the duration of the Advanta Auto Finance Trust.  In so doing, the Advanta Auto Finance Trustee will exercise its reasonable business judgment in liquidating the Advanta Auto Finance Trust Assets.  The liquidation of the Advanta Auto Finance Trust Assets may be accomplished, in the Advanta Auto Finance Trustee's discretion, through the sale of Advanta Auto Finance Trust Assets (in whole or in part).  In connection therewith, the Advanta Auto Finance Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the Advanta Auto Finance Trust all claims, rights and Causes of Action transferred to the Advanta Auto Finance Trust, whether such suits are brought in the name of the Advanta Auto Finance Trust, the Debtor, or otherwise for the benefit of the Advanta Auto Finance Trust Beneficiaries.  Any and all proceeds generated from such Advanta Auto Finance Trust Assets shall be held by the Advanta Auto Finance Trust.  Except as expressly set forth herein, the Advanta Auto Finance Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the Advanta Auto Finance Trustee determines are in the best interests of the Advanta Auto Finance Trust Beneficiaries and consistent with the purposes of the Advanta Auto Finance Trust and shall have no liability for the outcome of its decision.  Subject to Section 3.4(b), the Advanta Auto Finance Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the Advanta Auto Finance Trust Assets.

4.3     Cash.  The Advanta Auto Finance Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating

trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4     Expense Reimbursement and Compensation.

(a)     The costs and expenses of the Advanta Auto Finance Trust, including the reasonable fees and expenses of the Advanta Auto Finance Trustee, the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the Advanta Auto Finance Trustee and the Delaware Trustee), and the Advanta Auto Finance Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve, shall be paid out of the Advanta Auto Finance Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The Advanta Auto Finance Trustee and Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court..

4.5     Insurance.     The Advanta Auto Finance Trust shall be authorized to establish and maintain at the expense of the Advanta Auto Finance Trust customary insurance coverage for the protection of the Advanta Auto Finance Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the Advanta Auto Finance Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the Advanta Auto Finance Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the Advanta Auto Finance Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance.  The Advanta Auto Finance Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become Advanta Auto Finance Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute Advanta Auto Finance Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Advanta Auto Finance Trust shall vest in the Advanta Auto Finance Trustee (in its capacity as such).

4.7     Confidentiality.  The Advanta Auto Finance Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Auto Finance Trust Assets relate or of which the Advanta Auto Finance Trustee has become aware in its capacity as Advanta Auto Finance Trustee, except as otherwise required by law.

**ARTICLE V**

SUCCESSOR TRUSTEES

5.1     Removal.  Each of the Advanta Auto Finance Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board. Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the Advanta Auto Finance Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective with respect to the Advanta Auto Finance Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor Advanta Auto Finance Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Advanta Auto Finance Trustee by the Bankruptcy Court.  Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court.  If a successor Advanta Auto Finance Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Advanta Auto Finance Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3     Appointment of Successor Advanta Auto Finance Trustee or Delaware Trustee. In the event of the death (in the case of An Advanta Auto Finance Trustee that is a natural person), dissolution (in the case of An Advanta Auto Finance Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the Advanta Auto Finance Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor Advanta Auto Finance Trustee or Delaware Trustee or Delaware who shall be subject to the approval of the Bankruptcy Court.  Every successor Advanta Auto Finance Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Advanta Auto Finance Trustee or Delaware Trustee an instrument accepting the appointment under this Advanta Auto Finance Trust Agreement and agreeing to be bound thereto, and thereupon the successor Advanta Auto Finance Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Advanta Auto Finance Trustee or Delaware Trustee pursuant to this Advanta Auto Finance Trust Agreement and the Plan; provided, however, that a removed or resigning Advanta Auto Finance Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor Advanta Auto Finance Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor Advanta Auto Finance Trustee or Delaware Trustee under the Advanta Auto Finance Trust all the estates, properties, rights, powers and privileges of such predecessor Advanta Auto Finance Trustee or Delaware Trustee, as applicable.

# ARTICLE VI

## REPORTS TO ADVANTA AUTO FINANCE TRUST BENEFICIARIES

6.1     <u>Annual and Final Reports</u>.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee shall make available to each Advanta Auto Finance Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the Advanta Auto Finance Trust for such period; (b) a description of any action taken by the Advanta Auto Finance Trustee in the performance of its duties that materially affects the Advanta Auto Finance Trust and of which notice has not previously been given to the Advanta Auto Finance Trust Beneficiaries; and (c) a description of the progress of converting Advanta Auto Finance Trust Assets to Cash and making distributions to the Advanta Auto Finance Trust Beneficiaries and any other material information relating to the Advanta Auto Finance Trust Assets and the administration of the Advanta Auto Finance Trust.  The Advanta Auto Finance Trustee shall also prepare and make available such additional reports regarding the Advanta Auto Finance Trust as are reasonably requested by the Trust Advisory Board from time to time.

# ARTICLE VII

## DISSOLUTION OF ADVANTA AUTO FINANCE TRUST

7.1     <u>Dissolution of Advanta Auto Finance Trust</u>.

(a)     The Advanta Auto Finance Trust shall be dissolved at the earlier of (even if Advanta Auto Finance Trust Beneficiaries have not been paid in full) (i) all of the Advanta Auto Finance Trust Assets having been distributed pursuant to the Plan and this Advanta Auto Finance Trust Agreement, (ii) the Advanta Auto Finance Trustee determining, in its sole discretion, that the administration of the Advanta Auto Finance Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Advanta Auto Finance Trustee under the Plan and the Advanta Auto Finance Trust Agreement having been made; <u>provided</u>, <u>however</u>, that in no event shall the Advanta Auto Finance Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Advanta Auto Finance Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Advanta Auto Finance Trust Assets.  If at any time the Advanta Auto Finance Trustee determines, in reliance upon such professionals as the Advanta Auto Finance Trustee may retain, that the expense of administering the Advanta Auto Finance Trust, including the making of a final distribution to the Advanta Auto Finance Trust Beneficiaries, is likely to exceed the value of the remaining Advanta Auto Finance Trust Assets, the Advanta Auto Finance Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Advanta Auto Finance Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtor, the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee, or any insider of any of the foregoing, and (iii) dissolve the Advanta Auto Finance Trust.

(b)     The Advanta Auto Finance Trustee shall not unduly prolong the duration of the Advanta Auto Finance Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Advanta Auto Finance Trust Assets and to effect the distribution of the Advanta Auto Finance Trust Assets to the Advanta Auto Finance Trust Beneficiaries in accordance with the terms hereof and dissolve the Advanta Auto Finance Trust as soon as practicable.  Subject to <u>Section 7.1(a)</u> hereof, prior to or upon dissolution of the Advanta Auto Finance Trust, the Advanta Auto Finance Trust Assets will be distributed to the Advanta Auto Finance Trust Beneficiaries, pursuant to the provisions set forth in <u>Section 3.7</u> hereof.  If any Advanta Auto Finance Trust Assets are not duly claimed, such Advanta Auto Finance Trust Assets will be redistributed *pro rata* to all other Advanta Auto Finance Trust Beneficiaries receiving Advanta Auto Finance Trust Assets pursuant to <u>Section 3.7</u> hereof.

7.2     <u>Winding Up of the Trust and Termination</u>.  After the dissolution of the Advanta Auto Finance Trust and for the purpose of liquidating and winding up the affairs of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee shall continue to act as such until its

duties have been fully performed.  Upon dissolution of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee shall retain for a period of two (2) years the books, records, lists of the Advanta Auto Finance Trust Beneficiaries, the register of Advanta Auto Finance Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the Advanta Auto Finance Trustee that were not already disposed of as provided in Section 3.5 hereof.  Subject to the consent of the Trust Advisory Board, at the Advanta Auto Finance Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Advanta Auto Finance Trust; provided, however, that the Advanta Auto Finance Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtor or its current or former officer or directors are a party.  Except as otherwise specifically provided herein, upon the winding up of the Advanta Auto Finance Trust, the Advanta Auto Finance Trustee shall have no further duties or obligations hereunder.

## ARTICLE VIII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1    Liability of Advanta Auto Finance Trustee; Indemnification.  The Advanta Auto Finance Trustee or the individuals comprising the Advanta Auto Finance Trustee, and the Advanta Auto Finance Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Advanta Auto Finance Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Advanta Auto Finance Trustee's actions or inactions regarding the implementation or administration of this Advanta Auto Finance Trust Agreement, the Advanta Auto Finance Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Advanta Auto Finance Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Auto Finance Trust Assets or any applicable insurance coverage.  The Advanta Auto Finance Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The Advanta Auto Finance Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the Advanta Auto Finance Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the Advanta Auto Finance Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2    Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents,

representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this Advanta Auto Finance Trust Agreement, the Advanta Auto Finance Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Auto Finance Trust Assets or any applicable insurance coverage. The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals. Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3    Reliance by Advanta Auto Finance Trustee and Trust Advisory Board.

(a)    Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the Advanta Auto Finance Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the Advanta Auto Finance Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)    Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the Advanta Auto Finance Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the Advanta Auto Finance Trustee or the Trust Advisory Board shall look only to the Advanta Auto Finance Trust Assets to satisfy any liability incurred by the Advanta Auto Finance Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this Advanta Auto Finance Trust Agreement, and neither the Advanta Auto Finance Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1    Amendment and Waiver. Any material provision of this Advanta Auto Finance Trust Agreement may be amended or waived by the Advanta Auto Finance Trustee with the

consent of the Trust Advisory Board and the approval by the Bankruptcy Court. Amendments to immaterial provisions to this Advanta Auto Finance Trust Agreement may be made as necessary, to clarify this Advanta Auto Finance Trust Agreement or enable the Advanta Auto Finance Trustee to effectuate the terms of this Advanta Auto Finance Trust Agreement, by the Advanta Auto Finance Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board. Notwithstanding this Section 9.1, any amendments to this Advanta Auto Finance Trust Agreement shall not be inconsistent with the purpose and intention of the Advanta Auto Finance Trust to liquidate in an expeditious but orderly manner the Advanta Auto Finance Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof. Notwithstanding the foregoing, no amendment to this Advanta Auto Finance Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1     Intention of Parties to Establish a Liquidating Trust for Tax Purposes. This Advanta Auto Finance Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section and, if necessary, this Advanta Auto Finance Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2     Laws as to Construction. This Advanta Auto Finance Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3     Severability. If any provision of this Advanta Auto Finance Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Advanta Auto Finance Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Advanta Auto Finance Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4     Notices. Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 10.4):

If to the Advanta Auto Finance Trustee:

FTI Consulting, Inc.

3 Times Square, 10th Floor
New York, New York 10036
Attn: Andrew Scruton
Fax: (212) 499-3636
E-mail: Andrew.Scruton@fticonsulting.com


If to the Debtor:

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, New York, 10153
Facsimile: 212-310-8007
Email:  Robert.Lemons@weil.com

If to an Advanta Auto Finance Trust Beneficiary:

To the name and address set forth on the registry
maintained by the Advanta Auto Finance Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com


with a copy to

Whitman L. Holt
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Fax: 310-407-9090
E-mail: wholt@ktbslaw.com


Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

with a copy to

Ira Dizengoff
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
Fax: 212-872-1002
E-mail: idizengoff@akingump.com


and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York 10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

with a copy to

Brett Amron
Bast Amron
Suntrust International Center
One Southeast Third Avenue Suite 1440
Miami, Florida 33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com


If to the Delaware Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890-1625
Phone: 302-636-6395
Facsimile: 302-636-4149
Attn: Chris Slaybaugh

10.5   Headings.  The section headings contained in this Advanta Auto Finance Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Advanta Auto Finance Trust Agreement or of any term or provision hereof.

10.6   Relationship to the Plan.  The principal purpose of this Advanta Auto Finance Trust Agreement is to aid in the implementation of the Plan and therefore this Advanta Auto Finance Trust Agreement incorporates the provisions of the Plan.  If any provisions of this Advanta Auto Finance Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of

the treatment of the Advanta Auto Finance Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this Advanta Auto Finance Trust Agreement shall control.

# ARTICLE XI

## DELAWARE TRUSTEE

Section 11.1 <u>Delaware Trustee</u>. The Delaware Trustee is appointed to serve as the trustee of Advanta Auto Finance Trust in the State of Delaware. Notwithstanding any provision in this Advanta Auto Finance Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of Advanta Auto Finance Trust. Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to Advanta Auto Finance Trust, the Advanta Auto Finance Trustee or any Advanta Auto Finance Trust Beneficiary. It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on Advanta Auto Finance Trust in the State of Delaware.

(a)  By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1. Except as provided in this Section 11.1, the Delaware Trustee shall not have any duty or liability with respect to the administration of Advanta Auto Finance Trust, the investment of Advanta Auto Finance Trust's property or the payment of dividends or other distributions of income or principal to the Advanta Auto Finance Trust Beneficiaries.

(b)  The Delaware Trustee shall not be liable for the acts or omissions of the Advanta Auto Finance Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Advanta Auto Finance Trustee or Advanta Auto Finance Trust under this Advanta Auto Finance Trust Agreement, the Plan or any related document. The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence. In particular, but not by way of limitation:

(i)  The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)  No provision of this Advanta Auto Finance Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)    Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of Advanta Auto Finance Trust;

(iv)    The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Advanta Auto Finance Trust Agreement or for the due execution hereof by the other parties hereto;

(v)    The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Advanta Auto Finance Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)    In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)    Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Advanta Auto Finance Trust Agreement shall look only to Advanta Auto Finance Trust's property for payment or satisfaction thereof.

(c)    The Delaware Trustee shall take such action or refrain from taking such action under this Advanta Auto Finance Trust Agreement as it may be directed in writing by the Advanta Auto Finance Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this Advanta Auto Finance Trust Agreement.  The Delaware Trustee is entitled to request instruction from the Advanta Auto Finance Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the Advanta Auto Finance Trustee.

(d)      The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2    Liability of Delaware Trustee; Indemnification.    The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this Advanta Auto Finance Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Auto Finance Trust Assets or any applicable insurance coverage.

Section 11.3     Merger or Consolidation of Delaware Trustee.  Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4.   Miscellaneous.  To the extent that provisions of this Advanta Auto Finance Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Advanta Auto Finance Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTOR:

**ADVANTA AUTO FINANCE CORP.**

By:_____
      Name:
      Title:

ADVANTA AUTO FINANCE TRUSTEE:

**FTI CONSULTING, INC.**
**solely as Advanta Auto Finance Trustee**

By: _____
      Name:
      Title:

DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**

By: _____
      Name:
      Title:

## **<u>Annex A</u>**
## **Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.41**

**(Advanta Finance Trust Agreement)**

## ADVANTA FINANCE TRUST AGREEMENT

This Advanta Finance Trust Agreement (the "<u>Advanta Finance Trust Agreement</u>"), dated as of ___, 2011, is entered into by and among Advanta Finance Corp., a Nevada corporation, as debtor and debtor in possession (collectively, the "<u>Debtor</u>"), FTI Consulting, Inc,. solely in its capacity as liquidating trustee (together with any successor appointed under the terms hereof, the "<u>Advanta Finance Trustee</u>"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "<u>Plan</u>"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of a liquidating trust evidenced hereby (the "<u>Advanta Finance Trust</u>").  Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

WHEREAS, the Advanta Finance Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Advanta Finance Trust is created on behalf of, and for the sole benefit of, the Advanta Finance Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of a liquidating trust that will (i) receive from the Debtor all of the Advanta Finance Trust Assets, (ii) hold the Advanta Finance Trust Assets in trust for the benefit of the Advanta Finance Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the Advanta Finance Trust Assets held by it for the benefit of the Advanta Finance Trust Beneficiaries pursuant to the terms of the Plan and this Advanta Finance Trust Agreement;

WHEREAS, the Advanta Finance Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the Advanta Finance Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the Advanta Finance Trust Beneficiaries treated as the grantors and owners of the Advanta Finance Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the Debtor and the parties hereto agree as follows:

### ARTICLE I

ESTABLISHMENT OF THE ADVANTA FINANCE TRUST

1.1     <u>Establishment and Declaration of Trust</u>.

(a)    Name.  This trust shall be known as the "Advanta Finance Trust" in which name the Advanta Finance Trustee may conduct the affairs of the Advanta Finance Trust.

(b)    Declaration of Trust.  In accordance with the Plan, the Debtor, the Advanta Finance Trustee and the Delaware Trustee hereby establish the Advanta Finance Trust on behalf of and for the benefit of the Advanta Finance Trust Beneficiaries and, on the Effective Date, the Debtor hereby irrevocably and absolutely transfer, assign, convey and deliver to the Advanta Finance Trustee for the benefit of the Advanta Finance Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the Advanta Finance Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the Advanta Finance Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the Advanta Finance Trust Assets to the Advanta Finance Trust, all rights and Causes of Action and all Books and Privileges relating to such Advanta Finance Trust Assets shall be transferred to the Advanta Finance Trust and shall vest in the Advanta Finance Trustee solely in its capacity as such.  Effective as of the date hereof, the Advanta Finance Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Advanta Finance Trust.

(c)    Appointment of Advanta Finance Trustee.  The Advanta Finance Trustee is hereby appointed as trustee of the Advanta Finance Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)    Acceptance of Trust.  The Advanta Finance Trustee agrees to accept and hold the Advanta Finance Trust Assets in trust for the Advanta Finance Trust Beneficiaries, subject to the terms of this Advanta Finance Trust Agreement and the Plan.

1.2    Title to Advanta Finance Trust Assets.

(a)    Except as otherwise provided by the Plan or this Advanta Finance Trust Agreement, upon the Effective Date, title to the Advanta Finance Trust Assets shall pass to the Advanta Finance Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)    Upon the transfer to the Advanta Finance Trust of the Advanta Finance Trust Assets, the Advanta Finance Trustee shall succeed to all of the Debtor's right, title and interest in and to the Advanta Finance Trust Assets, and the Debtor will have no further interest or rights in or with respect to the Advanta Finance Trust Assets.

(c)    For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Advanta Finance Trustee and the Advanta Finance Trust Beneficiaries) shall treat the transfer by the Debtor of the Advanta Finance Trust Assets to the Advanta Finance Trust as (i) a transfer of the Advanta Finance Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving Advanta Finance Trust Beneficial Interests relating thereto and, to the extent the Advanta Finance Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims

Reserve, followed by (ii) the transfer by such beneficiaries to the Advanta Finance Trust of the Advanta Finance Trust Assets (other than the Advanta Finance Trust Assets allocable to the Unresolved Claims Reserve) in exchange for Advanta Finance Trust Beneficial Interests. Accordingly, the Advanta Finance Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Advanta Finance Trust Assets (other than such Advanta Finance Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)　　With respect to all Advanta Finance Trust Assets, the Advanta Finance Trustee will directly and indirectly be the representative of the Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Advanta Finance Trust Agreement and in the Plan. The Advanta Finance Trustee will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that is related to an Advanta Finance Trust Asset and shall be deemed substituted for the same as the party in such litigation. The Advanta Finance Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity, that constitute Advanta Finance Trust Assets. All actions, claims, rights, or interests constituting Advanta Finance Trust Assets are preserved and retained and may be enforced by the Advanta Finance Trustee as the representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Advanta Finance Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the Advanta Finance Trust or the Advanta Finance Trust Assets).

1.3　　Valuation of Advanta Finance Trust Assets. As soon as practicable after the Effective Date, the Advanta Finance Trustee, in reliance upon such professionals as the Advanta Finance Trustee may retain in accordance herewith, shall make a good-faith valuation of the Advanta Finance Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the Advanta Finance Trustee and the Advanta Finance Trust Beneficiaries) for all United States federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Advanta Finance Trust Assets.

## ARTICLE II

### ADVANTA FINANCE TRUST BENEFICIARIES

2.1　　Rights of the Advanta Finance Trust Beneficiaries. Each Advanta Finance Trust Beneficiary shall take and hold its Advanta Finance Trust Beneficial Interest subject to all of the terms and provisions of this Advanta Finance Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan. The interest of an Advanta Finance Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an Advanta Finance Trust Beneficiary, as applicable, such Advanta

Finance Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such Advanta Finance Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this Advanta Finance Trust Agreement. An Advanta Finance Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the Advanta Finance Trust Assets except as herein expressly provided. No surviving spouse, heir or devisee of any deceased Advanta Finance Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Advanta Finance Trust Assets, but the whole title to all the Advanta Finance Trust Assets shall be vested in the Advanta Finance Trustee and the sole interest of the Advanta Finance Trust Beneficiaries shall be the rights and benefits given to such persons under this Advanta Finance Trust Agreement.

2.2     No Legal Title in Advanta Finance Trust Beneficiaries. No Advanta Finance Trust Beneficiary shall have legal title to any part of the Advanta Finance Trust Assets. No transfer by operation of law or otherwise, of the right, title and interest of any Advanta Finance Trust Beneficiary in and to the Advanta Finance Trust Assets or hereunder shall operate to terminate this Advanta Finance Trust or entitle any successor or transferee of such Advanta Finance Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the Advanta Finance Trust Assets.

2.3     Identification of Advanta Finance Trust Beneficiaries. The record holders of interests in the Advanta Finance Trust shall be recorded and set forth in a register maintained by the Advanta Finance Trustee expressly for such purpose. Except as otherwise required by law, references in this Advanta Finance Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the Advanta Finance Trustee and shall not mean any beneficial owner not recorded on such official registry. Unless expressly provided herein, the Advanta Finance Trustee may establish a record date, which the Advanta Finance Trustee deems practicable for determining the holders for a particular purpose. Any distributions to the Advanta Finance Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers. The Advanta Finance Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

## ARTICLE III

PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     Purpose of the Advanta Finance Trust. The Advanta Finance Trust is established for the sole purpose of liquidating and distributing the Advanta Finance Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2     Authority of Advanta Finance Trustee.

        (a)     In connection with the administration of the Advanta Finance Trust and the Plan, except as set forth in this Advanta Finance Trust Agreement, the Advanta Finance

Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Advanta Finance Trust and to carry out its responsibilities under the Plan. Without limiting the foregoing, and subject to Section 3.4 hereof, the Advanta Finance Trustee shall, among other things, have the rights, powers and duties:

(i)      to hold, manage, dispose of, sell, convert to Cash and distribute the Advanta Finance Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the Advanta Finance Trust;

(ii)      to hold the Advanta Finance Trust Assets for the benefit of the Advanta Finance Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii)      in the Advanta Finance Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the Advanta Finance Trust Assets, including rights, Causes of Action or litigation of the Advanta Finance Trust;

(iv)      to monitor and enforce the implementation of the Plan;

(v)      to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Advanta Finance Trust;

(vi)      in the Advanta Finance Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the Advanta Finance Trust, and manage, control, prosecute and/or settle on behalf of the Advanta Finance Trust objections to Claims on account of which the Advanta Finance Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii)      to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and implement the Plan;

(viii)      to hold, manage, and distribute Cash or non-Cash Advanta Finance Trust Assets obtained through the exercise of the Advanta Finance Trustee's power and authority;

(ix)      to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor's assets;

(x)      to dispose of the books and records transferred to the Advanta Finance Trustee in a manner deemed appropriate by the Advanta Finance Trustee; provided, however, that the Advanta Finance Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)      to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)      to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Advanta Finance Trust and execute any documents or pleadings related to the liquidation of the Advanta Finance Trust Assets or other matters related to the Advanta Finance Trust;

(xiii)    to establish and maintain bank accounts and terminate such accounts as the Advanta Finance Trustee deems appropriate;

(xiv)    to set off amounts owed to the Debtor against distributions to Advanta Finance Trust Beneficiaries;

(xv)      to bring suits or defend itself against such suits, if any, as the Advanta Finance Trustee determines in connection with any matter arising from or related to the Plan or this Advanta Finance Trust Agreement that affects in any way the rights or obligations of the Advanta Finance Trust, the Advanta Finance Trustee or the Advanta Finance Trust Beneficiaries;

(xvi)    obtain and maintain insurance coverage with respect to the liabilities and obligations of the Advanta Finance Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of this Advanta Finance Trust Agreement;

(xvii)    to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Advanta Finance Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Advanta Finance Trust and are consistent with and are not contrary to the treatment of the Advanta Finance Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)  to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this Advanta Finance Trust Agreement.

Notwithstanding the foregoing, neither the Advanta Finance Trustee nor any other person that is an Affiliate of the Advanta Finance Trust or the Debtor shall take any action to facilitate or encourage any trading in Advanta Finance Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)      The Advanta Finance Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the Advanta Finance Trust on such terms (including on a contingency or hourly basis) as the Advanta Finance Trustee deems appropriate without Bankruptcy Court approval; provided, however, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court.  Without limiting the foregoing, the Advanta Finance Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the

Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

        (c)      Any member, principal, officer, director or employee of the Advanta Finance Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

        (d)      In all circumstances, the Advanta Finance Trustee shall act in the best interests of all of the Advanta Finance Trust Beneficiaries and in furtherance of the purpose of the Advanta Finance Trust.

    3.3      Establishment of Trust Advisory Board.

        (a)      The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Advanta Finance Trust Agreement. The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtor (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this Advanta Finance Trust Agreement. Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder. All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor. The initial members of the Trust Advisory Board are set forth on Annex A hereto. The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

        (b)      Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable. For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

        (c)      Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the Advanta Finance Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

        (d)      A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

        (e)      Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with

respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required. Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting. In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy. In a matter in which the Advanta Finance Trustee cannot obtain direction or authority from the Trust Advisory Board, the Advanta Finance Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest. For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Advanta Finance Trust is dissolved in accordance with Section 7.1 hereof. The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the Advanta Finance Trustee. Such resignation shall be effective when a successor is appointed as provided herein;

(iii)    if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the Advanta Finance Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)    the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the Advanta Finance Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)    in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced).  In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board.  In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)    immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)    Any member of the Trust Advisory Board may be reimbursed by the Advanta Finance Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the Advanta Finance Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the Advanta Finance Trustee under this Trust

Agreement, in accordance with the Budget (as defined herein).  Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget.  The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

       3.4    Limitations on Advanta Finance Trustee's Authority and the Trust Advisory Board's Authority.

       (a)    Notwithstanding anything herein to the contrary, the Advanta Finance Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the Advanta Finance Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that the Advanta Finance Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Advanta Finance Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

       (b)    The Advanta Finance Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the Advanta Finance Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date.  Each fiscal year of the Advanta Finance Trust shall end on December 31st and commence on January 1st.  The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval.  Prior to the submission and approval of the initial plan and budget, the Advanta Finance Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the Advanta Finance Trust, the Delaware Trustee and the Advanta Finance Trustee.  The annual plan and budget shall set forth in reasonable detail:  (i) the Advanta Finance Trustee's anticipated actions to administer and liquidate the Advanta Finance Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the Advanta Finance Trustee to assist in its duties) associated with conducting the affairs of the Advanta Finance Trust.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget".  The Advanta Finance Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the Advanta Finance Trustee.   All actions by the Advanta Finance Trustee must be consistent with the then current Budget, provided that the Advanta Finance Trustee may take action outside the Budget as provided in Section 3.4(c).

       (c)    Notwithstanding anything herein to the contrary, the Advanta Finance Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

       (i)    any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims

relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the Advanta Finance Trust (whether or not asserted) in excess of $1,000,000;

(ii)     subject to <u>Section 3.2(b)</u>, incurrence of any cost or expense of the Advanta Finance Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; <u>provided</u>, <u>however</u>, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)     Any amendment of this Advanta Finance Trust Agreement as provided in <u>Section 9.1</u> hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the Advanta Finance Trust and the treatment of the Advanta Finance Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5     <u>Books and Records</u>.  The Advanta Finance Trustee shall maintain in respect of the Advanta Finance Trust and the Advanta Finance Trust Beneficiaries books and records relating to the Advanta Finance Trust Assets and income of the Advanta Finance Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Advanta Finance Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Advanta Finance Trust.  Except as expressly provided herein, nothing in this Advanta Finance Trust Agreement requires the Advanta Finance Trustee to file any accounting or seek approval of any court with respect to the administration of the Advanta Finance Trust or as a condition for managing any payment or distribution out of the Advanta Finance Trust Assets.  The Advanta Finance Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6     <u>Additional Powers</u>.  Except as otherwise set forth in this Advanta Finance Trust Agreement or in the Plan, and subject to the continuation of the treatment of the Advanta Finance Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Advanta Finance Trustee may control and exercise authority over the Advanta Finance Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the Advanta Finance Trust shall be obligated to inquire into the authority of the Advanta Finance Trustee in connection with the protection, conservation, liquidation, or disposition of the Advanta Finance Trust Assets.

3.7     Distributions.

(a)     The Advanta Finance Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date.  The Advanta Finance Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Advanta Finance Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtor on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the Advanta Finance Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Advanta Finance Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Advanta Finance Trust or in respect of the Advanta Finance Trust Assets) of the Advanta Finance Trust, the Advanta Finance Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Advanta Finance Trust or imposed on the Advanta Finance Trust in accordance with the Plan or this Advanta Finance Trust Agreement.

(b)     All distributions made by the Advanta Finance Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  If the distribution shall be in Cash, the Advanta Finance Trustee shall distribute such Cash by wire, check, or such other form as the Advanta Finance Trustee deems appropriate under the circumstances.  For the avoidance of doubt, pursuant to the Plan, the Advanta Finance Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an Advanta Finance Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this Advanta Finance Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8     Tax Reporting Duties of the Advanta Finance Trustee.

(a)     In addition to the reporting duties of the Advanta Finance Trustee under ARTICLE VI hereof, the Advanta Finance Trustee shall file returns (including United States federal returns) for the Advanta Finance Trust treating the Advanta Finance Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan.  Annually (but no later than sixty (60) days following the end of each calendar year), the Advanta Finance Trustee shall send to each holder of an Advanta Finance Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns.  The Advanta Finance Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Advanta Finance Trust that are required by any governmental unit.

(b)     In furtherance of the provisions of Section 3.8(a) hereof, allocations of the Advanta Finance Trust's taxable income among the Advanta Finance Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the Advanta Finance Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Advanta Finance Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the Advanta Finance Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Advanta Finance Trust.  Similarly, taxable loss of the Advanta Finance Trust shall be allocated in good faith by the Advanta Finance Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Advanta Finance Trust Assets.  The tax book value of the Advanta Finance Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Advanta Finance Trustee.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Advanta Finance Trustee of a private letter ruling if the Advanta Finance Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Advanta Finance Trustee), the Advanta Finance Trustee shall (i) timely elect to treat any Advanta Finance Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Advanta Finance Trustee, the Debtor and the Advanta Finance Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The Advanta Finance Trustee shall be responsible for payment, out of the Advanta Finance Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve.  In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Advanta Finance Trustee as a result of the resolution of such Unresolved Claims.

(e)     The Advanta Finance Trustee may request an expedited determination of taxes of the Advanta Finance Trust, including the Unresolved Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Advanta Finance Trust or the Debtor for all taxable periods through the dissolution of the Advanta Finance Trust.

(f)     The Advanta Finance Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Advanta Finance Trust Beneficial Interests.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Advanta Finance Trust Beneficial Interests for all purposes of this Advanta Finance Trust Agreement.  The Advanta Finance Trustee shall be authorized to collect such tax information from the holders of the Advanta Finance Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Advanta Finance Trust Agreement.  In order to receive distributions under the Plan, all holders of the Advanta Finance Trust Beneficial Interests will need to identify themselves to the Advanta Finance Trustee and provide tax information and the specifics of their holdings, to the extent the Advanta Finance Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder).  The Advanta Finance Trustee may refuse to make a distribution to any holder of an Advanta Finance Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an Advanta Finance Trust Beneficial Interest, the Advanta Finance Trustee shall make such distribution to which the holder of the Advanta Finance Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the Advanta Finance Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Advanta Finance Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Advanta Finance Trustee for such liability.

3.9     Tax Powers.

(a)     For all taxable periods ending on or prior to the Effective Date, the Advanta Finance Trustee shall have full and exclusive authority in respect of all taxes of the Debtor to the same extent as if the Advanta Finance Trustee was the debtor in possession.

(b)     Following the Effective Date, the Advanta Finance Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Advanta Finance Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)     In furtherance thereof, the Debtor shall execute, on or prior to the Effective Date, a power of attorney authorizing the Advanta Finance Trustee to take actions consistent with Section 3.9(a) and (b) to the same extent as if the Advanta Finance Trustee were the Debtor.

(d)     Following the Effective Date, the Advanta Finance Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any

taxable period ending after the Effective Date; <u>provided, however,</u> that the Advanta Finance Trustee shall only have whatever rights the Debtor has pursuant to the FDIC Settlement Agreement and the Advanta Finance Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)     The Advanta Finance Trustee and each Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan).  Any information obtained under this <u>Section 3.9(e)</u> shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding.  Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any Advanta Finance Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)     See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor.

3.10     <u>Compliance with Laws</u>.  Any and all distributions of Advanta Finance Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11     <u>Confidentiality</u>.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Finance Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

# ARTICLE IV

## THE ADVANTA FINANCE TRUSTEE

4.1     <u>Generally</u>.  The Advanta Finance Trustee will initially be FTI Consulting, Inc. The Advanta Finance Trustee shall serve as trustee until its successor shall have been appointed in accordance with <u>ARTICLE VI</u> or until resignation, death or removal.  The Advanta Finance Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Advanta Finance Trust and not otherwise.

4.2     <u>Responsibilities of Advanta Finance Trustee</u>.  The Advanta Finance Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Advanta Finance Trust Assets, make timely distributions and not unduly prolong the duration of the Advanta Finance Trust.  In so doing, the Advanta Finance Trustee will exercise its reasonable business judgment in liquidating the Advanta Finance Trust Assets.  The liquidation of the Advanta Finance Trust Assets may be accomplished, in the Advanta Finance Trustee's discretion, through the sale of

Advanta Finance Trust Assets (in whole or in part). In connection therewith, the Advanta Finance Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the Advanta Finance Trust all claims, rights and Causes of Action transferred to the Advanta Finance Trust, whether such suits are brought in the name of the Advanta Finance Trust, the Debtor, or otherwise for the benefit of the Advanta Finance Trust Beneficiaries. Any and all proceeds generated from such Advanta Finance Trust Assets shall be held by the Advanta Finance Trust. Except as expressly set forth herein, the Advanta Finance Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the Advanta Finance Trustee determines are in the best interests of the Advanta Finance Trust Beneficiaries and consistent with the purposes of the Advanta Finance Trust and shall have no liability for the outcome of its decision. Subject to Section 3.4(b), the Advanta Finance Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the Advanta Finance Trust Assets.

4.3     Cash. The Advanta Finance Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4     Expense Reimbursement and Compensation.

(a)     The costs and expenses of the Advanta Finance Trust, including the reasonable fees and expenses of the Advanta Finance Trustee the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the Advanta Finance Trustee and the Delaware Trustee), and the Advanta Finance Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve, shall be paid out of the Advanta Finance Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The Advanta Finance Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The Advanta Finance Trust shall be authorized to establish and maintain at the expense of the Advanta Finance Trust customary insurance coverage for the protection of the Advanta Finance Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the Advanta Finance Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the Advanta Finance Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the Advanta Finance Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance. The Advanta Finance Trustee also may obtain such insurance coverage as it determines is reasonably

necessary and appropriate with respect to real and personal property which is or may become Advanta Finance Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute Advanta Finance Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Advanta Finance Trust shall vest in the Advanta Finance Trustee (in its capacity as such).

4.7     Confidentiality.  The Advanta Finance Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Finance Trust Assets relate or of which the Advanta Finance Trustee has become aware in its capacity as Advanta Finance Trustee, except as otherwise required by law.

# ARTICLE V

## SUCCESSOR TRUSTEES

5.1     Removal.  Each of the Advanta Finance Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the Advanta Finance Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective with respect to the Advanta Finance Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor Advanta Finance Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Advanta Finance Trustee by the Bankruptcy Court. Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court.  If a successor Advanta Finance Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Advanta Finance Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3     Appointment of Successor Advanta Finance Trustee or Delaware Trustee.  In the event of the death (in the case of an Advanta Finance Trustee that is a natural person), dissolution (in the case of an Advanta Finance Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the Advanta Finance Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor Advanta Finance Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court.  Every successor Advanta Finance Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Advanta Finance Trustee or Delaware Trustee an instrument accepting the appointment under this Advanta Finance Trust Agreement and agreeing to be bound thereto, and thereupon the

successor Advanta Finance Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Advanta Finance Trustee or Delaware Trustee pursuant to this Advanta Finance Trust Agreement and the Plan; provided, however, that a removed or resigning Advanta Finance Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor Advanta Finance Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor Advanta Finance Trustee or Delaware Trustee under the Advanta Finance Trust all the estates, properties, rights, powers and privileges of such predecessor Advanta Finance Trustee or Delaware Trustee, as applicable.

## ARTICLE VI

### REPORTS TO ADVANTA FINANCE TRUST BENEFICIARIES

6.1     <u>Annual and Final Reports</u>.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the Advanta Finance Trust, the Advanta Finance Trustee shall make available to each Advanta Finance Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the Advanta Finance Trust for such period; (b) a description of any action taken by the Advanta Finance Trustee in the performance of its duties that materially affects the Advanta Finance Trust and of which notice has not previously been given to the Advanta Finance Trust Beneficiaries; and (c) a description of the progress of converting Advanta Finance Trust Assets to Cash and making distributions to the Advanta Finance Trust Beneficiaries and any other material information relating to the Advanta Finance Trust Assets and the administration of the Advanta Finance Trust.  The Advanta Finance Trustee shall also prepare and make available such additional reports regarding the Advanta Finance Trust as are reasonably requested by the Trust Advisory Board from time to time.

## ARTICLE VII

### DISSOLUTION OF ADVANTA FINANCE TRUST

7.1     <u>Dissolution of Advanta Finance Trust</u>.

(a)     The Advanta Finance Trust shall be dissolved at the earlier of (even if Advanta Finance Trust Beneficiaries have not been paid in full) (i) all of the Advanta Finance Trust Assets having been distributed pursuant to the Plan and this Advanta Finance Trust Agreement, (ii) the Advanta Finance Trustee determining, in its sole discretion, that the administration of the Advanta Finance Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Advanta Finance Trustee under the Plan and the Advanta Finance Trust Agreement having been made; provided, however, that in no event shall the Advanta Finance Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension

period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Advanta Finance Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Advanta Finance Trust Assets.  If at any time the Advanta Finance Trustee determines, in reliance upon such professionals as the Advanta Finance Trustee may retain, that the expense of administering the Advanta Finance Trust, including the making of a final distribution to the Advanta Finance Trust Beneficiaries, is likely to exceed the value of the remaining Advanta Finance Trust Assets, the Advanta Finance Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Advanta Finance Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtor, the Advanta Finance Trust, the Advanta Finance Trustee, or any insider of any of the foregoing, and (iii) dissolve the Advanta Finance Trust.

(b)     The Advanta Finance Trustee shall not unduly prolong the duration of the Advanta Finance Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Advanta Finance Trust Assets and to effect the distribution of the Advanta Finance Trust Assets to the Advanta Finance Trust Beneficiaries in accordance with the terms hereof and dissolve the Advanta Finance Trust as soon as practicable.  Subject to Section 7.1(a) hereof, prior to or upon dissolution of the Advanta Finance Trust, the Advanta Finance Trust Assets will be distributed to the Advanta Finance Trust Beneficiaries, pursuant to the provisions set forth in Section 3.7 hereof.  If any Advanta Finance Trust Assets are not duly claimed, such Advanta Finance Trust Assets will be redistributed *pro rata* to all other Advanta Finance Trust Beneficiaries receiving Advanta Finance Trust Assets pursuant to Section 3.7 hereof.

7.2     Winding Up of the Trust and Termination.  After the dissolution of the Advanta Finance Trust and for the purpose of liquidating and winding up the affairs of the Advanta Finance Trust, the Advanta Finance Trustee shall continue to act as such until its duties have been fully performed.  Upon dissolution of the Advanta Finance Trust, the Advanta Finance Trustee shall retain for a period of two (2) years the books, records, lists of the Advanta Finance Trust Beneficiaries, the register of Advanta Finance Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the Advanta Finance Trustee that were not already disposed of as provided in Section 3.5 hereof.  Subject to the consent of the Trust Advisory Board, at the Advanta Finance Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Advanta Finance Trust; provided, however, that the Advanta Finance Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtor or its current or former officer or directors are a party.  Except as otherwise specifically provided herein, upon the winding up of the Advanta Finance Trust, the Advanta Finance Trustee shall have no further duties or obligations hereunder.

## ARTICLE VIII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     Liability of Advanta Finance Trustee; Indemnification.  The Advanta Finance Trustee or the individuals comprising the Advanta Finance Trustee, and the Advanta Finance Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Advanta Finance Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Advanta Finance Trustee's actions or inactions regarding the implementation or administration of this Advanta Finance Trust Agreement, the Advanta Finance Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Advanta Finance Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Finance Trust Assets or any applicable insurance coverage.  The Advanta Finance Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The Advanta Finance Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the Advanta Finance Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the Advanta Finance Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this Advanta Finance Trust Agreement, the Advanta Finance Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Finance Trust Assets or any applicable insurance coverage.  The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals.  Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3    Reliance by Advanta Finance Trustee and Trust Advisory Board.

(a)    Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the Advanta Finance Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the Advanta Finance Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)    Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the Advanta Finance Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the Advanta Finance Trustee or the Trust Advisory Board shall look only to the Advanta Finance Trust Assets to satisfy any liability incurred by the Advanta Finance Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this Advanta Finance Trust Agreement, and neither the Advanta Finance Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1    Amendment and Waiver.  Any material provision of this Advanta Finance Trust Agreement may be amended or waived by the Advanta Finance Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court.  Amendments to immaterial provisions to this Advanta Finance Trust Agreement may be made as necessary, to clarify this Advanta Finance Trust Agreement or enable the Advanta Finance Trustee to effectuate the terms of this Advanta Finance Trust Agreement, by the Advanta Finance Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board.  Notwithstanding this Section 9.1, any amendments to this Advanta Finance Trust Agreement shall not be inconsistent with the purpose and intention of the Advanta Finance Trust to liquidate in an expeditious but orderly manner the Advanta Finance Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof.  Notwithstanding the foregoing, no amendment to this Advanta Finance Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1    Intention of Parties to Establish a Liquidating Trust for Tax Purposes.  This Advanta Finance Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this

Section and, if necessary, this Advanta Finance Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2    <u>Laws as to Construction</u>.  This Advanta Finance Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3    <u>Severability</u>.  If any provision of this Advanta Finance Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Advanta Finance Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Advanta Finance Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4    <u>Notices</u>.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this <u>Section 10.4</u>):

If to the Advanta Finance Trustee:

FTI Consulting, Inc.
3 Times Square, 10th Floor
New York, New York 10036
Attn: Andrew Scruton
Fax: (212) 499-3636
E-mail: Andrew.Scruton@fticonsulting.com

If to the Debtor:

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, New York, 10153
Facsimile: 212-310-8007

Email:  Robert.<u>Lemons@weil.com</u>

If to an Advanta Finance Trust Beneficiary:

        To the name and address set forth on the registry
        maintained by the Advanta Finance Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

        with a copy to

        Whitman L. Holt
        Klee, Tuchin, Bogdanoff & Stern LLP
        1999 Avenue of the Stars, 39th Floor
        Los Angeles, CA 90067
        Fax: 310-407-9090
        E-mail: wholt@ktbslaw.com

Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

        with a copy to

        Ira Dizengoff
        Akin Gump Strauss Hauer & Feld LLP
        One Bryant Park
        New York, NY  10036-6745
        Fax: 212-872-1002
        E-mail: idizengoff@akingump.com

and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

with a copy to

Brett Amron
Bast Amron
Suntrust International Center
One Southeast Third Avenue Suite 1440
Miami, Florida 33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com

If to the Delaware Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890-1625
Phone: 302-636-6395
Facsimile: 302-636-4149
Attn: Chris Slaybaugh

10.5     Headings.  The section headings contained in this Advanta Finance Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Advanta Finance Trust Agreement or of any term or provision hereof.

10.6     Relationship to the Plan.  The principal purpose of this Advanta Finance Trust Agreement is to aid in the implementation of the Plan and therefore this Advanta Finance Trust Agreement incorporates the provisions of the Plan.  If any provisions of this Advanta Finance Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the Advanta Finance Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this Advanta Finance Trust Agreement shall control.

## ARTICLE XI

### DELAWARE TRUSTEE

Section 11.1   Delaware Trustee.  The Delaware Trustee is appointed to serve as the trustee of Advanta Finance Trust in the State of Delaware.  Notwithstanding any provision in this Advanta Finance Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of Advanta Finance Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no

management responsibilities or owe any fiduciary duties to Advanta Finance Trust, the Advanta Finance Trustee or any Advanta Finance Trust Beneficiary. It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on Advanta Finance Trust in the State of Delaware.

(a)     By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1. Except as provided in this Section 11.1, the Delaware Trustee shall not have any duty or liability with respect to the administration of Advanta Finance Trust, the investment of Advanta Finance Trust's property or the payment of dividends or other distributions of income or principal to the Advanta Finance Trust Beneficiaries.

(b)     The Delaware Trustee shall not be liable for the acts or omissions of the Advanta Finance Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Advanta Finance Trustee or Advanta Finance Trust under this Advanta Finance Trust Agreement, the Plan or any related document. The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence. In particular, but not by way of limitation:

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)     No provision of this Advanta Finance Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of Advanta Finance Trust;

(iv)     The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Advanta Finance Trust Agreement or for the due execution hereof by the other parties hereto;

(v)     The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Advanta Finance Trustee, as to such fact or matter, and such certificate

shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)     Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Advanta Finance Trust Agreement shall look only to Advanta Finance Trust's property for payment or satisfaction thereof.

(c)     The Delaware Trustee shall take such action or refrain from taking such action under this Advanta Finance Trust Agreement as it may be directed in writing by the Advanta Finance Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this Advanta Finance Trust Agreement.  The Delaware Trustee is entitled to request instruction from the Advanta Finance Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the Advanta Finance Trustee.

(d)     The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2     Liability of Delaware Trustee; Indemnification.     The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this Advanta Finance Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this

section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Finance Trust Assets or any applicable insurance coverage.

Section 11.3 <u>Merger or Consolidation of Delaware Trustee</u>. Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4. <u>Miscellaneous</u>. To the extent that provisions of this Advanta Finance Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Advanta Finance Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTOR:

**ADVANTA FINANCE CORP.**

By:_____
          Name:
          Title:


ADVANTA FINANCE TRUSTEE:

**FTI CONSULTING, INC.**
**solely as Advanta Finance Trustee**

By: _____
          Name:
          Title:


DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**


By: _____
          Name:
          Title:

## **<u>Annex A</u>**
## **Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.46**

**(Advanta Trust Agreement)**

## ADVANTA TRUST AGREEMENT

This Advanta Trust Agreement (the "Advanta Trust Agreement"), dated as of
___, 2011, is entered into by and among Advanta Corp., a Delaware corporation, Advanta
Investment Corp., a Delaware corporation, Advanta Business Services Holding Corp., a
Delaware corporation, Advanta Business Services Corp., a Delaware corporation, Advanta
Service Corp., a Delaware corporation, Advanta Advertising Inc., a Delaware corporation,
Advanta Mortgage Holding Company, a Delaware corporation, Advanta Ventures Inc., a
Delaware corporation, BE Corp. (f/k/a BizEquity Corp.), a Delaware corporation, ideablob
Corp., a Delaware corporation, Advanta Credit Card Receivables Corp., a Nevada corporation,
Great Expectations International Inc., a Delaware corporation, Great Expectations Franchise
Corp., a Delaware corporation, Great Expectations Management Corp., a Delaware corporation,
as debtors and debtors in possession (collectively, the "Debtors"), FTI Consulting, Inc. solely in
its capacity as liquidating trustee (together with any successor appointed under the terms hereof,
the "Advanta Trustee"), and Wilmington Trust Company, a Delaware banking corporation, not
in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed
in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated
November 2, 2010 (as the same may have been amended, modified or supplemented from time
to time, the "Plan"), which was confirmed by the United States Bankruptcy Court on ____, 2011,
and which provides for the establishment of a liquidating trust evidenced hereby (the "Advanta
Trust").  Except with respect to the terms defined herein, all capitalized terms contained herein
shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

WHEREAS, the Advanta Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Advanta Trust is created on behalf of, and for the sole benefit of,
the Advanta Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of a liquidating trust that will
(i) receive from the Debtors all of the Advanta Trust Assets, (ii) hold the Advanta Trust Assets in
trust for the benefit of the Advanta Trust Beneficiaries as provided in the Plan and herein and
(iii) oversee and direct the liquidation of the Advanta Trust Assets held by it for the benefit of the
Advanta Trust Beneficiaries pursuant to the terms of the Plan and this Advanta Trust Agreement;

WHEREAS, the Advanta Trust is established hereunder for the sole purpose of
liquidating and distributing its assets, with no objective or authority to continue or engage in the
conduct of a trade or business; and

WHEREAS, the Advanta Trust is intended to qualify as a "liquidating trust"
within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor
trust" for United States federal income tax purposes, with the Advanta Trust Beneficiaries treated
as the grantors and owners of the Advanta Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants
and agreements contained herein, the parties hereto agree as follows:

# ARTICLE I

## ESTABLISHMENT OF THE ADVANTA TRUST

1.1     Establishment and Declaration of Trust.

(a)     Name.  This trust shall be known as the "Advanta Trust" in which name the Advanta Trustee may conduct the affairs of the Advanta Trust.

(b)     Declaration of Trust.  In accordance with the Plan, the Debtors, Advanta Trustee and the Delaware Trustee hereby establish the Advanta Trust on behalf of and for the benefit of the Advanta Trust Beneficiaries and, on the Effective Date, the Debtors hereby irrevocably and absolutely transfer, assign, convey and deliver to the Advanta Trustee for the benefit of the Advanta Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the Advanta Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the Advanta Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the Advanta Trust Assets to the Advanta Trust, all rights and Causes of Action and all Books and Privileges relating to such Advanta Trust Assets shall be transferred to the Advanta Trust and shall vest in the Advanta Trustee solely in its capacity as such.  Effective as of the date hereof, the Advanta Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Advanta Trust.

(c)     Appointment of Advanta Trustee.  The Advanta Trustee is hereby appointed as trustee of the Advanta Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)     Acceptance of Trust.  The Advanta Trustee agrees to accept and hold the Advanta Trust Assets in trust for the Advanta Trust Beneficiaries, subject to the terms of this Advanta Trust Agreement and the Plan.

1.2     Title to Advanta Trust Assets.

(a)     Except as otherwise provided by the Plan or this Advanta Trust Agreement, upon the Effective Date, title to the Advanta Trust Assets shall pass to the Advanta Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)     Upon the transfer to the Advanta Trust of the Advanta Trust Assets, the Advanta Trustee shall succeed to all of the Debtors' right, title and interest in and to the Advanta Trust Assets, and the Debtors will have no further interest or rights in or with respect to the Advanta Trust Assets.

(c)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Advanta Trustee and the Advanta Trust Beneficiaries) shall treat the transfer by the Debtors of the Advanta Trust Assets to the Advanta Trust as (i) a transfer

of the Advanta Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims receiving Advanta Trust Beneficial Interests relating thereto and, to the extent the Advanta Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by (ii) the transfer by such beneficiaries to the Advanta Trust of the Advanta Trust Assets (other than the Advanta Trust Assets allocable to the Unresolved Claims Reserve) in exchange for Advanta Trust Beneficial Interests. Accordingly, the Advanta Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Advanta Trust Assets (other than such Advanta Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)     With respect to all Advanta Trust Assets, the Advanta Trustee will directly and indirectly be the representative of the Debtors' Estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Advanta Trust Agreement and in the Plan. The Advanta Trustee will be the successor-in-interest to the Debtors with respect to any action that was or could have been commenced by the Debtors prior to the Effective Date that is related to an Advanta Trust Asset and shall be deemed substituted for the same as the party in such litigation. The Advanta Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any person or entity, that constitute Advanta Trust Assets. All actions, claims, rights, or interests constituting Advanta Trust Assets are preserved and retained and may be enforced by the Advanta Trustee as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Advanta Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the Advanta Trust or the Advanta Trust Assets).

1.3     Valuation of Advanta Trust Assets.  As soon as practicable after the Effective Date, the Advanta Trustee, in reliance upon such professionals as the Advanta Trustee may retain in accordance herewith, shall make a good-faith valuation of the Advanta Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Advanta Trustee and the Advanta Trust Beneficiaries) for all United States federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Advanta Trust Assets.

## ARTICLE II

## ADVANTA TRUST BENEFICIARIES

2.1     Rights of the Advanta Trust Beneficiaries.  Each Advanta Trust Beneficiary shall take and hold its Advanta Trust Beneficial Interest subject to all of the terms and provisions of this Advanta Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan. The interest of an Advanta Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an Advanta Trust Beneficiary, as applicable, such Advanta Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such Advanta Trust Beneficiary, and such

death, insolvency or incapacity shall not terminate or affect the validity of this Advanta Trust Agreement. An Advanta Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the Advanta Trust Assets except as herein expressly provided. No surviving spouse, heir or devisee of any deceased Advanta Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Advanta Trust Assets, but the whole title to all the Advanta Trust Assets shall be vested in the Advanta Trustee and the sole interest of the Advanta Trust Beneficiaries shall be the rights and benefits given to such persons under this Advanta Trust Agreement.

2.2     No Legal Title in Advanta Trust Beneficiaries. No Advanta Trust Beneficiary shall have legal title to any part of the Advanta Trust Assets. No transfer by operation of law or otherwise, of the right, title and interest of any Advanta Trust Beneficiary in and to the Advanta Trust Assets or hereunder shall operate to terminate this Advanta Trust or entitle any successor or transferee of such Advanta Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the Advanta Trust Assets.

2.3     Identification of Advanta Trust Beneficiaries. The record holders of interests in the Advanta Trust shall be recorded and set forth in a register maintained by the Advanta Trustee expressly for such purpose. Except as otherwise required by law, references in this Advanta Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the Advanta Trustee and shall not mean any beneficial owner not recorded on such official registry. Unless expressly provided herein, the Advanta Trustee may establish a record date, which the Advanta Trustee deems practicable for determining the holders for a particular purpose. Any distributions to the Advanta Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers. The Advanta Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

## ARTICLE III

### PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     Purpose of the Advanta Trust. The Advanta Trust is established for the sole purpose of liquidating and distributing the Advanta Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2     Authority of Advanta Trustee.

(a)     In connection with the administration of the Advanta Trust and the Plan, except as set forth in this Advanta Trust Agreement, the Advanta Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Advanta Trust and to carry out its responsibilities under the Plan. Without limiting the foregoing, and subject to Section 3.4 hereof, the Advanta Trustee shall, among other things, have the rights, powers and duties:

(i)        to hold, manage, dispose of, sell, convert to Cash and distribute the Advanta Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the Advanta Trust;

(ii)       to hold the Advanta Trust Assets for the benefit of the Advanta Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii)      in the Advanta Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the Advanta Trust Assets, including rights, Causes of Action or litigation of the Advanta Trust;

(iv)      to monitor and enforce the implementation of the Plan;

(v)       to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Advanta Trust;

(vi)      in the Advanta Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtors or the Advanta Trust, and manage, control, prosecute and/or settle on behalf of the Advanta Trust objections to Claims on account of which the Advanta Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii)     to take all actions necessary, and create any documents necessary, to implement the Plan;

(viii)    to hold, manage, and distribute Cash or non-Cash Advanta Trust Assets obtained through the exercise of the Advanta Trustee's power and authority;

(ix)      to dispose of the books and records transferred to the Advanta Trustee in a manner deemed appropriate by the Advanta Trustee; <u>provided</u>, <u>however</u>, that the Advanta Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court;

(x)       to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xi)      to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Advanta Trust and execute any documents or pleadings related to the liquidation of the Advanta Trust Assets or other matters related to the Advanta Trust;

(xii)     to establish and maintain bank accounts and terminate such accounts as the Advanta Trustee deems appropriate;

(xiii)   to set off amounts owed to the Debtors against distributions to Advanta Trust Beneficiaries;

(xiv)   to bring suits or defend itself against such suits, if any, as the Advanta Trustee determines in connection with any matter arising from or related to the Plan or this Advanta Trust Agreement that affects in any way the rights or obligations of the Advanta Trust, the Advanta Trustee or the Advanta Trust Beneficiaries;

(xv)   obtain and maintain insurance coverage with respect to the liabilities and obligations of the Advanta Trustee and the Trust Advisory Board and its members in accordance with <u>Section 4.5</u> of this Advanta Trust Agreement;

(xvi)   to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Advanta Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Advanta Trust and are consistent with and are not contrary to the treatment of the Advanta Trust as a "grantor trust" for United States federal income tax purposes; and

(xvii)   to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this Advanta Trust Agreement.

Notwithstanding the foregoing, neither the Advanta Trustee nor any other person that is an Affiliate of the Advanta Trust or the Debtors shall take any action to facilitate or encourage any trading in Advanta Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)   The Advanta Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the Advanta Trust on such terms (including on a contingency or hourly basis) as the Advanta Trustee deems appropriate without Bankruptcy Court approval; <u>provided</u>, <u>however</u>, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court.  Without limiting the foregoing, the Advanta Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)   Any member, principal, officer, director or employee of the Advanta Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)   In all circumstances, the Advanta Trustee shall act in the best interests of all of the Advanta Trust Beneficiaries and in furtherance of the purpose of the Advanta Trust.

3.3   <u>Establishment of Trust Advisory Board</u>.

(a)   The "<u>Trust Advisory Board</u>" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Advanta Trust Agreement.  The

Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtors (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this Advanta Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of any of the Debtors.  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)     Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.  For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the Advanta Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the Advanta Trustee cannot obtain direction or authority from the Trust Advisory Board, the Advanta Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  For the avoidance of doubt,  a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Advanta Trust is dissolved in accordance with Section 7.1 hereof.  The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the Advanta Trustee.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)     if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the Advanta Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)     the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the Advanta Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)     in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced).  In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board.  In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of any of the Debtors. The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)     immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)     Any member of the Trust Advisory Board may be reimbursed by the Advanta Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the Advanta Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the Advanta Trustee under this Trust Agreement, in accordance with the Budget (as defined herein).  Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget.  The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

3.4     Limitations on Advanta Trustee's Authority and the Trust Advisory Board's Authority.

(a)     Notwithstanding anything herein to the contrary, the Advanta Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the Advanta Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that the Advanta Trustee is not authorized to engage in any investments or activities

inconsistent with the treatment of the Advanta Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(b)      The Advanta Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the Advanta Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date. Each fiscal year of the Advanta Trust shall end on December 31st and commence on January 1st. The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval. Prior to the submission and approval of the initial plan and budget, the Advanta Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the Advanta Trust, the Delaware Trustee and the Advanta Trustee. The annual plan and budget shall set forth in reasonable detail: (i) the Advanta Trustee's anticipated actions to administer and liquidate the Advanta Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the Advanta Trustee to assist in its duties) associated with conducting the affairs of the Advanta Trust. Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget". The Advanta Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the Advanta Trustee. All actions by the Advanta Trustee must be consistent with the then current Budget, provided that the Advanta Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)      Notwithstanding anything herein to the contrary, the Advanta Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)      any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of 1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the Advanta Trust (whether or not asserted) in excess of $1,000,000;

(ii)      subject to Section 3.2(b), incurrence of any cost or expense of the Advanta Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)      Any amendment of this Advanta Trust Agreement as provided in Section 9.1 hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the Advanta Trust and the treatment of the Advanta Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5     Books and Records.  The Advanta Trustee shall maintain in respect of the Advanta Trust and the Advanta Trust Beneficiaries books and records relating to the Advanta Trust Assets and income of the Advanta Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Advanta Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Advanta Trust.  Except as expressly provided herein, nothing in this Advanta Trust Agreement requires the Advanta Trustee to file any accounting or seek approval of any court with respect to the administration of the Advanta Trust or as a condition for managing any payment or distribution out of the Advanta Trust Assets.  The Advanta Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtors or their current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6     Additional Powers.  Except as otherwise set forth in this Advanta Trust Agreement or in the Plan, and subject to the continuation of the treatment of the Advanta Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Advanta Trustee may control and exercise authority over the Advanta Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the Advanta Trust shall be obligated to inquire into the authority of the Advanta Trustee in connection with the protection, conservation, liquidation, or disposition of the Advanta Trust Assets.

3.7     Distributions.

(a)     The Advanta Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Advanta Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.5(h) of the Plan) except such amounts (i) as are retained by the Advanta Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Advanta Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Advanta Trust or in respect of the Advanta Trust Assets) of the Advanta Trust, the Advanta Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Advanta Trust or imposed on the Advanta Trust in accordance with the Plan or this Advanta Trust Agreement.

(b)     All distributions made by the Advanta Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th

day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. If the distribution shall be in Cash, the Advanta Trustee shall distribute such Cash by wire, check, or such other form as the Advanta Trustee deems appropriate under the circumstances. For the avoidance of doubt, pursuant to the Plan, the Advanta Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an Advanta Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in <u>Section 2.1</u> of this Advanta Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8    <u>Tax Reporting Duties of the Advanta Trustee</u>.

(a)    In addition to the reporting duties of the Advanta Trustee under <u>ARTICLE VI</u> hereof, the Advanta Trustee shall file returns (including United States federal returns) for the Advanta Trust treating the Advanta Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with <u>Section 1.2(c)</u>, this <u>Section 3.8</u> and Section 5.5 of the Plan. Annually (but no later than sixty (60) days following the end of each calendar year), the Advanta Trustee shall send to each holder of an Advanta Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns. The Advanta Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Advanta Trust that are required by any governmental unit.

(b)    In furtherance of the provisions of <u>Section 3.8(a)</u> hereof, allocations of the Advanta Trust's taxable income among the Advanta Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the Advanta Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Advanta Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the Advanta Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Advanta Trust. Similarly, taxable loss of the Advanta Trust shall be allocated in good faith by the Advanta Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Advanta Trust Assets. The tax book value of the Advanta Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Advanta Trustee.

(c)    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Advanta Trustee of a private letter ruling if the Advanta Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Advanta Trustee), the Advanta Trustee shall (i) timely elect to treat any Advanta Trust Assets allocable to

the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Advanta Trustee, the Debtors and the Advanta Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The Advanta Trustee shall be responsible for payment, out of the Advanta Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Advanta Trustee as a result of the resolution of such Unresolved Claims.

(e)     The Advanta Trustee may request an expedited determination of taxes of the Advanta Trust, including the Unresolved Claims Reserve, Advanta or ASC under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Advanta Trust, Advanta or ASC for all taxable periods through the dissolution of the Advanta Trust.

(f)     The Advanta Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Advanta Trust Beneficial Interests. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Advanta Trust Beneficial Interests for all purposes of this Advanta Trust Agreement. The Advanta Trustee shall be authorized to collect such tax information from the holders of the Advanta Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Advanta Trust Agreement. In order to receive distributions under the Plan, all holders of the Advanta Trust Beneficial Interests will need to identify themselves to the Advanta Trustee and provide tax information and the specifics of their holdings, to the extent the Advanta Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder). The Advanta Trustee may refuse to make a distribution to any holder of an Advanta Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an Advanta Trust Beneficial Interest, the Advanta Trustee shall make such distribution to which the holder of the Advanta Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the Advanta Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Advanta Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Advanta Trustee for such liability.

3.9     Compliance with Laws. Any and all distributions of Advanta Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.10    _Confidentiality_.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

**ARTICLE IV**

THE ADVANTA TRUSTEE

4.1    _Generally_.  The Advanta Trustee will initially be FTI Consulting, Inc..  The Advanta Trustee shall serve as trustee until its successor shall have been appointed in accordance with __ARTICLE VI__ or until resignation, death or removal.  The Advanta Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Advanta Trust and not otherwise.

4.2    _Responsibilities of Advanta Trustee_.    The Advanta Trustee shall make continuing efforts to dispose of the Advanta Trust Assets, make timely distributions and not unduly prolong the duration of the Advanta Trust.  In so doing, the Advanta Trustee will exercise its reasonable business judgment in liquidating the Advanta Trust Assets.  The liquidation of the Advanta Trust Assets may be accomplished, in the Advanta Trustee's discretion, through the sale of Advanta Trust Assets (in whole or in part).  In connection therewith, the Advanta Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the Advanta Trust all claims, rights and Causes of Action transferred to the Advanta Trust, whether such suits are brought in the name of the Advanta Trust, any of the Debtors, or otherwise for the benefit of the Advanta Trust Beneficiaries.  Any and all proceeds generated from such Advanta Trust Assets shall be held by the Advanta Trust.  Except as expressly set forth herein, the Advanta Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the Advanta Trustee determines are in the best interests of the Advanta Trust Beneficiaries and consistent with the purposes of the Advanta Trust and shall have no liability for the outcome of its decision.  Subject to _Section 3.4(b)_, the Advanta Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the Advanta Trust Assets.

4.3    _Cash_.  The Advanta Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4    _Expense Reimbursement and Compensation_.

(a)    The costs and expenses of the Advanta Trust, including the reasonable fees and expenses of the Advanta Trustee and the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the Advanta Trustee and the Delaware Trustee), the Advanta Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve, shall be paid out of the Advanta Trust Assets; _provided_, _however_, that such fees and expenses may not exceed the amount reflected in the Budget by

more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The Advanta Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The Advanta Trust shall be authorized to establish and maintain at the expense of the Advanta Trust customary insurance coverage for the protection of the Advanta Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the Advanta Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the Advanta Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board, whether or not the Advanta Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance.  The Advanta Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become Advanta Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute Advanta Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Advanta Trust shall vest in the Advanta Trustee (in its capacity as such).

4.7     Confidentiality.  The Advanta Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advanta Trust Assets relate or of which the Advanta Trustee has become aware in its capacity as Advanta Trustee, except as otherwise required by law.

## ARTICLE V

## SUCCESSOR TRUSTEES

5.1     Removal.  Each of the Advanta Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the Advanta Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective with respect to the Advanta Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor Advanta Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Advanta Trustee by the Bankruptcy Court.  Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor

Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court. If a successor Advanta Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Advanta Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

  5.3 Appointment of Successor Advanta Trustee or Delaware Trustee. In the event of the death (in the case of an Advanta Trustee that is a natural person), dissolution (in the case of an Advanta Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the Advanta Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor Advanta Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court. Every successor Advanta Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Advanta Trustee or Delaware Trustee an instrument accepting the appointment under this Advanta Trust Agreement and agreeing to be bound thereto, and thereupon the successor Advanta Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Advanta Trustee or Delaware Trustee pursuant to this Advanta Trust Agreement and the Plan; provided, however, that a removed or resigning Advanta Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor Advanta Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor Advanta Trustee or Delaware Trustee under the Advanta Trust all the estates, properties, rights, powers and privileges of such predecessor Advanta Trustee or Delaware, as applicable.

## ARTICLE VI

## REPORTS TO ADVANTA TRUST BENEFICIARIES

  6.1 Annual and Final Reports. As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the Advanta Trust, the Advanta Trustee shall make available to each Advanta Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including: (a) financial statements prepared in accordance with United States generally accepted accounting principles of the Advanta Trust for such period; (b) a description of any action taken by the Advanta Trustee in the performance of its duties that materially affects the Advanta Trust and of which notice has not previously been given to the Advanta Trust Beneficiaries; and (c) a description of the progress of converting Advanta Trust Assets to Cash and making distributions to the Advanta Trust Beneficiaries and any other material information relating to the Advanta Trust Assets and the administration of the Advanta Trust. The Advanta Trustee shall also prepare and make available such additional reports regarding the Advanta Trust as are reasonably requested by the Trust Advisory Board from time to time.

## ARTICLE VII

## DISSOLUTION OF ADVANTA TRUST

7.1    <u>Dissolution of Advanta Trust</u>.

(a)    The Advanta Trust shall be dissolved at the earlier of (even if the Advanta Trust Beneficiaries have not been paid in full) (i) all of the Advanta Trust Assets having been distributed pursuant to the Plan and this Advanta Trust Agreement, (ii) the Advanta Trustee determining, in its sole discretion, that the administration of the Advanta Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Advanta Trustee under the Plan and the Advanta Trust Agreement having been made; <u>provided</u>, <u>however</u>, that in no event shall the Advanta Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Advanta Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Advanta Trust Assets.

(b)    The Advanta Trustee shall not unduly prolong the duration of the Advanta Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Advanta Trust Assets and to effect the distribution of the Advanta Trust Assets to the Advanta Trust Beneficiaries in accordance with the terms hereof and dissolve the Advanta Trust as soon as practicable.  If, at dissolution of the Advanta Trust and after payment of any amounts necessary to dissolve the Advanta Trust, the Advanta Trust still owns any stock of Reorganized Advanta, then the Advanta Trustee shall have the authority, to, upon dissolution of the Advanta Trust, donate such stock at its discretion to a charitable organization or a charitable trust that is not an Affiliate of the Debtors, the Advanta Trust, the Advanta Trustee, or any insider of any of the foregoing, and any remaining cash shall, upon dissolution of the Advanta Trust, be distributed to the Advanta Trust Beneficiaries pursuant to the provisions set forth in <u>Section 3.7</u> hereof.  If any cash is not duly claimed, such cash will be redistributed pro rata to all other Advanta Trust Beneficiaries receiving Advanta Trust Assets pursuant to <u>Section 3.7</u> hereof.

7.2    <u>Winding Up of the Trust and Termination</u>.  After the dissolution of the Advanta Trust and for the purpose of liquidating and winding up the affairs of the Advanta Trust, the Advanta Trustee shall continue to act as such until its duties have been fully performed.  Upon dissolution of the Advanta Trust, the Advanta Trustee shall retain for a period of two (2) years the books, records, lists of the Advanta Trust Beneficiaries, the register of Advanta Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the Advanta Trustee that were not already disposed of as provided in <u>Section 3.5</u> hereof.  Subject to the consent of the Trust Advisory Board, at the Advanta Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Advanta Trust; <u>provided</u>, <u>however</u>, that the Advanta Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtors or its current or former officer or directors are a party.  Except as otherwise specifically provided herein, upon the winding up of the Advanta Trust, the Advanta Trustee shall have no further duties or obligations hereunder.

# ARTICLE VIII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     Liability of Advanta Trustee; Indemnification.  The Advanta Trustee or the individuals comprising the Advanta Trustee, and the Advanta Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Advanta Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Advanta Trustee's actions or inactions regarding the implementation or administration of this Advanta Trust Agreement, the Advanta Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Advanta Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Trust Assets or any applicable insurance coverage.  The Advanta Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The Advanta Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the Advanta Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the Advanta Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this Advanta Trust Agreement, the Advanta Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Trust Assets or any applicable insurance coverage.  The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals.  Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall

not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3     Reliance by Advanta Trustee and Trust Advisory Board.

(a)     Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the Advanta Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the Advanta Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the Advanta Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the Advanta Trustee or the Trust Advisory Board shall look only to the Advanta Trust Assets to satisfy any liability incurred by the Advanta Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this Advanta Trust Agreement, and neither the Advanta Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

### AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  Any material provision of this Advanta Trust Agreement may be amended or waived by the Advanta Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court.  Amendments to immaterial provisions to this Advanta Trust Agreement may be made as necessary, to clarify this Advanta Trust Agreement or enable the Advanta Trustee to effectuate the terms of this Advanta Trust Agreement, by the Advanta Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board.  Notwithstanding this Section 9.1, any amendments to this Advanta Trust Agreement shall not be inconsistent with the purpose and intention of the Advanta Trust to liquidate in an expeditious but orderly manner the Advanta Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof.  Notwithstanding the foregoing, no amendment to this Advanta Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1     Intention of Parties to Establish a Liquidating Trust for Tax Purposes.  This Advanta Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section

and, if necessary, this Advanta Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2    Laws as to Construction.  This Advanta Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3    Severability.  If any provision of this Advanta Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Advanta Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Advanta Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4    Notices.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 10.4):

If to the Advanta Trustee:

FTI Consulting, Inc.
3 Times Square, 10th Floor
New York, New York 10036
Attn: Andrew Scruton
Fax: (212) 499-3636
E-mail: Andrew.Scruton@fticonsulting.com

If to the Debtors:

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, New York 10153
Facsimile: 212-310-8007
E-mail: Robert.Lemons@weil.com

If to an Advanta Trust Beneficiary:

To the name and address set forth on the registry maintained by the Advanta Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street

Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

with a copy to

Whitman L. Holt
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Fax: 310-407-9090
E-mail: wholt@ktbslaw.com

Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

with a copy to

Ira Dizengoff
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036-6745
Fax: 212-872-1002
E-mail: idizengoff@akingump.com

and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

with a copy to

Brett Amron
Bast Amron
Suntrust International Center
One Southeast Third Avenue Suite 1440
Miami, Florida  33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com

If to the Delaware Trustee:

> Wilmington Trust Company
> 1100 North Market Street
> Wilmington, Delaware 19890-1625
> Phone: 302-636-6395
> Facsimile: 302-636-4149
> Attn: Chris Slaybaugh

10.5   Headings.  The section headings contained in this Advanta Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Advanta Trust Agreement or of any term or provision hereof.

10.6   Relationship to the Plan.  The principal purpose of this Advanta Trust Agreement is to aid in the implementation of the Plan and therefore this Advanta Trust Agreement incorporates the provisions of the Plan.  If any provisions of this Advanta Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the Advanta Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this Advanta Trust Agreement shall control.

# ARTICLE XI

## DELAWARE TRUSTEE

Section 11.1   Delaware Trustee.  The Delaware Trustee is appointed to serve as the trustee of Advanta Trust in the State of Delaware.  Notwithstanding any provision in this Advanta Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of Advanta Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to Advanta Trust, the Advanta Trustee or any Advanta Trust Beneficiary.  It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on Advanta Trust in the State of Delaware.

(a)   By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1.  Except as provided in this Section 11.1, the Delaware Trustee shall not have any duty or liability with respect to the administration of Advanta Trust, the investment of Advanta Trust's property or the payment of dividends or other distributions of income or principal to the ASSC Trust Beneficiaries.

(b)     The Delaware Trustee shall not be liable for the acts or omissions of the Advanta Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Advanta Trustee or Advanta Trust under this Advanta Trust Agreement, the Plan or any related document.  The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence.  In particular, but not by way of limitation:

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)     No provision of this Advanta Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of Advanta Trust;

(iv)     The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Advanta Trust Agreement or for the due execution hereof by the other parties hereto;

(v)     The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Advanta Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)     Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Advanta Trust Agreement shall look only to Advanta Trust's property for payment or satisfaction thereof.

(c)     The Delaware Trustee shall take such action or refrain from taking such action under this Advanta Trust Agreement as it may be directed in writing by the Advanta Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this Advanta Trust Agreement.  The Delaware Trustee is entitled to request instruction from the Advanta Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the Advanta Trustee.

(d)     The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2     Liability of Delaware Trustee; Indemnification.     The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this Advanta Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advanta Trust Assets or any applicable insurance coverage.

Section 11.3     Merger or Consolidation of Delaware Trustee.  Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or

24

in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4.   <u>Miscellaneous</u>.  To the extent that provisions of this Advanta Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Advanta Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTORS:

**ADVANTA CORP.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA INVESTMENT CORP.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA BUSINESS SERVICES HOLDING CORP.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA BUSINESS SERVICES CORP.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA SERVICE CORP.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA ADVERTISING INC.**

By:_____
　　　　Name:
　　　　Title:

**ADVANTA MORTGAGE HOLDING COMPANY**

By: _____
      Name:
      Title:

**ADVANTA VENTURES INC.**

By: _____
      Name:
      Title:

**BE CORP. (F/K/A BIZEQUITY CORP.)**

By: _____
      Name:
      Title:

**IDEABLOB CORP.**

By: _____
      Name:
      Title:

**ADVANTA CREDIT CARD RECEIVABLES CORP.**

By: _____
      Name:
      Title:

**GREAT EXPECTATIONS INTERNATIONAL INC.**

By: _____
      Name:
      Title:

**GREAT EXPECTATIONS FRANCHISE CORP.**

By: _____
      Name:
      Title:

**GREAT EXPECTATIONS MANAGEMENT CORP.**

By:_____
        Name:
        Title:


ADVANTA TRUSTEE:

**FTI CONSULTING, INC.**
**solely as Advanta Trustee**

By: _____
        Name:
        Title:


DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**


By: _____
        Name:
        Title:

**<u>Annex A</u>**
**Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.57**

**(Advantennis Trust Agreement)**

## ADVANTENNIS TRUST AGREEMENT

This Advantennis Trust Agreement (the "<u>Advantennis Trust Agreement</u>"), dated as of ___, 2011, is entered into by and among Advantennis Corp., a Delaware corporation, as debtor and debtor in possession (collectively, the "<u>Debtor</u>"), FTI Consulting, Inc. solely in its capacity as liquidating trustee (together with any successor appointed under the terms hereof, the "<u>Advantennis Trustee</u>"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "<u>Plan</u>"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of a liquidating trust evidenced hereby (the "<u>Advantennis Trust</u>"). Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

WHEREAS, the Advantennis Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Advantennis Trust is created on behalf of, and for the sole benefit of, the Advantennis Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of a liquidating trust that will (i) receive from the Debtor all of the Advantennis Trust Assets, (ii) hold the Advantennis Trust Assets in trust for the benefit of the Advantennis Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the Advantennis Trust Assets held by it for the benefit of the Advantennis Trust Beneficiaries pursuant to the terms of the Plan and this Advantennis Trust Agreement;

WHEREAS, the Advantennis Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the Advantennis Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the Advantennis Trust Beneficiaries treated as the grantors and owners of the Advantennis Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the Debtor and the parties hereto agree as follows:

## ARTICLE I

ESTABLISHMENT OF THE ADVANTENNIS TRUST

1.1     <u>Establishment and Declaration of Trust</u>.

(a) <u>Name</u>. This trust shall be known as the "<u>Advantennis Trust</u>" in which name the Advantennis Trustee may conduct the affairs of the Advantennis Trust.

(b) <u>Declaration of Trust</u>. In accordance with the Plan, the Debtor, the Advantennis Trustee and the Delaware Trustee hereby establish the Advantennis Trust on behalf of and for the benefit of the Advantennis Trust Beneficiaries and, on the Effective Date, the Debtor hereby irrevocably and absolutely transfer, assign, convey and deliver to the Advantennis Trustee for the benefit of the Advantennis Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the Advantennis Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the Advantennis Trust Beneficiaries for the uses and purposes stated herein and in the Plan. Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax. In connection with the transfer of the Advantennis Trust Assets to the Advantennis Trust, all rights and Causes of Action and all Books and Privileges relating to such Advantennis Trust Assets shall be transferred to the Advantennis Trust and shall vest in the Advantennis Trustee solely in its capacity as such. Effective as of the date hereof, the Advantennis Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Advantennis Trust.

(c) <u>Appointment of Advantennis Trustee</u>. The Advantennis Trustee is hereby appointed as trustee of the Advantennis Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d) <u>Acceptance of Trust</u>. The Advantennis Trustee agrees to accept and hold the Advantennis Trust Assets in trust for the Advantennis Trust Beneficiaries, subject to the terms of this Advantennis Trust Agreement and the Plan.

1.2 <u>Title to Advantennis Trust Assets</u>.

(a) Except as otherwise provided by the Plan or this Advantennis Trust Agreement, upon the Effective Date, title to the Advantennis Trust Assets shall pass to the Advantennis Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b) Upon the transfer to the Advantennis Trust of the Advantennis Trust Assets, the Advantennis Trustee shall succeed to all of the Debtor's right, title and interest in and to the Advantennis Trust Assets, and the Debtor will have no further interest or rights in or with respect to the Advantennis Trust Assets.

(c) For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Advantennis Trustee and the Advantennis Trust Beneficiaries) shall treat the transfer by the Debtor of the Advantennis Trust Assets to the Advantennis Trust as (i) a transfer of the Advantennis Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving Advantennis Trust Beneficial Interests relating thereto and, to the extent the Advantennis Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by (ii) the transfer by such

beneficiaries to the Advantennis Trust of the Advantennis Trust Assets (other than the Advantennis Trust Assets allocable to the Unresolved Claims Reserve) in exchange for Advantennis Trust Beneficial Interests. Accordingly, the Advantennis Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Advantennis Trust Assets (other than such Advantennis Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)      With respect to all Advantennis Trust Assets, the Advantennis Trustee will directly and indirectly be the representative of the Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this Advantennis Trust Agreement and in the Plan. The Advantennis Trustee will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that is related to an Advantennis Trust Asset and shall be deemed substituted for the same as the party in such litigation. The Advantennis Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity, that constitute Advantennis Trust Assets. All actions, claims, rights, or interests constituting Advantennis Trust Assets are preserved and retained and may be enforced by the Advantennis Trustee as the representative of the Debtor's Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Advantennis Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the Advantennis Trust or the Advantennis Trust Assets).

1.3      Valuation of Advantennis Trust Assets. As soon as practicable after the Effective Date, the Advantennis Trustee, in reliance upon such professionals as the Advantennis Trustee may retain in accordance herewith, shall make a good-faith valuation of the Advantennis Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the Advantennis Trustee and the Advantennis Trust Beneficiaries) for all United States federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Advantennis Trust Assets.

# ARTICLE II

## ADVANTENNIS TRUST BENEFICIARIES

2.1     Rights of the Advantennis Trust Beneficiaries.  Each Advantennis Trust Beneficiary shall take and hold its Advantennis Trust Beneficial Interest subject to all of the terms and provisions of this Advantennis Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan.  The interest of an Advantennis Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an Advantennis Trust Beneficiary, as applicable, such Advantennis Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such Advantennis Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this Advantennis Trust Agreement.  An Advantennis Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the Advantennis Trust Assets except as herein expressly provided.  No surviving spouse, heir or devisee of any deceased Advantennis Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Advantennis Trust Assets, but the whole title to all the Advantennis Trust Assets shall be vested in the Advantennis Trustee and the sole interest of the Advantennis Trust Beneficiaries shall be the rights and benefits given to such persons under this Advantennis Trust Agreement.

2.2     No Legal Title in Advantennis Trust Beneficiaries.  No Advantennis Trust Beneficiary shall have legal title to any part of the Advantennis Trust Assets.  No transfer by operation of law or otherwise, of the right, title and interest of any Advantennis Trust Beneficiary in and to the Advantennis Trust Assets or hereunder shall operate to terminate this Advantennis Trust or entitle any successor or transferee of such Advantennis Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the Advantennis Trust Assets.

2.3     Identification of Advantennis Trust Beneficiaries.  The record holders of interests in the Advantennis Trust shall be recorded and set forth in a register maintained by the Advantennis Trustee expressly for such purpose.  Except as otherwise required by law, references in this Advantennis Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the Advantennis Trustee and shall not mean any beneficial owner not recorded on such official registry.  Unless expressly provided herein, the Advantennis Trustee may establish a record date, which the Advantennis Trustee deems practicable for determining the holders for a particular purpose.  Any distributions to the Advantennis Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers.  The Advantennis Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

# ARTICLE III

## PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1 <u>Purpose of the Advantennis Trust</u>. The Advantennis Trust is established for the sole purpose of liquidating and distributing the Advantennis Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2 <u>Authority of Advantennis Trustee</u>.

(a) In connection with the administration of the Advantennis Trust and the Plan, except as set forth in this Advantennis Trust Agreement, the Advantennis Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Advantennis Trust and to carry out its responsibilities under the Plan. Without limiting the foregoing, and subject to <u>Section 3.4</u> hereof, the Advantennis Trustee shall, among other things, have the rights, powers and duties:

(i) to hold, manage, dispose of, sell, convert to Cash and distribute the Advantennis Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the Advantennis Trust;

(ii) to hold the Advantennis Trust Assets for the benefit of the Advantennis Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii) in the Advantennis Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the Advantennis Trust Assets, including rights, Causes of Action or litigation of the Advantennis Trust;

(iv) to monitor and enforce the implementation of the Plan;

(v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Advantennis Trust;

(vi) in the Advantennis Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the Advantennis Trust, and manage, control, prosecute and/or settle on behalf of the Advantennis Trust objections to Claims on account of which the Advantennis Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and implement the Plan;

(viii) to hold, manage, and distribute Cash or non-Cash Advantennis Trust Assets obtained through the exercise of the Advantennis Trustee's power and authority;

(ix)　to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor's assets;

(x)　to dispose of the books and records transferred to the Advantennis Trustee in a manner deemed appropriate by the Advantennis Trustee; provided, however, that the Advantennis Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)　to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)　to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Advantennis Trust and execute any documents or pleadings related to the liquidation of the Advantennis Trust Assets or other matters related to the Advantennis Trust;

(xiii)　to establish and maintain bank accounts and terminate such accounts as the Advantennis Trustee deems appropriate;

(xiv)　to set off amounts owed to the Debtor against distributions to Advantennis Trust Beneficiaries;

(xv)　to bring suits or defend itself against such suits, if any, as the Advantennis Trustee determines in connection with any matter arising from or related to the Plan or this Advantennis Trust Agreement that affects in any way the rights or obligations of the Advantennis Trust, the Advantennis Trustee or the Advantennis Trust Beneficiaries;

(xvi)　obtain and maintain insurance coverage with respect to the liabilities and obligations of the Advantennis Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of this Advantennis Trust Agreement;

(xvii)　to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Advantennis Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Advantennis Trust and are consistent with and are not contrary to the treatment of the Advantennis Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)　to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this Advantennis Trust Agreement.

Notwithstanding the foregoing, neither the Advantennis Trustee nor any other person that is an Affiliate of the Advantennis Trust or the Debtor shall take any action to

facilitate or encourage any trading in Advantennis Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)     The Advantennis Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the Advantennis Trust on such terms (including on a contingency or hourly basis) as the Advantennis Trustee deems appropriate without Bankruptcy Court approval; provided, however, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court.  Without limiting the foregoing, the Advantennis Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)     Any member, principal, officer, director or employee of the Advantennis Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)     In all circumstances, the Advantennis Trustee shall act in the best interests of all of the Advantennis Trust Beneficiaries and in furtherance of the purpose of the Advantennis Trust.

3.3     Establishment of Trust Advisory Board.

(a)     The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Advantennis Trust Agreement.  The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtor (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this Advantennis Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)     Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.  For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this <u>Section 3.3</u> or <u>Section 3.4</u>, the Trust Advisory Board shall not take any action that will cause the Advantennis Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; <u>provided</u>, <u>however</u>, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; <u>provided</u>, <u>however</u>, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the Advantennis Trustee cannot obtain direction or authority from the Trust Advisory Board, the Advantennis Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the

Advantennis Trust is dissolved in accordance with Section 7.1 hereof. The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the Advantennis Trustee. Such resignation shall be effective when a successor is appointed as provided herein;

(iii)     if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the Advantennis Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)     the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the Advantennis Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)     in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced). In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board. In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor. The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)     immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)     Any member of the Trust Advisory Board may be reimbursed by the Advantennis Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the Advantennis Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the Advantennis Trustee under this Trust Agreement, in accordance with the Budget (as defined herein).  Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget.  The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

3.4     Limitations on Advantennis Trustee's Authority and the Trust Advisory Board's Authority.

(a)     Notwithstanding anything herein to the contrary, the Advantennis Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the Advantennis Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that, the Advantennis Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Advantennis Trust as liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(b)     The Advantennis Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the Advantennis Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date.  Each fiscal year of the Advantennis Trust shall end on December 31st and commence on January 1st. The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval.  Prior to the submission and approval of the initial plan and budget, the Advantennis Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the Advantennis Trust, the Delaware Trustee and the Advantennis Trustee.  The annual plan and budget shall set forth in reasonable detail:  (i) the Advantennis Trustee's anticipated actions to administer and liquidate the Advantennis Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the Advantennis Trustee to assist

in its duties) associated with conducting the affairs of the Advantennis Trust.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget". The Advantennis Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the Advantennis Trustee.   All actions by the Advantennis Trustee must be consistent with the then current Budget, provided that the Advantennis Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)     Notwithstanding anything herein to the contrary, the Advantennis Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)     any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the Advantennis Trust (whether or not asserted) in excess of $1,000,000;

(ii)     subject to Section 3.2(b), incurrence of any cost or expense of the Advantennis Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)     Any amendment of this Advantennis Trust Agreement as provided in Section 9.1 hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the Advantennis Trust and the treatment of the Advantennis Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5     Books and Records.  The Advantennis Trustee shall maintain in respect of the Advantennis Trust and the Advantennis Trust Beneficiaries books and records relating to the Advantennis Trust Assets and income of the Advantennis Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Advantennis Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Advantennis Trust.  Except as expressly provided herein, nothing in this Advantennis Trust Agreement requires the Advantennis Trustee to file any accounting or seek approval of any court with respect to the administration of the Advantennis Trust or as a condition for managing any payment or distribution out of the Advantennis Trust Assets.  The Advantennis Trustee shall not dispose of any books and records

that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6     Additional Powers.  Except as otherwise set forth in this Advantennis Trust Agreement or in the Plan, and subject to the continuation of the treatment of the Advantennis Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Advantennis Trustee may control and exercise authority over the Advantennis Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the Advantennis Trust shall be obligated to inquire into the authority of the Advantennis Trustee in connection with the protection, conservation, liquidation, or disposition of the Advantennis Trust Assets.

3.7     Distributions.

(a)     The Advantennis Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date.  The Advantennis Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the Advantennis Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtor on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the Advantennis Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Advantennis Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Advantennis Trust or in respect of the Advantennis Trust Assets) of the Advantennis Trust, the Advantennis Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Advantennis Trust or imposed on the Advantennis Trust in accordance with the Plan or this Advantennis Trust Agreement.

(b)     All distributions made by the Advantennis Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  If the distribution shall be in Cash, the Advantennis Trustee shall distribute such Cash by wire, check, or such other form as the Advantennis Trustee deems appropriate under the circumstances.  For the avoidance of doubt, pursuant to the Plan, the Advantennis Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an Advantennis Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this Advantennis Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8    Tax Reporting Duties of the Advantennis Trustee.

(a)    In addition to the reporting duties of the Advantennis Trustee under ARTICLE VI hereof, the Advantennis Trustee shall file returns (including United States federal returns) for the Advantennis Trust treating the Advantennis Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan.  Annually (but no later than sixty (60) days following the end of each calendar year), the Advantennis Trustee shall send to each holder of an Advantennis Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns.  The Advantennis Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Advantennis Trust that are required by any governmental unit.

(b)    In furtherance of the provisions of Section 3.8(a) hereof, allocations of the Advantennis Trust's taxable income among the Advantennis Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the Advantennis Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Advantennis Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the Advantennis Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Advantennis Trust.  Similarly, taxable loss of the Advantennis Trust shall be allocated in good faith by the Advantennis Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Advantennis Trust Assets.  The tax book value of the Advantennis Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Advantennis Trustee.

(c)    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Advantennis Trustee of a private letter ruling if the Advantennis Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Advantennis Trustee), the Advantennis Trustee shall (i) timely elect to treat any Advantennis Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Advantennis Trustee, the Debtor and the Advantennis Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)    The Advantennis Trustee shall be responsible for payment, out of the Advantennis Trust Assets, of any taxes imposed on the trust or its assets, including the

Unresolved Claims Reserve. In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Advantennis Trustee as a result of the resolution of such Unresolved Claims.

(e)     The Advantennis Trustee may request an expedited determination of taxes of the Advantennis Trust, including the Unresolved Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Advantennis Trust or the Debtor for all taxable periods through the dissolution of the Advantennis Trust.

(f)     The Advantennis Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the Advantennis Trust Beneficial Interests. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Advantennis Trust Beneficial Interests for all purposes of this Advantennis Trust Agreement. The Advantennis Trustee shall be authorized to collect such tax information from the holders of the Advantennis Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Advantennis Trust Agreement. In order to receive distributions under the Plan, all holders of the Advantennis Trust Beneficial Interests will need to identify themselves to the Advantennis Trustee and provide tax information and the specifics of their holdings, to the extent the Advantennis Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder). The Advantennis Trustee may refuse to make a distribution to any holder of an Advantennis Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an Advantennis Trust Beneficial Interest, the Advantennis Trustee shall make such distribution to which the holder of the Advantennis Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the Advantennis Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Advantennis Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Advantennis Trustee for such liability.

3.9     Tax Powers.

(a)     For all taxable periods ending on or prior to the Effective Date, the Advantennis Trustee shall have full and exclusive authority in respect of all taxes of the Debtor to the same extent as if the Advantennis Trustee was the debtor in possession.

(b)     Following the Effective Date, the Advantennis Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to

be filed or that the Advantennis Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)     In furtherance thereof, the Debtor shall execute, on or prior to the Effective Date, a power of attorney authorizing the Advantennis Trustee to take actions consistent with Section 3.9(a) and (b) to the same extent as if the Advantennis Trustee were the Debtor.

(d)     Following the Effective Date, the Advantennis Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date; provided, however, that the Advantennis Trustee shall only have whatever rights the Debtor has pursuant to the FDIC Settlement Agreement and the Advantennis Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)     The Advantennis Trustee and each Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan).  Any information obtained under this Section 3.9(e) shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding.  Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any Advantennis Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)     See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor.

3.10   Compliance with Laws.  Any and all distributions of Advantennis Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11   Confidentiality.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advantennis Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

**ARTICLE IV**

THE ADVANTENNIS TRUSTEE

4.1    Generally.  The Advantennis Trustee will initially be FTI Consulting, Inc.  The Advantennis Trustee shall serve as trustee until its successor shall have been appointed in accordance with ARTICLE VI or until resignation, death or removal.  The Advantennis Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Advantennis Trust and not otherwise.

4.2    Responsibilities of Advantennis Trustee.  The Advantennis Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Advantennis Trust Assets, make timely distributions and not unduly prolong the duration of the Advantennis Trust.  In so doing, the Advantennis Trustee will exercise its reasonable business judgment in liquidating the Advantennis Trust Assets.  The liquidation of the Advantennis Trust Assets may be accomplished, in the Advantennis Trustee's discretion, through the sale of Advantennis Trust Assets (in whole or in part).  In connection therewith, the Advantennis Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the Advantennis Trust all claims, rights and Causes of Action transferred to the Advantennis Trust, whether such suits are brought in the name of the Advantennis Trust, the Debtor, or otherwise for the benefit of the Advantennis Trust Beneficiaries.  Any and all proceeds generated from such Advantennis Trust Assets shall be held by the Advantennis Trust.  Except as expressly set forth herein, the Advantennis Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the Advantennis Trustee determines are in the best interests of the Advantennis Trust Beneficiaries and consistent with the purposes of the Advantennis Trust and shall have no liability for the outcome of its decision.  Subject to Section 3.4(b), the Advantennis Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the Advantennis Trust Assets.

4.3    Cash.  The Advantennis Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4    Expense Reimbursement and Compensation.

(a)    The costs and expenses of the Advantennis Trust, including the reasonable fees and expenses of the Advantennis Trustee and the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the Advantennis Trustee and the Delaware Trustee), the Advantennis Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve, shall be paid out of the Advantennis Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)    The Advantennis Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The Advantennis Trust shall be authorized to establish and maintain at the expense of the Advantennis Trust customary insurance coverage for the protection of the Advantennis Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the Advantennis Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the Advantennis Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the Advantennis Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance.  The Advantennis Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become Advantennis Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute Advantennis Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Advantennis Trust shall vest in the Advantennis Trustee (in its capacity as such).

4.7     Confidentiality.  The Advantennis Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Advantennis Trust Assets relate or of which the Advantennis Trustee has become aware in its capacity as Advantennis Trustee, except as otherwise required by law.

## ARTICLE V

## SUCCESSOR TRUSTEES

5.1     Removal.  Each of the Advantennis Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the Advantennis Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective with respect to the Advantennis Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor Advantennis Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Advantennis Trustee by the Bankruptcy Court.  Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court.  If a successor Advantennis Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Advantennis Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3    Appointment of Successor Advantennis Trustee or Delaware Trustee.  In the event of the death (in the case of an Advantennis Trustee that is a natural person), dissolution (in the case of an Advantennis Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the Advantennis Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor Advantennis Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court.  Every successor Advantennis Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Advantennis Trustee or Delaware Trustee an instrument accepting the appointment under this Advantennis Trust Agreement and agreeing to be bound thereto, and thereupon the successor Advantennis Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Advantennis Trustee or Delaware Trustee pursuant to this Advantennis Trust Agreement and the Plan; provided, however, that a removed or resigning Advantennis Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor Advantennis Trustee, or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor Advantennis Trustee or Delaware Trustee under the Advantennis Trust all the estates, properties, rights, powers and privileges of such predecessor Advantennis Trustee or Delaware Trustee, as applicable.

## ARTICLE VI

### REPORTS TO ADVANTENNIS TRUST BENEFICIARIES

6.1    Annual and Final Reports.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the Advantennis Trust, the Advantennis Trustee shall make available to each Advantennis Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the Advantennis Trust for such period; (b) a description of any action taken by the Advantennis Trustee in the performance of its duties that materially affects the Advantennis Trust and of which notice has not previously been given to the Advantennis Trust Beneficiaries; and (c) a description of the progress of converting Advantennis Trust Assets to Cash and making distributions to the Advantennis Trust Beneficiaries and any other material information relating to the Advantennis Trust Assets and the administration of the Advantennis Trust.  The Advantennis Trustee shall also prepare and make available such additional reports regarding the Advantennis Trust as are reasonably requested by the Trust Advisory Board from time to time.

## ARTICLE VII

### DISSOLUTION OF ADVANTENNIS TRUST

7.1    Dissolution of Advantennis Trust.

(a)    The Advantennis Trust shall be dissolved at the earlier of (even if Advantennis Trust Beneficiaries have not been paid in full) (i) all of the Advantennis Trust

Assets having been distributed pursuant to the Plan and this Advantennis Trust Agreement, (ii) the Advantennis Trustee determining, in its sole discretion, that the administration of the Advantennis Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the Advantennis Trustee under the Plan and the Advantennis Trust Agreement having been made; provided, however, that in no event shall the Advantennis Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Advantennis Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Advantennis Trust Assets. If at any time the Advantennis Trustee determines, in reliance upon such professionals as the Advantennis Trustee may retain, that the expense of administering the Advantennis Trust, including the making of a final distribution to the Advantennis Trust Beneficiaries, is likely to exceed the value of the remaining Advantennis Trust Assets, the Advantennis Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Advantennis Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtor, the Advantennis Trust, the Advantennis Trustee, or any insider of any of the foregoing, and (iii) dissolve the Advantennis Trust.

(b)     The Advantennis Trustee shall not unduly prolong the duration of the Advantennis Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Advantennis Trust Assets and to effect the distribution of the Advantennis Trust Assets to the Advantennis Trust Beneficiaries in accordance with the terms hereof and dissolve the Advantennis Trust as soon as practicable. Subject to Section 7.1(a) hereof, prior to or upon dissolution of the Advantennis Trust, the Advantennis Trust Assets will be distributed to the Advantennis Trust Beneficiaries, pursuant to the provisions set forth in Section 3.7 hereof. If any Advantennis Trust Assets are not duly claimed, such Advantennis Trust Assets will be redistributed *pro rata* to all other Advantennis Trust Beneficiaries receiving Advantennis Trust Assets pursuant to Section 3.7 hereof.

7.2     Winding Up of the Trust and Termination. After the dissolution of the Advantennis Trust and for the purpose of liquidating and winding up the affairs of the Advantennis Trust, the Advantennis Trustee shall continue to act as such until its duties have been fully performed. Upon dissolution of the Advantennis Trust, the Advantennis Trustee shall retain for a period of two (2) years the books, records, lists of the Advantennis Trust Beneficiaries, the register of Advantennis Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the Advantennis Trustee that were not already disposed of as provided in Section 3.5 hereof. Subject to the consent of the Trust Advisory Board, at the Advantennis Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Advantennis Trust; provided, however, that the Advantennis Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtor or its current or former officer or directors are a party. Except as otherwise specifically provided herein, upon the winding up of

the Advantennis Trust, the Advantennis Trustee shall have no further duties or obligations hereunder.

## ARTICLE VIII

### LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     <u>Liability of Advantennis Trustee; Indemnification</u>.  The Advantennis Trustee or the individuals comprising the Advantennis Trustee, and the Advantennis Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Advantennis Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Advantennis Trustee's actions or inactions regarding the implementation or administration of this Advantennis Trust Agreement, the Advantennis Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Advantennis Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advantennis Trust Assets or any applicable insurance coverage.  The Advantennis Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The Advantennis Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the Advantennis Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the Advantennis Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     <u>Liability of Trust Advisory Board; Indemnification</u>.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this Advantennis Trust Agreement, the Advantennis Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advantennis Trust Assets or any applicable insurance coverage.  The members of the Trust Advisory Board shall be entitled to

rely, in good faith, on the advice of the Trust Advisory Board's retained professionals. Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3     Reliance by Advantennis Trustee and Trust Advisory Board.

(a)     Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the Advantennis Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the Advantennis Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the Advantennis Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the Advantennis Trustee or the Trust Advisory Board shall look only to the Advantennis Trust Assets to satisfy any liability incurred by the Advantennis Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this Advantennis Trust Agreement, and neither the Advantennis Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

### AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  Any material provision of this Advantennis Trust Agreement may be amended or waived by the Advantennis Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court.  Amendments to immaterial provisions to this Advantennis Trust Agreement may be made as necessary, to clarify this Advantennis Trust Agreement or enable the Advantennis Trustee to effectuate the terms of this Advantennis Trust Agreement, by the Advantennis Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board.  Notwithstanding this Section 9.1, any amendments to this Advantennis Trust Agreement shall not be inconsistent with the purpose and intention of the Advantennis Trust to liquidate in an expeditious but orderly manner the Advantennis Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof.  Notwithstanding the foregoing, no amendment to this Advantennis Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1    <u>Intention of Parties to Establish a Liquidating Trust for Tax Purposes</u>.  This Advantennis Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section and, if necessary, this Advantennis Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2    <u>Laws as to Construction</u>.  This Advantennis Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3    <u>Severability</u>.  If any provision of this Advantennis Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Advantennis Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Advantennis Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4    <u>Notices</u>.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this <u>Section 10.4</u>):

      If to the Advantennis Trustee:

            FTI Consulting, Inc.
            3 Times Square, 10th Floor
            New York, New York 10036
            Attn: Andrew Scruton
            Fax: (212) 499-3636
            E-mail: Andrew.Scruton@fticonsulting.com

      If to the Debtor:

            Weil, Gotshal & Manges LLP
            Attn: Robert J. Lemons
            767 Fifth Avenue
            New York, New York, 10153
            Facsimile: 212-310-8007
            E-mail:  Robert.Lemons@weil.com

      If to an Advantennis Trust Beneficiary:

            To the name and address set forth on the registry
            maintained by the Advantennis Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

       with a copy to

       Whitman L. Holt
       Klee, Tuchin, Bogdanoff & Stern LLP
       1999 Avenue of the Stars, 39th Floor
       Los Angeles, CA 90067
       Fax: 310-407-9090
       E-mail: wholt@ktbslaw.com

Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

       with a copy to

       Ira Dizengoff
       Akin Gump Strauss Hauer & Feld LLP
       One Bryant Park
       New York, NY  10036-6745
       Fax: 212-872-1002
       E-mail: idizengoff@akingump.com

and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

       with a copy to

       Brett Amron
       Bast Amron
       Suntrust International Center
       One Southeast Third Avenue Suite 1440

Miami, Florida  33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com

If to the Delaware Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890-1625
Phone: 302-636-6395
Facsimile: 302-636-4149
Attn: Chris Slaybaugh

10.5    <u>Headings</u>.  The section headings contained in this Advantennis Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Advantennis Trust Agreement or of any term or provision hereof.

10.6    <u>Relationship to the Plan</u>.  The principal purpose of this Advantennis Trust Agreement is to aid in the implementation of the Plan and therefore this Advantennis Trust Agreement incorporates the provisions of the Plan.  If any provisions of this Advantennis Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the Advantennis Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this Advantennis Trust Agreement shall control.

# ARTICLE XI

## DELAWARE TRUSTEE

Section 11.1    <u>Delaware Trustee</u>.  The Delaware Trustee is appointed to serve as the trustee of Advantennis Trust in the State of Delaware.  Notwithstanding any provision in this Advantennis Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of Advantennis Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to Advantennis Trust, the Advantennis Trustee or any Advantennis Trust Beneficiary.  It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on Advantennis Trust in the State of Delaware.

(a)    By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1.  Except as provided in this Section 11.1, the Delaware Trustee shall not have any

duty or liability with respect to the administration of Advantennis Trust, the investment of Advantennis Trust's property or the payment of dividends or other distributions of income or principal to the Advantennis Trust Beneficiaries.

(b)     The Delaware Trustee shall not be liable for the acts or omissions of the Advantennis Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Advantennis Trustee or Advantennis Trust under this Advantennis Trust Agreement, the Plan or any related document.  The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence.  In particular, but not by way of limitation:

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)     No provision of this Advantennis Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of Advantennis Trust;

(iv)     The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Advantennis Trust Agreement or for the due execution hereof by the other parties hereto;

(v)     The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Advantennis Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted

in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)    Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Advantennis Trust Agreement shall look only to Advantennis Trust's property for payment or satisfaction thereof.

(c)    The Delaware Trustee shall take such action or refrain from taking such action under this Advantennis Trust Agreement as it may be directed in writing by the Advantennis Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this Advantennis Trust Agreement.  The Delaware Trustee is entitled to request instruction from the Advantennis Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the Advantennis Trustee.

(d)    The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2    Liability of Delaware Trustee; Indemnification.    The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this Advantennis Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Advantennis Trust Assets or any applicable insurance coverage.

Section 11.3    Merger or Consolidation of Delaware Trustee.  Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the

creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4. <u>Miscellaneous</u>. To the extent that provisions of this Advantennis Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Advantennis Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTOR:

**ADVANTENNIS CORP.**

By:_____

      Name:

      Title:


ADVANTENNIS TRUSTEE:

**FTI CONSULTING, INC.**
**solely as Advantennis Trustee**

By: _____

      Name:

      Title:


DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**


By: _____

      Name:

      Title:

## **Annex A**
## **Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.69**

**(AMCUSA Trust Agreement)**

---

## AMCUSA TRUST AGREEMENT

This AMCUSA Trust Agreement (the "AMCUSA Trust Agreement"), dated as of ___, 2011, is entered into by and among Advanta Mortgage Corp. USA., a Delaware corporation, as debtor and debtor in possession (collectively, the "Debtor"), FTI Consulting, Inc. solely in its capacity as AMCUSA Trustee (together with any successor appointed under the terms hereof, the "AMCUSA Trustee"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "Plan"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of an AMCUSA Trust evidenced hereby (the "AMCUSA Trust").  Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

WHEREAS, the AMCUSA Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the AMCUSA Trust is created on behalf of, and for the sole benefit of, the AMCUSA Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of an AMCUSA Trust that will (i) receive from the Debtor all of the AMCUSA Trust Assets, (ii) hold the AMCUSA Trust Assets in trust for the benefit of the AMCUSA Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the AMCUSA Trust Assets held by it for the benefit of the AMCUSA Trust Beneficiaries pursuant to the terms of the Plan and this AMCUSA Trust Agreement;

WHEREAS, the AMCUSA Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the AMCUSA Trust is intended to qualify as a "AMCUSA Trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the AMCUSA Trust Beneficiaries treated as the grantors and owners of the AMCUSA Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

## ARTICLE I

### ESTABLISHMENT OF THE AMCUSA TRUST

1.1     Establishment and Declaration of Trust.

(a)      <u>Name</u>.  This trust shall be known as the "<u>AMCUSA Trust</u>" in which name the AMCUSA Trustee may conduct the affairs of the AMCUSA Trust.

(b)      <u>Declaration of Trust</u>.  In accordance with the Plan, the Debtor, the AMCUSA Trustee and the Delaware Trustee hereby establish the AMCUSA Trust on behalf of and for the benefit of the AMCUSA Trust Beneficiaries and, on the Effective Date, the Debtor hereby irrevocably and absolutely transfer, assign, convey and deliver to the AMCUSA Trustee for the benefit of the AMCUSA Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the AMCUSA Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the AMCUSA Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the AMCUSA Trust Assets to the AMCUSA Trust, all rights and Causes of Action and all Books and Privileges relating to such AMCUSA Trust Assets shall be transferred to the AMCUSA Trust and shall vest in the AMCUSA Trustee solely in its capacity as such.  Effective as of the date hereof, the AMCUSA Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the AMCUSA Trust.

(c)      <u>Appointment of AMCUSA Trustee</u>.  The AMCUSA Trustee is hereby appointed as trustee of the AMCUSA Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)      <u>Acceptance of Trust</u>.  The AMCUSA Trustee agrees to accept and hold the AMCUSA Trust Assets in trust for the AMCUSA Trust Beneficiaries, subject to the terms of this AMCUSA Trust Agreement and the Plan.

1.2      <u>Title to AMCUSA Trust Assets</u>.

(a)      Except as otherwise provided by the Plan or this AMCUSA Trust Agreement, upon the Effective Date, title to the AMCUSA Trust Assets shall pass to the AMCUSA Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)      Upon the transfer to the AMCUSA Trust of the AMCUSA Trust Assets, the AMCUSA Trustee shall succeed to all of the Debtor's right, title and interest in and to the AMCUSA Trust Assets, and the Debtor will have no further interest or rights in or with respect to the AMCUSA Trust Assets.

(c)      For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the AMCUSA Trustee and the AMCUSA Trust Beneficiaries) shall treat the transfer by the Debtor of the AMCUSA Trust Assets to the AMCUSA Trust as (i) a transfer of the AMCUSA Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims and Equity Interests receiving AMCUSA Trust Beneficial Interests relating thereto and, to the extent the AMCUSA Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by (ii) the transfer by such beneficiaries to the AMCUSA Trust of the AMCUSA Trust Assets (other than the AMCUSA

Trust Assets allocable to the Unresolved Claims Reserve) in exchange for AMCUSA Trust Beneficial Interests. Accordingly, the AMCUSA Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the AMCUSA Trust Assets (other than such AMCUSA Trust Assets as are allocable to the Unresolved Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)     With respect to all AMCUSA Trust Assets, the AMCUSA Trustee will directly and indirectly be the representative of the Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this AMCUSA Trust Agreement and in the Plan. The AMCUSA Trustee will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that is related to an AMCUSA Trust Asset and shall be deemed substituted for the same as the party in such litigation. The AMCUSA Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity, that constitute AMCUSA Trust Assets. All actions, claims, rights, or interests constituting AMCUSA Trust Assets are preserved and retained and may be enforced by the AMCUSA Trustee as the representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The AMCUSA Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the AMCUSA Trust or the AMCUSA Trust Assets).

1.3     Valuation of AMCUSA Trust Assets. As soon as practicable after the Effective Date, the AMCUSA Trustee, in reliance upon such professionals as the AMCUSA Trustee may retain in accordance herewith, shall make a good-faith valuation of the AMCUSA Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the AMCUSA Trustee and the AMCUSA Trust Beneficiaries) for all United States federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the AMCUSA Trust Assets.

## ARTICLE II

## AMCUSA TRUST BENEFICIARIES

2.1     Rights of the AMCUSA Trust Beneficiaries. Each AMCUSA Trust Beneficiary shall take and hold its AMCUSA Trust Beneficial Interest subject to all of the terms and provisions of this AMCUSA Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan. The interest of an AMCUSA Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an AMCUSA Trust Beneficiary, as applicable, such AMCUSA Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such AMCUSA Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this AMCUSA Trust Agreement. An AMCUSA Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the AMCUSA Trust Assets except as

herein expressly provided. No surviving spouse, heir or devisee of any deceased AMCUSA Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the AMCUSA Trust Assets, but the whole title to all the AMCUSA Trust Assets shall be vested in the AMCUSA Trustee and the sole interest of the AMCUSA Trust Beneficiaries shall be the rights and benefits given to such persons under this AMCUSA Trust Agreement.

2.2     No Legal Title in AMCUSA Trust Beneficiaries. No AMCUSA Trust Beneficiary shall have legal title to any part of the AMCUSA Trust Assets. No transfer by operation of law or otherwise, of the right, title and interest of any AMCUSA Trust Beneficiary in and to the AMCUSA Trust Assets or hereunder shall operate to terminate this AMCUSA Trust or entitle any successor or transferee of such AMCUSA Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the AMCUSA Trust Assets.

2.3     Identification of AMCUSA Trust Beneficiaries. The record holders of interests in the AMCUSA Trust shall be recorded and set forth in a register maintained by the AMCUSA Trustee expressly for such purpose. Except as otherwise required by law, references in this AMCUSA Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the AMCUSA Trustee and shall not mean any beneficial owner not recorded on such official registry. Unless expressly provided herein, the AMCUSA Trustee may establish a record date, which the AMCUSA Trustee deems practicable for determining the holders for a particular purpose. Any distributions to the AMCUSA Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4     Transfers. The AMCUSA Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

## ARTICLE III

### PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     Purpose of the AMCUSA Trust. The AMCUSA Trust is established for the sole purpose of liquidating and distributing the AMCUSA Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2     Authority of AMCUSA Trustee.

         (a)     In connection with the administration of the AMCUSA Trust and the Plan, except as set forth in this AMCUSA Trust Agreement, the AMCUSA Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the AMCUSA Trust and to carry out its responsibilities under the Plan.  Without limiting the foregoing, and subject to Section 3.4 hereof, the AMCUSA Trustee shall, among other things, have the rights, powers and duties:

                  (i)     to hold, manage, dispose of, sell, convert to Cash and distribute the AMCUSA Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the AMCUSA Trust;

                  (ii)    to hold the AMCUSA Trust Assets for the benefit of the AMCUSA Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

                  (iii)   in the AMCUSA Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the AMCUSA Trust Assets, including rights, Causes of Action or litigation of the AMCUSA Trust;

                  (iv)    to monitor and enforce the implementation of the Plan;

                  (v)     to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the AMCUSA Trust;

                  (vi)    in the AMCUSA Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the AMCUSA Trust, and manage, control, prosecute and/or settle on behalf of the AMCUSA Trust objections to Claims on account of which the AMCUSA Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

                  (vii)   to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and implement the Plan;

                  (viii)  to hold, manage, and distribute Cash or non-Cash AMCUSA Trust Assets obtained through the exercise of the AMCUSA Trustee's power and authority;

                  (ix)    to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor's assets;

                  (x)     to dispose of the books and records transferred to the AMCUSA Trustee in a manner deemed appropriate by the AMCUSA Trustee; provided, however, that the AMCUSA Trustee shall not dispose of any books and records

that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)     to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)    to enter into and exercise rights under contracts that are necessary or desirable to the administration of the AMCUSA Trust and execute any documents or pleadings related to the liquidation of the AMCUSA Trust Assets or other matters related to the AMCUSA Trust;

(xiii)   to establish and maintain bank accounts and terminate such accounts as the AMCUSA Trustee deems appropriate;

(xiv)    to set off amounts owed to the Debtor against distributions to AMCUSA Trust Beneficiaries;

(xv)     to bring suits or defend itself against such suits, if any, as the AMCUSA Trustee determines in connection with any matter arising from or related to the Plan or this AMCUSA Trust Agreement that affects in any way the rights or obligations of the AMCUSA Trust, the AMCUSA Trustee or the AMCUSA Trust Beneficiaries;

(xvi)    obtain and maintain insurance coverage with respect to the liabilities and obligations of the AMCUSA Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of this AMCUSA Trust Agreement;

(xvii)   to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the AMCUSA Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the AMCUSA Trust and are consistent with and are not contrary to the treatment of the AMCUSA Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)  to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this AMCUSA Trust Agreement.

Notwithstanding the foregoing, neither the AMCUSA Trustee nor any other person that is an Affiliate of the AMCUSA Trust or the Debtor shall take any action to facilitate or encourage any trading in AMCUSA Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)     The AMCUSA Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the AMCUSA Trust on such terms (including on a contingency or hourly basis) as the AMCUSA Trustee deems appropriate without Bankruptcy Court approval; provided, however, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional,

unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court. Without limiting the foregoing, the AMCUSA Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)     Any member, principal, officer, director or employee of the AMCUSA Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)     In all circumstances, the AMCUSA Trustee shall act in the best interests of all of the AMCUSA Trust Beneficiaries and in furtherance of the purpose of the AMCUSA Trust.

3.3     Establishment of Trust Advisory Board.

(a)     The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this AMCUSA Trust Agreement.  The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtor (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this AMCUSA Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The initial members of the Trust Advisory Board are set forth on Annex A hereto. The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)     Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.  For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the AMCUSA Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member

is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the AMCUSA Trustee cannot obtain direction or authority from the Trust Advisory Board, the AMCUSA Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the AMCUSA Trust is dissolved in accordance with Section 7.1 hereof.  The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)      a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the AMCUSA Trustee.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)      if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the AMCUSA Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)      the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the AMCUSA Trust, or (II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v)      in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced).  In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board.  In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi)      immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i)      Any member of the Trust Advisory Board may be reimbursed by the AMCUSA Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such

board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the AMCUSA Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the AMCUSA Trustee under this Trust Agreement, in accordance with the Budget (as defined herein).  Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget.  The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

   3.4 Limitations on AMCUSA Trustee's Authority and the Trust Advisory Board's Authority.

    (a) Notwithstanding anything herein to the contrary, the AMCUSA Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions consistent with the orderly liquidation of the AMCUSA Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that, the AMCUSA Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the AMCUSA Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

    (b) The AMCUSA Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the AMCUSA Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date.  Each fiscal year of the AMCUSA Trust shall end on December 31st and commence on January 1st.  The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval.  Prior to the submission and approval of the initial plan and budget, the AMCUSA Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the AMCUSA Trust, the Delaware Trustee and the AMCUSA Trustee.  The annual plan and budget shall set forth in reasonable detail:  (i) the AMCUSA Trustee's anticipated actions to administer and liquidate the AMCUSA Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the AMCUSA Trustee to assist in its duties) associated with conducting the affairs of the AMCUSA Trust.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget".  The AMCUSA Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the AMCUSA Trustee.   All actions by the AMCUSA Trustee must be consistent with the then current Budget, provided that the AMCUSA Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)    Notwithstanding anything herein to the contrary, the AMCUSA Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)    any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the AMCUSA Trust (whether or not asserted) in excess of $1,000,000;

(ii)    subject to Section 3.2(b), incurrence of any cost or expense of the AMCUSA Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)    Any amendment of this AMCUSA Trust Agreement as provided in Section 9.1 hereof.

(d)    Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the AMCUSA Trust and the treatment of the AMCUSA Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5    Books and Records.  The AMCUSA Trustee shall maintain in respect of the AMCUSA Trust and the AMCUSA Trust Beneficiaries books and records relating to the AMCUSA Trust Assets and income of the AMCUSA Trust and the payment of expenses of, and liabilities of claims against or assumed by, the AMCUSA Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the AMCUSA Trust.  Except as expressly provided herein, nothing in this AMCUSA Trust Agreement requires the AMCUSA Trustee to file any accounting or seek approval of any court with respect to the administration of the AMCUSA Trust or as a condition for managing any payment or distribution out of the AMCUSA Trust Assets.  The AMCUSA Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6    Additional Powers.  Except as otherwise set forth in this AMCUSA Trust Agreement or in the Plan, and subject to the continuation of the treatment of the AMCUSA Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the AMCUSA Trustee may control and exercise authority over the AMCUSA Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the AMCUSA

Trust shall be obligated to inquire into the authority of the AMCUSA Trustee in connection with the protection, conservation, liquidation, or disposition of the AMCUSA Trust Assets.

3.7    Distributions.

(a)    The AMCUSA Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date. The AMCUSA Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the AMCUSA Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtor on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the AMCUSA Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the AMCUSA Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the AMCUSA Trust or in respect of the AMCUSA Trust Assets) of the AMCUSA Trust, the AMCUSA Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the AMCUSA Trust or imposed on the AMCUSA Trust in accordance with the Plan or this AMCUSA Trust Agreement.

(b)    All distributions made by the AMCUSA Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. If the distribution shall be in Cash, the AMCUSA Trustee shall distribute such Cash by wire, check, or such other form as the AMCUSA Trustee deems appropriate under the circumstances. For the avoidance of doubt, pursuant to the Plan, the AMCUSA Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an AMCUSA Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this AMCUSA Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8    Tax Reporting Duties of the AMCUSA Trustee.

(a)    In addition to the reporting duties of the AMCUSA Trustee under ARTICLE VI hereof, the AMCUSA Trustee shall file returns (including United States federal returns) for the AMCUSA Trust treating the AMCUSA Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan. Annually (but no later than sixty (60) days following the end of each calendar year), the AMCUSA Trustee shall send to each holder of an AMCUSA Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax

returns.  The AMCUSA Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the AMCUSA Trust that are required by any governmental unit.

(b)     In furtherance of the provisions of Section 3.8(a) hereof, allocations of the AMCUSA Trust's taxable income among the AMCUSA Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the AMCUSA Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the AMCUSA Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the AMCUSA Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the AMCUSA Trust.  Similarly, taxable loss of the AMCUSA Trust shall be allocated in good faith by the AMCUSA Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining AMCUSA Trust Assets.  The tax book value of the AMCUSA Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the AMCUSA Trustee.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the AMCUSA Trustee of a private letter ruling if the AMCUSA Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the AMCUSA Trustee), the AMCUSA Trustee shall (i) timely elect to treat any AMCUSA Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the AMCUSA Trustee, the Debtor and the AMCUSA Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The AMCUSA Trustee shall be responsible for payment, out of the AMCUSA Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve.  In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the AMCUSA Trustee as a result of the resolution of such Unresolved Claims.

(e)     The AMCUSA Trustee may request an expedited determination of taxes of the AMCUSA Trust, including the Unresolved Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the AMCUSA Trust or the Debtor for all taxable periods through the dissolution of the AMCUSA Trust.

(f)     The AMCUSA Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the AMCUSA Trust Beneficial Interests.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the AMCUSA Trust Beneficial Interests for all purposes of this AMCUSA Trust Agreement.  The AMCUSA Trustee shall be authorized to collect such tax information from the holders of the AMCUSA Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this AMCUSA Trust Agreement. In order to receive distributions under the Plan, all holders of the AMCUSA Trust Beneficial Interests will need to identify themselves to the AMCUSA Trustee and provide tax information and the specifics of their holdings, to the extent the AMCUSA Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder). The AMCUSA Trustee may refuse to make a distribution to any holder of an AMCUSA Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an AMCUSA Trust Beneficial Interest, the AMCUSA Trustee shall make such distribution to which the holder of the AMCUSA Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the AMCUSA Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the AMCUSA Trustee is later held liable for the amount of such withholding, such holder shall reimburse the AMCUSA Trustee for such liability.

3.9     Tax Powers.

(a)     For all taxable periods ending on or prior to the Effective Date, the AMCUSA Trustee shall have full and exclusive authority in respect of all taxes of the Debtor to the same extent as if the AMCUSA Trustee was the debtor in possession.

(b)     Following the Effective Date, the AMCUSA Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor(s), all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to be filed or that the AMCUSA Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)     In furtherance thereof, the Debtor shall execute, on or prior to the Effective Date, a power of attorney authorizing the AMCUSA Trustee to take actions consistent with Section 3.9(a) and (b) to the same extent as if the AMCUSA Trustee were the Debtor.

(d)     Following the Effective Date, the AMCUSA Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor(s) to the same extent as the applicable Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor(s) to the same extent as the applicable Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date; provided, however, that the AMCUSA Trustee shall only have whatever rights the Debtor have pursuant to the FDIC

Settlement Agreement and the AMCUSA Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)     The AMCUSA Trustee and each Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan). Any information obtained under this Section 3.9(e) shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding. Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any AMCUSA Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)     See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor(s).

3.10     Compliance with Laws. Any and all distributions of AMCUSA Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11     Confidentiality. Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the AMCUSA Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

**ARTICLE IV**

THE AMCUSA TRUSTEE

4.1     Generally. The AMCUSA Trustee will initially be FTI Consulting, Inc. The AMCUSA Trustee shall serve as trustee until its successor shall have been appointed in accordance with ARTICLE VI or until resignation, death or removal. The AMCUSA Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this AMCUSA Trust and not otherwise.

4.2     Responsibilities of AMCUSA Trustee. The AMCUSA Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the AMCUSA Trust Assets, make timely distributions and not unduly prolong the duration of the AMCUSA Trust. In so doing, the AMCUSA Trustee will exercise its reasonable business judgment in liquidating the AMCUSA Trust Assets. The liquidation of the AMCUSA Trust Assets may be accomplished, in the AMCUSA Trustee's discretion, through the sale of AMCUSA Trust Assets (in whole or in part). In connection therewith, the AMCUSA Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the AMCUSA Trust all claims, rights and Causes of Action

transferred to the AMCUSA Trust, whether such suits are brought in the name of the AMCUSA Trust, the Debtor, or otherwise for the benefit of the AMCUSA Trust Beneficiaries. Any and all proceeds generated from such AMCUSA Trust Assets shall be held by the AMCUSA Trust. Except as expressly set forth herein, the AMCUSA Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the AMCUSA Trustee determines are in the best interests of the AMCUSA Trust Beneficiaries and consistent with the purposes of the AMCUSA Trust and shall have no liability for the outcome of its decision. Subject to Section 3.4(b), the AMCUSA Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the AMCUSA Trust Assets.

4.3     Cash. The AMCUSA Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4     Expense Reimbursement and Compensation.

(a)     The costs and expenses of the AMCUSA Trust, including the reasonable fees and expenses of the AMCUSA Trustee and the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the AMCUSA Trustee and the Delaware Trustee), the AMCUSA Trust's retained professionals, and the fees and expenses of maintaining the Unresolved Claims Reserve, shall be paid out of the AMCUSA Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The AMCUSA Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The AMCUSA Trust shall be authorized to establish and maintain at the expense of the AMCUSA Trust customary insurance coverage for the protection of the AMCUSA Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the AMCUSA Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the AMCUSA Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the AMCUSA Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance. The AMCUSA Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become AMCUSA Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute AMCUSA Trust Assets, any attorney-client privilege, work-

product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the AMCUSA Trust shall vest in the AMCUSA Trustee (in its capacity as such).

4.7     Confidentiality.  The AMCUSA Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the AMCUSA Trust Assets relate or of which the AMCUSA Trustee has become aware in its capacity as AMCUSA Trustee, except as otherwise required by law.

## ARTICLE V

## SUCCESSOR TRUSTEES

5.1     Removal.  Each of the AMCUSA Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the AMCUSA Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board.  Such resignation shall become effective with respect to the AMCUSA Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor AMCUSA Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor AMCUSA Trustee by the Bankruptcy Court. Such resignation shall become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court.  If a successor AMCUSA Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the AMCUSA Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3     Appointment of Successor AMCUSA Trustee or Delaware Trustee.  In the event of the death (in the case of an AMCUSA Trustee that is a natural person), dissolution (in the case of an AMCUSA Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the AMCUSA Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor AMCUSA Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court.  Every successor AMCUSA Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring AMCUSA Trustee or Delaware Trustee an instrument accepting the appointment under this AMCUSA Trust Agreement and agreeing to be bound thereto, and thereupon the successor AMCUSA Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring AMCUSA Trustee or Delaware Trustee pursuant to this AMCUSA Trust Agreement and the Plan; provided, however, that a removed or resigning AMCUSA Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor AMCUSA Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor AMCUSA Trustee or Delaware

Trustee under the AMCUSA Trust all the estates, properties, rights, powers and privileges of such predecessor AMCUSA Trustee or Delaware Trustee, as applicable.

## ARTICLE VI

### REPORTS TO AMCUSA TRUST BENEFICIARIES

6.1 <u>Annual and Final Reports</u>.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the AMCUSA Trust, the AMCUSA Trustee shall make available to each AMCUSA Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the AMCUSA Trust for such period; (b) a description of any action taken by the AMCUSA Trustee in the performance of its duties that materially affects the AMCUSA Trust and of which notice has not previously been given to the AMCUSA Trust Beneficiaries; and (c) a description of the progress of converting AMCUSA Trust Assets to Cash and making distributions to the AMCUSA Trust Beneficiaries and any other material information relating to the AMCUSA Trust Assets and the administration of the AMCUSA Trust.  The AMCUSA Trustee shall also prepare and make available such additional reports regarding the AMCUSA Trust as are reasonably requested by the Trust Advisory Board from time to time.

**ARTICLE VII**

**DISSOLUTION OF AMCUSA TRUST**

      7.1    <u>Dissolution of AMCUSA Trust</u>.

      (a)    The AMCUSA Trust shall be dissolved at the earlier of (even if AMCUSA Trust Beneficiaries have not been paid in full) (i) all of the AMCUSA Trust Assets having been distributed pursuant to the Plan and this AMCUSA Trust Agreement, (ii) the AMCUSA Trustee determining, in its sole discretion, that the administration of the AMCUSA Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the AMCUSA Trustee under the Plan and the AMCUSA Trust Agreement having been made; <u>provided</u>, <u>however</u>, that in no event shall the AMCUSA Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the AMCUSA Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the AMCUSA Trust Assets.  If at any time the AMCUSA Trustee determines, in reliance upon such professionals as the AMCUSA Trustee may retain, that the expense of administering the AMCUSA Trust, including the making of a final distribution to the AMCUSA Trust Beneficiaries, is likely to exceed the value of the remaining AMCUSA Trust Assets, the AMCUSA Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the AMCUSA Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtor, the AMCUSA Trust, the AMCUSA Trustee, or any insider of any of the foregoing, and (iii) dissolve the AMCUSA Trust.

      (b)    The AMCUSA Trustee shall not unduly prolong the duration of the AMCUSA Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute AMCUSA Trust Assets and to effect the distribution of the AMCUSA Trust Assets to the AMCUSA Trust Beneficiaries in accordance with the terms hereof and dissolve the AMCUSA Trust as soon as practicable.  Subject to <u>Section 7.1(a)</u> hereof, prior to or upon dissolution of the AMCUSA Trust, the AMCUSA Trust Assets will be distributed to the AMCUSA Trust Beneficiaries, pursuant to the provisions set forth in <u>Section 3.7</u> hereof.  If any AMCUSA Trust Assets are not duly claimed, such AMCUSA Trust Assets will be redistributed *pro rata* to all other AMCUSA Trust Beneficiaries receiving AMCUSA Trust Assets pursuant to <u>Section 3.7</u> hereof.

      7.2    <u>Winding Up of the Trust and Termination</u>.  After the dissolution of the AMCUSA Trust and for the purpose of liquidating and winding up the affairs of the AMCUSA Trust, the AMCUSA Trustee shall continue to act as such until its duties have been fully performed.  Upon dissolution of the AMCUSA Trust, the AMCUSA Trustee shall retain for a period of two (2) years the books, records, lists of the AMCUSA Trust Beneficiaries, the register of AMCUSA Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the AMCUSA Trustee that were not already disposed of as provided in

Section 3.5 hereof.  Subject to the consent of the Trust Advisory Board, at the AMCUSA Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the AMCUSA Trust; provided, however, that the AMCUSA Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtor or its current or former officer or directors are a party.  Except as otherwise specifically provided herein, upon the winding up of the AMCUSA Trust, the AMCUSA Trustee shall have no further duties or obligations hereunder.

# ARTICLE VIII

## LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     Liability of AMCUSA Trustee; Indemnification.  The AMCUSA Trustee or the individuals comprising the AMCUSA Trustee, and the AMCUSA Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the AMCUSA Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the AMCUSA Trustee's actions or inactions regarding the implementation or administration of this AMCUSA Trust Agreement, the AMCUSA Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the AMCUSA Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AMCUSA Trust Assets or any applicable insurance coverage.  The AMCUSA Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The AMCUSA Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the AMCUSA Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the AMCUSA Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this AMCUSA Trust

Agreement, the AMCUSA Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AMCUSA Trust Assets or any applicable insurance coverage. The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals. Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

       8.3    <u>Reliance by AMCUSA Trustee and Trust Advisory Board</u>.

       (a)    Except as otherwise provided in <u>Section 8.1</u> or <u>Section 8.2</u> hereof, the AMCUSA Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the AMCUSA Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

       (b)    Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the AMCUSA Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the AMCUSA Trustee or the Trust Advisory Board shall look only to the AMCUSA Trust Assets to satisfy any liability incurred by the AMCUSA Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this AMCUSA Trust Agreement, and neither the AMCUSA Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

## AMENDMENT AND WAIVER

       9.1    <u>Amendment and Waiver</u>. Any material provision of this AMCUSA Trust Agreement may be amended or waived by the AMCUSA Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court. Amendments to immaterial provisions to this AMCUSA Trust Agreement may be made as necessary, to clarify this AMCUSA Trust Agreement or enable the AMCUSA Trustee to effectuate the terms of this AMCUSA Trust Agreement, by the AMCUSA Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board. Notwithstanding this <u>Section 9.1</u>, any amendments to this AMCUSA Trust Agreement shall not be inconsistent with the purpose and intention of the AMCUSA Trust to liquidate in an expeditious but orderly manner the AMCUSA Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and <u>Section 3.1</u> hereof. Notwithstanding the foregoing, no amendment to this AMCUSA Trust Agreement that

would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1    <u>Intention of Parties to Establish a Liquidating Trust for Tax Purposes</u>.  This AMCUSA Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section and, if necessary, this AMCUSA Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2    <u>Laws as to Construction</u>.  This AMCUSA Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3    <u>Severability</u>.  If any provision of this AMCUSA Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this AMCUSA Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this AMCUSA Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4    <u>Notices</u>.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this <u>Section 10.4</u>):

If to the AMCUSA Trustee:

FTI Consulting, Inc.
3 Times Square, 10th Floor
New York, New York 10036
Attn: Andrew Scruton
Fax: (212) 499-3636
E-mail: Andrew.Scruton@fticonsulting.com

If to the Debtor:

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, New York, 10153

Facsimile: 212-310-8007
Email:  Robert.Lemons@weil.com

If to an AMCUSA Trust Beneficiary:

To the name and address set forth on the registry
maintained by the AMCUSA Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

with a copy to

Whitman L. Holt
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Fax: 310-407-9090
E-mail: wholt@ktbslaw.com

Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

with a copy to

Ira Dizengoff
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036-6745
Fax: 212-872-1002
E-mail: idizengoff@akingump.com
and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz

Email: Sharon@manewitzweiker.com

with a copy to

Brett Amron
Bast Amron
Suntrust International Center
One Southeast Third Avenue Suite 1440
Miami, Florida 33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com

If to the Delaware Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890-1625
Phone: 302-636-6395
Facsimile: 302-636-4149
Attn: Chris Slaybaugh

10.5     Headings.  The section headings contained in this AMCUSA Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this AMCUSA Trust Agreement or of any term or provision hereof.

10.6     Relationship to the Plan.  The principal purpose of this AMCUSA Trust Agreement is to aid in the implementation of the Plan and therefore this AMCUSA Trust Agreement incorporates the provisions of the Plan.  If any provisions of this AMCUSA Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the AMCUSA Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this AMCUSA Trust Agreement shall control.


**ARTICLE XI**

DELAWARE TRUSTEE

Section 11.1   Delaware Trustee.  The Delaware Trustee is appointed to serve as the trustee of AMCUSA Trust in the State of Delaware.  Notwithstanding any provision in this AMCUSA Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of AMCUSA Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to AMCUSA Trust, the AMCUSA Trustee or any AMCUSA Trust Beneficiary.  It is understood and agreed that the duties and responsibilities of

the Delaware Trustee shall be limited to accepting legal process served on AMCUSA Trust in the State of Delaware.

(a) By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1. Except as provided in this Section 11.1, the Delaware Trustee shall not have any duty or liability with respect to the administration of AMCUSA Trust, the investment of AMCUSA Trust's property or the payment of dividends or other distributions of income or principal to the AMCUSA Trust Beneficiaries.

(b) The Delaware Trustee shall not be liable for the acts or omissions of the AMCUSA Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the AMCUSA Trustee or AMCUSA Trust under this AMCUSA Trust Agreement, the Plan or any related document. The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence. In particular, but not by way of limitation:

(i) The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii) No provision of this AMCUSA Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii) Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of AMCUSA Trust;

(iv) The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this AMCUSA Trust Agreement or for the due execution hereof by the other parties hereto;

(v) The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the AMCUSA Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)     Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this AMCUSA Trust Agreement shall look only to AMCUSA Trust's property for payment or satisfaction thereof.

(c)     The Delaware Trustee shall take such action or refrain from taking such action under this AMCUSA Trust Agreement as it may be directed in writing by the AMCUSA Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this AMCUSA Trust Agreement.  The Delaware Trustee is entitled to request instruction from the AMCUSA Trustee in connection with its duties hereunder.  The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the AMCUSA Trustee.

(d)     The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein.  The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2     Liability of Delaware Trustee; Indemnification.     The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this AMCUSA Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the AMCUSA Trust Assets or any applicable insurance coverage.

Section 11.3    Merger or Consolidation of Delaware Trustee.  Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4.   Miscellaneous.  To the extent that provisions of this AMCUSA Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this AMCUSA Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTOR:

**ADVANTA MORTGAGE CORP. USA.**

By:_____

     Name:

     Title:


AMCUSA TRUSTEE:

**FTI CONSULTING, INC.**
**solely as AMCUSA Trustee**

By: _____

     Name:

     Title:


DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**

By: _____

     Name:

     Title:

## Annex A
## Trust Advisory Board

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Exhibit 1.79**

**(ASSC Trust Agreement)**

## ASSC TRUST AGREEMENT

This ASSC Trust Agreement (the "ASSC Trust Agreement"), dated as of ___, 2011, is entered into by and among Advanta Shared Services Corp., a Delaware corporation, as debtor and debtor in possession (collectively, the "Debtor"), FTI Consulting, Inc. solely in its capacity as liquidating trustee (together with any successor appointed under the terms hereof, the "ASSC Trustee"), and Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as Delaware trustee (the "Delaware Trustee") and is executed in connection with the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as the same may have been amended, modified or supplemented from time to time, the "Plan"), which was confirmed by the United States Bankruptcy Court on ____, 2011, and which provides for the establishment of a liquidating trust evidenced hereby (the "ASSC Trust").  Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to such terms in the Plan.

W I T N E S S E T H

WHEREAS, the ASSC Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the ASSC Trust is created on behalf of, and for the sole benefit of, the ASSC Trust Beneficiaries;

WHEREAS, the Plan provides for the creation of a liquidating trust that will (i) receive from the Debtor all of the ASSC Trust Assets, (ii) hold the ASSC Trust Assets in trust for the benefit of the ASSC Trust Beneficiaries as provided in the Plan and herein and (iii) oversee and direct the liquidation of the ASSC Trust Assets held by it for the benefit of the ASSC Trust Beneficiaries pursuant to the terms of the Plan and this ASSC Trust Agreement;

WHEREAS, the ASSC Trust is established hereunder for the sole purpose of liquidating and distributing its assets, with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the ASSC Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes, with the ASSC Trust Beneficiaries treated as the grantors and owners of the ASSC Trust;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the parties hereto agree as follows:

# ARTICLE I

## ESTABLISHMENT OF THE ASSC TRUST

1.1     Establishment and Declaration of Trust.

(a)     Name.  This trust shall be known as the "ASSC Trust" in which name the ASSC Trustee may conduct the affairs of the ASSC Trust.

(b)     Declaration of Trust.  In accordance with the Plan, the Debtor, the ASSC Trustee and the Delaware Trustee hereby establish the ASSC Trust on behalf of and for the benefit of the ASSC Trust Beneficiaries and, on the Effective Date, the Debtor hereby irrevocably and absolutely transfer, assign, convey and deliver to the ASSC Trustee for the benefit of the ASSC Trust Beneficiaries all of their right, title and interest (whether legal, beneficial, or otherwise) in and to the ASSC Trust Assets free and clear of any lien, claim, encumbrance, or interest in such property of any other person or entity (except as provided herein) in trust to and for the benefit of the ASSC Trust Beneficiaries for the uses and purposes stated herein and in the Plan.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  In connection with the transfer of the ASSC Trust Assets to the ASSC Trust, all rights and Causes of Action and all Books and Privileges relating to such ASSC Trust Assets shall be transferred to the ASSC Trust and shall vest in the ASSC Trustee solely in its capacity as such.  Effective as of the date hereof, the ASSC Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the ASSC Trust.

(c)     Appointment of ASSC Trustee.  The ASSC Trustee is hereby appointed as trustee of the ASSC Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(d)     Acceptance of Trust.  The ASSC Trustee agrees to accept and hold the ASSC Trust Assets in trust for the ASSC Trust Beneficiaries, subject to the terms of this ASSC Trust Agreement and the Plan.

1.2     Title to ASSC Trust Assets.

(a)     Except as otherwise provided by the Plan or this ASSC Trust Agreement, upon the Effective Date, title to the ASSC Trust Assets shall pass to the ASSC Trust free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.

(b)     Upon the transfer to the ASSC Trust of the ASSC Trust Assets, the ASSC Trustee shall succeed to all of the Debtor's right, title and interest in and to the ASSC Trust Assets, and the Debtor will have no further interest or rights in or with respect to the ASSC Trust Assets.

(c)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the ASSC Trustee and the ASSC Trust Beneficiaries) shall treat the transfer by the Debtor of the ASSC Trust Assets to the ASSC Trust as (i) a transfer of the ASSC Trust Assets (subject to any obligations relating to those assets) directly to those holders

of Allowed Claims and Equity Interests receiving ASSC Trust Beneficial Interests relating thereto and, to the extent the ASSC Trust Assets are allocable to Unresolved Claims, to the Unresolved Claims Reserve, followed by (ii) the transfer by such beneficiaries to the ASSC Trust of the ASSC Trust Assets (other than the ASSC Trust Assets allocable to the Unresolved Claims Reserve) in exchange for ASSC Trust Beneficial Interests.  Accordingly, the ASSC Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the ASSC Trust Assets (other than such ASSC Trust Assets as are allocable to the Unresolved Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)     With respect to all ASSC Trust Assets, the ASSC Trustee will directly and indirectly be the representative of the Debtor's Estate, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided for in the Bankruptcy Code, including section 1107 thereof, in addition to any rights and powers granted in this ASSC Trust Agreement and in the Plan.  The ASSC Trustee will be the successor-in-interest to the Debtor with respect to any action that was or could have been commenced by the Debtor prior to the Effective Date that is related to an ASSC Trust Asset and shall be deemed substituted for the same as the party in such litigation.  The ASSC Trustee may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of actions, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity, that constitute ASSC Trust Assets.  All actions, claims, rights, or interests constituting ASSC Trust Assets are preserved and retained and may be enforced by the ASSC Trustee as the representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The ASSC Trustee will be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan (insofar as it affects the ASSC Trust or the ASSC Trust Assets).

1.3     Valuation of ASSC Trust Assets.  As soon as practicable after the Effective Date, the ASSC Trustee, in reliance upon such professionals as the ASSC Trustee may retain in accordance herewith, shall make a good-faith valuation of the ASSC Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the ASSC Trustee and the ASSC Trust Beneficiaries) for all United States federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the ASSC Trust Assets.

## ARTICLE II

### ASSC TRUST BENEFICIARIES

2.1     Rights of the ASSC Trust Beneficiaries.  Each ASSC Trust Beneficiary shall take and hold its ASSC Trust Beneficial Interest subject to all of the terms and provisions of this ASSC Trust Agreement and the Plan, including payment of any Allowed Claims payable pursuant to Article II and Article IV of the Plan.  The interest of an ASSC Trust Beneficiary is in all respects personal property, and upon the death, insolvency or incapacity of an ASSC Trust Beneficiary, as applicable, such ASSC Trust Beneficiary's interest shall pass to the legal representative or other successor, as applicable, of such ASSC Trust Beneficiary, and such death, insolvency or incapacity shall not terminate or affect the validity of this ASSC Trust Agreement.

An ASSC Trust Beneficiary shall have no title to, right to, possession of, management of, or control of, the ASSC Trust Assets except as herein expressly provided. No surviving spouse, heir or devisee of any deceased ASSC Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the ASSC Trust Assets, but the whole title to all the ASSC Trust Assets shall be vested in the ASSC Trustee and the sole interest of the ASSC Trust Beneficiaries shall be the rights and benefits given to such persons under this ASSC Trust Agreement.

2.2    No Legal Title in ASSC Trust Beneficiaries.  No ASSC Trust Beneficiary shall have legal title to any part of the ASSC Trust Assets.  No transfer by operation of law or otherwise, of the right, title and interest of any ASSC Trust Beneficiary in and to the ASSC Trust Assets or hereunder shall operate to terminate this ASSC Trust or entitle any successor or transferee of such ASSC Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the ASSC Trust Assets.

2.3    Identification of ASSC Trust Beneficiaries.  The record holders of interests in the ASSC Trust shall be recorded and set forth in a register maintained by the ASSC Trustee expressly for such purpose.  Except as otherwise required by law, references in this ASSC Trust Agreement to the identification of holders and the providing of information to holders shall be read to mean holders of record as set forth in the official register maintained by the ASSC Trustee and shall not mean any beneficial owner not recorded on such official registry.  Unless expressly provided herein, the ASSC Trustee may establish a record date, which the ASSC Trustee deems practicable for determining the holders for a particular purpose.  Any distributions to the ASSC Trust Beneficiaries shall be accomplished as set forth in the Plan and herein.

2.4    Transfers.  The ASSC Trust Beneficial Interests shall not be certificated, shall only be issued in book-entry form, and shall not be transferable or assignable except by will, intestate succession or operation of law.

## ARTICLE III

### PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1    Purpose of the ASSC Trust.  The ASSC Trust is established for the sole purpose of liquidating and distributing the ASSC Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.2    Authority of ASSC Trustee.

(a)    In connection with the administration of the ASSC Trust and the Plan, except as set forth in this ASSC Trust Agreement, the ASSC Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the ASSC Trust and to carry out its responsibilities under the Plan.  Without limiting the foregoing, and subject to Section 3.4 hereof, the ASSC Trustee shall, among other things, have the rights, powers and duties:

(i)        to hold, manage, dispose of, sell, convert to Cash and distribute the ASSC Trust Assets, including investigating, prosecuting and resolving the Causes of Action belonging to the ASSC Trust;

(ii)        to hold the ASSC Trust Assets for the benefit of the ASSC Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date;

(iii)       in the ASSC Trustee's reasonable business judgment, to investigate, prosecute, settle, dispose of, and/or abandon the ASSC Trust Assets, including rights, Causes of Action or litigation of the ASSC Trust;

(iv)       to monitor and enforce the implementation of the Plan;

(v)        to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the ASSC Trust;

(vi)       in the ASSC Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the ASSC Trust, and manage, control, prosecute and/or settle on behalf of the ASSC Trust objections to Claims on account of which the ASSC Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

(vii)      to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and implement the Plan;

(viii)     to hold, manage, and distribute Cash or non-Cash ASSC Trust Assets obtained through the exercise of the ASSC Trustee's power and authority;

(ix)       to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of such Debtor's assets;

(x)        to dispose of the books and records transferred to the ASSC Trustee in a manner deemed appropriate by the ASSC Trustee; provided, however, that the ASSC Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court;

(xi)       to take all necessary action and file all appropriate motions to obtain an order closing the applicable Chapter 11 Case;

(xii)      to enter into and exercise rights under contracts that are necessary or desirable to the administration of the ASSC Trust and execute any documents or pleadings related to the liquidation of the ASSC Trust Assets or other matters related to the ASSC Trust;

(xiii)   to establish and maintain bank accounts and terminate such accounts as the ASSC Trustee deems appropriate;

(xiv)   to set off amounts owed to the Debtor against distributions to ASSC Trust Beneficiaries;

(xv)   to bring suits or defend itself against such suits, if any, as the ASSC Trustee determines in connection with any matter arising from or related to the Plan or this ASSC Trust Agreement that affects in any way the rights or obligations of the ASSC Trust, the ASSC Trustee or the ASSC Trust Beneficiaries;

(xvi)   obtain and maintain insurance coverage with respect to the liabilities and obligations of the ASSC Trustee and the Trust Advisory Board and its members in accordance with Section 4.5 of this ASSC Trust Agreement;

(xvii)   to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the ASSC Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the ASSC Trust and are consistent with and are not contrary to the treatment of the ASSC Trust as a "grantor trust" for United States federal income tax purposes; and

(xviii)   to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and this ASSC Trust Agreement.

Notwithstanding the foregoing, neither the ASSC Trustee nor any other person that is an Affiliate of the ASSC Trust or the Debtor shall take any action to facilitate or encourage any trading in ASSC Trust Beneficial Interests or in any instrument tied to the value of such interests.

(b)   The ASSC Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the ASSC Trust on such terms (including on a contingency or hourly basis) as the ASSC Trustee deems appropriate without Bankruptcy Court approval; provided, however, that such compensation may not exceed the amount reflected in the Budget (as defined below) by more than 15% for each professional, unless approved by the Trust Advisory Board (as defined below) or further order of the Bankruptcy Court. Without limiting the foregoing, the ASSC Trustee may retain any professional that represented the Creditors' Committee or other parties in interest in the Chapter 11 Cases and the same professional may represent any or all of the Trusts and Reorganized Advanta and its subsidiaries.

(c)   Any member, principal, officer, director or employee of the ASSC Trustee is authorized to serve as a director, officer or employee of Reorganized Advanta, ASC and any other Affiliate of Reorganized Advanta.

(d)   In all circumstances, the ASSC Trustee shall act in the best interests of all of the ASSC Trust Beneficiaries and in furtherance of the purpose of the ASSC Trust.

3.3   Establishment of Trust Advisory Board.

(a)     The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this ASSC Trust Agreement.  The Trust Advisory Board shall be comprised of three (3) members, with the initial members of the Trust Advisory Board to be selected by the Debtor (with the consent of the Creditors' Committee) and any subsequent members to be appointed in accordance with the terms of this ASSC Trust Agreement.  Two members of the Trust Advisory Board shall be holders of a Beneficial Interest in any of the Trusts, or a designee of such holder, and the other member of the Trust Advisory Board (the "Independent TAB Member") shall not hold a Beneficial Interest in any of the Trusts, or be a designee of any holder.  All of the members of the Trust Advisory Board shall not be or have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor.  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  The members of the Trust Advisory Board may also be members of any trust advisory board that is established for any of the other Trusts.

(b)     Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.  For the avoidance of doubt, such representatives shall only be recognized for so long as the member of the Trust Advisory Board who made such designation continues to be a member of the Trust Advisory Board.

(c)     Notwithstanding anything in this Section 3.3 or Section 3.4, the Trust Advisory Board shall not take any action that will cause the ASSC Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

(d)     A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy, unless such representative is attending solely to protest the meeting in question.

(e)     Except as expressly provided herein, the affirmative vote of a majority of the members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board; provided, however, that where one or more members of the Trust Advisory Board are recused, the unanimous vote of the non-recused members of the Trust Advisory Board shall be required.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the ASSC Trustee cannot

obtain direction or authority from the Trust Advisory Board, the ASSC Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

(f)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  For the avoidance of doubt, a Trust Advisory Board Member shall not be automatically deemed to have a conflicting interest solely because such Trust Advisory Board Member is the holder of a Beneficial Interest in any of the Trusts. If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining members of the Trust Advisory Board that are not recused or are required to be recused from the matter.

(g)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of those Trust Advisory Board members not recused or required to be recused as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(h)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the ASSC Trust is dissolved in accordance with Section 7.1 hereof.  The service of the members of the Trust Advisory Board shall be subject to the following:

(i)     each member of the Trust Advisory Board shall serve until the earlier of (I) such member's death or resignation pursuant to clause (ii) below, (II) such member's (or if such member is a designee of a holder of a Beneficial Interest, such holder's) Allowed Claims being paid in full, including any postpetition interest to which such holder may be entitled (if applicable), or (III) such member's removal pursuant to clause (iv) below;

(ii)     a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board and the ASSC Trustee.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)     if applicable, a member of the Trust Advisory Board shall promptly notify the other members of the Trust Advisory Board and the ASSC Trustee of the payment in full of its Allowed Claims or, if the member is a designee of a holder of such Allowed Claims, of the payment in full of such holder's Allowed Claims; provided, however, that such member shall continue to serve on the Trust Advisory Board until a successor is appointed as provided herein;

(iv)     the members of the Trust Advisory Board may be removed by the unanimous vote of the other members of the Trust Advisory Board only for (I) fraud or willful misconduct in connection with the affairs of the ASSC Trust, or

(II) cause, which shall include a breach of a fiduciary duty, and shall not be subject to removal without cause;

(v) in the event of a vacancy in a member's position on the Trust Advisory Board due to resignation or payment in full of his or her Allowed Claims (or, if a member is a designee of a holder of Allowed Claims, such holder's Allowed Claims), a new member shall be appointed as soon as practicable by the vote of the Trust Advisory Board (including the member being replaced). In the event of a vacancy in a member's position on the Trust Advisory Board due to removal or death, a new member shall be appointed as soon as practicable by the unanimous vote of the remaining members of the Trust Advisory Board. In each case, the new member shall be either a holder of a Beneficial Interest in any of the Trusts (or a designee of such holder) or the Independent TAB Member, depending upon whether the Member being replaced was a holder of a Beneficial Interest or the Independent TAB Member. Further, any new member may not have been an Insider (as such term is defined in the Bankruptcy Code) of the Debtor. The appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address and telephone number of the successor member of the Trust Advisory Board; and

(vi) immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(i) Any member of the Trust Advisory Board may be reimbursed by the ASSC Trustee for its actual, reasonable out-of-pocket expenses incurred for serving on such board including, without limitation, reasonable legal fees and costs incurred by each member of the Trust Advisory Board with respect to outside counsel (for the avoidance of doubt, including such fees and expenses incurred prior to the Effective Date in connection with the establishment of the ASSC Trust and the Trust Advisory Board) in the same manner and priority as the compensation and expenses of the ASSC Trustee under this Trust Agreement, in accordance with the Budget (as defined herein). Except as provided for in this Section 3.3, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation; provided, however, that the Independent TAB Member shall be entitled to receive such compensation (if any) as provided for in the Budget. The initial Budget shall include an appropriate reserve for the fees and expenses of the Trust Advisory Board.

3.4    Limitations on ASSC Trustee's Authority and the Trust Advisory Board's Authority.

(a) Notwithstanding anything herein to the contrary, the ASSC Trustee shall not and shall not be authorized to engage in any trade or business and shall take (i) such actions

consistent with the orderly liquidation of the ASSC Trust Assets as are required by applicable law, the Plan and the Confirmation Order and (ii) such actions permitted hereunder; provided, however, that, the ASSC Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the ASSC Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(b)     The ASSC Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the ASSC Trust; provided, however, that the first such report shall be submitted no later than forty-five (45) days after the Effective Date.  Each fiscal year of the ASSC Trust shall end on December 31st and commence on January 1st.  The Trust Advisory Board shall review and approve (with such revisions as the Trust Advisory Board requires) the annual plan and budget within thirty (30) days of the date on which such annual plan and budget is submitted to the Trust Advisory Board for approval.  Prior to the submission and approval of the initial plan and budget, the ASSC Trustee shall be permitted to pay the reasonable, documented fees, costs and expenses of the ASSC Trust, the Delaware Trustee and the ASSC Trustee.  The annual plan and budget shall set forth in reasonable detail:  (i) the ASSC Trustee's anticipated actions to administer and liquidate the ASSC Trust Assets; and (ii) the reasonably anticipated expenses (including the expenses of any attorneys and other professionals engaged by the ASSC Trustee to assist in its duties) associated with conducting the affairs of the ASSC Trust.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget".  The ASSC Trustee may seek approval of amendments to the Budget from time-to-time by making a request to the Trust Advisory Board and the Trust Advisory Board shall, within thirty (30) days of receiving such request, approve or reject such amendments by notice to the ASSC Trustee.   All actions by the ASSC Trustee must be consistent with the then current Budget, provided that the ASSC Trustee may take action outside the Budget as provided in Section 3.4(c).

(c)     Notwithstanding anything herein to the contrary, the ASSC Trustee shall submit to the Trust Advisory Board for its review and prior written approval the following matters:

(i)     any decision to compromise, settle, or otherwise resolve any Unresolved Claims, other than with respect to Administrative Expense Claims relating to compensation of professionals, that would result in an Allowed Claim in an amount in excess of $1,000,000, and any decision to compromise, settle, or otherwise resolve any affirmative claims of the ASSC Trust (whether or not asserted) in excess of $1,000,000;

(ii)     subject to Section 3.2(b), incurrence of any cost or expense of the ASSC Trust that is either not reflected in the Budget or exceeds the particular line item in the Budget by more than 15%; provided, however, that approval of the Trust Advisory Board shall not be required in the case of any cost or expense authorized by further order of the Bankruptcy Court; and

(iii)     Any amendment of this ASSC Trust Agreement as provided in Section 9.1 hereof.

(d)     Notwithstanding anything in this Agreement to the contrary, in determining whether to provide or decline its consent and in connection with any actions to be taken by the Trust Advisory Board hereunder, the Trust Advisory Board shall always act in furtherance of the purposes of the ASSC Trust and the treatment of the ASSC Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d).

3.5     Books and Records.  The ASSC Trustee shall maintain in respect of the ASSC Trust and the ASSC Trust Beneficiaries books and records relating to the ASSC Trust Assets and income of the ASSC Trust and the payment of expenses of, and liabilities of claims against or assumed by, the ASSC Trust in such detail and for such period of time as may be necessary to enable him to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the ASSC Trust.  Except as expressly provided herein, nothing in this ASSC Trust Agreement requires the ASSC Trustee to file any accounting or seek approval of any court with respect to the administration of the ASSC Trust or as a condition for managing any payment or distribution out of the ASSC Trust Assets.  The ASSC Trustee shall not dispose of any books and records that pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court.

3.6     Additional Powers.  Except as otherwise set forth in this ASSC Trust Agreement or in the Plan, and subject to the continuation of the treatment of the ASSC Trust as a liquidating trust for United States federal income tax purposes and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the ASSC Trustee may control and exercise authority over the ASSC Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the ASSC Trust shall be obligated to inquire into the authority of the ASSC Trustee in connection with the protection, conservation, liquidation, or disposition of the ASSC Trust Assets.

3.7     Distributions.

(a)     The ASSC Trustee shall make the Initial Distribution as soon as practicable after the Effective Date and use commercially reasonable efforts to make the Initial Distribution within ninety (90) days of the Effective Date.  The ASSC Trustee shall make at least one distribution in each year, one of which shall be made on or about December 31st of such year, to the holders of the ASSC Trust Beneficial Interests of all Cash on hand in accordance with the terms hereof and the priorities that are set forth in the Plan (including any Cash received from the Debtor on the Effective Date, and treating as Cash for purposes of this section any permitted investments under Section 5.4(j) of the Plan) except such amounts (i) as are retained by the ASSC Trust on account of Unresolved Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the ASSC Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the ASSC Trust or in respect of the ASSC Trust Assets) of the ASSC Trust, the ASSC Trustee, the Delaware Trustee and the members of the Trust Advisory Board, and (iv) as

are necessary to satisfy other liabilities incurred and anticipated by the ASSC Trust or imposed on the ASSC Trust in accordance with the Plan or this ASSC Trust Agreement.

(b)      All distributions made by the ASSC Trustee to holders pursuant to this Section 3.7 shall be payable to the holders of record listed on the claims register as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day.  If the distribution shall be in Cash, the ASSC Trustee shall distribute such Cash by wire, check, or such other form as the ASSC Trustee deems appropriate under the circumstances.  For the avoidance of doubt, pursuant to the Plan, the ASSC Trustee is entitled to recognize and deal with only those holders of record as of the Distribution Record Date, (i) unless an ASSC Trust Beneficiary's interest shall have passed to a legal representative or other successor as described in Section 2.1 of this ASSC Trust Agreement, or (ii) a holder's claim was filed after the Distribution Record Date as provided for in the Plan.

3.8      Tax Reporting Duties of the ASSC Trustee.

(a)      In addition to the reporting duties of the ASSC Trustee under ARTICLE VI hereof, the ASSC Trustee shall file returns (including United States federal returns) for the ASSC Trust treating the ASSC Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with Section 1.2(c), this Section 3.8 and Section 5.4 of the Plan. Annually (but no later than sixty (60) days following the end of each calendar year), the ASSC Trustee shall send to each holder of an ASSC Trust Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns.  The ASSC Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the ASSC Trust that are required by any governmental unit.

(b)      In furtherance of the provisions of Section 3.8(a) hereof, allocations of the ASSC Trust's taxable income among the ASSC Trust Beneficiaries (other than taxable income allocable to the Unresolved Claims Reserve) shall be determined in good faith by the ASSC Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the ASSC Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Unresolved Claims Reserve) to the holders of the ASSC Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the ASSC Trust. Similarly, taxable loss of the ASSC Trust shall be allocated in good faith by the ASSC Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining ASSC Trust Assets.  The tax book value of the ASSC Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the ASSC Trustee.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the ASSC Trustee of a private letter ruling if the ASSC Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the ASSC Trustee), the ASSC Trustee shall (i) timely elect to treat any ASSC Trust Assets allocable to the Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the ASSC Trustee, the Debtor and the ASSC Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(d)     The ASSC Trustee shall be responsible for payment, out of the ASSC Trust Assets, of any taxes imposed on the trust or its assets, including the Unresolved Claims Reserve.  In the event, and to the extent, any Cash retained on account of Unresolved Claims in the Unresolved Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Unresolved Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Unresolved Claims, or (ii) to the extent such Unresolved Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the ASSC Trustee as a result of the resolution of such Unresolved Claims.

(e)     The ASSC Trustee may request an expedited determination of taxes of the ASSC Trust, including the Unresolved Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the ASSC Trust or the Debtor for all taxable periods through the dissolution of the ASSC Trust.

(f)     The ASSC Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code, or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of the ASSC Trust Beneficial Interests.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the ASSC Trust Beneficial Interests for all purposes of this ASSC Trust Agreement.  The ASSC Trustee shall be authorized to collect such tax information from the holders of the ASSC Trust Beneficial Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this ASSC Trust Agreement.  In order to receive distributions under the Plan, all holders of the ASSC Trust Beneficial Interests will need to identify themselves to the ASSC Trustee and provide tax information and the specifics of their holdings, to the extent the ASSC Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable, for each holder).  The ASSC Trustee may refuse to make a distribution to any holder of an ASSC Trust Beneficial Interest that fails to furnish such information until such information is delivered; provided, however, that, upon the delivery of such information by a holder of an ASSC Trust Beneficial Interest, the ASSC Trustee shall make such distribution to which the holder of the ASSC Trust Beneficial Interest is entitled, without interest; and, provided further that, if the holder fails to comply with such a request within one-year, such distribution shall be deemed an unclaimed distribution, and, provided further that, if the ASSC Trustee fails to withhold in respect of amounts received or distributable

with respect to any such holder and the ASSC Trustee is later held liable for the amount of such withholding, such holder shall reimburse the ASSC Trustee for such liability.

3.9    Tax Powers.

(a)    For all taxable periods ending on or prior to the Effective Date, the ASSC Trustee shall have full and exclusive authority in respect of all taxes of the Debtor to the same extent as if the ASSC Trustee was the debtor in possession.

(b)    Following the Effective Date, the ASSC Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtor, all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to be filed or that the ASSC Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(c)    In furtherance thereof, the Debtor shall execute, on or prior to the Effective Date, a power of attorney authorizing the ASSC Trustee to take actions consistent with Section 3.9(a) and (b) to the same extent as if the ASSC Trustee were the Debtor.

(d)    Following the Effective Date, the ASSC Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes (i) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date, and (ii) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date; provided, however, that the ASSC Trustee shall only have whatever rights the Debtor has pursuant to the FDIC Settlement Agreement and the ASSC Trustee shall be contractually bound to all restrictions in the FDIC Settlement Agreement with respect to tax filings.

(e)    The ASSC Trustee and each Debtor shall reasonably cooperate with each other and with each "Liquidating Trustee" and "Debtor" (within the meaning of the Plan), and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the "Debtors" (within the meaning of the Plan). Any information obtained under this Section 3.9(e) shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding. Pursuant to Section 5.4(h)(v) of the Plan, at the reasonable request of any ASSC Trustee, Reorganized Advanta or ASC shall file any claim for refund (including through an amended Tax Return) under its authority with respect to any taxable period ending on or prior to the Effective Date that naturally follows from any Tax Returns previously filed or the resolution of any dispute or audit.

(f)    See Section 5.4(h) of the Plan with respect to non-Debtor Affiliates of the Debtor.

3.10    Compliance with Laws.  Any and all distributions of ASSC Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.11    Confidentiality.  Each member of the Trust Advisory Board shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the ASSC Trust Assets relate or of which such member has become aware in its capacity as a member of the Trust Advisory Board, except as otherwise required by law.

## ARTICLE IV

### THE ASSC TRUSTEE

4.1    Generally.  The ASSC Trustee will initially be FTI Consulting, Inc.  The ASSC Trustee shall serve as trustee until its successor shall have been appointed in accordance with ARTICLE VI or until resignation, death or removal.  The ASSC Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this ASSC Trust and not otherwise.

4.2    Responsibilities of ASSC Trustee.  The ASSC Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the ASSC Trust Assets, make timely distributions and not unduly prolong the duration of the ASSC Trust.  In so doing, the ASSC Trustee will exercise its reasonable business judgment in liquidating the ASSC Trust Assets.  The liquidation of the ASSC Trust Assets may be accomplished, in the ASSC Trustee's discretion, through the sale of ASSC Trust Assets (in whole or in part).  In connection therewith, the ASSC Trustee will have the power to object to Claims under the Plan and prosecute for the benefit of the ASSC Trust all claims, rights and Causes of Action transferred to the ASSC Trust, whether such suits are brought in the name of the ASSC Trust, the Debtor, or otherwise for the benefit of the ASSC Trust Beneficiaries.  Any and all proceeds generated from such ASSC Trust Assets shall be held by the ASSC Trust.  Except as expressly set forth herein, the ASSC Trustee shall have the discretion to pursue or not to pursue any and all claims, rights, or Causes of Action, as the ASSC Trustee determines are in the best interests of the ASSC Trust Beneficiaries and consistent with the purposes of the ASSC Trust and shall have no liability for the outcome of its decision. Subject to Section 3.4(b), the ASSC Trustee may incur any reasonable and necessary expenses in liquidating, distributing and protecting the ASSC Trust Assets.

4.3    Cash.  The ASSC Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

4.4    Expense Reimbursement and Compensation.

(a)    The costs and expenses of the ASSC Trust, including the reasonable fees and expenses of the ASSC Trustee and the Delaware Trustee (including reasonable fees and expenses that relate to professionals retained by the ASSC Trustee and the Delaware Trustee), the ASSC Trust's retained professionals, and the fees and expenses of maintaining the

Unresolved Claims Reserve, shall be paid out of the ASSC Trust Assets; provided, however, that such fees and expenses may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

(b)     The ASSC Trustee and the Delaware Trustee shall be entitled to reasonable compensation approved by the Trust Advisory Board in an amount consistent with that of similar functionaries in similar roles; provided, however, that such compensation may not exceed the amount reflected in the Budget by more than 15%, unless approved by the Trust Advisory Board or further order of the Bankruptcy Court.

4.5     Insurance.     The ASSC Trust shall be authorized to establish and maintain at the expense of the ASSC Trust customary insurance coverage for the protection of the ASSC Trustee, the Delaware Trustee, the members of the Trust Advisory Board, the employees, officers, directors, agents, representatives, counsel or advisors of the ASSC Trustee or any member of the Trust Advisory Board, any Person serving as officers or directors of Reorganized Advanta after the Effective Date and any Persons who are serving as trustee, administrator or overseer of the Trusts on and after the Effective Date, as the ASSC Trustee determines to be reasonably appropriate in consultation with the Trust Advisory Board whether or not the ASSC Trust would have the legal power to directly indemnify any of the foregoing against the liabilities covered by such insurance.  The ASSC Trustee also may obtain such insurance coverage as it determines is reasonably necessary and appropriate with respect to real and personal property which is or may become ASSC Trust Assets, if any.

4.6     Preservation of Privilege and Defenses. In connection with the rights, claims and Causes of Action that constitute ASSC Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the ASSC Trust shall vest in the ASSC Trustee (in its capacity as such).

4.7     Confidentiality.  The ASSC Trustee shall at all times hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the ASSC Trust Assets relate or of which the ASSC Trustee has become aware in its capacity as ASSC Trustee, except as otherwise required by law.

## ARTICLE V

## SUCCESSOR TRUSTEES

5.1     Removal.  Each of the ASSC Trustee and the Delaware Trustee may be removed for cause by the unanimous vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date action is taken.

5.2     Resignation.  Each of the ASSC Trustee and the Delaware Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Advisory Board. Such resignation shall become effective with respect to the ASSC Trustee on the later to occur of:  (a) the day specified in such notice, or (b) the appointment of a successor ASSC Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor ASSC Trustee by the Bankruptcy Court.  Such resignation shall

become effective with respect to the Delaware Trustee upon the appointment of a successor Delaware Trustee by the Trust Advisory Board, the acceptance by such successor of such appointment, and the approval of the successor Delaware Trustee by the Bankruptcy Court.  If a successor ASSC Trustee or Delaware Trustee, as applicable, is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the ASSC Trustee or the Delaware Trustee may petition the Bankruptcy Court for appropriate relief.

5.3     Appointment of Successor ASSC Trustee or Delaware Trustee.  In the event of the death (in the case of an ASSC Trustee that is a natural person), dissolution (in the case of an ASSC Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the ASSC Trustee or Delaware Trustee pursuant to Section 5.1 hereof, the Trust Advisory Board shall designate a successor ASSC Trustee or Delaware Trustee who shall be subject to the approval of the Bankruptcy Court.  Every successor ASSC Trustee or Delaware Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring ASSC Trustee or Delaware Trustee an instrument accepting the appointment under this ASSC Trust Agreement and agreeing to be bound thereto, and thereupon the successor ASSC Trustee or Delaware Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring ASSC Trustee or Delaware Trustee pursuant to this ASSC Trust Agreement and the Plan; provided, however, that a removed or resigning ASSC Trustee or Delaware Trustee shall, nevertheless, when requested in writing by the successor ASSC Trustee or Delaware Trustee, execute and deliver an instrument or instruments conveying and transferring, or confirming the conveyance and transfer, to such successor ASSC Trustee or Delaware Trustee under the ASSC Trust all the estates, properties, rights, powers and privileges of such predecessor ASSC Trustee or Delaware Trustee, as applicable.

**ARTICLE VI**

REPORTS TO ASSC TRUST BENEFICIARIES

6.1     Annual and Final Reports.  As soon as practicable after the end of each calendar year, and as soon as practicable upon termination of the ASSC Trust, the ASSC Trustee shall make available to each ASSC Trust Beneficiary appearing on its records as of the end of such period or such date of termination, and whose Allowed Claim has not been paid in full, a written report including:  (a) financial statements prepared in accordance with United States generally accepted accounting principles of the ASSC Trust for such period; (b) a description of any action taken by the ASSC Trustee in the performance of its duties that materially affects the ASSC Trust and of which notice has not previously been given to the ASSC Trust Beneficiaries; and (c) a description of the progress of converting ASSC Trust Assets to Cash and making distributions to the ASSC Trust Beneficiaries and any other material information relating to the ASSC Trust Assets and the administration of the ASSC Trust.  The ASSC Trustee shall also prepare and make available such additional reports regarding the ASSC Trust as are reasonably requested by the Trust Advisory Board from time to time.

**ARTICLE VII**

DISSOLUTION OF ASSC TRUST

7.1     Dissolution of ASSC Trust.

(a)     The ASSC Trust shall be dissolved at the earlier of (even if ASSC Trust Beneficiaries have not been paid in full) (i) all of the ASSC Trust Assets having been distributed pursuant to the Plan and this ASSC Trust Agreement, (ii) the ASSC Trustee determining, in its sole discretion, that the administration of the ASSC Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all distributions required to be made by the ASSC Trustee under the Plan and the ASSC Trust Agreement having been made; provided, however, that in no event shall the ASSC Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) months prior to the third anniversary (or at least six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed two (2) extensions, each extension not to exceed eighteen (18) months, and without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the ASSC Trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the ASSC Trust Assets.  If at any time the ASSC Trustee determines, in reliance upon such professionals as the ASSC Trustee may retain, that the expense of administering the ASSC Trust, including the making of a final distribution to the ASSC Trust Beneficiaries, is likely to exceed the value of the remaining ASSC Trust Assets, the ASSC Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the ASSC Trust, (ii) donate any balance to a charitable organization or a charitable trust that is not an Affiliate of the Debtor, the ASSC Trust, the ASSC Trustee, or any insider of any of the foregoing, and (iii) dissolve the ASSC Trust.

(b)     The ASSC Trustee shall not unduly prolong the duration of the ASSC Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute ASSC Trust Assets and to effect the distribution of the ASSC Trust Assets to the ASSC Trust Beneficiaries in accordance with the terms hereof and dissolve the ASSC Trust as soon as practicable.  Subject to Section 7.1(a) hereof, prior to or upon dissolution of the ASSC Trust, the ASSC Trust Assets will be distributed to the ASSC Trust Beneficiaries, pursuant to the provisions set forth in Section 3.7 hereof.  If any ASSC Trust Assets are not duly claimed, such ASSC Trust Assets will be redistributed pro rata to all other ASSC Trust Beneficiaries receiving ASSC Trust Assets pursuant to Section 3.7 hereof.

7.2     Winding Up of the Trust and Termination.  After the dissolution of the ASSC Trust and for the purpose of liquidating and winding up the affairs of the ASSC Trust, the ASSC Trustee shall continue to act as such until its duties have been fully performed.  Upon dissolution of the ASSC Trust, the ASSC Trustee shall retain for a period of two (2) years the books, records, lists of the ASSC Trust Beneficiaries, the register of ASSC Trust Beneficiaries and certificates and other documents and files which shall have been delivered to or created by the ASSC Trustee that were not already disposed of as provided in Section 3.5 hereof.  Subject to the consent of the Trust Advisory Board, at the ASSC Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the ASSC Trust; provided, however, that the ASSC Trustee shall seek approval of the Bankruptcy Court before disposing of any books and records that pertain to pending litigation to which either the Debtor or its current or former officer or directors are a

party.  Except as otherwise specifically provided herein, upon the winding up of the ASSC Trust, the ASSC Trustee shall have no further duties or obligations hereunder.

## ARTICLE VIII

### LIMITATIONS ON LIABILITY; INDEMNIFICATION

8.1     Liability of ASSC Trustee; Indemnification.  The ASSC Trustee or the individuals comprising the ASSC Trustee, and the ASSC Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the ASSC Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the ASSC Trustee's actions or inactions regarding the implementation or administration of this ASSC Trust Agreement, the ASSC Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the ASSC Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the ASSC Trust Assets or any applicable insurance coverage.  The ASSC Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The ASSC Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals regardless of whether such advice is provided in writing.  Notwithstanding the foregoing, the ASSC Trustee shall not be under any obligation to consult with its retained professionals, and its determination not to do so shall not result in the imposition of liability on the ASSC Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.2     Liability of Trust Advisory Board; Indemnification.  Each member of the Trust Advisory Board and each respective member's employees, officers, directors, agents, representatives, and professionals shall be held harmless and shall not be liable for actions taken or omitted in their capacity as such, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such member may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such member in respect of that member's or the Trust Advisory Board's actions or inactions regarding the implementation or administration of this ASSC Trust Agreement, the ASSC Trust or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of a member of the Trust Advisory Board (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the ASSC Trust Assets or any applicable

insurance coverage. The members of the Trust Advisory Board shall be entitled to rely, in good faith, on the advice of the Trust Advisory Board's retained professionals. Notwithstanding the foregoing, the members of the Trust Advisory Board shall not be under any obligation to consult with the Trust Advisory Board's retained professionals, and a determination not to do so shall not result in the imposition of liability on the Trust Advisory Board or its members unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

8.3     Reliance by ASSC Trustee and Trust Advisory Board.

(a)     Except as otherwise provided in Section 8.1 or Section 8.2 hereof, the ASSC Trustee and each member of the Trust Advisory Board may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by the ASSC Trustee or such member, as applicable, to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Except for those liabilities that are determined by Final Order to have arisen out of the intentional fraud, willful misconduct or gross negligence of the ASSC Trustee or a member of the Trust Advisory Board, as applicable, persons dealing with the ASSC Trustee or the Trust Advisory Board shall look only to the ASSC Trust Assets to satisfy any liability incurred by the ASSC Trustee or the Trust Advisory Board, as applicable, to such person in carrying out the terms of this ASSC Trust Agreement, and neither the ASSC Trustee, the Trust Advisory Board nor any of their designees, partners, affiliates, agents, employees, representatives, attorneys, or professionals shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

## ARTICLE IX

### AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  Any material provision of this ASSC Trust Agreement may be amended or waived by the ASSC Trustee with the consent of the Trust Advisory Board and the approval by the Bankruptcy Court.  Amendments to immaterial provisions to this ASSC Trust Agreement may be made as necessary, to clarify this ASSC Trust Agreement or enable the ASSC Trustee to effectuate the terms of this ASSC Trust Agreement, by the ASSC Trustee without Bankruptcy Court approval but subject to the consent of the Trust Advisory Board. Notwithstanding this Section 9.1, any amendments to this ASSC Trust Agreement shall not be inconsistent with the purpose and intention of the ASSC Trust to liquidate in an expeditious but orderly manner the ASSC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 3.1 hereof.  Notwithstanding the foregoing, no amendment to this ASSC Trust Agreement that would have an adverse effect on the Delaware Trustee shall be effective without the prior written consent of the Delaware Trustee, not to be unreasonably withheld.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1     Intention of Parties to Establish a Liquidating Trust for Tax Purposes.  This ASSC Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with this Section and, if necessary, this ASSC Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

10.2     Laws as to Construction.  This ASSC Trust Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to provisions, policies, or principles thereof governing conflict or choice of laws.

10.3     Severability.  If any provision of this ASSC Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this ASSC Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this ASSC Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.4     Notices.  Except as otherwise provided herein, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by telecopy addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 10.4):

If to the ASSC Trustee:

FTI Consulting, Inc.
3 Times Square, 10th Floor
New York, New York 10036
Attn: Andrew Scruton
Fax: (212) 499-3636
E-mail: Andrew.Scruton@fticonsulting.com


If to the Debtor:

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, New York, 10153
Facsimile: 212-310-8007
Email:  Robert.Lemons@weil.com

If to an ASSC Trust Beneficiary:

To the name and address set forth on the registry
maintained by the ASSC Trustee.

If to the Trust Advisory Board, to each of:

Lapis Advisers, LP
1640 School Street
Moraga, CA  94556
Attn: Kjerstin Hatch
Fax: 415-376-6281
E-mail: khatch@lapisadvisers.com

      with a copy to

      Whitman L. Holt
      Klee, Tuchin, Bogdanoff & Stern LLP
      1999 Avenue of the Stars, 39th Floor
      Los Angeles, CA 90067
      Fax: 310-407-9090
      E-mail: wholt@ktbslaw.com


Stonehill Capital Management, LLC
885 Third Avenue, 30th Floor
New York, NY 10022
Attn: Michael Stern
E-mail: mstern@stonehillcap.com

      with a copy to

      Ira Dizengoff
      Akin Gump Strauss Hauer & Feld LLP
      One Bryant Park
      New York, NY  10036-6745
      Fax: 212-872-1002
      E-mail: idizengoff@akingump.com


and

Manewitz Weiker Associates, LLC
360 East 72nd Street, Suite A1401
New York, New York  10021
Attn: Sharon F. Manewitz
Email: Sharon@manewitzweiker.com

      with a copy to

      Brett Amron
      Bast Amron

Suntrust International Center
One Southeast Third Avenue Suite 1440
Miami, Florida 33131
Fax: 305-379-7905
E-mail: bamron@bastamron.com


If to the Delaware Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890-1625
Phone: 302-636-6395
Facsimile: 302-636-4149
Attn: Chris Slaybaugh


10.5    Headings.  The section headings contained in this ASSC Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this ASSC Trust Agreement or of any term or provision hereof.

10.6    Relationship to the Plan.  The principal purpose of this ASSC Trust Agreement is to aid in the implementation of the Plan and therefore this ASSC Trust Agreement incorporates the provisions of the Plan.  If any provisions of this ASSC Trust Agreement are found to conflict with the provisions of the Plan, the provisions of the Plan shall control except for inconsistencies or clarifications in furtherance of the treatment of the ASSC Trust as a liquidating trust for United States federal income tax purposes, in which case the provisions of this ASSC Trust Agreement shall control.


## ARTICLE XI

## DELAWARE TRUSTEE

Section 11.1    Delaware Trustee.  The Delaware Trustee is appointed to serve as the trustee of ASSC Trust in the State of Delaware.  Notwithstanding any provision in this ASSC Trust Agreement to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to the execution and delivery of all documents and certificates to form and maintain the existence of ASSC Trust.  Except for the purpose of the foregoing sentence, the Delaware Trustee shall not be deemed a trustee and shall have no management responsibilities or owe any fiduciary duties to ASSC Trust, the ASSC Trustee or any ASSC Trust Beneficiary.  It is understood and agreed that the duties and responsibilities of the Delaware Trustee shall be limited to accepting legal process served on ASSC Trust in the State of Delaware.

(a)    By the execution hereof, the Delaware Trustee accepts the trusts created in this Section 11.1.  Except as provided in this Section 11.1, the Delaware Trustee shall not have any

duty or liability with respect to the administration of ASSC Trust, the investment of ASSC Trust's property or the payment of dividends or other distributions of income or principal to the ASSC Trust Beneficiaries.

(b)     The Delaware Trustee shall not be liable for the acts or omissions of the ASSC Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the ASSC Trustee or ASSC Trust under this ASSC Trust Agreement, the Plan or any related document.  The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, intentional fraud or gross negligence.  In particular, but not by way of limitation:

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made in good faith except to the extent that such error in judgment constitutes willful misconduct or gross negligence;

(ii)     No provision of this ASSC Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     Under no circumstance shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of ASSC Trust;

(iv)     The Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this ASSC Trust Agreement or for the due execution hereof by the other parties hereto;

(v)     The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the ASSC Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)     In furtherance of its duties hereunder, the Delaware Trustee (i) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and due care and (ii) may consult with counsel, accountants and other skilled persons to be selected in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted

in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii)    Except as expressly provided in this Section 11.1, in accepting and performing the trusts hereby created the Delaware Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this ASSC Trust Agreement shall look only to ASSC Trust's property for payment or satisfaction thereof.

(c)    The Delaware Trustee shall take such action or refrain from taking such action under this ASSC Trust Agreement as it may be directed in writing by the ASSC Trustee; provided however, that the Delaware Trustee shall not be required to take or refrain from taking any such action if it shall have determined in good faith, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or is contrary to the terms of this ASSC Trust Agreement. The Delaware Trustee is entitled to request instruction from the ASSC Trustee in connection with its duties hereunder. The Delaware Trustee shall not be liable to any Person in connection with any action or inaction taken in good faith in accordance with instruction of the ASSC Trustee.

(d)    The fees and expenses of the Delaware Trustee will be paid in accordance with Section 4.4(a) and (b) herein. The Delaware Trustee shall be entitled to resign in accordance with Section 5.2 herein.

Section 11.2    Liability of Delaware Trustee; Indemnification.    The Delaware Trustee and the Delaware Trustee's employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Delaware Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities in respect of that person's or entity's or the Delaware Trustee's actions or inactions regarding the implementation or administration of this ASSC Trust Agreement or the Plan or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Delaware Trustee (and the other parties entitled to indemnification under this section) to be indemnified, held harmless, or reimbursed shall be satisfied solely from the ASSC Trust Assets or any applicable insurance coverage.

Section 11.3    Merger or Consolidation of Delaware Trustee.    Any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without execution of filing of any paper or any further act on the part of any of the parties hereto, provided that such entity's status as successor of the Delaware Trustee does not result in the

creation of any conflict of interest between such entity, in its role as Delaware Trustee, and the Trust arising out of claims, rights or causes of actions, suits, and proceedings, whether in law or in equity, against such entity that have been transferred to the Trust as part of the ASCC Trust Assets.

Section 11.4.   <u>Miscellaneous</u>.  To the extent that provisions of this ASSC Trust Agreement regarding the Delaware Trustee are made applicable to the Delaware Trustee, and conflict with the provisions of this Article XI, the provisions of this Article XI shall prevail.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this ASSC Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTOR:

**ADVANTA SHARED SERVICES CORP.**

By:_____

      Name:
      Title:

ASSC TRUSTEE:

**FTI CONSULTING, INC.**
**solely as ASSC Trustee**

By: _____

      Name:
      Title:

DELAWARE TRUSTEE:

**WILMINGTON TRUST COMPANY,**
**solely as Delaware Trustee**

By: _____

      Name:
      Title:

<u>**Annex A**</u>
**Trust Advisory Board**

Manewitz Weiker Associates, LLC

Stonehill Capital Management, LLC

Lapis Advisers, LP

**Schedule 8.1**

**(Executory Contracts and Unexpired Leases to be Assumed)**

# SCHEDULE 8.1

## Executory Contracts and Unexpired Leases to be Assumed

| Counterparty | Advanta Party | Assuming Advanta Entity | Contract Name | Description of Contract | Effective Date of Contract | Cure Amount |
|---|---|---|---|---|---|---|
| Aetna | Advanta Corp. | Reorganized Advanta | Notification and Collection Services Agreement | Administration of COBRA coverage | 3/1/1998 | $0.00 |
| Ceridian Corporation | Advanta Corp. | Reorganized Advanta | Application for Services | Payroll Services | 10/21/2009 | $0.00 |
| Ceridian Corporation | Advanta Shared Services Corp. | Reorganized Advanta | Application for Services | Payroll Services | 10/21/2009 | $0.00 |
| Ceridian Corporation | Advanta Corp. | Reorganized Advanta | Agreement for Products and Services | Tax processing services and check print and image services | 11/29/2007 | $0.00 |
| Cintas Corporation | Advanta Corp. | AC Trust | Agreement | Shredding services | 1/1/2006 | $ 795.56 |
| Clark Bardes, Inc | Advanta Corp. | AC Trust | Service and Administration Agreement | Company owned life insurance plan administrative services | 12/1/1994 | $0.00 |
| Cor-O-Van | Advanta Corp. | AC Trust | Agreement for Services | Offsite storage services | 6/11/2001 | $7,987.92 |
| CSC Corporate Domains, Inc. | Advanta Shared Services Corp. | AC Trust | Registration Services Agreement | Domain registration services. | 6/13/2002 | $0.00 |
| DocuSafe | Advanta Corp. | AC Trust | Storage and Service Agreement | Storage services. | 5/1/2000 | $5,704.90 |
| Economic Analysis Group, LTD | Advanta Corp. | AC Trust | Case Track Software License Agreement | Matter management system | 10/8/2001 | $0.00 |
| Fleet Credit Card Holdings, Inc. / Bank Of America Corp. | Advanta Corp., Advanta Service Corp. | Reorganized Advanta and Advanta Service Corp. | Agreement Relating To Fleet Credit Card Services, L.P. | Agreement Relating To Fleet Credit Card Services, L.P. | 5/28/2004 | $0.00 |
| Fleet Credit Card Holdings, Inc. / Bank Of America Corp. | Advanta Corp. | Reorganized Advanta and Advanta Service Corp. | Mutual Release | Mutual release with respect to litigation disputes set forth in the Drop Down Agreement | 2/2/2005 | $0.00 |
| Fleet Credit Card Holdings, Inc. / Bank Of America Corp. | Advanta Corp. | Reorganized Advanta and Advanta Service Corp. | Limited Partnership Agreement | Partnership Agreement | 5/26/1998 | $0.00 |

| Counterparty | Advanta Party | Assuming Advanta Entity | Contract Name | Description of Contract | Effective Date of Contract | Cure Amount |
|---|---|---|---|---|---|---|
| Fleet Credit Card Holdings, Inc. / Bank Of America Corp. | Advanta Corp. | Reorganized Advanta and Advanta Service Corp. | Contribution Agreement | Contribution by Advanta and Fleet Financial Group, Inc. of the assets and liabilities of their respective consumer credit card businesses to Fleet Credit Card LLC | 10/28/1997 | $0.00 |
| Iron Mountain Information Management, Inc. | Advanta Corp. | AC Trust | Archival Service and Storage Order Account P891 | Storage and Data Management Services | 1/1/1987 | $0.00 |
| Iron Mountain Information Management, Inc. | Advanta Corp. | AC Trust | Data Storage and Service Agreement- Account 5642 | Storage and Data Management Services | 8/29/2001 | $5,659.10[1] |
| Iron Mountain Information Management, Inc. | Advanta Corp. | AC Trust | Data Storage and Service Agreement- Account 5641 | Storage and Data Management Services | 8/29/2001 | $246.95[2] |
| Mercer Health and Benefits | Advanta Corp. | Reorganized Advanta | Engagement Letter/Terms & Conditions | Compensation consulting services | 10/23/2007 | $0.00 |
| Moore Wallace North America, Inc. d/b/a RR Donnelley | Advanta Corp. | AC Trust | Products and Services Agreement | 1099 processing for the Note Program | 12/9/2004 | $0.00 |
| Netilla Networks, Inc. | Advanta Shared Services Corp. | AC Trust | End User License Agreement | Virtual office service | 2/12/2002 | $0.00 |
| Ricoh | Advanta Corp. | AC Trust | Order Agreement Contract No. 100-3000688-100 | Lease for copier in Conshohocken, PA | 5/01/2008 | $331.16 |
| Ricoh | Advanta Corp. | AC Trust | Order Agreement Contract No. 100-3001721-100 | Lease for copier in Conshohocken, PA | 5/01/2008 | $315.32 |
| Vertex Tax Technology Enterprises LLC | Advanta Corp. | Reorganized Advanta | Software License Agreement | Tax program used by Don Albert | 1/19/2005 | $0.00 |

[1] Iron Mountain Information Management, Inc. ("*Iron Mountain*") reserves the right to assert a claim for alleged amounts owed in January 2011 under account number 5642.

[2] Iron Mountain reserves the right to assert a claim for alleged amounts owed in January 2011 under account number 5641.

**Schedule 8.7**

**(Compensation and Benefit Plans to be Retained Through the Effective Date)**

SCHEDULE 8.7

**Compensation and Benefit Programs to Continue[1]**

| Name/ Program Provider | Type of Program | Post-Effective Date Advanta Entity to Continue Program |
| --- | --- | --- |
| Allied Administrators/ Delta Dental | Dental Coverage Provider | Reorganized Advanta |
| Charles Schwab Trust Company / Schwab Retirement Plan Services, Inc. | Schwab Defined Contribution Plan Services (ESOP) | Reorganized Advanta |
| Charles Schwab Trust Company / Schwab Retirement Plan Services, Inc. | Schwab Defined Contribution Plan Services (401k) | Reorganized Advanta |
| Independence Blue Cross | Group Contract for medical insurance – medical and hospital covered services and other benefits. (PPO Plan – Active employees) | Reorganized Advanta |
| Independence Blue Cross | Group Contract for medical insurance – medical and hospital covered services and other benefits. (PPO Plan – COBRA members) | Reorganized Advanta |
| Liberty Life Assurance Co of Boston (Liberty Mutual) | Full tax services for Disability Payments under the Group Disability Insurance Policy – Policy number: GF3-830-480704-01; Group Long Term Disability coverage/administration and Short Term | Reorganized Advanta |

[1] Any Compensation and Benefit Program listed hereon may be terminated by Reorganized Advanta or the applicable Trustee any time after the Effective Date; *provided, however*, that for eighteen (18) months after the Effective Date, neither Reorganized Advanta nor the Trustees may terminate the underlying group health plan under which former employees of the Debtors (and their covered beneficiaries) are receiving COBRA coverage (the "***COBRA Health Plan***"); and *provided further, however*, that notwithstanding its inclusion hereon and its continuation after the Effective Date, if any Compensation and Benefit Program listed hereon is ultimately terminated after the Effective Date (other than the COBRA Health Plan, which shall be deemed terminated as of the date it is actually terminated by the Trustee or Reorganized Advanta pursuant to its terms), such termination will be deemed and treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program will be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been terminated by the Debtors immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such terminated Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period after the Effective Date, and any such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date). Reorganized Advanta or the applicable Trustee will provide the parties to and beneficiaries of any such terminated Compensation and Benefit Program written notice of such termination and any such party or beneficiary may rely on any proof of Claim filed by such party or beneficiary in the Chapter 11 Cases with respect to any Claims under such terminated Compensation and Benefit Program and without prejudice to any right of such party or beneficiary to amend or modify such proof of Claim. In the event any Compensation and Benefit Program listed hereon is determined to be an executory contract, nothing hereon or in the Plan shall be deemed to constitute an assumption of such Compensation and Benefit Program, and the applicable Trustee shall have authority to reject such Compensation and Benefit Program upon delivery of a written notice of such rejection to all parties to and beneficiaries of such Compensation and Benefit Program, and such rejection will be deemed treated as if to have taken place immediately prior to the Effective Date such that any parties or beneficiaries to such Compensation and Benefit Program will be in the same position with respect to any potential Claims, rights or benefits as if the Compensation and Benefit Program had been rejected by the applicable Debtor immediately prior to the Effective Date (for the avoidance of doubt, the status of any Claim arising from such rejected Compensation and Benefit Program shall not be improved, disadvantaged, or otherwise modified by virtue of the maintenance of the applicable Compensation and Benefit Program for any period after the Effective Date, and any such Claim shall not be entitled to administrative expense status under section 503 of the Bankruptcy Code as a result of the Compensation and Benefit Program having been continued after the Effective Date).

| Name/ Program Provider | Type of Program | Post-Effective Date Advanta Entity to Continue Program |
|---|---|---|
| | Disability administration. | |
| Liberty Life Assurance Co of Boston (Liberty Mutual) | Life Insurance Coverage:<br>- Basic Life Insurance<br>- Dependent Life Insurance<br>- Supplemental Life Insurance | Reorganized Advanta |
| Vision Benefits of America | Vision Plan Provider | Reorganized Advanta |
| CNA | Workers Compensation | Reorganized Advanta |

| Name/Agreement | Post-Effective Date Advanta Entity to Continue Program |
|---|---|
| Split Dollar Insurance Agreements and Collateral Assignment Agreements relating to the following insurance policies:<br>**Policies on the Life of Dennis Alter:**<br>• Pacific Mutual Policies #1A2268494-0, #1A2268878-0, and #1A2283377-0<br>• Transamerica Occidental Life Policy #92485071<br>• John Hancock Policy #95 451 010<br>**Policies on the Lives of Dennis Alter and Gisela Alter:**<br>• John Hancock Policy #80041262<br>• The Prudential Policy #79 823 743<br>**Policies on the Life of William Rosoff:**<br>• Guardian Policies #3613225, #3847854, and #3843968 | AC Trust |
| John Hancock Policy #95 451 010 (on the life of Dennis Alter) and any endorsement relating thereto | AC Trust |
| The Advanta Corp. Supplemental Executive Insurance Program | To be determined as between Reorganized Advanta and/or the AC Trust as determined by the AC Trustee and Reorganized Advanta |

US_ACTIVE:\43598745\08\78221.0007

**Schedule 12.10**

**(List of Proofs of Claims Which Are Disallowed Because They Are Duplicative of the Proofs of Claims Already Filed by the Applicable Indenture Trustee)**

## Schedule 12.10

### List of Proofs of Claims Which are Disallowed Because They Are Duplicative
### of the Proofs of Claims Already Filed by the Applicable Indenture Trustee

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 386 | 12TH STREET GYM, INC | $22,182.05 |
| 550 | 327 EAST 84TH STREET INC | $15,943.76 |
| 1016 | A & H ROOFING & SIDING INC. | $187.57 |
| 518 | ABAD, MARLINDA I | $5,732.25 |
| 716 | ABRAMS, JOSEPH J | $7,922.43 |
| 2183 | ACKERMAN, MILDRED | $26,408.14 |
| 1933 | ACTION SIGN COMPANY INC | $56,187.88 |
| 870 | ADAMAVAGE, FRANCIS J | $274,237.92 |
| 2050 | ADAMSONS, FRIDA | $549,757.59 |
| 1506 | ADDIS, DAVID J | $10,233.10 |
| 1507 | ADDIS, DAVID J | $6,308.46 |
| 1735 | AGNOR, SHIRLEY A | $41,884.29 |
| 1814 | AHUMADA FAMILY TRUST DTD 1/28/02 | $8,671.28 |
| 1815 | AHUMADA, VIBEKE | $8,230.97 |
| 1816 | AHUMADA, VIBEKE | $6,210.97 |
| 999 | AINSCOUGH, LILLIE C | $60,330.21 |
| 680 | ALAN & VERLA JONES | $141,827.29 |
| 98 | ALBERTSON, GEORGE | $5,101.37 |
| 356 | ALBERTSON, GEORGE | $5,101.37 |
| 2047 | ALBRECHT, JAMES | $4,250.43 |
| 1229 | ALLEN, BRUCE L | $10,331.71 |
| 655 | ALLOWAY, RICHARD C | $115,435.90 |
| 1546 | ALLSHOUSE, ELEANOR S | $17,463.66 |
| 1802 | ALVORD, BRUCE J | $14,691.81 |
| 2174 | AMBULA, FRANCIS O | $18,902.43 |
| 839 | AMERICAN LEGION POST 10 | $10,272.39 |
| 840 | AMERICAN LEGION POST 10 | $10,514.01 |
| 2520 | AMSLER, M ROBERT | $97,451.65 |
| 1284 | ANDERSON, STEVEN L | $11,393.34 |
| 986 | ANDRADE, ROWEN S | $5,630.00 |
| 608 | ANDRLA, BARBARA | $102,655.70* |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1405 | ANGERMANN, MARCIA | $230,708.00 |
| 1393 | ANMUTH, BRIAN C | $7,150.52 |
| 1198 | ANTISAVAGE, ISABELLA | $23,849.41 |
| 1237 | ANTOLIK, CAMILLE R | $31,846.03 |
| 1845 | ANTONINI, RUDOLPH J | $80,359.79 |
| 1612 | ANYA M SCHULTZ IRREVOCABLE TRUST | $22,471.08 |
| 148 | ARCHILEI, ALAN | $5,033.17 |
| 2300 | ARGIANAS, HARRY J | $50,369.12 |
| 1245 | ARISIAN, RICHARD | $21,182.77 |
| 503 | ARMSTRONG, NADINE D | $22,219.95 |
| 614 | ARNOLD, ARTHUR E | $11,116.24 |
| 1740 | ASH, BONNIE S | $10,012.47 |
| 1853 | ASHCRAFT, HAZEL W | $11,923.98 |
| 1249 | ASHCROFT, EDNA MAE | $10,256.16 |
| 1251 | ASHCROFT, EDNA MAE | $10,095.46 |
| 785 | ASHMORE, MARY | $5,480.87 |
| 451 | ASHOK K HASIJA & SHIKHA HASIJA | $38,221.37 |
| 1343 | ASQUITH, KENNETH E | $82,284.65 |
| 560 | ASSENHEIMER, JUDITH A | $10,565.52 |
| 1014 | AXINN, DORIS S. POD | $20,028.83 |
| 105 | AYLOR, RICHARD A | $10,000.00 |
| 554 | AYOUB, RAYMOND G OR AYOUB, MARGARET S | $42,789.00 |
| 72 | AYYASWAMY, PORTONOVO S | $50,000.00 |
| 101 | AYYASWAMY, PORTONOVO S | $50,000.00 |
| 1040 | BAIOTTO, W PAUL | $35,000.00 |
| 2083 | BAKER JR, RALPH E | UNLIQUIDATED |
| 2080 | BAKER, CAROLYN H | UNLIQUIDATED |
| 2081 | BAKER, CAROLYN H | UNLIQUIDATED |
| 2082 | BAKER, CAROLYN H | $26,479.40* |
| 1246 | BALAN, FLORENCE | $25,069.13 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 1342 | BALAN, FLORENCE | $25,172.18 | | LESLIE | |
| 1457 | BALAN, FLORENCE | $25,069.42 | 1139 | BELLEW SR, LAWRENCE J & BELLEW, LESLIE B | $15,000.00 |
| 1460 | BALAN, FLORENCE | $50,288.67 | | | |
| 397 | BALBACK, RICHARD L | $173,963.00 | 455 | BERGER, STANLEY | $5,844.82 |
| 353 | BANK, RICHARD D | $20,129.91 | 2292 | BERGMAN, ROBERT C | $65,615.62 |
| 1586 | BANK, RUTH C | $5,190.18 | 2293 | BERGMAN, ROBERT C | $65,615.62 |
| 2265 | BANNISTER, JEFFREY | $12,116.78 | 42 | BERKE, DIANE AND WELCH, GERALD F | $25,000.00 |
| 2266 | BANNISTER, KEVIN | $17,603.42 | 660 | BERLANGA, VIRGILIO G | $5,289.74 |
| 2548 | BARBIERI, AUGUST J | $50,297.00 | 1358 | BERNATH, BERTHA M | $40,044.59 |
| 2470 | BARCHIESI, CHAD A | $7,343.85 | 1359 | BERNATH, ROBERT R | $38,347.58 |
| 2469 | BARCHIESI, RITA C | $88,855.33 | 1932 | BERNHARDT, EVALYN | $191,016.53 |
| 2468 | BARCHIESI, TODD M | $7,343.85 | 1660 | BERNHARDT, FREDERICK S | $21,187.36 |
| 2453 | BARNES, KRISTINE | $5,200.00 | 2395 | BERNHARDT, HAROLD F | $142,691.00 |
| 2452 | BARNES, NANCY R | $6,169.10 | 759 | BERNSTEIN, BRETT | $17,794.76 |
| 1240 | BARONE, MARCIA | $8,419.66 | 760 | BERNSTEIN, BRETT | $17,794.76 |
| 1213 | BARRACLOUGH, MARYBETH | $14,905.61 | 758 | BERNSTEIN, TODD R | $47,055.77 |
| 1756 | BARRERA, ISABELA A | $9,246.20 | 2496 | BERTA, KORNEL | $147,525.13 |
| 370 | BARRERA, SALVATORE | $55,990.79 | 1067 | BEZZANT MARITAL TRUST | $35,000.00* |
| 152 | BARRY UNITED METHODIST | $11,158.35 | 2243 | BIANCO, ANTHONY A | $67,149.56 |
| 387 | BASEHORE, DONALD E | $90,000.00 | 159 | BIDDLE, DEBORAH BERMAN | $159,335.25 |
| 625 | BATTILANA, ROMEO A | $19,235.82 | 2889 | BIEBER, LESTER G | $15,000.00* |
| 935 | BATTLE, JOHNNIE L | $10,040.32 | 1726 | BIECKER, WAYNE E | $175,409.71 |
| 2493 | BAUER, MAGDALENE F | $26,457.05 | 1566 | BILLIG SR, DONALD B & BILLIG, ELEANOR A | $55,319.79 |
| 838 | BAUM, DORIS A | $33,297.74 | | | |
| 728 | BAUMAN, DONALD S | $66,656.00 | 1592 | BILLS, JAMES L | UNLIQUIDATED |
| 1052 | BAUMAN, JR., WILLIAM E | $30,968.69 | 1593 | BILLS, JAMES L | UNLIQUIDATED |
| 1180 | BECK, EMILY W | $6,713.73 | 2572 | BILLS, JAMES L | $145,000.00 |
| 474 | BECK, GEORGE T | $233.82 | 904 | BINNS, CYRIL | $127,721.71 |
| 2071 | BECK, PATRICIA | $27,575.38 | 2166 | BIRKMIRE, BRIAN D | $1,140.11 |
| 2104 | BECKER, EDITH | $70,000.00* | 1658 | BISHAYEE, DR SUBAL | $24,793.04 |
| 421 | BECKER, WALTER L | $20,000.00 | 1363 | BLOCK, HARRIETTE | $70,763.85 |
| 2894 | BELL, BENJAMIN | $11,262.36 | 2549 | BLOOM MARCUS, MYRNA S | UNLIQUIDATED |
| 1362 | BELL, CARMA R | $31,695.65 | 1779 | BOFINGER, HARRY W | $11,050.92 |
| 912 | BELL, MERLE M | $32,883.75 | 1780 | BOFINGER, HARRY W & BOFINGER, MILDRED M | $21,234.16 |
| 1553 | BELL, WALTER J & BELL, MARY ELLEN | $20,717.33 | | | |
| 1171 | BELLESTRI, GRACE ELEANOR | $32,492.19 | 2501 | BOGART, WILLIAM E AND BOGART, MARIE | $13,021.61 |
| 226 | BELLEW SR, LAWRENCE J & BELLEW, | $15,000.00 | 1292 | BOGATY, JAMES A | $58,842.82 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 1408 | BONHOMME, IRLANDE | $26,990.15 | 815 | BROMAN, L. ERIC | $25,969.22 |
| 2524 | BORAN, BRIAN D | $6,250.96 | 1838 | BROOKS, STEVAN | $8,458.70 |
| 1050 | BORDAS, JOHN | $21,500.00 | 1987 | BROTHERS, DORIS R | $139,944.44 |
| 1054 | BORDAS, JOHN | $21,500.00 | 1418 | BROWN, ANNE K | $25,180.57 |
| 547 | BORDMAN, ROBERTA | $10,546.42 | 2118 | BROWN, FLORENCE G | $16,545.35 |
| 16 | BOROCHIN, NATALIA & BOROCHIN, EUGENE | $58,664.98 | 993 | BROWN, RAYMOND L | $14,719.04 |
| | | | 745 | BROWNING, ERNIE E | $7,200.00 |
| 1860 | BOROCHIN, NATALIA & BOROCHIN, EUGENE | $58,664.98 | 746 | BROWNING, ERNIE E | $8,243.70 |
| | | | 744 | BROWNING, LINDA M | $10,006.50 |
| 898 | BOSCO, WANDA L | $100,340.00 | 1068 | BRUCE, BARBARA PORTNER | $9,586.17 |
| 800 | BOSTIC, LINDA S | $6,000.00 | 1922 | BRUNS, ROBERT L | $19,436.03 |
| 1165 | BOWER, JUDY C | $30,133.83 | 1001 | BRYAN LIVING TRUST | $30,000.00* |
| 2000 | BOWER, SANDRA S | $40,000.00* | 1533 | BUCCI, MARIAN J | $38,000.00 |
| 976 | BOWERS, RICHARD P | $1,034.40 | 1605 | BUCHSBAUM, RITA E | $111,881.08* |
| 997 | BOWERS, RICHARD P | $131,278.57 | 192 | BUERGER, ANNA | $55,890.96 |
| 485 | BOWERS, WILLIAM | $5,000.00 | 195 | BUERGER, ANNA | $7,133.53 |
| 1155 | BOYD, NELWYN E | $46,719.45 | 199 | BUERGER, NICHOLAS | $46,882.82 |
| 2376 | BRADLEY L STOKER | $6,400.64 | 194 | BUERGER, NICHOLAS & BUERGER, ANNA | $5,571.59 |
| 24 | BRELSFORD, GREGG B | $10,364.13* | | | |
| 1372 | BREZNITSKY, JAMES P | $31,777.33 | 465 | BUERGER, PETER | $203,761.66 |
| 1373 | BREZNITSKY, JAMES P OR | $11,036.87 | 533 | BUFFINGTON, EUGENE E | $5,446.35 |
| 657 | BRIDE, KATHRYN A | $50,261.50 | 534 | BUFFINGTON, EUGENE E | $5,445.69 |
| 1500 | BRIDGE, EDNA S | $18,000.00 | 65 | BULLEN, PATRICIA E | $5,211.11 |
| 1514 | BRIDGE, EDNA S | $18,000.00 | 682 | BUNTRU, GUENTER D | $67,441.34 |
| 1501 | BRIDGE, EDWARD K | $35,000.00 | 1641 | BUNTRU, GUENTER D | $67,940.80 |
| 1502 | BRIDGE, EDWARD K | $100,131.51 | 1712 | BURG, PHILIP C | $77,201.53 |
| 1503 | BRIDGE, EDWARD K | $40,000.00 | 1711 | BURG, SHARON B | $19,980.43 |
| 1504 | BRIDGE, EDWARD K | $135,000.00 | 542 | BURNS JR, ALBERT C | $27,919.04 |
| 1505 | BRIDGE, EDWARD K | $25,000.00 | 667 | BURNS, EDWARD B | $31,277.97 |
| 1515 | BRIDGE, EDWARD K | $100,131.51 | 2462 | BURRIS, ROCHELL D | $32,678.57 |
| 1516 | BRIDGE, EDWARD K | $25,000.00 | 2127 | BURROUGHS, JOHN A | $37,565.85 |
| 1517 | BRIDGE, EDWARD K | $40,000.00 | 2128 | BURROUGHS, JOHN A | $1,242.43 |
| 1518 | BRIDGE, EDWARD K | $13,500.00 | 853 | BUSCHMAN, RALPH H | $70,109.62 |
| 1519 | BRIDGE, EDWARD K | $35,000.00 | 854 | BUSCHMAN, RALPH H. POD BUSCHMAN, ALICE E | $5,280.26 |
| 1632 | BRIEGEL, ELFRIEDE M | $49,165.23 | | | |
| 393 | BROCCO, MICHAEL A | $10,035.83 | 1178 | BUSH, MICHAEL J | $6,551.37 |
| 2414 | BRODKIN, PHOEBE L | $65,000.00 | 928 | BUTMAN, ALAN H | $18,773.99 |
| 1911 | BROKLOFF, RONALD D | $10,156.74 | 2478 | BUZGON, EDINA B | $145,736.28 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2479 | BUZGON, EDINA B | $145,736.28 |
| 2476 | BUZGON, HAROLD M | $145,736.28 |
| 2477 | BUZGON, HAROLD M | $145,736.28 |
| 80 | CALDERA LLC | $9,563.88 |
| 1872 | CALLAN, GLADYS | $14,976.22 |
| 1758 | CALLENDER, DERRICK | $300.00* |
| 2084 | CALVARY BAPTIST CHURCH | $14,053.39 |
| 647 | CAMBERWELL CONDO ASSOC. INC | $28,551.00 |
| 1966 | CAMPBELL, RITA A | $32,458.67 |
| 1967 | CAMPBELL, WILLIAM R | $42,435.65 |
| 1114 | CANALS, MATIAS E | $6,549.67 |
| 66 | CANTERA, MARYANN | $200,000.00 |
| 1777 | CANTERA, MARYANN | $190,259.79 |
| 1253 | CAPANO, FRANK X | $301,590.71 |
| 828 | CAPIRO, JEREMY P | $6,011.06 |
| 826 | CAPIRO, MANUEL | $417,334.38 |
| 827 | CAPIRO, MANUEL | $417,334.38 |
| 2556 | CAPPS, ELIZABETH M | $14,114.20 |
| 406 | CARAFA, LENA | $5,161.82 |
| 2378 | CAREY, HOWARD | $5,383.76 |
| 2539 | CARLISLE, ROBERT | $64,116.32 |
| 2533 | CARNEY, JAMES A / CARNEY, MARY D | $28,523.00 |
| 833 | CAROLA, REGINA M | $47,449.52 |
| 717 | CARP, IRA | $1,064.98 |
| 1303 | CARPENTER, ROBERT L | $17,127.07 |
| 526 | CARRICK, BARBARA J | $43,262.80 |
| 536 | CARRICK, ELIZABETH W | $60,946.81 |
| 1099 | CARROLL, RICHARD T | $71,928.46 |
| 1793 | CARROLL, RICHARD T | $71,928.45 |
| 218 | CARTLIDGE, MARILYN | $13,586.60 |
| 1218 | CARTLIDGE, MARILYN | $13,586.60 |
| 1574 | CASCIANI, AUDREY | $10,000.00 |
| 1970 | CASILE-GROSS, DIANE L | $15,866.95 |
| 2184 | CASTELLA, PAULETTE R | $11,873.46 |
| 611 | CASTIGLIONE, FRANCIS W | $37,356.64 |
| 617 | CASTIGLIONE, FRANCIS W | $110,455.31 |
| 1907 | CATALANO, JOHN | $20,000.00 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 39 | CATINELLA, JOSEPH A | $139.20 |
| 357 | CATINELLA, JOSEPH A | $279.74 |
| 38 | CATINELLA, PAUL F | $12,456.43 |
| 738 | CATINELLA, PAUL F | $25,131.00 |
| 1222 | CENEVIVA, JOSEPH F | $7,262.81 |
| 1374 | CERRITELLI, MATTHEW T | $13,684.75 |
| 2508 | CESPEDES, CARMEN | $29,296.77 |
| 1273 | CHAMBERS, PAULA Y | $14,000.00 |
| 2471 | CHANDLER, RUTH B | $20,155.09 |
| 2472 | CHANDLER, RUTH B | $10,064.96* |
| 996 | CHAPMAN, THOMAS L | $6,130.03 |
| 1953 | CHARLES S JR OR DORIS M DENNIS REV LIV | $26,925.01 |
| 1954 | CHARLES S JR OR DORIS M DENNIS REV LIV | $8,482.96 |
| 1955 | CHARLES S JR OR DORIS M DENNIS REV LIV | $5,655.48 |
| 1956 | CHARLES S JR OR DORIS M DENNIS REV LIV | $6,041.04 |
| 1957 | CHARLES S JR OR DORIS M DENNIS REV LIV | $6,745.53 |
| 426 | CHARLES, GEORGE OR EDWARDS, DELORES L | $10,000.00 |
| 766 | CHARLESTON, DON | $100,368.02 |
| 1496 | CHEN, RAYMOND D | $11,162.00 |
| 1497 | CHEN, RAYMOND D | $10,071.00 |
| 1313 | CHENARD, BARBARA A | $8,382.64 |
| 557 | CHISHOLM, ANN | $31,206.03 |
| 556 | CHISHOLM, ANN OR CHISHOLM JR, JAMES S. | $40,000.00 |
| 1242 | CHISTIAKOV, VLADIMIR | $21,985.00 |
| 905 | CHRAPOWICKI, STANLEY E | $80,000.00* |
| 1158 | CHRIST, PHILIP E | $5,906.26 |
| 1159 | CHRIST, PHILIP E | $218.86 |
| 1160 | CHRIST, PHILIP E | $5,954.06 |
| 1161 | CHRIST, PHILIP E | $6,128.77 |
| 1162 | CHRIST, PHILIP E | $6,162.74 |
| 1163 | CHRIST, PHILIP E | $5,913.66 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 102 | CHRISTENSEN, PAUL R & CANDICE L | $5,000.00 |
| 127 | CHRISTIANA PRESBYTERIAN CEMETERY INC | $14,837.29 |
| 788 | CHRISTOPHER, CYNTHIA J | $42,779.62 |
| 1205 | CIESIELKA, CHESTER POD CIESIELKA, WALTER | $30,000.00 |
| 1392 | CIKOT, DOROTHEA R | $30,807.09 |
| 1784 | CIPRIANO, MICHAEL L & CIPRIANO, LYNDA M | $53,034.52 |
| 1782 | CIPRIANO, MICHAEL OR | $39,044.69 |
| 1254 | CIRIGLIANO, BEVERLY J | $15,560.10 |
| 476 | CIRILIS, EUGENE | $23,596.07 |
| 1944 | CLARKSON, DOLORES M | $69,567.32 |
| 628 | CLAUSE, AMELIA F | $11,562.98 |
| 131 | CLAUSE, DENISE M | $15,910.00 |
| 1699 | CLAUSE, DENISE M & CLAUSE, MARIE F | $15,910.00 |
| 1700 | CLAUSE, DENISE M & CLAUSE, MARIE F | $15,910.00 |
| 629 | CLAUSE, J BARRY | $3,470.61 |
| 120 | CLAUSE, JOHN S | $26,028.10 |
| 581 | CLAUSE, JOHN S | $43,529.28 |
| 584 | CLAUSE, JOHN S | $26,028.10 |
| 122 | CLAUSE, MARIE F | $213,710.82 |
| 578 | CLAUSE, MARIE F | $26,028.10 |
| 579 | CLAUSE, MARIE F | $39,775.01 |
| 580 | CLAUSE, MARIE F | $39,775.01 |
| 583 | CLAUSE, MARIE F | $26,353.74 |
| 121 | CLAUSE, MARIE F / CLAUSE, JOHN S | $6,558.14 |
| 582 | CLAUSE, MARIE F / CLAUSE, JOHN S | $38,249.68 |
| 585 | CLAUSE, MARIE F / CLAUSE, JOHN S | $6,558.14 |
| 937 | CLAUSON, VERNON G | $695,867.86 |
| 1348 | CLIFFORD, THOMAS C | $10,635.08 |
| 1088 | COCCAGNA, CAROL B | $113,398.62 |
| 1731 | COCCAGNA, CAROL M | $35,151.71 |
| 2018 | COFFEY, MARY ELLEN | $5,195.68 |
| 2537 | COHEN, CARMEN R | $10,000.00 |
| 672 | COHEN, JOYCE B | $70,945.86 |
| 2536 | COHEN, MURRAY J | $5,000.00 |
| 671 | COHEN, RALPH E | $35,190.45 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 670 | COHEN, RALPH E. | $8,265.16 |
| 2887 | COLLINS, JENNY A & JOHN D | $6,882.00 |
| 427 | COMMERCIAL TRANSPORTATION INC | $108,184.37 |
| 1969 | CONDODINA, ALICE | $29,152.70 |
| 1968 | CONDODINA, ARTHUR G | $20,943.53 |
| 135 | CONKLIN, AUGUSTINE W | $11,172.03 |
| 927 | CONLON, MARY | $34,014.07 |
| 2482 | CONNORS, DONALD R | $11,827.23 |
| 339 | CONTE, ANTHONY ROBERT | $17,543.36 |
| 366 | CONTE, ANTHONY ROBERT | $64,010.09 |
| 2498 | COOPER, GERALD M | $634.63 |
| 2290 | CORINNE N. DEAN - ESTATE | $10,000.00 |
| 618 | CORRISTON JR, EDWARD J | $121,562.07 |
| 1634 | COULOMBE, GEORGETTE | $110,781.53 |
| 1467 | COWELL, ALLAN T | $63,937.23 |
| 1579 | COWELL, ALLAN T | $39,766.21 |
| 890 | COYLE, ANNE S | $24,710.69 |
| 189 | COYLE, GINNY LEE | $10,213.66 |
| 2114 | CRAWFORD, WILLIAM O | $5,303.61 |
| 463 | CREEK, MARY L | $21,900.04 |
| 1715 | CREIGHTON, HENRIETTA | $30,097.55 |
| 1714 | CREIGHTON, HENRIETTA A | $71,978.61 |
| 473 | CREW JR., WALTER L. OR | $30,000.00 |
| 472 | CREW, WALTER L | $30,000.00 |
| 2318 | CRISPINO JR, DANIEL JAMES | $6,478.30 |
| 2319 | CRISPINO, CAROLINE J | $11,073.89 |
| 2316 | CRISPINO, EUGENE | $197,549.07 |
| 2317 | CRISPINO, NICHOLAS EUGENE | $15,942.82 |
| 377 | CRITERION LANDHOLDINGS, LLC | $127.61 |
| 376 | CRITERION RESORT INVESTMENTS LLC | $126.96 |
| 2059 | CROSS, DANIEL PATRICK | $5,926.09 |
| 2058 | CROSS, JEANNE E | $212,505.34 |
| 2057 | CROSS, MONTE E | $121,561.20 |
| 2060 | CROSS, MONTE E | $32,084.37 |
| 1627 | CULNANE, CATHERINE | $11,264.97 |
| 2242 | CULNANE, JANE P | $11,191.57 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1946 | CULNANE, JOHN F | $36,479.49 |
| 1959 | CULNANE, MARY | $11,191.57 |
| 1290 | CUNNINGHAM, WARREN W | $154,614.43 |
| 1639 | CURLETT, MABEL H | $22,374.00 |
| 2448 | CURRY, MICHAEL G | $35,862.78 |
| 894 | CURRY, R LYNN | $13,802.02 |
| 1106 | CUTLER, STEPHEN | $2,617.71 |
| 962 | CYCYK SR., STEPHEN / CYCYK, EDITH | $45,397.93 |
| 79 | DAGNEAU, ROBERT E OR DAGNEAU, IRENE | $5,000.00 |
| 1128 | DAMIANO, ELAINE Z | $19,339.94 |
| 110 | DANIEL, LEWIS S | $12,000.00 |
| 1385 | DANIEL, LEWIS S | $12,395.33 |
| 492 | DANNY WELLS & ASSOCIATES INC | $257.82 |
| 2582 | DARLINGTON, KATHARINE A | $33,971.98 |
| 930 | DARWAK, STANLEY R | $155,424.61 |
| 1827 | DAVENPORT, WENONA F | $10,000.00 |
| 1828 | DAVENPORT, WENONA F | $27,000.00 |
| 1829 | DAVENPORT, WENONA F OR DAVENPORT, WARREN | $27,000.00 |
| 1830 | DAVENPORT, WENONA F OR DAVENPORT, WARREN | $10,000.00 |
| 1831 | DAVENPORT, WENONA F OR DAVENPORT, WARREN | $10,000.00 |
| 1298 | DAVIES, CAMERON | $5,399.39 |
| 324 | DAVIS, ROBERT J | $68,562.32 |
| 325 | DAVIS, ROBERT J | $68,562.32 |
| 326 | DAVIS, ROBERT J POD DAVIS, MARILYN R | $68,562.32 |
| 71 | DE CARLO, ALBERT L | $3,902.63 |
| 621 | DE FAZIO, CARMAN J | $17,900.31 |
| 622 | DE FAZIO, CARMAN J | $8,160.60 |
| 1812 | DE SOUZA, COLIN F | $15,946.25 |
| 923 | DE STEFANO, COLETTE | $2,746.62 |
| 520 | DEFREHN, CHRISTINE C | $5,521.86 |
| 521 | DEFREHN, RICHARD A | $5,332.76 |
| 1272 | DEGGES, JOHN B | $7,318.38 |
| 136 | DEIDRE MILLER EXECUTOR | $129,343.60 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 696 | DEIDRE MILLER EXECUTOR | $158,018.22 |
| 1655 | DEL GRIPPO JR, GERARD A | $15,505.78 |
| 2073 | DEL NEGRO, LUCA | $6,331.94 |
| 17 | DELELLIS, ALBERT J | $7,639.23 |
| 1007 | DELELLIS, ALBERT J | $7,646.32 |
| 18 | DELELLIS, ALBERT J & DELELLIS, MAGDOLNA | $100,000.00 |
| 1006 | DELELLIS, ALBERT J & DELELLIS, MAGDOLNA | $100,000.00 |
| 1916 | DELIA, ANTHONY R | $273,233.01 |
| 2158 | DELIA, CHRISTOPHER M | $93,721.15 |
| 1915 | DELIA, JOHN M | $103.75 |
| 2156 | DELIA, JOHN M | $103.75 |
| 153 | DELOSKY, SAMUEL & DELOSKY, JEAN MARIE | $9,253.03 |
| 1549 | DELP, ERNEST | $26,465.23 |
| 457 | DEMARCO, RALPH | $5,000.00 |
| 1534 | DENBURG, LAWRENCE | $13,506.54 |
| 2142 | DEPIETRO, MARY C | $174,223.88 |
| 1650 | DEPIETRO, TIMOTHY J | $1,063.00 |
| 342 | DEREY, ALBERT F VARA | $19,156.26 |
| 2211 | DERIX, MARY ANN | $30,233.39 |
| 2357 | DESRAVINES, ROSE MARIE | $9,784.95 |
| 2355 | DESROCHERS, DONNA MARIE | $60,171.92 |
| 2356 | DESROCHERS, DONNA MARIE | $60,171.92 |
| 398 | DETRICK, KENNETH S | $15,000.00 |
| 1509 | DEUTSCH, LOIS E | $26,000.00 |
| 2217 | DEVIDO, JEFFREY JONATHAN | $254.39 |
| 2218 | DEVIDO, JOHN DAVID | $15,003.88 |
| 2220 | DEVIDO, JOHN P | $334.40 |
| 2219 | DEVIDO, MARY LOUISE | $406.06 |
| 1913 | DEVINE, DIANE G | $7,820.60 |
| 1097 | DEVINE, MARGARET J | $39,070.43 |
| 1107 | DEWEY, JOHN R | $6,000.00* |
| 1115 | DI AMORE, JUDITH ANN | $35,588.77 |
| 172 | DI CRESCENZO, NICHOLAS | $248,015.04 |
| 1020 | DI CRESCENZO, NICK | $248,015.04 |
| 951 | DI GIACOMO, ROBERT | $12,538.25 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 952 | DI GIACOMO, ROBERT LEE | $5,136.64 |
| 953 | DI GIACOMO, ROBERT LEE | $10,044.61 |
| 954 | DI GIACOMO, ROBERT LEE | $30,105.81 |
| 955 | DI GIACOMO, ROBERT LEE | $12,069.19 |
| 369 | DI MATTIA, RICHARD | $172,642.06 |
| 130 | DIAKOS, ELIAS MENELAOS & CLAUSE, DENISE | $5,631.40 |
| 1701 | DIAKOS, ELIAS MENELAOS & CLAUSE, DENISE | $5,631.40 |
| 1702 | DIAKOS, ELIAS MENELAOS & CLAUSE, DENISE | $5,631.40 |
| 2503 | DIAMOND, MARVIN C | $18,689.93 |
| 144 | DICHTER, LEE M | $130,863.02 |
| 1318 | DICK, JEREMY | $7,155.06 |
| 2117 | DIEHL, FRANCES E | $62,448.00 |
| 916 | DILLON, PETER | $5,336.00 |
| 713 | DIMATTESA, JUANITA R | $10,553.32 |
| 103 | DIMATTIA, RICHARD | $172,642.06* |
| 1138 | DIRENZO, MICHAEL & MARYELLEN | $150,000.00 |
| 109 | DIRENZO, MICHAEL AND MARYELLEN | $150,000.00 |
| 501 | DITCHKUS, WILLIAM | $8,124.04 |
| 2179 | DLC INVESTMENT PARTNERSHIP | $5,173.95 |
| 2893 | DOBY, SYLVIA I | $49,318.35 |
| 1062 | DOCS, ERNEST W | $1,822.00 |
| 6 | DOLAN, THEODORE M | $30,000.00 |
| 330 | DOLAN, THEODORE M | $30,217.78 |
| 1942 | DOLENTE, JOAN E | $29,071.82 |
| 47 | DOLORES MARIE KRYNOCK TRUST | $181,553.00 |
| 698 | DOLORES MARIE KRYNOCK TRUST | $181,553.00 |
| 1887 | DOMBROWSKI, MARILYN T | $5,043.78 |
| 1203 | DOMZALSKI, JOSEPHINE | $7,099.53 |
| 527 | DONALD D. GROWDEN OR | $31,125.00 |
| 2377 | DONATO, PHYLLIS C | $172,393.96 |
| 2386 | DONATO, PHYLLIS C | $170,791.98 |
| 2399 | DONOROVICH, ALICE S | $36,404.15 |
| 2398 | DONOROVICH, ALICE S OR | $18,707.40 |
| 2433 | DONOROVICH, ALICE S OR | $24,596.77 |
| 2434 | DONOROVICH, ALICE S OR | $22,516.40 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 319 | DORIS B. KINSLEY TRUSTEE | $93,189.03 |
| 656 | DOURIS, JOHN | $10,914.02 |
| 519 | DOVAN, SUSAN | $37,051.80 |
| 704 | DRISCOLL, JAMES D | $15,123.67 |
| 1025 | DROBNY, CHARLES J | $121,977.20 |
| 81 | DRUMHEISER, DOLORES L | $43,643.75 |
| 87 | DUGMA, SITARA RATHOD & RATHOD, KOKILA | $53,880.55 |
| 637 | DUGMA, SITARA RATHOD & RATHOD, KOKILA | $9,747.53 |
| 350 | DUMMLER, JOHN H | $15,102.76 |
| 720 | DUNCHOCK, DANIEL J | $26,541.33 |
| 2288 | DURHAM ASSOCIATES L.P. | $101,023.34 |
| 2289 | DURHAM ASSOCIATES LP | $16,429.88 |
| 2207 | DURHAM, FLOYD | $8,081.87 |
| 2287 | DURHAM, FLOYD | $12,122.80 |
| 1116 | DURRANT, ALONZO C | $6,257.56 |
| 331 | DUYK, DORIS M | $10,553.24 |
| 1243 | DWYER, DOROTHY M | $33,145.28 |
| 2298 | DWYER, THELMA W | $20,000.00 |
| 8 | EA ENTERPRISES PROFIT SHARING | $9,540.00 |
| 685 | EA ENTERPRISES PROFIT SHARING | $9,938.71 |
| 686 | EA ENTERPRISES PROFIT SHARING | $9,938.71 |
| 443 | EARL L & CAROLE S PECK FAMILY TRUST 2004 | $200,000.00* |
| 493 | EARL L & CAROLE S PECK FAMILY TRUST 2004 | $400,000.00* |
| 379 | EBERHARDT, FERDINAND Z. | $24,357.08 |
| 739 | EBRIGHT, T. CLAIRE | $120,452.59 |
| 395 | EDCORE, INC. | $5,376.16 |
| 1327 | EDGECOMB, CAROL | $50,172.89 |
| 1021 | EDMUND W. CARROLL REVOCABLE LIVING TRUST | $363,150.78 |
| 1023 | EDWARD A. PASTORE TTEE | $115,000.00 |
| 626 | EDWARD J. MOORE REVOCABLE | $102,115.19 |
| 1934 | EDWIN A MIAROWSKI TTEE | $65,347.91 |
| 143 | EDYTHE SAUNERS C/O DEIRDRE MILLER EXEC | $158,018.22 |

* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 2021 | EELLS, MARGARET R | $7,342.57 | 511 | FANTAUZZO, ANTHONY J | $28,273.35 |
| 604 | EGGERT, H WILLIAM | $4,755.34 | 907 | FANTAUZZO, DANIELA | $21,365.26 |
| 681 | EGGERT, H WILLIAM | $9,664.32 | 949 | FARR, CHARLES E | $20,978.55 |
| 1295 | EHRHARD, RICHARD A | $20,034.55 | 1056 | FARR, LEILANI E | $38,188.92 |
| 1296 | EHRHARD, RICHARD A | $10,016.62 | 1901 | FARR, MARIE L | $12,300.00 |
| 1055 | EICHENBAUM, MATTHEW | $5,000.00 | 1051 | FAULKNER, PHYLLIS | $10,000.00 |
| 1397 | EIDELSBURGER, MARTIN | $13,981.81 | 349 | FAY, STEVEN J | $40,000.00 |
| 1110 | EISELE, JANICE V | $5,000.00 | 433 | FAZZINO, JENNA R | $5,265.81 |
| 2474 | EISENSTARK, BARBARA | $7,522.67 | 432 | FAZZINO, PHILIP F | $201,103.58 |
| 323 | ELKO, MICHAEL S | $43,225.20 | 811 | FEDO, SUSAN M | $15,409.76 |
| 2110 | ELLEFSEN, SOPHIE T | $7,751.06 | 1896 | FELCOFF, DAVID | $100,000.00 |
| 2383 | ELLENBERGER, PEARL | $79,787.10 | 1396 | FERDER, SIDNEY | $5,294.30 |
| 462 | ELLISON, DIANA | $41,134.03 | 384 | FERGUSON, HELEN R | $15,138.03 |
| 852 | ENDERLE, DAWN E | $92,965.18 | 383 | FERGUSON, HELEN R. | $9,108.97 |
| 613 | ENNIS, MARGARET B | $57,897.48 | 278 | FERRARI, LOUIS C | $24,261.46 |
| 943 | ENRIGHT, ANNE R | $44,269.17 | 1046 | FEULNER, TERRANCE R | $44,894.96 |
| 2304 | EPPS, LESSIE POD EPPS, WILLIAM | $6,507.96 | 367 | FIELD, HENRY A | $6,049.56 |
| 447 | ERB, ANDREW C | $34,496.29 | 606 | FIGURACION, EUGENIO F. | $51,716.65* |
| 111 | ERISMAN, CHARLES E | $38,000.00* | 605 | FIGURACION, PAZ N | $368,786.97* |
| 892 | ERLICH, EILEEN V | $6,251.06 | 607 | FIGURACION, PAZ N. POD PIMENTAL, JOSE N. | $14,054.14* |
| 546 | ERNEST & ROBERTA BORDMAN REV LIV TR | $27,880.51 | 1630 | FILIPETTO, FRANK A | $18,440.39 |
| 1554 | ERNSBERGER, MARY E POD | $84,873.08 | 1426 | FINE, NORMAN | $6,842.38 |
| 2130 | ESTATE OF DOROTHY L MAGEE | $13,589.25 | 820 | FINK, ALVIN | $15,102.76 |
| 2131 | ESTATE OF DOROTHY L MAGEE | $13,698.15 | 1633 | FINK, HENRY C | $14,911.73 |
| 2132 | ESTATE OF DOROTHY L MAGEE | $12,957.40 | 920 | FIORE, JAQUELINE | $24,244.08 |
| 2133 | ESTATE OF DOROTHY L MAGEE | $13,227.45 | 934 | FIORELLA, DANIEL C | $5,668.40 |
| 1137 | ESTATE OF JOHN S BROWNE | $6,306.63* | 2543 | FIRM CONNECTIONS, LLC | $150,000.00* |
| 244 | ESTATE OF STANLEY J SCHOPPE | $31,265.67 | 162 | FISHGOLD, PAMELA | $25,594.51 |
| 2003 | ESTES, ALBERTA P | $62,812.32 | 163 | FISHGOLD, PAMELA | $25,594.51 |
| 1312 | EVANS, ROSE D | $25,176.32 | 174 | FISHGOLD, PAMELA | $25,594.51 |
| 1311 | EVANS, THOMAS J | $100,730.42 | 179 | FISHGOLD, PAMELA | $25,594.51 |
| 2484 | EWER, PAMELA F | $7,741.56 | 450 | FITE, ROBERT S | $520,973.92 |
| 2061 | EWING, DOROTHY H | $13,424.72 | 2039 | FITTIN, NANCY E | $38,178.03 |
| 438 | FAIR, SELWYN T | $2,787.04 | 2368 | FITZGERALD, KATHLEEN C | $9,541.48 |
| 437 | FAIR, TAMERA | $52,223.01 | 489 | FLANAGAN, WILLIAM C | $10,000.00 |
| 439 | FAIR, THELMA B | $85,503.50 | 154 | FLEISSNER, ELIZABETH A | $5,944.49 |

* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 155 | FLEISSNER, ELIZABETH A | $6,858.55 |
| 156 | FLEISSNER, ELIZABETH A | $6,664.61 |
| 1665 | FLEMING, WILLIAM E | $12,525.34 |
| 1666 | FLEMING, WILLIAM E | $5,014.88 |
| 1667 | FLEMING, WILLIAM E | $5,000.96 |
| 1668 | FLEMING, WILLIAM E | $5,011.19 |
| 1669 | FLEMING, WILLIAM E | $10,005.94 |
| 1670 | FLEMING, WILLIAM E | $10,024.14 |
| 1671 | FLEMING, WILLIAM E | $15,022.83 |
| 1672 | FLEMING, WILLIAM E | $5,018.40 |
| 1673 | FLEMING, WILLIAM E | $20,102.08 |
| 1674 | FLEMING, WILLIAM E | $15,012.95 |
| 1675 | FLEMING, WILLIAM E | $5,023.82 |
| 1676 | FLEMING, WILLIAM E | $10,012.31 |
| 1677 | FLEMING, WILLIAM E | $5,014.02 |
| 1678 | FLEMING, WILLIAM E | $5,009.20 |
| 1679 | FLEMING, WILLIAM E | $5,000.00 |
| 1680 | FLEMING, WILLIAM E | $20,062.23 |
| 1681 | FLEMING, WILLIAM E | $5,002.30 |
| 1682 | FLEMING, WILLIAM E | $10,026.00 |
| 1683 | FLEMING, WILLIAM E | $5,019.02 |
| 1684 | FLEMING, WILLIAM E | $5,010.21 |
| 1685 | FLEMING, WILLIAM E | $5,025.52 |
| 1686 | FLEMING, WILLIAM E | $5,016.80 |
| 1687 | FLEMING, WILLIAM E | $5,008.64 |
| 1688 | FLEMING, WILLIAM E | $30,139.42 |
| 1689 | FLEMING, WILLIAM E | $20,000.00 |
| 1690 | FLEMING, WILLIAM E | $30,212.21 |
| 1691 | FLEMING, WILLIAM E | $5,708.11 |
| 1692 | FLEMING, WILLIAM E | $5,034.42 |
| 1461 | FLETCHER, ROBERT | $59,546.09 |
| 2545 | FLETCHER, SCOTT | $100,452.81 |
| 321 | FLOCCO, BENITO A | $143,750.82 |
| 1789 | FLOWERS, WILEY J | $28,622.53 |
| 1921 | FLOWERS, WILEY J | $124,423.56 |
| 2286 | FLOYD DURHAM - ESTATE | $16,971.92 |
| 1604 | FLUKE, JANE C | $22,882.87 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1536 | FODOR-CORTESE, HELEN | $106,082.31 |
| 1447 | FOLEY, DAVID | $11,377.98 |
| 634 | FOLEY, RUTH J | $18,019.69 |
| 631 | FOLEY, WARREN C | $50,031.65 |
| 632 | FOLEY, WARREN C | $39,358.37 |
| 635 | FOLEY, WARREN C | $956.40 |
| 633 | FOLEY, WARREN C. | $50,069.37 |
| 224 | FONTROY I, DERRICK DALE | $100,000.00 |
| 563 | FONTROY I, DERRICK DALE | $20,021.10 |
| 1388 | FONTROY I, DERRICK DALE | $60,217.61 |
| 1767 | FONTROY I, DERRICK DALE | $20,021.10 |
| 564 | FONTROY I, DERRICK DALE OR | $10,052.06 |
| 1766 | FONTROY I, DERRICK DALE OR | $10,052.06 |
| 1761 | FONTROY I, DERRICK DALY | $60,217.61 |
| 562 | FONTROY, DERRICK DALE | $20,110.07 |
| 565 | FONTROY, DERRICK DALE | $10,034.10 |
| 1765 | FONTROY, DERRICK DALE | $10,034.10 |
| 1768 | FONTROY, DERRICK DALE | $20,110.07 |
| 112 | FORBES SR, JAMES W & FORBES, WANDA F | $30,000.00 |
| 113 | FORBES SR, JAMES W AND FORBES, WANDA F | $21,200.56 |
| 341 | FORD, NORMAN D | $40,000.00* |
| 697 | FORSTER, HUGO O | $20,300.66 |
| 164 | FORTNER, ELEANOR J | $15,600.90 |
| 165 | FORTNER, SANDRA J | $11,541.18 |
| 1618 | FORZANI, HUGO | $20,921.67 |
| 1894 | FORZANI, HUGO | $20,921.67 |
| 590 | FOSTER, JAMES E | $10,039.91* |
| 2297 | FOX LAKE VENTURES LLC | $43,778.08 |
| 1044 | FOX, THERESE P | $57,012.91 |
| 1465 | FRABLE, WILBUR B | $200,797.99* |
| 1432 | FRANK, CAROL L | $10,388.51 |
| 1433 | FRANK, CAROL L | $5,298.34 |
| 911 | FRANKLIN C. & RITA FREY REV LIV TRUST | $32,978.57 |
| 2475 | FRANKS, LUNETTIE | $9,026.73 |
| 973 | FRASIER, E LEWIS | $35,793.69 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 974 | FRASIER, E LEWIS | $23,120.06 | 707 | GEIDA, IRENE E | $13,376.32 |
| 2568 | FRASIER, E LEWIS | $68,482.29 | 1241 | GELMAN, ALAN | $6,174.92 |
| 972 | FRASIER, E. LEWIS | $9,568.54 | 1029 | GENELL JR, JOHN J OR GENELL, JULIE C | $10,000.00 |
| 193 | FRECH, WALTER C | $62,500.00 | | | |
| 1048 | FRED C AND CECELIA M HOPPER | $7,947.90 | 1026 | GENELL JR., JOHN J. OR GENELL, JULIE C. | $15,000.00 |
| 1049 | FRED C AND CECELIA M HOPPER LIV TRUST | $5,316.35 | | | |
| | | | 1027 | GENELL, JOHN J | $14,695.55 |
| 1166 | FREEMAN, KARLTON | $350,000.00 | 1028 | GENELL, JOHN J OR GENELL, JULIE C | $23,000.00 |
| 883 | FREEMAN, SPENCER | $5,000.00 | 2571 | GENNI, CARMINE OR | $180,204.32* |
| 1263 | FREEMAN, STERLING J | $5,936.24 | 2163 | GEORGE S MACNAUGHTON TTEE OR | $182,255.60 |
| 910 | FREY, FRANKLIN C | $7,679.48 | 946 | GEORGE, ANNA C | $116,813.34 |
| 1964 | FRITTS, LORI L | $237,987.03 | 1060 | GEORGE, ERNEST C | $38,276.93 |
| 506 | FRITZ, WILLIAM F | $6,027.49 | 771 | GERALD K. SCHOFIELD TRUST | $5,150.88 |
| 2064 | FULTZ, DONALD R | $102,996.72 | 1446 | GERSTEIN, SANDRA | $19,535.00 |
| 1918 | FURRER, SUZANNE B | $8,030.82 | 1477 | GERSTENBACHER, JOSEPH E | $10,009.75 |
| 616 | GAJEWSKI, JOSEPH POD STABA, LOREE BETH | $16,960.34 | 664 | GEYER, DANIELLE E | $11,954.52 |
| | | | 903 | GEYER, GEORGE | $35,270.98 |
| 392 | GALARIS, JAMES | $40,000.00 | 1854 | GIACHETTI, DOROTHY E | $7,353.00* |
| 2387 | GALBREATH, RICHARD, GALBREATH, BEVERLY J | $17,364.16 | 950 | GIANNINI, ANTOINETTE | $6,157.02 |
| | | | 479 | GIARRATANA, WILLIAM | $10,482.44 |
| 2388 | GALBREATH, RICHARD, GALBREATH, BEVERLY J | $16,408.88 | 394 | GIBSON, MARION E | $10,261.02 |
| | | | 1257 | GIBSON, MERI | $7,179.51 |
| 1199 | GALL, JAMES C | $54,885.68 | 2296 | GILBERT, THIRSTON D AND GILBERT, IDA G | $415,478.02 |
| 2168 | GALLUCCI, THOMAS L | $29,812.17 | | | |
| 2547 | GALOONIS, FRANCIS G | $15,760.57 | 624 | GILL, WALTER A | $7,838.00 |
| 391 | GAMBONE, BETTY | $5,269.00 | 678 | GILLESPIE, DANIEL M | $55,274.69 |
| 761 | GANG, ANDREA S | $29,039.18 | 498 | GILLESPIE, PAUL G | $51,232.02 |
| 762 | GANG, ANDREA S | $29,039.18 | 440 | GILLIGAN, JOYCE G | $10,507.44 |
| 1234 | GANG, CHARLOTTE E | $15,872.95 | 441 | GILLIGAN, JOYCE G | $10,000.00 |
| 1788 | GARBADE, MOLLIE ELLEN | $4,156.08 | 442 | GILLIGAN, JOYCE G | $6,316.99 |
| 368 | GARDNER, MAE | $15,683.83 | 444 | GILLIGAN, JOYCE G | $10,000.00 |
| 984 | GAVIERES, VIRGINIA A | $42,524.55 | 1547 | GILMORE, CINDY | $21,446.61 |
| 445 | GAVIN, ALICE | $8,597.02 | 5 | GILMOUR, HARRY | $10,000.00 |
| 446 | GAVIN, ALICE | $21,716.56 | 516 | GILMOUR, HARRY | $5,000.00 |
| 1642 | GAYMAN, EDWARD G | $23,488.18 | 774 | GILVEY, JOHN A | $12,086.87 |
| 1893 | GAYMAN, PHILIP E | $192,325.20 | 1202 | GINGRICH, KATHARINE L | $15,202.21 |
| 2161 | GEHER, SAGE | $1,246.63 | 722 | GLASS, DIETER K | $21,396.06 |
| 170 | GEIDA, IRENE E | $13,376.32 | 721 | GLASS, KONRAD | $15,872.60 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 723 | GLASS, MICHAEL K | $10,391.22 |
| 1247 | GOLDEN, GERALD T | $11,886.08 |
| 1622 | GOLDEN, JAMES F | $7,555.18 |
| 459 | GOLDINGER, F LESLIE | $9,026.62 |
| 2534 | GOLDNER, ANDREW L | $4,128.21 |
| 343 | GOLDSTEIN, JEFFREY M | $22,243.42 |
| 669 | GOLDSTEIN, WILLIAM | $27,747.71* |
| 856 | GONZALEZ, LLC. | $100,000.00 |
| 963 | GOODMAN, JOSEPH | $393,659.98 |
| 1594 | GRADY, DANIEL | $201,271.39 |
| 2585 | GRAFF, DOROTHY | $24,468.53 |
| 1144 | GRAMLICH, DOROTHY J | $8,469.48 |
| 1143 | GRAMLICH, DOROTHY J. | $50,232.57 |
| 862 | GRANT, IRVING | $50,505.46 |
| 415 | GRATZ, HOPE S | $10,041.58 |
| 1219 | GRAVER, JENNIE K | $6,833.97 |
| 2350 | GREEN IV, STEPHEN D | $25,698.26 |
| 2511 | GREEN, KAREN B | $3,111.00 |
| 2544 | GREENSTEIN, MARK | $500,000.00* |
| 1561 | GREER FAMILY REVOCABLE TRUST | $5,222.81 |
| 1072 | GREINER, GLENN A | $7,003.90 |
| 1073 | GREINER, GLENN A | $1,555.56 |
| 2031 | GRIER, RICHARD A | $73,214.20 |
| 1948 | GRING, M DOROTHY | $3,290.36 |
| 837 | GROSS, LINDA C | $5,079.99 |
| 1961 | GROVES, DANIEL H | $10,898.00 |
| 2112 | GRUMBLING, MARLENE F | $6,120.18 |
| 460 | GRUNZA, THOMAS W | $5,213.37 |
| 1649 | GUIDA, MARION | $36,400.00* |
| 595 | GULATI, MARGO I | $66,904.57 |
| 895 | GULEN, FRANCIS A | $5,000.00* |
| 1349 | GUTTMANN, A CARL | $12,190.74 |
| 757 | GUY R. NICKERSON REVOCABLE TRUST | $30,987.24 |
| 880 | HAEFNER, PAUL H | $126,924.27 |
| 1844 | HAGGERTY, TERESA | $8,612.56 |
| 906 | HAIG, GLENN R | $75,000.00 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1728 | HALITSKY, VICTOR J | $12,051.15 |
| 2899 | HALL, THOMAS | $40,209.00 |
| 9 | HALLMAN, JUDITH FISHER | $10,989.50 |
| 887 | HALPRIN, JUSTIN | $12,143.13 |
| 858 | HAMMER, DARLINE R | $5,148.58 |
| 859 | HAMMER, DARLINE R | $5,303.09 |
| 860 | HAMMER, DARLINE R | $10,744.71 |
| 867 | HAMMER, DARLINE R | $5,043.78 |
| 868 | HAMMER, DARLINE R | $5,307.67 |
| 251 | HANDLEY, GEORGE G | $122,414.36 |
| 2229 | HANFORD, GAIL M | $31,597.26 |
| 1810 | HANRAHAN, PATRICK J | $203,817.33 |
| 791 | HANSEN, B DALE | $105,609.11 |
| 790 | HANSEN, B. DALE | $26,389.15 |
| 792 | HANSEN, B. DALE POD HANSEN, STANFORD P. | $50,451.79 |
| 1619 | HARP, HAROLD I | $121,410.48 |
| 1451 | HARRIETT T SAMS TRUST UA MAY 11, 1989 | $11,048.90 |
| 430 | HARRIS, RALPH W | $5,043.78 |
| 900 | HARRISON, GLORIA | $5,500.00 |
| 901 | HARRISON, WILLIAM S | $12,579.90 |
| 902 | HARRISON, WILLIAM S | $18,079.90 |
| 515 | HARRY GILMOUR TTEE | $5,000.00 |
| 2371 | HART, RICHARD A | $8,716.94 |
| 1659 | HARTOPP, CYNTHIA M | $5,293.43 |
| 1086 | HARVEY, BRUCE | $21,317.71 |
| 1729 | HASENMAYER, DONALD I | $25,507.30 |
| 64 | HASLAM, BRENDA L | $7,345.08 |
| 977 | HATCH, ALBERT | $20,150.15 |
| 1444 | HAWKINS, RICHARD | $6,033.80 |
| 1611 | HAYLEY R SCHULTZ IRREVOCABLE TRUST | $22,471.08 |
| 1760 | HECK, MILDRED S | $80,778.38 |
| 2189 | HEGERICH, GRACE C | $133,652.99 |
| 1341 | HEIDLER, JAMES H | $10,767.85 |
| 1382 | HEIM, FLOYD | $176,585.82 |
| 549 | HEINZ, CYNTHIA | $43,561.13 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2903 | HEIST, GLORIA M | $5,571.97 |
| 2902 | HEIST, THERESA A | $12,935.29 |
| 2190 | HELMLINGER, FRIEDEL M | $160,000.00 |
| 2192 | HELMLINGER, JOSEPH | $30,000.00 |
| 2020 | HENRY C CHILCOTT, JR TRUST | $36,199.51 |
| 1832 | HEPLER, RAYMOND R | $59,378.40 |
| 2456 | HERB, JILL R | $2,766.27 |
| 2041 | HERRICK, JIM | $10,000.00 |
| 2481 | HERRMANN, BARBARA J | $10,560.58 |
| 345 | HESS, JEROME G | $5,155.49 |
| 2394 | HESS, R ERICH | $339,196.16 |
| 1697 | HETRICK, MARY L | $238,906.55 |
| 1698 | HETRICK, MARY L | $93,986.35 |
| 1204 | HEWITT, HILLARY L | $17,198.47 |
| 612 | HIECKE, WALTER | $16,889.24 |
| 1636 | HIGGINS, ANITA R | $5,896.30 |
| 1637 | HIGGINS, DONALD J | $11,623.81 |
| 2001 | HIGGINS, KEVIN B | $30,000.00* |
| 1843 | HIGGINS, KEVIN C | $49,454.91 |
| 2460 | HIGGINS, LINDA M. OR | $5,204.00 |
| 2322 | HILTWINE, ELVA | $16,338.74 |
| 2276 | HILTY, JAMES W | $38,154.94 |
| 1299 | HINDMAN, GEORGE R | $2,796.05 |
| 1277 | HINDMAN, JEAN M | $2,796.05 |
| 1572 | HINSHILLWOOD, WILLIAM J | $5,619.19 |
| 748 | HITCHENS, THOMAS A | $10,563.75 |
| 1744 | HOFFMAN, DENNIS M | $6,774.91 |
| 175 | HOFFMAN, LAURA | $115,272.00 |
| 1869 | HOFFMAN, LAURA | $16,522.59 |
| 1870 | HOFFMAN, LAURA | $21,441.37 |
| 1868 | HOFFMAN, LAURA J | $82,879.77 |
| 2558 | HOLBROOK, DAVID | $5,000.00 |
| 568 | HOLLEY, ROYCE | $48,722.49 |
| 1233 | HOLLY HAVEN LLC | $127,048.91 |
| 1463 | HOLMES, JEAN L | $13,379.93 |
| 933 | HOLTZ, WILBUR J | $53,503.26 |
| 1459 | HOLY TRINITY BETHLEHEM PRES | $6,401.02 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| | CHURCH | |
| 20 | HOOVER, SUSAN G | $22,231.57 |
| 835 | HOOVER, SUSAN G | $23,346.99 |
| 2554 | HOPF, GENYA | $8,922.80 |
| 1011 | HOPKINS, AGNES | $35,000.00 |
| 1005 | HOPKINS, DENNIS D | $60,000.00 |
| 1898 | HORAN, WILLIAM | $30,124.88 |
| 1899 | HORAN, WILLIAM | $9,326.29 |
| 945 | HORN, CLIFFORD C | $75,304.66* |
| 944 | HORN, CLIFFORD C. POD HORN, GLORIA J. | $75,304.66 |
| 988 | HORNE, KENNETH D | $28,311.86 |
| 652 | HORWITZ, IRVING | $29,000.00 |
| 1293 | HOSIE, JOHN J | $374,984.55 |
| 187 | HOUGHTON, MILDRED P | $30,184.16 |
| 737 | HOWLETT, WILLIAM H | $55,962.22 |
| 134 | HOZLOCK, JEAN L & MALINAUSKAS, KATHY J | $40,883.80 |
| 1030 | HOZLOCK, JEAN L & MALINAUSKAS, KATHY J | $41,180.58 |
| 864 | HSUEH, CHIA Y | $28,738.96* |
| 1125 | HUDAK JR, PETER OR HUDAK, LINDA E | $25,000.00 |
| 1646 | HUDAK, DOROTHY | $9,483.50 |
| 215 | HUDSON, WENDY | $7,448.61 |
| 10 | HUEY, KERRY | $100,000.00 |
| 188 | HUFFMAN, LAURA | $115,272.00 |
| 886 | HUGHES, DONALD | $20,094.42 |
| 11 | HUGHES, MERRITT E | $152,819.80 |
| 2328 | HULL, MARGARET D | $12,152.00 |
| 178 | HUMMEL, EMILY F | $84,404.20 |
| 1471 | HUNTER, KATHERINE M | $10,680.26 |
| 1472 | HUNTER, KATHERINE M | $5,276.62 |
| 1498 | HUNTER, KATHERINE M | $5,276.62 |
| 1499 | HUNTER, KATHERINE M | $10,680.26 |
| 196 | HURD, DAVID L OR HURD, KARLA J | $180,808.06 |
| 987 | HURWITZ, GERTRUDE | $30,191.96 |
| 1871 | HUSTON, CAROL E | $159,998.77 |
| 1909 | HUTCHINSON JR, MILTON T | $13,077.72 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1908 | HUTCHINSON, JANICE D | $5,485.31 |
| 2150 | HWA, STEVE | $512.40 |
| 2465 | HYER, ROBERT | $18,009.09 |
| 994 | HYLANDS, BLANCHE E | $40,679.24 |
| 777 | HYLANDS, DEBORAH A | $21,844.78 |
| 124 | IANNELLI, OLGA | $9,771.56 |
| 711 | IANNELLI, OLGA | $9,771.56 |
| 712 | IANNELLI, OLGA | $9,771.56 |
| 2046 | ICE, MURIEL M | $5,006.04 |
| 1859 | IN TRUST FOR GINNY LEE COYLE, | $10,213.66 |
| 797 | INC, DAVID L SCOTT | $35,624.66 |
| 2392 | INGLE, AMANDA | $13,838.54 |
| 2391 | INGLE, EDWARD | $29,543.23 |
| 755 | INTELISANO, PHILIP C | $35,683.03 |
| 1568 | INTERRANTE, ELAINE | $16,764.90 |
| 1104 | IRONS, SANDRA R | $36,014.79 |
| 1105 | IRONS, SANDRA R | $9,509.48 |
| 1790 | JABS, ROBERT | $5,149.73 |
| 2268 | JACKO, JOSEPH F | $5,300.00* |
| 747 | JACKSON, HAROLD S | $18,036.80 |
| 2584 | JACLIN LLC | $50,071.95 |
| 1892 | JAMBRO, R D | $23,734.48 |
| 467 | JAMES F MILLER TRUSTEE | $8,732.30 |
| 1531 | JANICE TYLER-BAYLY REVOCABLE TRUST | $29,004.65 |
| 1657 | JANKOWSKI, RAYMOND J | $6,190.74 |
| 297 | JAQUAY, KATRINA | $8,025.36 |
| 2888 | JAQUAY, KATRINA | $8,025.36 |
| 2246 | JARCYNSKI, RUTH A | $31,785.40 |
| 1992 | JARKOWSKY, KLOTHILDA E | $10,942.67 |
| 921 | JARRETT, JANE E | $24,580.86 |
| 922 | JARRETT, NORMAN E | $60,713.92 |
| 926 | JARVIS, KELLY B | $15,665.28 |
| 701 | JAYNE DAHLGREN REV LIVING TRUST | $10,399.36* |
| 2366 | JEAN A LUCKENBILL (KEITH MILLER (POA)) | $49,788.93 |
| 1010 | JEFFERSON, JACOB B. | $5,127.20 |
| 2397 | JENET, CLAUDE Y | $30,926.03 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 596 | JENNESS, DELPHINE F | $52,116.43 |
| 1512 | JOHN F HUBLER OR ALICE HUBLER TTEES | $18,328.79 |
| 965 | JOHN F PARDELLA OR CAROLE M PARDELLA TTE | $50,340.53 |
| 2007 | JOHN J SENGLE TTEE | $122,210.02 |
| 1727 | JOHNSON, C. BRENT | $6,182.78 |
| 1448 | JOHNSON, GREGORY F | $37,597.24 |
| 75 | JOHNSON, JEAN F | $10,389.65 |
| 1770 | JOHNSON, JEAN F | $10,480.62 |
| 108 | JOHNSON, JOHN H & FRANCINA H | $60,000.00 |
| 817 | JOHNSON, KARL W | $11,008.09 |
| 1123 | JOHNSON, PHILLIP C L | $50,343.41 |
| 1136 | JOHNSON, PHILLIP C L | UNLIQUIDATED |
| 812 | JONES, EDWARD B | $80,938.95 |
| 775 | JONES, KATHLEEN K | $16,797.42 |
| 2531 | JONES, KERRY M | $7,042.63 |
| 1661 | JONES, MAE N | $5,000.00* |
| 1663 | JONES, MAE N | $5,000.00 |
| 1664 | JONES, MAE N | $20,000.00 |
| 1662 | JONES, MAE N POD | $10,000.00 |
| 1776 | JOSEPH P BURNS TTEE | $204,979.09 |
| 1438 | JOYCE, GABRIELLE A | $11,703.96 |
| 1439 | JOYCE, KEVIN R | $164,315.44 |
| 1437 | JOYCE, MAUREEN A | $10,280.18 |
| 1064 | JRS AND ASSOCIATES RETIREMENT, L.C. | $15,558.37 |
| 505 | JUALL, DAVID J | $10,418.08 |
| 848 | KACZMARCZYK, JOSEPH JOHN | $245,771.00 |
| 336 | KALEMJIAN, CHARLES B | $150,000.00 |
| 1156 | KALMAN, EDWIN OR HYAMS, ELIZABETH H | $85,079.41 |
| 1157 | KALMAN, EDWIN OR HYAMS, WARREN | $130,528.28 |
| 1355 | KARL, MARION C | $41,880.90 |
| 1350 | KARL, ROBERT F | $8,385.57 |
| 1351 | KARL, ROBERT F | $12,986.88 |
| 1352 | KARL, ROBERT F | $6,463.14 |
| 1353 | KARL, ROBERT F | $5,267.41 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 1354 | KARL, ROBERT F | $55,705.17 | 528 | KING, WILBERT A. | $90,060.43 |
| 1356 | KARL, ROBERT F | $991.64 | 749 | KINSEY, WILLIAM P. | UNLIQUIDATED |
| 1378 | KARTERMAN, ETHEL I | $9,805.16 | 318 | KINSLEY, DORIS B | $11,074.54 |
| 1609 | KASEY L SCHULTZ IRREVOCABLE TRUST | $16,853.31 | 925 | KIRBY, HELEN | $23,581.16 |
| | | | 1850 | KLEBANOFF, ABBE JOAN | $11,891.71 |
| 396 | KATIECOR, INC. | $5,376.16 | 232 | KLEBANOFF, MELVA | $11,438.63 |
| 1462 | KAUFFMAN, ELAINE R | $5,129.05 | 2553 | KLEBANOFF, MELVA | $11,327.68 |
| 849 | KAVANAUGH, JOHN J | $51,198.54 | 1098 | KLEEMAN, RUTH | $10,000.00* |
| 235 | KAZAN, DIANE A | $5,015.69 | 2535 | KLEINMAN, LEONARD I | $21,106.48 |
| 690 | KAZAN, DIANE A | $5,015.69 | 1401 | KLEINS, ELEANOR | $13,576.74 |
| 236 | KAZAN, LEON | $25,176.76 | 773 | KLIEGER, HELAINE M | $336,051.71 |
| 683 | KAZAN, LEON | $25,176.76 | 1573 | KLINE, CHARLES | $103,216.83 |
| 1357 | KEENAN, GLORIA C | $22,586.98 | 150 | KLINGER, WILMA | $20,305.04 |
| 1615 | KELLEY, JOAN H | $16,167.53 | 871 | KLINGER, WILMA | $20,463.64 |
| 1861 | KEMICK, AIMEE E | $42,683.95 | 615 | KNECHT, NATALIE R | $53,076.90 |
| 567 | KEMPER, DORIS T | $29,918.67 | 364 | KOCH, ERWIN W | $24,211.13* |
| 566 | KEMPER, JOHN S | $5,601.69 | 360 | KOFFLER, ARTHUR | $114,582.47 |
| 1571 | KENNEDY, JAMES F | $15,692.84 | 769 | KOLB, WALTER R | $5,000.00 |
| 2358 | KENNY, DOLORES T | $11,931.88 | 847 | KOLDYK, RINTJE J OR KOLDYK, MARGARET R | $34,411.15 |
| 1863 | KERGIDES, SUSANNE | $13,543.23 | | | |
| 107 | KERLY, EMMA L | $5,449.37 | 2065 | KOLESZAR, LOUIS RICHARD | $66,337.63 |
| 587 | KERLY, EMMA L | $5,449.37 | 1092 | KONDRATICK, JESSICA | $435.30 |
| 34 | KERR, JOHN | $45,858.17 | 1093 | KONDRATICK, JOHN A | $723.35 |
| 35 | KERR, JOHN | $19,095.68 | 1324 | KOPF, EILEEN | $7,548.55 |
| 36 | KERR, JOHN | $20,295.51 | 1325 | KOPF, EILEEN | $8,216.62 |
| 37 | KERR, VICTORIA | $8,772.23 | 2212 | KORNFELD, BERTRAM H | $16,422.94 |
| 821 | KEUERLEBER, PAUL H | $75,000.00 | 2151 | KOSINSKI, GERRY C | $26,120.14 |
| 2347 | KEYSER, MELVIN L | $50,000.00 | 1269 | KOSMAHL JR., CARL F | $37,079.89 |
| 1216 | KHATIWALA, JAISAL J | $182.97 | 2062 | KOSMAHL, FELIX C | $12,000.00 |
| 1215 | KHATIWALA, MANJULA NAVIN | $1,469.89 | 207 | KOZICKI, DAVID J | $6,150.13 |
| 1214 | KHATIWALA, RAMESH R | $1,560.64 | 1189 | KOZICKI, DAVID J OR KOZICKI, VICKI J | $6,150.13 |
| 328 | KHOWASH, MILI | $88,616.43 | 2178 | KRACK, BARBARA J | $10,369.54 |
| 327 | KHOWASH, PRADEEP K | $11,003.49 | 2111 | KRAFT, ESTHER R | $7,100.17 |
| 1096 | KIM, DONG S | $101,023.00 | 2116 | KRAFT, ESTHER R | $7,100.17 |
| 2333 | KIM, JOHN | $8,011.63 | 347 | KRAFT, KATHLEEN M | $11,287.15 |
| 651 | KIM, SOON | $62,957.27 | 346 | KRAFT, LESTER J | $179,552.20 |
| 529 | KING, WILBERT A | $13,647.89 | 123 | KRAPCHO, WASIL | $7,869.44 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 43 | KRAUSE, BERENICE | $6,121.31 |
| 44 | KRAUSE, BERENICE | $5,022.31 |
| 45 | KRAUSE, BERENICE | $5,231.82 |
| 46 | KRAUSE, BERENICE | $22,373.80 |
| 1047 | KRAUSS, HOWARD K | $13,367.71 |
| 1112 | KRAUSS, HOWARD K | $5,272.37 |
| 573 | KRILL, JOHN | $41,135.48 |
| 574 | KRILL, JOHN | $129,170.56 |
| 575 | KRILL, JOHN | $182,108.92 |
| 576 | KRILL, JOHN | $685.88 |
| 586 | KRILL, JOHN | $82,685.04 |
| 539 | KRILL, ROBERT M | $47,214.28 |
| 540 | KRILL, ROBERT M | $7,655.25 |
| 541 | KRILL, ROBERT M | $18,229.13 |
| 572 | KRILL, ROBERT M | $117.28 |
| 863 | KROUSE, HELEN G | $9,110.19 |
| 1170 | KROUSE, NORA L | $10,421.44 |
| 793 | KRUTT, KENNETH | $33,613.13 |
| 702 | KUBACKI, JOSEPH J | $51,862.68 |
| 703 | KUBACKI, JOSEPH J | $7,888.20 |
| 2473 | KUHNS, PAUL J | $11,000.00 |
| 2245 | KURTZ, JUNE | $31,370.75 |
| 751 | KUTSUBOS SR., NICHOLAS J | $5,185.54 |
| 1759 | LA CASSE, J T | $6,232.68 |
| 676 | LA FRANCE, FRANCIS M | $14,155.97 |
| 675 | LA FRANCE, JOHN M | $6,707.40 |
| 2504 | LA ROCCA, ALBERT V | $44,136.25 |
| 149 | LACHMAN, MICHAEL | $21,007.07 |
| 1556 | LACKTIS, DORIS M | $15,123.74 |
| 1693 | LAMBERT, QUENTIN | $6,603.62 |
| 1466 | LANDES, WILLIAM A | $10,044.97 |
| 1078 | LANDI, ANTHONY | $100,173.33 |
| 1743 | LANE, ROSA | $25,742.87 |
| 661 | LANS, ADREAN | $5,000.00 |
| 1018 | LANSDALE SDA CHURCH | $138.78 |
| 2431 | LAPIS OPPORTUNITIES FUND I LP | $976,496.60 |
| 610 | LAPIS OPPORTUNITIES FUND II, LP | $18,126.97 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2577 | LAQUAGLIA, BART | $10,268.33 |
| 598 | LARSEN, WILLIAM M | $15,442.65 |
| 2225 | LASNER, LINDA H | $20,862.60* |
| 2019 | LATHAM, PAULA | UNLIQUIDATED |
| 1610 | LAUREN N SCHULTZ IRREVOCABLE TRUST | $16,853.31 |
| 730 | LAVAGE, EDWARD S | $112,788.65 |
| 767 | LAVENDER, MASON | $6,374.00 |
| 1085 | LAWLESS, CAROL P | $66,987.52 |
| 1132 | LEDDY, JOSEPH M | $3,872.00 |
| 1528 | LEE, EDAN S | $10,000.00 |
| 1380 | LEE, TAUN | $10,090.04 |
| 62 | LEFFERTS, ROBERT E | $10,755.37 |
| 2162 | LEFFERTS, ROBERT E | $10,822.57 |
| 2194 | LEHMAN MEMORIAL METHODIST CHURCH | $8,735.30 |
| 403 | LEHMAN, CARY L | $5,000.00 |
| 822 | LEHR, BETTY D | $36,311.99 |
| 1494 | LEIB, DEAN E | $14,582.09 |
| 1291 | LEILA LOIS FISHER REVOCABLE TRUST | $100,000.00 |
| 1888 | LEISEY, STEVEN P | $5,575.07 |
| 15 | LEITHEAD, ANDREW | $25,272.72 |
| 2208 | LEKITES III, WALTER | $11,234.93 |
| 2209 | LEKITES III, WALTER | $11,049.30 |
| 2210 | LEKITES III, WALTER | $11,868.47 |
| 918 | LELAND R VANCE LIVING TRUST | $32,367.18 |
| 718 | LEMBKE, GERALD M | $12,700.41 |
| 1752 | LEMIEUX, DAN | $1,840.91 |
| 2172 | LEMMON, BRUCE E | $36,417.19 |
| 2173 | LEMMON, KATHRYN L | $28,927.35 |
| 1928 | LENDER, JULIAN | $798.65 |
| 1737 | LENOIR, BESS H | $22,852.53 |
| 1478 | LEON J KROLAK TRUST | $16,889.57 |
| 1009 | LEONARD KORNSTEIN TRUST DTD JULY 6, 2006 | $10,046.39 |
| 653 | LEONARD, EUGENE A | $939.49 |
| 654 | LEONARD, EUGENE A. OR LEONARD, JANET L. | $20,000.00* |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 1039 | LEROY E. NEWLAND REVOCABLE TRUST | $25,170.77 | 1146 | LOPEZ, MARIA E | $21,089.50 |
| 151 | LESTER H & LUCILLE M LUDWIG REV LIV TR | $84,133.34 | 1147 | LOPEZ, MARIA E | $35,126.38 |
| | | | 1148 | LOPEZ, MARIA E | $37,358.91 |
| 490 | LETO, LUIGI | $20,000.00 | 1149 | LOPEZ, MARIA E | $35,754.67 |
| 491 | LETO, LUIGI | $20,000.00 | 1150 | LOPEZ, MARIA E | $22,910.69 |
| 875 | LEVENGOOD, MARION A | $5,000.00 | 1151 | LOPEZ, MARIA E | $45,110.42 |
| 876 | LEVENGOOD, MARION A | $5,000.00 | 1152 | LOPEZ-ANAYA, ARTURO | $6,884.42 |
| 877 | LEVENGOOD, MARION A | $5,000.00 | 1153 | LOPEZ-ANAYA, ARTURO | $5,746.17 |
| 878 | LEVENGOOD, MARION A | $5,000.00 | 1154 | LOPEZ-ANAYA, ARTURO | $28,656.38 |
| 2025 | LEVIN, GUY FRANKLIN | $5,990.60 | 1328 | LOPEZ-CASTRO JR, AMADEO OR | $40,255.32 |
| 2527 | LEVITT, ASHLEY BROOKE | $33,433.63 | 1255 | LOPINSKY, JOHN T | $21,414.06 |
| 958 | LEVY, MELVIN | $29,203.11 | 200 | LORRAINE D BAILEY-LIVING TRUST | $28,344.26 |
| 1197 | LICHTENSTEIN, ROSANNA | $20,422.86 | 1091 | LOUGHERY, CHARLES OR LOUGHERY, SUSAN E | $14,751.64 |
| 1282 | LILLEY, ROSEMARY V | $23,718.15 | 351 | LOUX, HARVEY M | $20,798.72 |
| 320 | LIND, CLARENCE T | $63,556.00 | 2103 | LOWRIE, MARY LOUISE | $15,131.34 |
| 1331 | LINDEMAN, BRUCE E | $7,631.11 | 2002 | LOWRY, EVA S | $104,032.04 |
| 1330 | LINDEMAN, DOLORES A | $8,663.23 | 2004 | LOWRY, JOSEPH M | $9,317.00 |
| 2279 | LINFANTE, KATHLEEN H | $15,859.09 | 2022 | LUDWIG, STEVEN L | $6,842.71 |
| 1322 | LINK, CHRISTINA L | $5,247.34 | 408 | LUND, MARIE | $35,826.02 |
| 1302 | LINTON, EILEEN | $15,000.00 | 768 | LUNDGREN, PAULINE A OR LUNDGREN, CHARLES | $50,147.65 |
| 2222 | LIPARI, ALESANDRA | $9,535.59 | | | |
| 1910 | LISOWSKI, JOHN | $15,938.74 | 388 | LUTZKO SR, WILLIAM J | $6,497.44 |
| 1927 | LISOWSKI, STAN | $24,897.59 | 401 | LYONS, LILLIAN | $8,437.73 |
| 1209 | LISS, CLAIRE | $21,281.03 | 7 | LYONS, LILLIAN & LYONS, ROBERT F | $8,437.73 |
| 1208 | LISS, SIEGFRIED E | $5,543.88 | 402 | LYONS, LILLIAN & LYONS, ROBERT F | $8,437.73 |
| 2107 | LITTLE, MARJORIE | $10,442.43 | 1019 | MAC BETH, ROBERT J | $134,902.04 |
| 2108 | LITTLE, MARJORIE | $23,288.74 | 1192 | MACHALLA, FRANK G | $99,072.17 |
| 2109 | LITTLE, MARJORIE | $15,496.87 | 184 | MACKES, CAROL N | $21,180.50 |
| 2145 | LIUZZI, RALPH | $448,643.82 | 2269 | MACLEARIE, TIMOTHY P | $5,126.22 |
| 2146 | LIUZZI, RALPH | $67,647.47 | 2180 | MACMILLAN, JOHN | $195,386.59 |
| 2143 | LIUZZI, RICHARD | $87,450.20 | 1042 | MACRIS, CHARLES N | $20,000.00* |
| 942 | LO FURNO, ROBERT J | $38,844.37 | 1103 | MADISON, BLAKE | $10,210.89 |
| 1890 | LO, JOAN A | $13,789.32 | 1917 | MADONICK, ELAINE | $13,569.83 |
| 435 | LOCKERMAN, ANDREA | $11,212.04 | 63 | MAGGI, RONALD L & MAGGI, KATHRYN L | $5,027.21 |
| 436 | LOCKERMAN, ANDREA | $6,300.84 | | | |
| 1398 | LONG, RONALD T | $46,172.59 | 708 | MAGUIRE, LINDA M | $20,525.71 |
| 1709 | LOOKER, JOSEPH P | $25,327.77 | 709 | MAGUIRE, NELSON E | $30,685.65 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 523 | MAHONCHAK, MICHAEL E | $10,415.23 |
| 422 | MAJKA, BONNIE J | $16,136.12 |
| 428 | MAJKA, DONALD J | $7,938.79 |
| 662 | MALAFRONTE, ELEANOR | $10,000.00 |
| 1012 | MALAGUTI, BRUNO V & MALAGUTI, DIANE | $102,695.66 |
| 1013 | MALAGUTI, BRUNO V & MALAGUTI, DIANE | $1,904.24 |
| 2892 | MALAGUTI, BRUNO V & MALAGUTI, DIANE | $103,971.79 |
| 1109 | MALASON, EILEEN D | $14,130.60 |
| 2491 | MALECKI, LEO W | $28,276.15 |
| 1710 | MALINICS, DEBRA M. | $182,625.12 |
| 1607 | MALLARI, MARIE FE | $5,109.93 |
| 2226 | MAMI, SAMUEL R | $6,882.01 |
| 2459 | MAN, KWOK K | $1,500.00 |
| 220 | MANCIL SR, JAMES W & MANCIL, VIRGINIA | $60,000.00 |
| 1836 | MANE, LINDA FACTOR | $50,103.56 |
| 1837 | MANE, LINDA FACTOR | $20,108.83 |
| 2530 | MANI, RAM | $2,302.17 |
| 989 | MANISCALCO, LOUIS N | $43,687.93 |
| 990 | MANISCALCO, LOUIS N | $43,541.41 |
| 1361 | MARADEL B SONNICHSEN TRUST | $73,189.02 |
| 1696 | MARANZ, HERBERT J OR HARRIS, MARLA J | $51,427.58 |
| 1763 | MARANZ, HERBERT J OR HARRIS, MARLA J | $51,427.58 |
| 1774 | MARANZ, HERBERT J OR HARRIS, MARLA J | $51,427.58 |
| 1998 | MARANZ, HERBERT J OR HARRIS, MARLA J | $51,427.58 |
| 1695 | MARANZ, HERBERT J OR MARANZ, RANDALL JAY | $51,427.58 |
| 1762 | MARANZ, HERBERT J OR MARANZ, RANDALL JAY | $51,427.58 |
| 1775 | MARANZ, HERBERT J OR MARANZ, RANDALL JAY | $51,427.58 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1999 | MARANZ, HERBERT J OR MARANZ, RANDALL JAY | $51,427.58 |
| 2068 | MARBLE, EDNA T | $17,318.13 |
| 338 | MARCHESE, ROSE | $10,000.00 |
| 1061 | MARCONI, MARY THERESA | $47,166.73 |
| 700 | MARDERNESS, WILLIAM | $1,108.79 |
| 733 | MARDERNESS, WILLIAM | $85,726.66 |
| 169 | MARGARET C PATTON REVOCABLE TRUST | $23,658.71 |
| 1476 | MARGARET L KROLAK TRUSTEE | $75,020.27 |
| 741 | MARGAY FAMILY LIMITED PARTNERSHIP | $5,235.63 |
| 1332 | MARGERUM, JOAN M | $65,054.87 |
| 891 | MARGRAFF, CATHERINE | $5,000.00* |
| 2023 | MARIE C CHILCOTT TRUST | $20,872.40 |
| 1560 | MARKWARD, CAROL | $5,256.74 |
| 358 | MARRON, MATTHEW E | $17,691.07 |
| 1101 | MARSA L. NEWLAND REVOCABLE LIVING TRUST | $12,910.35 |
| 591 | MARSHALL, RUTH E | $43,295.30 |
| 1847 | MARTHA M THORNTON REV TRUST | $30,796.33* |
| 601 | MARTIN JR, HERBERT R | $162,692.17 |
| 1508 | MARTIN, CHARLES | $38,691.55 |
| 914 | MARUCCI, NICHOLAS J | $30,763.19 |
| 786 | MARY ASHMORE, TRUSTEE | $5,965.94 |
| 1652 | MARY L DEPIETRO TESTAMENTARY TRUST | $44,342.00 |
| 983 | MARY LOUISE MOELLER TRUSTEE OF THE MARY | $15,501.09 |
| 1440 | MARZARIO, DANIEL J | $15,000.96 |
| 1644 | MASAREK, HELEN G | $64,092.47 |
| 1172 | MASELLA, RONALD | $6,190.74 |
| 1063 | MATA, ELA I | $13,993.54 |
| 1584 | MATARESE, VITO A | $11,967.50 |
| 322 | MATTIA, MICHAEL | $487,927.61 |
| 865 | MATTUCH, DENNIS M | $8,614.01 |
| 2895 | MATTUCH, DENNIS M | $8,702.16 |
| 866 | MATTUCH, ELIZABETH J | $13,567.85 |

* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2238 | MATUSOW, ANNE S | $22,030.18 |
| 593 | MAURO, HAILEY A | $6,477.46* |
| 522 | MAURO, MELODY | $1,809.26 |
| 1694 | MAYO, ALDEN S | $109,974.99 |
| 1841 | MAZO/LENDER PARTNERSHIP | $769.02 |
| 1489 | MC CANN, EILEEN P | $72,592.85 |
| 1490 | MC CANN, EILEEN P | $8,884.21 |
| 1538 | MC CLAY, ALBERT G | $14,966.69 |
| 1537 | MC CLAY, JESSIE E | $23,083.96 |
| 787 | MC DANIEL, ROBERT | $50,248.62 |
| 1045 | MC DONALD, SUE J | $32,255.46 |
| 649 | MC LEAN, LEWIS F, MC LEAN, ARLENE A | $175,934.05 |
| 2154 | MC MORAN, EDWARD J | $24,955.96 |
| 2159 | MCBRIDE, AMY | $6,023.78 |
| 92 | MCCLAY, ALBERT G | $43,286.72 |
| 1539 | MCCLAY, ALBERT G | $28,320.02 |
| 93 | MCCLAY, JESSIE E | $23,083.96 |
| 1817 | MCCLUSKEY, BRUCE | $5,000.00 |
| 1818 | MCCLUSKEY, BRUCE | $5,000.00 |
| 1819 | MCCLUSKEY, BRUCE | $5,522.60 |
| 1820 | MCCLUSKEY, BRUCE | $5,522.60 |
| 1821 | MCCLUSKEY, BRUCE | $5,522.60 |
| 1822 | MCCLUSKEY, BRUCE | $8,075.16 |
| 1823 | MCCLUSKEY, BRUCE | $8,075.16 |
| 1824 | MCCLUSKEY, BRUCE | $8,075.16 |
| 1825 | MCCLUSKEY, BRUCE | $8,075.16 |
| 1914 | MCCOLE, DENNIS J | $6,850.75 |
| 1940 | MCCOLE, ELIZABETH J | $7,858.92 |
| 138 | MCCOLE, HUGH H | $30,000.00 |
| 1856 | MCCOLE, HUGH H POD MCCOLE, BRUCE | $30,114.00 |
| 219 | MCCRAY, STUART | $128,442.08 |
| 1958 | MCFARLAND, OLGA M | $380,607.44 |
| 1129 | MCGLONE, M EILEEN | $16,031.55 |
| 486 | MCGOWAN, FRANK J | $35,474.04 |
| 1133 | MCGROARTY, JAMES | $30,264.90 |
| 1212 | MCKAY, RICHARD J | $274,356.33 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2364 | MCKINLEY, BONNIE J | $22,846.17 |
| 992 | MCLANE, LORRAINE A | $15,213.39 |
| 2181 | MCLAVERTY, LEO J | $94,188.00 |
| 2177 | MCMAHON, HERBERT E | $131,000.00 |
| 126 | MCMILLAN, SCOTT R | $12,472.26 |
| 816 | MCMILLAN, SCOTT R | $12,599.89 |
| 1244 | MCMULLIN, ROBERT M | $24,535.81 |
| 1220 | MEADE, EDWARD J | $41,622.48 |
| 1119 | MECK, CARL F | $7,004.00 |
| 94 | MEINKEN, VALERIE | $92,213.13* |
| 2295 | MELLOW, JOHN A | $84,786.48 |
| 1164 | MELTZER, BETTY J | $17,962.12 |
| 2467 | MENDIOLA, GREG | $23,888.24 |
| 1925 | MERLINI, ALICE A | $7,140.69 |
| 2291 | MEULEN, VIOLA G VAN DER | $55,011.79 |
| 1939 | MIAROWSKI, HELEN L | $64,763.38 |
| 1807 | MICALLEF, JOSEPH | $16,223.70 |
| 679 | MICHAEL R WHILDEN LIVING TRUST DTD 8/4/0 | $106,291.00 |
| 813 | MICHAELS, KEVIN | $15,000.00 |
| 1037 | MICHAUD, DONNA J | $7,898.71 |
| 2191 | MICHTOM, JAY I | $25,000.00 |
| 1423 | MICKIE, RITA R | $8,884.58 |
| 561 | MICKLE, ROBERT A | $18,936.16* |
| 2463 | MIDDLETON, HAROLD J | $846.14 |
| 1525 | MILES J BANK & ROCHELLE BANK TTEES | $29,418.13 |
| 929 | MILLER JR., WILSON W. & MILLER, JOAN | $140,580.80 |
| 830 | MILLER, JOEL | $37,055.00 |
| 808 | MILLER, JOSEPH | $20,356.32 |
| 909 | MILLER, RAY P | $5,213.19 |
| 1201 | MILLS, JAMES C | $21,391.42 |
| 2148 | MINTZ, GLORIA | $8,122.59 |
| 2195 | MISKO, CHRISTOPHER J | $183,093.75 |
| 1094 | MITCHELL, ANNABEL | $3,216.87 |
| 2030 | MITCHELL, JANE M | $6,937.43 |
| 1389 | MITCHELL, MARY B | $242,396.86 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1095 | MITCHELL, RICHARD | $33,608.88 |
| 1732 | MOCK, BETTY V | $12,470.06 |
| 896 | MOGENSEN, PETER J | $10,000.00 |
| 1839 | MONAGHAN, DAVID A | $25.82 |
| 1145 | MOND, THERESA | $20,884.40 |
| 2345 | MONDELL, EUGENE J | $10,816.28 |
| 410 | MONGE, CHRISTINE | $200,443.48 |
| 1429 | MONGE, CHRISTINE | $200,337.78 |
| 1430 | MONGE, CHRISTINE | $100,274.59 |
| 1575 | MONTAGUE, DAVID | $62,111.54 |
| 2499 | MONTAGUE, SANDRA A | $9,335.52 |
| 1993 | MONTRONE, EUGENE D | $5,110.94 |
| 1994 | MONTRONE, EUGENE D | $13,712.62 |
| 1995 | MONTRONE, EUGENE D | $11,995.98 |
| 1996 | MONTRONE, EUGENE D | $12,347.52 |
| 1997 | MONTRONE, EUGENE D | $14,115.42 |
| 1862 | MOORE, B JEAN | $10,038.04 |
| 1285 | MOORE, DEREK | $137,849.73 |
| 1288 | MOORE, ELLA R | $10,844.46 |
| 1287 | MOORE, GAVIN R | $10,844.46 |
| 1286 | MOORE, SOPHIA E | $10,844.46 |
| 1289 | MOORE, TREVOR J | $10,844.46 |
| 418 | MORAN JR, EDWARD F | $100,792.90 |
| 1108 | MORGAN J EVANS & CHARLYN EVANS | $100,000.00 |
| 627 | MOROZOV, DORA N | $62,235.18 |
| 803 | MORRIS, THOMAS J | $14,802.48 |
| 824 | MORSE, KENNETH G | $5,000.00 |
| 1238 | MORTENSEN FAMILY TRUST | $252,509.27 |
| 1931 | MOSKOWITZ, CLAIRE | $10,000.00 |
| 1450 | MOST, GEORGETTE M | $196,224.79 |
| 1053 | MOTTOLESE, A WILLIAM | $70,000.00* |
| 1877 | MOULTON, LINDA A | $10,466.52 |
| 1878 | MOULTON, MILDRED H | $7,739.03 |
| 2029 | MOYER FAMILY TRUST | $56,917.15 |
| 538 | MOYER, CHARLES W | $11,827.73 |
| 1174 | MUFFLER, JOAN | $5,287.30 |
| 389 | MULLANE, ALDONA | $21,398.64 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 850 | MULLER, CHARLES | $227,582.40 |
| 1453 | MULLER, RALPH | $68,090.00 |
| 2164 | MURASKI, CAROL L | $17,160.99 |
| 2165 | MURASKI, CAROL L | $11,056.33 |
| 1474 | MURRAY, DOUGLAS B | $98,397.12 |
| 1360 | MURRAY, VERONICA E | $44,606.23 |
| 551 | MUSCO, VINCENT A | $30,529.85 |
| 555 | MUTSCHLER JR, ELLWOOD W. | $49,455.44 |
| 378 | MYRTLE L. ATHERTON TRUST U/A/D 5/29/81 | $5,000.00 |
| 1742 | NAGUIB F DANIAL REVOCABLE LIVING TRUST | $6,331.51 |
| 829 | NALLY, DAVID OR | $50,104.53 |
| 1943 | NANCY GRAFRATH MILLER FAMILY TRUST | $128,271.69* |
| 802 | NAPOLEON, JAMES D | $8,071.35 |
| 2235 | NASON, JEFFREY O | $12,020.84 |
| 1834 | NEDEROSTEK, CAROL P | $43,902.07 |
| 982 | NEDICK, WALTER | $10,076.80 |
| 453 | NEILL, CLARENCE W | $30,005.67 |
| 677 | NELSON, JANE SIDDONS | $26,032.24 |
| 882 | NESCO, RICHARD R | $20,204.67 |
| 1434 | NEUMAN, DIANE C | $30,836.89 |
| 2429 | NEUMEISTER, ARGYRO | $31,120.97 |
| 2430 | NEUMEISTER, ARGYRO | $30,047.76 |
| 2409 | NEUMEISTER, ARGYRO OR | $27,537.66 |
| 1235 | NEWTON HOLDINGS, LP | $15,607.42 |
| 2517 | NICHOLSON, EILEEN M | $32,274.54 |
| 2516 | NICHOLSON, JEANNE A | $9,393.69 |
| 1803 | NIELSEN, THERESA E | $13,723.40 |
| 2193 | NOCTON, BARBARA T | $45,276.17 |
| 754 | NORAT, ROSE GOMEZ | $10,619.94 |
| 2564 | NOSSBAUM, ANNELIESE AND | $33,846.77 |
| 2563 | NOSSBAUM, MARTIN | $113,191.31 |
| 2043 | NOWAK, YVONNE | $9,052.65 |
| 1390 | O'BOYLE, HUGH | $76,281.39 |
| 794 | O'BRIEN FAMILY REV INTERVIVOS TRST | $141.04 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 290 | O'BRIEN FAMILY REV INTERVIVOS TRUST | $141.04 |
| 795 | O'BRIEN FAMILY REVOCABLE INTERVIVOS | $141.04 |
| 1314 | O'CONNELL, MILDRED Z | $32,105.14 |
| 216 | O'CONNOR, JOHN & O'CONNOR, CAROL | $42,212.41 |
| 1557 | O'DONNELL, TERESA M | $66,055.19 |
| 1185 | OKAMOTO, ALLEN H | $65,000.00 |
| 1184 | OKAMOTO, YONE W | $45,000.00 |
| 524 | OKONIEWSKI LIVING TRUST DTD 9/11/06 | $190,419.12 |
| 2155 | OLANIN, VINCENT A | $67,994.00 |
| 938 | OLIN, JAMES C | $3,011.76 |
| 577 | OLSZEWSKI, GARY CONRAD | $11,768.53 |
| 569 | OLSZEWSKI, THOMAS D | $24,215.24 |
| 570 | OLSZEWSKI, WANDA | $16,487.57 |
| 571 | OLSZEWSKI, ZBIGNIEW B | $49,110.46 |
| 1079 | O'NEILL, JOYCE VERKEST | $9,402.49 |
| 2182 | O'NEILL, MARY P | $14,540.08 |
| 166 | OPENSHAW, JOYCE J | $50,511.67 |
| 2412 | O'REILLY, CORA | $9,599.99 |
| 1210 | ORUCH, EDWARD | $6,696.62 |
| 359 | OSMAN, ANN | $135,000.00 |
| 1195 | OUNJIAN, CHRISTOPHER K | $8,700.00 |
| 2170 | OVELMAN, RAYMOND C | $10,382.61 |
| 2171 | OVELMAN, RAYMOND C | $10,327.27 |
| 2445 | OVIATT, WANE A | $10,616.75 |
| 805 | PADMALINGAM, RAJESWARY | $22,165.04 |
| 1278 | PALERMO, PATRICIA J | $289,396.98 |
| 434 | PALESE, JEAN C | $20,762.49 |
| 2074 | PALKO, JOHN M | $27,618.04 |
| 1089 | PALMER, RUTH M | $5,417.21 |
| 2581 | PALUSZEK, JOSEPH | $20,058.00 |
| 14 | PANGALDI, DANIEL J & PANGALDI, PATRICIA | $61,893.42 |
| 603 | PANGALDI, DANIEL J & PANGALDI, PATRICIA | $61,907.40 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1755 | PANGANIBAN, DEAN | $9,246.20 |
| 1757 | PANGANIBAN, JESSICA | $9,028.07 |
| 1949 | PANZA, ANDREW | $30,158.62 |
| 1950 | PANZA, ANDREW | $30,127.69 |
| 932 | PAPPAS, TONY J | $11,273.21 |
| 1258 | PARAVICINI, HARRY | $16,128.86 |
| 1259 | PARAVICINI, HARRY | $54,825.89 |
| 964 | PARDELLA, JOHN F | $20,311.53 |
| 1716 | PARE', PAUL R | $5,285.01 |
| 1400 | PAREKH, BIPIN | $7,919.50 |
| 2160 | PARKER, PATRICIA F | $20,708.52 |
| 2206 | PARKER, SUZANNE | $6,056.94 |
| 2320 | PARSLEY, CASSANDRA SIERRA | $12,170.66 |
| 2321 | PARSLEY, KAELAN CREEDE | $10,489.39 |
| 1455 | PARSONS, EDILBERTO | $5,321.30 |
| 1781 | PAS, DEBORAH | $138,623.76 |
| 237 | PASTOR, JOHN B | $21,736.66 |
| 1022 | PASTORE, EDWARD A | $115,000.00 |
| 2231 | PATEL, SHIRISH H | $8,895.23* |
| 2230 | PATEL, SHIRISH H POD PATEL, ROSHNI | $9,528.83* |
| 543 | PATRIZIO, ROBERT J | $163.45 |
| 2113 | PATTERSON, NORMA | $12,790.38 |
| 1495 | PAUL, SARAH | $61,885.25 |
| 1492 | PAULI, DELIA | $10,774.46 |
| 1491 | PAULI, LIAM | $5,366.76 |
| 2241 | PAVELKA, ALEXANDER PAUL | $28,471.11 |
| 2011 | PAVELKA, PAUL C | $13,089.31 |
| 76 | PAYNE, CHARLOTTE S POD PAYNE, SUZANNE | $40,000.00 |
| 940 | PAYNE, CHARLOTTE S POD PAYNE, SUZANNE | $21,005.00 |
| 1017 | PEAK WINDOW AND DOOR COMPANY | $6,418.70 |
| 765 | PEARCE, LETTIE | $6,191.13 |
| 1520 | PEARL A ERB & LIESELOTTE ERB TTEES | $58,465.06 |
| 1521 | PEARL A ERB & LIESELOTTE ERB, TTEES | $42,165.99 |
| 1522 | PEARL A ERB & LIESELOTTE ERB, | $42,398.02 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| | TTEES | | 504 | PICKUP, KATHRYN T & HARRY C | $25,685.00 |
| 1523 | PEARL A ERB & LIESELOTTE ERB, TTEES | $38,454.58 | 2067 | PIERCE, GRACE R | $476,279.89 |
| | | | 168 | PIERCE, GREGORY C | $31,092.39 |
| 1524 | PEARL A ERB & LIESELOTTE ERB, TTEES | $42,241.30 | 104 | PIERCE, JOHN S (CUST) FOR PIERCE, EMMA K | $5,312.73 |
| 1889 | PELLEGRINO, FRANK J | $43,361.15 | 171 | PIERCE, JOHN S (CUST) FOR PIERCE, IAN J | $5,404.85 |
| 1730 | PENDHARKAR, C M | $12,260.82 | | | |
| 694 | PENNINGTON, BOBBY J | $48,481.65 | 978 | PIKE CREEK ANIMAL HOSPITAL 401K | $8,478.09 |
| 600 | PERALTA JR., BERNARDO S | $22,000.00 | 132 | PILLING, THOMAS J | $7,000.00 |
| 599 | PERALTA, CONSUELO S | $182,902.93 | 846 | PIMENTEL, ALBERT T | $10,445.54 |
| 2367 | PERILLI, MARISA | $9,470.91 | 354 | PIPER, WILLIAM R | $31,757.67 |
| 2379 | PERMSAP, ANGKANA | $17,481.14 | 239 | PIPPEL, DOROTHY M | $39,140.66 |
| 1541 | PERO, MARY | $49,975.81 | 814 | PITT, CATHERINE B | $27,528.89 |
| 1576 | PERO, WAYNE | $100,644.08 | 74 | PLOUNG, ROBERT E | $10,475.93 |
| 1578 | PERRIGO, TODD F | $7,000.00 | 1769 | PLOUNG, ROBERT E | $10,560.33 |
| 2490 | PETERS, ALFRED J | UNLIQUIDATED | 1250 | PODBIELSKI, EDWARD | $154,530.04 |
| 2303 | PETERS, JANE S | $7,869.91 | 597 | PODEWILL, DONALD | $60,000.00 |
| 756 | PETERSEN, DOUGLAS C | $12,787.98 | 2044 | POLICARPIO, NATY P | $27,344.97 |
| 763 | PETERSEN, DOUGLAS C | $10,092.52 | 2045 | POLICARPIO, NATY P | $33,917.02 |
| 772 | PETERSEN, DOUGLAS C | $10,090.04 | 471 | POLLACK, DAVID | $50,333.82 |
| 2069 | PETHERBRIDGE SR, JEFFREY S & | $7,020.68 | 1300 | POLLOCK, BRUCE | $8,448.34 |
| 2070 | PETHERBRIDGE, PATRICIA A | $32,705.24 | 1179 | POMPA, LEONARD | $63,377.64 |
| 1851 | PETNER, THERESA M | $21,768.20 | 2278 | POMPA, LORAINE M | $107,500.00 |
| 2187 | PETRILLO, JOHN A | $24,317.81 | 363 | POPOLOW, HARRY N | $25,416.27 |
| 2188 | PETRILLO, JOHN A | $34,127.69 | 1985 | PORDES, BARBARA K | $8,481.29 |
| 2308 | PETRIS, ELIZABETH M | $92,585.00 | 1986 | PORDES, CURTIS M | $11,157.04 |
| 2307 | PETRIS, WILLIAM J | $95,097.00 | 1983 | PORDES, MARIAN | $46,133.03 |
| 688 | PETRUN III, ANDREW J | $21,346.08 | 1984 | PORDES, MARIAN | $11,157.04 |
| 779 | PETRUSKA, DORIS | $23,488.95 | 1904 | POSHKUS, RAYMOND C | $26,088.71 |
| 780 | PETRUSKA, DORIS | $5,794.36 | 1041 | PRABHALA, VENKATA S | $16,136.00 |
| 781 | PETRUSKA, DORIS | $36,098.33 | 1231 | PRESS, ELENA M | $3,021.78 |
| 764 | PFEIFFER, ERNEST A | $10,595.71 | 1232 | PRESS, ERIC | $4,040.93 |
| 881 | PFLEIGER, J GORDON | $13,051.66 | 2351 | PRINCE, DUDLEY G | $5,183.22 |
| 456 | PFLIEGER, DONALD E | $5,340.60 | 705 | PRISCO, CHRISTINA | $5,000.00 |
| 544 | PHILLION, DAVID J | $46,495.52 | 753 | PRISCO, CHRISTINA | $5,000.00 |
| 545 | PHILLION, DAVID J | $360,086.26 | 454 | PROCACCI, LAURETTA | $11,122.17 |
| 623 | PHIPPS, L. STERLING | $12,425.08 | 375 | PROFESSIONAL PERSONNEL | $7,500.00 |
| 213 | PICKUP, KATHRYN T & HARRY C | $25,685.00 | 374 | PROFESSIONAL PERSONNEL & | $323.59 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| | MANAGEMENT CORP | |
| 332 | PRUNER, JEFFREY C | $7,909.95 |
| 1745 | PRYJOMSKI, JOHN G | $29,446.21 |
| 2552 | PSIODA, BARBARA A | $6,559.73 |
| 1548 | PSIODA, RICHARD A | $35,386.63 |
| 1617 | PUCHEK, PETER A | $17,429.80 |
| 2224 | PUMHIRUN, DARAWAN | $21,124.34 |
| 687 | PUNTEL, RICHARD E | $26,377.85 |
| 1876 | PURFIELD, CAROL A | $21,183.96 |
| 335 | QUATTRO, ARTHUR J | $156,209.96 |
| 897 | QUINONES, CARLOS J | $15,990.75 |
| 1346 | R ENG TRUST, ROSE ENG TTEE | $44,056.55 |
| 1256 | R.D. JAMBRO M.D. PENSION TRUST | $241,063.02 |
| 1008 | RABINOWITZ, ROBERT | $5,265.81 |
| 2404 | RACHEL R BOLLES TTEE | $275,000.00 |
| 1276 | RAHI, PATRICIA P | $8,224.44 |
| 1102 | RAHM, CATHERINE C | $5,247.34 |
| 2483 | RAIA, THOMAS | $8,845.00 |
| 361 | RALPH F MCGRATH & RUTH S MCGRATH LIV TR | $21,022.54 |
| 362 | RALPH F MCGRATH & RUTH S MCGRATH LIV TR | $21,985.54 |
| 1379 | RALPH H NYMAN TTEE | $21,509.38 |
| 502 | RAMIREZ, BIRGIT JOHANSSON | $32,840.41 |
| 309 | RAMSDELL, BRUCE | $45,525.66 |
| 1142 | RAO, V.N. PADMANABHA | $31,644.76 |
| 1024 | RAO, VISWESWARI P | $10,553.24 |
| 834 | RAPP, DORIS M | $51,210.73 |
| 841 | RAPP, DORIS M | $19,070.13 |
| 836 | RAPP, H. STUART | $30,253.46 |
| 919 | RAPP, H. STUART | $56,545.75 |
| 452 | RATHJE, RONALD H | $20,000.00 |
| 639 | RATHOD, CHANDRAKANT | $11,756.87 |
| 644 | RATHOD, KOKILA | $13,964.05 |
| 645 | RATHOD, KOKILA | $54,442.08 |
| 88 | RATHOD, KOKILA & RATHOD, CHANDRAKANT N | $44,077.91 |
| 642 | RATHOD, KOKILA & RATHOD, | $54,442.08 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| | CHANDRAKANT N | |
| 86 | RATHOD, KOKILA C & RATHOD, CHANDRAKANT | $10,053.30* |
| 643 | RATHOD, KOKILA C & RATHOD, CHANDRAKANT | $13,964.05 |
| 84 | RATHOD, KOKILA CHANDRAKANT | $12,029.60* |
| 646 | RATHOD, KOKILA CHANDRAKANT | $13,964.05 |
| 640 | RATHOD, PRIYANKA | $14,108.00 |
| 85 | RATHOD, PRIYANKA (MINOR CHILD) | $11,890.32* |
| 641 | RATHOD, PRIYANKA (MINOR CHILD) | $14,108.00 |
| 638 | RATHOD, SITARA | $10,629.35 |
| 89 | RATHOD, SITARA (MINOR) | $7,823.30 |
| 90 | RATHOD, SITARA (MINOR) | $7,054.55 |
| 91 | RATHOD, SITARA (MINOR) | $8,571.64 |
| 636 | RATHOD, SITARA (MINOR) | $8,845.07 |
| 1589 | RAUCH, HILDEGARD F | $5,000.00 |
| 1590 | RAUCH, HILDEGARD F POD RAUCH, JOSEPH L | $5,000.00 |
| 1121 | RAUCHLE, CAROLE L | $10,340.99 |
| 2223 | RAYL, PAMELA A | $3,257.11 |
| 855 | READ, JOANNE M | $35,000.00 |
| 1411 | RECK, DONNA V | $307,389.48 |
| 1412 | RECK, DONNA V | $103,684.87 |
| 1415 | RECK, DONNA V | $216,077.29 |
| 1413 | RECK, DONNA V OR RECK, DAVID M | $268.38 |
| 1414 | RECK, DONNA V OR RECK, MATTHEW L | $965.42 |
| 475 | REED, MARILYN | $8,818.08 |
| 1445 | REED, RANDALL S | $1,423.94 |
| 1707 | REEDY, MARJORIE C | $50,184.10 |
| 352 | REETZ JR., FERDINAND | $18,000.00 |
| 1443 | REGAL INSURANCE AGENCY | $218,048.28* |
| 385 | REICH, JAMES E | $105,820.93 |
| 2487 | REICHARD, ROBERT | $37,365.86 |
| 1792 | REICHENBACH, BEVERLY A | $10,061.39 |
| 1941 | REICHMANN, RICHARD H | $43,584.83 |
| 1261 | REILLY, JOHN T | $5,060.00 |
| 2063 | REILLY, ROBIN J | $21,661.12 |
| 1211 | REILLY, SHARON C | $8,765.71 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 663 | RENZ, JOHN A | $11,010.94 |
| 1167 | RETTINGER, EDWARD C | $47,576.77 |
| 1168 | RETTINGER, EDWARD C | $3,966.04 |
| 133 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $135,475.40 |
| 1031 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $6,776.73 |
| 1032 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $25,111.42 |
| 1033 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $33,599.26 |
| 1034 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $38,381.34 |
| 1035 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $24,837.44 |
| 1036 | REV LIV TRUST LEONARD S & JEAN L HOZLOCK | $7,920.34 |
| 699 | REV TR OF PAUL S & BETTY L DURNAN TTEE | $16,103.48 |
| 1131 | REVAK, FRANK J AND REVAK, FLORENCE M | $56,907.88 |
| 2052 | REVAK, MELANIE | $10,353.79 |
| 947 | REVOCABLE TR CAROL B LOVETT U/A 1-31-01 | $7,261.34 |
| 742 | RHONE, JAMES E | $24,962.63 |
| 1912 | RICCIARDI, JOYCE M | $17,946.12 |
| 913 | RICE, MILTON J | $33,352.59 |
| 1773 | RICH, BETTY E, STEIN, AMBER, | $18,000.00 |
| 1603 | RICHARD A LAVENDER TRUST | $14,000.00 |
| 470 | RICHARDSON, JOHN P | $8,395.35 |
| 1336 | RIEBER, WILLIAM | $104,185.88 |
| 1126 | RIFFKIN, SELMA E | $10,000.00 |
| 1552 | RINKO, THERESA A | $10,001.98 |
| 417 | RIPP, DORA | $19,249.71 |
| 1183 | ROBBINS, DAVID | $14,698.00 |
| 1971 | ROBERT T SCOTT EXECUTOR | $5,000.00 |
| 1972 | ROBERT T SCOTT EXECUTOR | $5,000.00 |
| 1973 | ROBERT T SCOTT EXECUTOR | $5,000.00 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1974 | ROBERT T SCOTT EXECUTOR | $5,000.00 |
| 1975 | ROBERT T SCOTT EXECUTOR | $5,000.00 |
| 1976 | ROBERT T SCOTT EXECUTOR | $10,000.00 |
| 1230 | ROBERT W MORITZ LIVING TRUST | $80,000.00 |
| 399 | ROBICHAUD, CAROLE W | $7,943.11 |
| 630 | ROBINSON, GARY C | $15,093.67 |
| 2393 | ROBINSON, RICHARD J | $294.22 |
| 1591 | ROBSON, KRISTIE A | $52,255.48 |
| 1640 | ROEDELL, STEPHEN F | $9,490.42 |
| 2557 | ROMIG, JENNIFER JOHN | $22,945.70 |
| 2363 | ROMOLINI, JOHN A | $70,477.17 |
| 449 | ROSARIO, WILLIAM | $5,236.46 |
| 1275 | ROSCHEN, DOROTHY | $186,875.97 |
| 1638 | ROSE, JOHN R | $12,112.03 |
| 371 | ROSEN, GEORGE | $250,631.24 |
| 1873 | ROSENBERG, HAROLD J | $10,500.00 |
| 1069 | ROSENGARTEN, GLORIA | $37,224.85 |
| 2411 | ROSENTHAL, MARTIN H OR ROSENTHAL, MARILY | $50,035.46 |
| 2185 | ROSSANESE, ANNAMARIE | $90,603.10 |
| 2186 | ROSSANESE, ANNAMARIE | $90,603.10 |
| 1236 | ROVERE, PASQUALE | $91,042.06 |
| 233 | ROWE, GARY L | $39,321.46 |
| 95 | ROWE, GORDON | $10,408.00 |
| 147 | ROWE, GORDON | $10,410.23 |
| 2551 | RUBINO, SALVATORE J | $11,199.36 |
| 114 | RUBINSTEIN, EFFIE | $842,258.68* |
| 228 | RUBINSTEIN, EFFIE | $844,432.99 |
| 1111 | RUCKER, DANIELLE CARLA MARIA | $21,865.34 |
| 991 | RUDIK, FYODOR | $18,100.40 |
| 1479 | RUDY, GEORGE J | $137,376.41 |
| 724 | RUGER, JOAN E | $16,568.89 |
| 725 | RUGER, LUDWIG A | $12,252.11 |
| 726 | RUGER, LUDWIG A | $12,534.41 |
| 727 | RUGER, LUDWIG A | $11,664.00 |
| 1066 | RUGGLES, BRIAN T | $21,182.33 |
| 1551 | RULE, JENNIE | $9,609.74 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1643 | RUSSELL, JANE W | $20,100.40 |
| 1480 | RUSSO, JENNIE M | $5,001.69 |
| 1481 | RUSSO, JENNIE M | $6,000.00 |
| 1482 | RUSSO, JENNIE M | $10,000.00 |
| 1483 | RUSSO, JENNIE M | $5,001.47 |
| 1485 | RUSSO, JENNIE M | $5,001.47 |
| 1484 | RUSSO, JENNIE M POD RUSSO, MICHAEL A | $10,000.00 |
| 899 | RUTH E QUINONES REVOCABLE TRUST | $15,095.98 |
| 995 | RUTTER, MARIE | $100,000.00* |
| 1113 | RUTTER, MARIE | $100,000.00* |
| 1797 | RYCEK, CAROL A | $5,279.22 |
| 1798 | RYCEK, JOSEPH J | $5,202.76 |
| 1799 | RYCEK, JOSEPH J | $6,173.76 |
| 1800 | RYCEK, JOSEPH J | $7,832.59 |
| 1801 | RYCEK, JOSEPH J | $6,029.70 |
| 1173 | RYCHLAK, RAYMOND J | $5,240.31 |
| 1629 | RYS, JACQUELINE A | $165,659.34 |
| 1628 | RYS, ROBERT | $60,026.50 |
| 1567 | SACHER, MARILYN S | $7,648.32 |
| 1570 | SACHER, MARILYN S | $8,360.29 |
| 1900 | SADASHIGE, CHARLOTTE A | $13,555.88 |
| 548 | SADASHIGE, MITSUE | $34,188.57 |
| 924 | SAGE, GREG | $52,042.52 |
| 468 | SAIA, CARMELLA | $5,526.13 |
| 609 | SAILOR, IRWIN H | $69,375.18 |
| 1796 | SALEM CEMETARY ASSN | $7,747.87 |
| 1804 | SALTIEL, ETHEL M | $8,916.07 |
| 1963 | SAMSEL, PATRICIA D | $11,046.07 |
| 1842 | SAMUEL TUCKER, TRUSTEE | $81,375.16 |
| 181 | SAMUELS, JAMES E | $9,444.49 |
| 731 | SANCHEZ, JESUS | $15,104.00 |
| 732 | SANCHEZ, JESUS | $15,104.00 |
| 851 | SANDALL, THEODORE J | $5,002.11 |
| 735 | SANDBERG, JEANNE | $10,262.86 |
| 734 | SANDBERG, MARTIN I | $88,355.45 |
| 1926 | SANDERS, MARY ANN | $63,806.18 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1846 | SANDS, LEE H | $12,262.45 |
| 620 | SANTONE, JOHN J | $13,112.12 |
| 414 | SANTUCCI, EVELYN W | $50,430.80 |
| 1425 | SAPSOWITZ FAMILY TRUST | $201,860.54 |
| 1124 | SARDO & SONS WAREHOUSING INC. | $56.65 |
| 695 | SARDO, JOSEPH N | $26,500.00 |
| 1475 | SATISH K BHATNAGAR | $139,141.48 |
| 1614 | SAUL, BEVERLY K | $17,898.74 |
| 1613 | SAUL, MARK C | $20,089.68 |
| 2458 | SAURMAN, MARY ANN | $10,000.00 |
| 537 | SAVINI, STEVEN A | $30,000.00 |
| 1283 | SAVNIK, GERARD R | $168.61 |
| 2078 | SAWICKI LIVING TRUST | $140,415.88 |
| 2105 | SAWICKI, JANET A | $18,985.47 |
| 2106 | SAWICKI, JOHN J | $18,985.47 |
| 2079 | SAWICKI, RAYMOND R | $52,698.43 |
| 1587 | SCALAMONI JR, PETER | UNLIQUIDATED |
| 668 | SCHALLER, MARK T | $37,912.37 |
| 956 | SCHEIB, MICHAEL P | $5,273.68 |
| 957 | SCHEIB, MICHAEL P | $42,071.81 |
| 2147 | SCHELL, ERNEST H | $7,959.51 |
| 217 | SCHELLHARDT, WILLIAM G | $30,433.79 |
| 59 | SCHILL, HANNE-LORE | $43,681.81 |
| 592 | SCHIPANI, COSTANDINO J | $19,725.63 |
| 483 | SCHMID, JUDITH STANDKE | $16,332.63 |
| 484 | SCHMID, JUDITH STANDKE | $46,567.74 |
| 466 | SCHMID, WILLIAM C | $13,050.73 |
| 558 | SCHNABEL, HAROLD B | $69,415.93* |
| 302 | SCHNABEL, HAROLD B OR | $69,415.93 |
| 559 | SCHNABEL, HAROLD B OR SYLVA DARLENE | $69,415.93 |
| 659 | SCHNAPP TTEE, NETTIE J | $99,381.90 |
| 832 | SCHNEID, HERMAN POD SCHNEID, EDWARD L. | $46.81 |
| 1569 | SCHNEIDER, EILEEN | $14,604.05 |
| 1558 | SCHNEIDER, ETHEL M | $10,593.38 |
| 1458 | SCHREINER, CEINWEN A | $34,110.44 |
| 1624 | SCHULTZ, PAUL D | $10,447.87 |

* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2450 | SCHUMACHER, SUE F | $10,000.00 |
| 2451 | SCHUMACHER, SUE F | $10,000.00 |
| 2353 | SCHWALM, BERNADETTE E | $2,093.59 |
| 1015 | SCHWANER, WILLIAM J | $181,306.66 |
| 1532 | SEGAL, SARA | $91,359.00 |
| 1544 | SEGAL, SARA | $25,226.00 |
| 1545 | SEGAL, SARA | $69,442.32 |
| 684 | SEIBERLICH, KATHLEEN D | $5,319.13 |
| 889 | SEIDEL, JEAN M | $10,347.91 |
| 893 | SEIDEL, RICHARD F | $27,022.56 |
| 1741 | SEIFERT, DONALD P | $43,566.99 |
| 1186 | SEKLEY LIVING TRUST DTD 06/27/00 | $10,000.00 |
| 1187 | SEKLEY, FRED J | $15,000.00 |
| 208 | SENA, CARLOS A | $1,999.53 |
| 173 | SENNICO, VINCENT | $12,972.00 |
| 844 | SENNICO, VINCENT A | $13,309.59 |
| 693 | SEVY, TOMMY L | $82,136.14 |
| 594 | SHAH, SMITA | $19,369.89 |
| 525 | SHANKLE, LINDA D | $18,089.66 |
| 1577 | SHARP, JOHN C | $151.97 |
| 1407 | SHEEHAN FAMILY TRUST | $58,508.31 |
| 512 | SHEFSKY, BARRY | $19,919.25 |
| 514 | SHEFSKY, ERICA | $19,436.54 |
| 513 | SHEFSKY, JESSICA ROSE | $19,436.54 |
| 83 | SHEHAN, RICHARD | $25,000.00 |
| 329 | SHEMIN, HILARY | $10,000.00 |
| 1377 | SHEPHERD, PEARL | $7,355.97 |
| 1833 | SHETZ, HELEN G | $32,269.94 |
| 2035 | SHINDER, NAOMI | $62,828.91 |
| 2385 | SHIRLEY PESSES TRUSTEE | $10,000.00 |
| 1599 | SHOFFLER, CALVIN E | $21,822.97 |
| 1724 | SHOGREN, DONALD J | $1,617.66 |
| 2267 | SHOPE, JOAN B | $8,181.50 |
| 1226 | SHOR, LARRY M | $8,000.00 |
| 1227 | SHOR, LARRY M | $8,000.00 |
| 1074 | SHREVE, LINDA JANE | $45,188.05 |
| 1217 | SHRI SAI HOSPITALITY LLC | $377.39 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 801 | SHROYER, CHRISTIANA A. | $25,000.00 |
| 2072 | SIBILIA, FLORENCE M | $402,920.85 |
| 1335 | SIDES, AKEELAH I | $54,674.18 |
| 1952 | SIEG, HARRY H | $88,149.59 |
| 1951 | SIEG, MARTHA L | $125,844.20 |
| 1989 | SIEGAL, JAMIE S | $10,865.22 |
| 1988 | SIEGAL, JAMIE S POD SIEGAL, SCOTT D | $16,615.32 |
| 1059 | SIEGELL, BARBARA C | $9,164.80* |
| 823 | SIGEL, NISSIE | $51,482.00 |
| 874 | SILVA, EDWARD F | $5,308.82 |
| 743 | SILVER, MORTON M | $15,000.00 |
| 975 | SIMON, JAMES F | $18,142.76 |
| 212 | SIMON, VOLKER | $52,573.22 |
| 225 | SIMON, VOLKER | $52,573.22 |
| 1083 | SIMON, VOLKER | $20,783.94 |
| 1084 | SIMON, VOLKER | $10,568.24 |
| 499 | SIROTA, MERRICK | $10,000.00 |
| 1945 | SKAGGS LIVING TRUST DTD 4/1/99 | $48,605.35 |
| 770 | SKREDE, GORDON | $10,583.00 |
| 2528 | SLAAEN, WINNIE | $16,757.33 |
| 2272 | SLEEVA, ETHEL | $865.80 |
| 2275 | SLEEVA, ETHEL | $79,028.27 |
| 307 | SLIWA, HELEN | $289,373.26 |
| 316 | SLIWA, HELEN | $289,373.26 |
| 2273 | SLIWA, HELEN | $272,393.38 |
| 2274 | SLIWA, HELEN | $16,973.70 |
| 2270 | SLIWA, MARIA | $13,386.72 |
| 2271 | SLIWA, MARIA | $453,542.96 |
| 2152 | SLOYER, ROBERTA K | $30,235.90 |
| 1977 | SLOYER, TRACY A | $31,915.58 |
| 1654 | SMALLWOOD, HARVEY A | $53,177.41 |
| 1381 | SMITH JR, THOMAS A | $115,167.54 |
| 1751 | SMITH, ALBERT G | $76,004.82 |
| 1875 | SMITH, BECKY C | $21,500.00 |
| 2542 | SMITH, CONSTANCE | $19,988.75 |
| 2403 | SMITH, EDWARD J | $90,250.72 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2402 | SMITH, EDWARD J POD SMITH, NOWELL | $73,843.73 |
| 2237 | SMITH, EMILIA G OR SMITH, PATRICIA A | $15,147.98 |
| 1117 | SMITH, ERIC J | $49,159.87 |
| 1364 | SMITH, HELEN H | $5,667.02 |
| 1365 | SMITH, HELEN H | $5,948.55 |
| 1366 | SMITH, HELEN H | $12,799.02 |
| 1367 | SMITH, HELEN H | $10,801.10 |
| 1368 | SMITH, HELEN H | $5,578.00 |
| 1369 | SMITH, HELEN H | $5,000.00 |
| 1468 | SMITH, J PAUL | $29,766.52 |
| 776 | SMITH, JEFFREY A | $87,420.92 |
| 1469 | SMITH, JOHANNA | $58,763.23 |
| 1470 | SMITH, JOHANNA | $53,842.62 |
| 1207 | SMITH, KENNETH J | $3,443.67 |
| 1879 | SMITH, LETTICIA R POD SMITH JR, THOMAS W | $5,042.93 |
| 1559 | SMITH, MARIE L | $18,372.19 |
| 2555 | SMITH, MELVIN G | $160,780.01 |
| 344 | SMITH, MICHAEL J | $10,696.74 |
| 2085 | SMITH, THERESA HILL | $9,272.84 |
| 2359 | SMITH, THERESA HILL | $9,272.84 |
| 1865 | SMITH, WILLIE C | $325,000.00 |
| 1867 | SMITH, WILLIE C POD SMITH, BECKY C | $325,000.00 |
| 1866 | SMITH, WILLIE POD SMITH, BECKY C | $325,000.00 |
| 619 | SMOLINS, STUART I | $50,000.00 |
| 1337 | SMOTER, ALBERT A | $5,005.36 |
| 1338 | SMOTER, ALBERT A | $10,244.03 |
| 400 | SNYDER, DONALD C | $30,172.85 |
| 689 | SNYDER, LAWRENCE H | $60,000.00 |
| 778 | SNYDERMAN, SPENCER | $70,127.81* |
| 1550 | SODUL, JOHN | $9,584.45 |
| 2102 | SODUL, JOSEPH J | $3,762.44 |
| 2449 | SORENSEN, ERIC | $27,000.00 |
| 1306 | SPACHT, RUTH Y | $5,003.35 |
| 1626 | SPATARO, JOSEPH | $74,226.08 |
| 1938 | SPATARO, KAREN A | $10,486.60 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 2492 | SPATARO, MICHAEL | $59,735.10 |
| 1937 | SPATARO, MICHAEL A | $8,442.01 |
| 1625 | SPATARO, NORMA A | $44,400.19 |
| 1224 | SPECTOR, JANICE | $138,614.63 |
| 180 | SPICER, JACQUELINE E | $43,658.05 |
| 1738 | SPICKERMAN, JOHN H OR | $41,253.59 |
| 2466 | SROKA, PHILIP J | $10,967.54 |
| 2495 | STAAS, BETTY J | $9,477.16 |
| 2526 | STAAS, BETTY J | $8,722.82 |
| 496 | STAAS, LYNNE P | $12,117.97 |
| 494 | STAAS, LYNNE P. | $10,325.20 |
| 495 | STAAS, WILLIAM H | $8,716.98 |
| 589 | STAAS, WILLIAM H | $9,629.56 |
| 799 | STAKER, CHARLES R | $55,672.29 |
| 1487 | STALLONE, ALBERT B | $11,515.20 |
| 1488 | STALLONE, ALBERT B OR | $5,319.13 |
| 2360 | STAND BY SYSTEMS II INC | $2,642.94 |
| 710 | STANDKE, BARBARA LYNN | $23,896.12 |
| 1076 | STANLY F FRANKLIN TRUST | $35,000.00 |
| 1065 | STAPLES, JONATHON R | $10,312.76 |
| 1274 | STARMER, MARGARET J | $110,996.26 |
| 1410 | STARZETSKI, JOHN J | $27,214.66 |
| 119 | STEAD, LILLIAN JO | $300,446.14 |
| 139 | STEAD, LILLIAN JO | $300,446.14 |
| 140 | STEAD, LILLIAN JO | $300,446.14 |
| 424 | STEAD, LILLIAN JO | $300,446.14 |
| 416 | STEBBINS, IRMGARD N | $14,626.97 |
| 1651 | STEIN, JACK | $8,071.46 |
| 2040 | STELLA, BARBARA A | $15,840.98 |
| 980 | STELLA, REGINA | $104,420.31 |
| 1747 | STENCE, MONTE L | $16,000.60 |
| 1391 | STERLING, DOROTHY J | $15,000.00* |
| 253 | STETZ, LOIS M OR MATTHEWS JR, WILLIAM H | $56,103.84 |
| 240 | STETZ, LOIS M OR MATTHEWS, LISA A | $9,531.22 |
| 2149 | STEVE HWA, CUSTODIAN FOR AUSTIN J. HWA | $272.70 |
| 461 | STIELY, ALAN R | $806.88 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1345 | STILLMAN FAMILY DECLARATION OF TRUST | $250,726.00 |
| 487 | STINE, CHESTER | $5,539.93 |
| 2167 | STOCKL, PAMELA J | $7,680.38 |
| 2157 | STOCKL, PAMELA J POD | $33,065.94 |
| 2464 | STODDARD, ANTOINETTE V | $144,035.09 |
| 2489 | STOKER, BRADLEY L | $6,400.64 |
| 373 | STOKES, JOHN C | $11,123.57 |
| 488 | STONE JR., WILLIAM R | $5,402.15 |
| 2432 | STONEHILL MASTER FUND LTD. | $2,450,857.56 |
| 2236 | STOREY, MARY | $11,882.10 |
| 2247 | STOREY, MARY | $10,516.76 |
| 1135 | STOTZ, JONATHAN H | $15,000.00 |
| 1002 | STRAMA, RICHARD | $30,928.90 |
| 1003 | STRAMA, RICHARD | $30,928.90 |
| 1736 | STRATI, DAVID P | $6,349.71 |
| 1881 | STRIPO, JOSEPH W | $1,887.99 |
| 1473 | STROUSE, FRANK | $33,534.44 |
| 507 | STUDENT, REGINA G OR STUDENT, MATTHEW F | $87,452.96 |
| 67 | SUDOFSKY, SANDRA S | $35,801.83 |
| 879 | SUDOFSKY, SANDRA S | $35,801.83 |
| 2354 | SUECK, JEFFREY E | $60,171.92 |
| 97 | SULEMAN, JAIBUL N | $7,570.00 |
| 337 | SULEMAN, JAIBUL N | $7,632.32 |
| 517 | SULKOWSKI, LOGAN | $70,240.34 |
| 2169 | SULLIVAN, MICHAEL T | $25,000.00 |
| 553 | SULLIVAN, RICHARD R | $11,865.90 |
| 552 | SULLIVAN, RICHARD R. OR | $15,970.02 |
| 2417 | SUPPLEE, NICK T | $10,786.10 |
| 1705 | SUPPLEE, OSCAR D | $17,931.62 |
| 2455 | SWAIN, HOWARD A | $44,132.60 |
| 2546 | SWAN, ROBERT H | $129,749.72 |
| 1321 | SWANTEK, LEONARD R | $37,948.94 |
| 2036 | SWEIGART, JOHN D | $17,196.50 |
| 1891 | SZCZUREK, THOMAS G | $105,472.94 |
| 407 | SZYMANSKI, JOAN | $74,310.44 |
| 469 | T.L. SCAIFE COUNCIL #254 | $56,435.77 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1886 | TALUNAS, WALTER T | $7,397.67 |
| 715 | TAN, GWYNNE | $40,324.39 |
| 1347 | TANCS, ROSE | $24,285.82 |
| 783 | TARPLEY, MARGARET H | $50,099.13 |
| 782 | TARPLEY, RAYMOND W | $40,279.56 |
| 784 | TARPLEY, RAYMOND W. OR | $90,120.39 |
| 888 | TAYLOR, CATHY GLEE | $10,558.02 |
| 736 | TEDESCHI, LOUIS | $50,678.62 |
| 2565 | TENNERELLA, GERALDINE R | $49,900.00 |
| 241 | TERLECKY, CASIMER | $29,598.14 |
| 2372 | TERRANOVA, GREGORY | $7,178.91 |
| 238 | THATTE, PRABHAKAR AND THATTE, ASHA (H/W) | $8,015.25 |
| 1118 | THE ANQUILLANO FAMILY TRUST | $17,871.55 |
| 2510 | THE BAYER FAMILY TRUST | $10,544.22 |
| 2509 | THE BAYER FAMILY TRUST, UA 03/05/98 | $20,078.50 |
| 1294 | THE BEAR FAMILY TRUST | $21,529.50 |
| 1902 | THE CANNON FAMILY TRUST | $30,812.00 |
| 1317 | THE CARMINE BUTERA REVOCABLE TRUST | $40,000.00 |
| 1304 | THE DOBIAS FAMILY TRUST | $24,594.61 |
| 1305 | THE EDMUND M MAZUR | $9,149.38 |
| 70 | THE ESTATE OF DOUGLAS J CLARK AND | $1,000,000.00 |
| 857 | THE FREDERIC K. EASTER REVOCABLE TRUST | $5,266.62 |
| 1746 | THE GRIFFIN FAMILY 2002 REVOCABLE TRUST | $12,616.82 |
| 1141 | THE JANET H RANSOM LIVING TRUST | $56,297.09 |
| 1315 | THE JOHN F SMITH TRUST | $10,212.82 |
| 229 | THE JUDY A RICHTER REVOCABLE TRUST | $13,216.91 |
| 1608 | THE MARTIN JOINT TRUST | $332,765.60 |
| 1456 | THE RELLIS REVOCABLE LIVING TRUST | $70,121.59 |
| 1320 | THE WALP FAMILY TRUST DTD 8/8/88 | $42,523.66 |
| 1140 | THE WILLIAM J RICKMAN LIVING TRUST | $68,469.69 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1919 | THOMAS F KELLEY TRUST | $10,000.00 |
| 1239 | THOMAS J DANIGER & VALERIA S DANIGER AB | $504,019.05 |
| 2375 | THOMAS, DUDLEY J | $50,600.00 |
| 1326 | THOMAS, ELLEN M | $94,865.28 |
| 818 | THOMAS, FREDDIE L. POD THOMAS, NELLIE L. | $100,079.26* |
| 2374 | THOMAS, MARY LOU | $89,200.00 |
| 304 | THOMPSON, ANNA | $231,203.70 |
| 2532 | THOMPSON, ISABELL M | $5,039.45 |
| 306 | THOMPSON, JAMES D | $365,006.01 |
| 198 | THOMPSON, WILLIAM B | $55,250.42 |
| 1260 | THOMPSON, WILLIAM B & THOMPSON, LILIAN E | $55,250.42 |
| 1936 | TIAN, XIUCHUN | $51,956.85 |
| 1962 | TILLMAN, BERTHA A | $72,617.33 |
| 648 | TINGEY, PAUL | $6,213.81 |
| 843 | TOBIAS, CLARE T | $60,974.06 |
| 2028 | TOPPER, BERNARD L | $103,479.06 |
| 2033 | TOPPER, BERNARD L | $51,739.53 |
| 69 | TORONE, MARYANNE | $52,596.74 |
| 1991 | TORRI, DERNA C | $21,199.01 |
| 740 | TOTH, ETHEL | $5,183.22 |
| 2032 | TOTH, GEORGEANN | $9,109.38 |
| 334 | TOY, HOWARD R | $65,226.35 |
| 1384 | TRIPP, RICHARD J | $26,935.15 |
| 1307 | TRITLE, AMY | $7,900.33 |
| 1308 | TRITLE, MARTIN | $14,840.15 |
| 673 | TRUELL, SAMUEL | $55,008.46* |
| 674 | TRUELL, SAMUEL | $55,008.46* |
| 658 | TRULEAR, ELIZABETH D | $5,615.54 |
| 1297 | TUCKER, HAZEL M | $32,040.78 |
| 1543 | TURCOVSKY, FRANCIS A | $14,295.88 |
| 2408 | TURNER, BARBARA M | $45,937.18 |
| 1924 | TURNER, CLYDE J | $10,305.66 |
| 884 | TUSO, PHILIP A POD IOBBI, DANIELLE | $40,000.00 |
| 60 | TWEED, DONALD H | $118,626.62 |
| 714 | TWISDALE, JONATHAN E | $66,804.10 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 185 | TYE, GERALD F | $13,076.66 |
| 885 | TYE, GERALD F | $13,076.66 |
| 970 | ULRICH, JAMES F | $33,766.69 |
| 971 | ULRICH, OLGA S | $73,337.72 |
| 1785 | UNGER, JOHN C | $70,286.20 |
| 412 | UNVERZAGT, ROBERT | $38,978.00 |
| 145 | URADNISHECK JR, JULIUS | $66,263.00 |
| 915 | URBAN, JOHN J | $40,789.80 |
| 650 | URE, THOMAS L OR URE, JUDITH B | $50,178.57 |
| 804 | USHLER, JACQUELINE | $17,000.00 |
| 33 | USOK, WALTER | $510,000.00 |
| 936 | VALENVUELA, JANET | $5,235.63 |
| 99 | VALSAMIS, ERNST | $10,051.78 |
| 464 | VAN CAMP, WILLIAM J | $17,992.00 |
| 2332 | VAN DYKE, ANNE | $20,204.67 |
| 340 | VAN HORN, DONALD | $20,339.04 |
| 2521 | VAN VLACK, CONSTANCE H | $66,706.59 |
| 413 | VARALLO, RICHARD | $5,314.11 |
| 186 | VARGLIEN, EVA HILDE | $6,026.65 |
| 1409 | VARONE, CHRISTOPHER T | $27,840.91 |
| 1080 | VERKEST, FRANK JOHN | $64,143.82 |
| 1081 | VERKEST, FRANK JOHN | $47,352.10 |
| 425 | VETRI, DORIS O | $30,162.71 |
| 2529 | VETTER, CHARLES G | $15,578.00 |
| 1070 | VICTORIA ALTAMURA TRUST | $15,728.88 |
| 420 | VIOLA, ANTHONY J | $18,423.97 |
| 719 | VO, LAM K | $5,114.17 |
| 1082 | VOLKER SIMON & TAMARA SIMON REVOCABLE | $21,221.04 |
| 2144 | VOLUNTEER FIREMENS RELIEF ASSOCIATION | $14.36 |
| 869 | VONWIN CAPITAL MANAGEMENT, L.P. | $50,288.29 |
| 1225 | VONWIN CAPITAL MANAGEMENT, L.P. | $100,000.00 |
| 1929 | VONWIN CAPITAL MANAGEMENT, L.P. | $33,229.75 |
| 1190 | WABER, DONALD P | $5,548.36 |
| 2580 | WAGLE, GRETA L | $5,591.36 |
| 1406 | WAGNER, LOREN M | $15,063.72 |
| 2213 | WAHRHAFTIG, CLARA | $466,908.36 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount | Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|---|---|---|
| 2214 | WAHRHAFTIG, CLARA | $77,661.18 | 1791 | WEINER, MORRIS E | $10,462.58 |
| 2346 | WALBERT, JOANNE L | $110,000.00 | 1090 | WEINSTEIN, DAVID E | $21,380.61 |
| 1647 | WALCHAK, VALERIE J | $21,249.37 | 1733 | WEINSTEIN, HELENE A | $41,073.38 |
| 1713 | WALDECKER, JOSEPH B | $22,174.74 | 1734 | WEINSTEIN, RONALD | $43,719.14 |
| 1071 | WALDMAN, BENJAMIN | $5,044.64 | 40 | WEISS, DORIS M | $5,000.00 |
| 348 | WALKER, ELIZABETH I | $29,334.39* | 41 | WEISS, RICHARD C | $15,000.00 |
| 948 | WALKER, JAMES | $353,335.57 | 2525 | WEISSBERG, AGNES F | $48,895.48 |
| 1100 | WALLACE, NORMA S | $9,177.99 | 2115 | WEITZENHOFFER, JANE | $16,625.21 |
| 2519 | WALLOWITCH, ANNA MAE | $32,293.20 | 1339 | WEITZMAN, JUDITH A | $11,089.90 |
| 2101 | WALSH, CAROL ANN | $7,004.01 | 1340 | WEITZMAN, MEARA | $53,903.87 |
| 1193 | WALTER M & JEANETTE G SCHANUEL FAM TST | $252,558.35 | 819 | WELKER, DOUGLAS | $15,784.12 |
| 197 | WANG, NAI DONG | $60,314.09 | 1826 | WENONA F DAVENPORT OR WARREN DAVENPORT | $27,000.00 |
| 825 | WANG, NAI DONG | $60,314.09 | 1058 | WENTZIEN, WILLIAM E F | $32,076.82 |
| 691 | WARGO, ALBERT J | $35,986.66 | 1181 | WERNER, ROBERT M | $11,852.89 |
| 692 | WARGO, ALBERT J | $21,633.57 | 1794 | WERSHING, GEORGENE M | $102,706.96 |
| 429 | WARNER FAMILY TRUST | $122,426.07 | 1344 | WEY, MING-SHOU | $683.81 |
| 2428 | WARNER, A WENDY | UNLIQUIDATED | 1452 | WHALE, ELAINE F | $30,351.68 |
| 917 | WARREN & MYRNA DILLON TRUST UTD. | $102,959.00 | 666 | WHALEN, ELIZABETH A. | $5,806.20 |
| | | | 100 | WHALEN, ELIZABETH ANN | $5,806.20 |
| 985 | WARRINGTON, CHARLES E. | $8,469.87 | 510 | WHEATLEY, DAVID L | $5,320.52 |
| 1555 | WASHBURN, ELLIS K | $67,472.35 | 419 | WHEELER, ROBERT M | $36,004.11 |
| 2042 | WASHKLOVITCH, NINA | $10,407.39 | 1656 | WHITE, ALICE F | $181,576.19 |
| 2562 | WATKINS, TORRINGTON D | $20,886.00* | 1087 | WHITE, LAWRENCE | $5,468.82 |
| 405 | WATSON, ERNEST OR | $7,512.46 | 1194 | WHITE, LOUISE | $9,046.35 |
| 1310 | WATSON, ROBERT B | $58,492.82 | 1176 | WHITEHEAD, ROBERT M | $60,000.00 |
| 77 | WATTS, LINDA L | $27,079.69 | 1043 | WHITING, DOUGLAS G | $13,002.86 |
| 106 | WATTS, LINDA L | $27,079.69 | 1874 | WHITTAKER, JOSEPH R | $10,000.00 |
| 1857 | WATTS, LINDA L | $27,262.57 | 482 | WILLIAM AND JEAN GIARRATANA REV LIV TR | $156,558.59 |
| 1858 | WATTS, LINDA L | $27,262.57 | | | |
| 1510 | WAXMAN, LORRAINE A OR WAXMAN, HARVEY L | $89,628.21 | 1196 | WILLIAM AND MARTHA WIESEMANN TRUST | $21,242.89 |
| 1464 | WEATHERLY AREA HIGH SCHOOL ALUMNI | $146,410.65* | 968 | WILLIAM H WOEHR, TTEE | $5,929.08 |
| | | | 1000 | WILLIAMSON, CHARLOTTE | $6,601.15 |
| 1206 | WEAVER, ELIZABETH S | $11,895.72 | 1486 | WILLOUGHBY, EARL B | $40,886.14 |
| 1200 | WEBB, RALPH & NINA | $5,000.00 | 2578 | WILSON, DAVID | $46,392.66 |
| 2331 | WEIDNER, DORIS E | $129,641.82 | 2579 | WILSON, DAVID H | $130,680.89 |
| 404 | WEINER, DENNIS S | $12,330.24 | 1402 | WILSON, JAMES | $26,001.50 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 1077 | WIMAN, GUSTAV A | $106,216.08 |
| 2370 | WINDSOR, DOROTHY B | $11,737.11 |
| 221 | WINSTON, ANDREW | $38,224.18 |
| 222 | WINSTON, ZACHARY | $39,160.58 |
| 981 | WINTEMBERG, NELLEVIEVE | $68,345.45 |
| 1169 | WINTER, EVELYN L | $21,056.50 |
| 458 | WINTER, JOE J | $27,103.81 |
| 1621 | WINTERS, PAUL C | $30,000.00 |
| 2348 | WITTMAN, DORIS M | $8,689.36 |
| 967 | WOEHR, WILLIAM H | $62,564.28 |
| 214 | WOLD, CHRIS | $13,200.00 |
| 355 | WOLFE, JACQUELINE M | $5,034.25 |
| 908 | WOLKO, LINDA S | $6,128.28 |
| 2294 | WOLPOFF, STUART J | $100,209.17 |
| 477 | WONDERS, DEAN W | $5,762.00 |
| 478 | WONDERS, DEAN W | $45,941.34 |
| 480 | WONDERS, VELVA M | $5,750.41 |
| 481 | WONDERS, VELVA M | $5,036.30 |
| 939 | WONG, KAU-FUI | $10,553.81 |
| 390 | WOO, KAI | $31,894.00 |
| 1897 | WORTHINGTON FAMILY | $38,164.70 |
| 1920 | WRENTHAM HEIGHTS CONDO TRUST | $22,549.76 |
| 2239 | WRIGHT, NELSON B | $6,680.38 |
| 2240 | WRIGHT, NELSON B | $8,100.52 |
| 448 | WUCHTER, RUTH M. POD EMERICH, JAMES A. | $6,000.00* |
| 979 | YANOFF, BARBARA | $22,819.48 |
| 1419 | YARNEVIC, THOMAS G | $58,959.52 |
| 665 | YEAGER, LARRY J | $7,277.15 |
| 2488 | YEAGER, PATRICIA A | $12,463.35 |

| Claim Number | Claimant Name | Asserted Claim Amount |
|---|---|---|
| 729 | YOCHUM, ROBERT J | $15,941.14 |
| 2515 | YOURSHAW, JOSEPH | $90,509.82 |
| 2514 | YOURSHAW, MARGUERITE OR YOURSHAW, JOSEPH | $90,509.82 |
| 411 | YOUSSEF, BERTA G | $32,170.20 |
| 423 | YOUSSEF, GALAL F | $38,300.57 |
| 1600 | YUNGNER, JOHN R | $11,027.00 |
| 1805 | YUNK, FLORENCE B | $8,046.60 |
| 1806 | YUNK, FLORENCE B | $5,023.75 |
| 1280 | YUST, EDWIN W | $21,138.09 |
| 1513 | ZAHN, GERTRUDE M | $8,903.95 |
| 497 | ZAISS JR, JOSEPH J | $39,172.95 |
| 2 | ZALESKY, EDWARD | $120,727.46 |
| 1616 | ZAMBITO, REGINA E | $6,234.60 |
| 2005 | ZASADZINSKI, MATTHEW | $32,436.88 |
| 1420 | ZDANOWICZ, WILLIAM | $13,793.19 |
| 365 | ZIELINSKI, ALBIN H | $25,723.32 |
| 1323 | ZIEMAN, ANDREA D | $22,513.78 |
| 1421 | ZIMMERMAN, IRVIN B | $20,114.39 |
| 1422 | ZIMMERMAN, IRVIN B | $5,225.54 |
| 1905 | ZIMNES, CONSTANTINE | $47,140.67 |
| 1906 | ZIMNES, CONSTANTINE | $30,127.81 |
| 2494 | ZINKOWICH, JOHN | $30,844.61 |
| 2500 | ZLATKIN, DANIEL | $183,762.48 |
| 2037 | ZLATKIN, DANIEL OR ZLATKIN, LORETTA S | $15,662.77 |
| 2006 | ZLATKIN, LORETTA S | $8,528.40 |
| 1535 | ZOLTAK JR, STANLEY | $21,841.99 |
| 807 | ZUNEC, GREGORY | $78,292.00 |

\* Indicates that in addition to the stated amounts, these proofs of claim include unliquidated amounts for principal and/or interest.

## **Exhibit B**

## **Letters**

Dennis Alter
William Rosoff


November 1, 2010


To:     Max Botel
        Thomas Costello
        Dana Becker Dunn
        Ronald Lubner
        Michael A. Stolper

Dear fellow Board members:

By this letter, each of us hereby confirms that (x) the approval by the Board of Directors (the "Board") of Advanta Corporation ("Advanta") of the chapter 11 plan for Advanta on November 1, 2010 and (y) the authorization by the Board on November 1, 2010 of the filing of a chapter 11 plan by Advanta and any subsequent amendments or substitutions thereto shall, for purposes of any claims that either of us has asserted or may assert as a result of the occurrence of a "Change of Control," including, without limitation, claims under the Advanta Corp. Supplemental Executive Retirement Plan for the Benefit of Dennis Alter (the "SERP") and the Advanta Corp. Supplemental Executive Insurance Program (the "SEIP") as a result of a "Change of Control" (as such term is used in each of the SERP and SEIP, respectively), have no different effect than if such chapter 11 plan, amendments, and substitutions thereto had been approved and filed by the official committee of unsecured creditors appointed in Advanta's chapter 11 case (the "Creditors' Committee") without the Board's approval of such chapter 11 plan or authorization of the filing of such chapter 11 plan and any subsequent amendments or substitutions thereto.

Additionally,   although any possible assertion that cause exists for the termination by Advanta of either of our employments would be completely spurious:

(1) Dennis Alter hereby confirms that if a court of competent jurisdiction enters a final, nonappealable order including a finding that he could have been properly terminated on October 31, 2010 "For Cause" as such term is used in the SERP, Dennis Alter shall for purposes of any claims he has asserted or may assert in respect of the SERP be treated as if he had been terminated "For Cause" on October 31, 2010; and

(2) each of us hereby confirms that if a court of competent jurisdiction enters a final, nonappealable order including a finding that either of us could have been properly terminated on October 31, 2010 for "Cause," as such term is used in the SEIP, whichever of us such finding is applicable to shall for purposes of any claims he has asserted or may assert in respect of the SEIP be treated as if he had been terminated for "Cause" on October 31, 2010.   The appropriate courts will act in lieu of the "Committee," as defined in the SEIP, for this purpose.

Finally, each of us confirms that (i) this letter may be enforced by Advanta, its chapter 11 estate, the Creditors' Committee, or any liquidating trustee appointed under the terms of the chapter 11 plan and (ii) the order confirming the chapter 11 plan may incorporate the terms of this letter.

Sincerely,

Dennis Alter                                    William Rosoff

cc:     Jay Dubow, Esq.
        Marcia Goldstein, Esq.
        Robert Lemons, Esq.
        Roger Schwartz, Esq.

Dennis Alter
William Rosoff

December 15, 2010

To: Max Botel
Thomas Costello
Dana Becker Dunn
Ronald Lubner
Michael A. Stolper

Dear fellow Board members:

By this letter, each of us confirms that he (i) consents to the jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") over any claims or causes of action asserted against him after the "Effective Date," as such term is used in the chapter 11 plan filed with the Bankruptcy Court by Advanta Corporation ("Advanta") and its affiliated chapter 11 debtors (collectively with Advanta, the "Debtors") on November 2, 2010 and as may be amended or supplemented by the Debtors (the "Plan"), by or on behalf of any of the Debtors, any of the Debtors' chapter 11 estates, or any liquidating trust established under the Plan and (ii) waives any right to contest such jurisdiction of the Bankruptcy Court.

Additionally, each of us confirms that (i) this letter is for the benefit of and may be enforced by the Debtors, their chapter 11 estates, or any liquidating trustee appointed under the terms of the Plan and (ii) the order confirming the Plan may incorporate the terms of this letter.

Sincerely,

Dennis Alter                                    William Rosoff


cc:      Jay Dubow, Esq.
         Marcia Goldstein, Esq.
         Robert Lemons, Esq.
         Roger Schwartz, Esq.

## Exhibit C

## Notice of Confirmation and Effective Date

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
ADVANTA CORP., et al., ⁴                :        Case No. 09-13931 (KJC)
                                        :
            Debtors.                    :        (Jointly Administered)
                                        :
                                        :
-------------------------------------------------------------x
```

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING DEBTORS' JOINT PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED, AND (B) OCCURRENCE OF EFFECTIVE DATE

**TO CREDITORS, EQUITY INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that an order (the "*Confirmation Order*") of the Honorable Kevin J. Carey, United States Bankruptcy Judge, confirming the Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, dated November 2, 2010 (as modified February 11, 2011, the "*Plan*") of Advanta Corp. ("*Advanta*") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (the "*Debtors*"), was entered by the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") on **February [●], 2011** (the "*Confirmation Date*"). Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the Order is available for inspection during regular business hours in the office of the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801. The Order is also available on the internet site of the Debtors' noticing agent, The Garden City Group, Inc., at http://www.advantareorg.com or by accessing the Bankruptcy Court's website www.deb.uscourts.gov. Please note that a PACER password and login are required to access documents on the Bankruptcy Court's website.

PLEASE TAKE FURTHER NOTICE that the Effective Date (as defined in the Plan) occurred on [●], 2011 and the Plan was substantially consummated.

---

⁴ The Debtors in these jointly administered Chapter 11 Cases are Advanta, Advanta Investment Corp., Advanta Business Services Holding Corp., Advanta Business Services Corp., Advanta Shared Services Corp. ("*ASSC*"), Advanta Service Corp. ("*ASC*"), Advanta Advertising Inc., Advantennis Corp., Advanta Mortgage Holding Company, Advanta Auto Finance Corporation ("*Advanta Auto Finance*"), Advanta Mortgage Corp. USA ("*AMCUSA*"), Advanta Finance Corp. ("*Advanta Finance*"), Advanta Ventures Inc., BE Corp. (f/k/a BizEquity Corp.), ideablob Corp., Advanta Credit Card Receivables Corp. ("*ACCRC*"), Great Expectations International Inc., Great Expectations Franchise Corp., and Great Expectations Management Corp.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Plan, the deadline for filing proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan ("***Rejection Damage Claims***") is [●], 2011 (the "***Rejection Damages Bar Date***").[5]

PLEASE TAKE FURTHER NOTICE that, pursuant to the Plan, the deadline for filing proofs of or requests for payment of Administrative Expense Claims ("***Administrative Expense Requests***") is [●], 2011 (the "***Administrative Expense Request Deadline***").[6]

PLEASE TAKE FURTHER NOTICE that all Rejection Damage Claims and Administrative Expense Requests should be submitted to the following:

| If By Mail: | If By Hand or Overnight Courier: |
|---|---|
| The Garden City Group, Inc.<br>Attn: Advanta Corp.<br>P.O. Box 9562<br>Dublin, Ohio 43017-4862 | The Garden City Group, Inc.<br>Attn: Advanta Corp.<br>5151 Blazer Parkway, Suite A<br>Dublin, Ohio 43017 |

Rejection Damage Claims and Administrative Expense Requests will be deemed timely filed only if **actually received** by The Garden City Group, Inc. on or before the Rejection Damages Bar Date or Administrative Expense Request Deadline, as applicable. Rejection Damage Claims and Administrative Expense Requests may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE that if you have a Rejection Damage Claim or are required to file an Administrative Expense Request pursuant to Section 2.1(a) of the Plan and fail to do so by the Rejection Damages Bar Date or the Administrative Expense Request Deadline, as applicable, your Rejection Damage Claim or Administrative Expense Claim, as applicable, shall be forever barred.**

PLEASE TAKE FURTHER NOTICE that all applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (collectively, "***Final Fee Applications***") shall be due on or before **[●], 2011 (the "*Final Fee Application Deadline*").[7] A hearing (the "*Final Fee Hearing*") to consider the Final Fee Applications will be held on [●], 2011 at [[●] a.m./p.m.] before The Honorable Kevin J. Carey, United States Bankruptcy Judge, in Room 5 of the Bankruptcy Court, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.** The Final Fee Hearing may be continued from time to time without further

---

[5] [To insert date that is 30 days after the Effective Date]

[6] [To insert date that is 60 days after the Effective Date]

[7] [To insert date that is 45 days after the Effective Date]

notice other than the announcement by the Debtors in open court of the adjourned date(s) at the Final Fee Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that the provisions of the Plan shall bind any holder of a Claim against, or interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interest, including any Equity Interest, of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to or received a distribution under the Plan.

**PLEASE TAKE FURTHER NOTICE that the Plan contains an injunction which prevents, among other things, any holder of any Claim or Equity Interest or any other party in interest, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind (whether directly, derivatively or otherwise) against the Debtors related to a Claim or Equity Interest, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or against the property or interests in property of the Debtors, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, or (v) pursuing any Claim or Interest released pursuant to Section 10.7 of the Plan. Such injunction shall extend to any successors of the Debtors and their respective properties and interest in properties.**

PLEASE TAKE FURTHER NOTICE that all Causes of Action against the Debtors that are not otherwise released under the Plan (other than with respect to federal taxes of Advanta and ASC) shall be channeled to the applicable Liquidating Trusts and be subject to the jurisdiction of the Bankruptcy Court. Any Cause of Action brought against any Trust or any Trustee may only be brought before and heard by the Bankruptcy Court.

Dated: [●], 2011
      Wilmington, Delaware

_____

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and –

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein
Robert J. Lemons
767 Fifth Avenue

New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION